**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.    **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>    JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>    COUNTY, FLORIDA

<u>SETAI HOTEL ACQUSITION, LLC</u>
Plaintiff                                                            Case # _____
                                                                     Judge  _____

vs.

<u>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, LANDMARK AMERICAN</u>
<u>INSURANCE COMPANY, LIBERTY SURPLUS LINES INSURANCE COMPANY, AXIS</u>
<u>SURPLUS INSURANCE COMPANY, EVEREST INDEMNITY INSURANCE COMPANY,</u>
<u>SCOTTSDALE INSURANCE COMPANY, UNITED NATIONAL INSURANCE COMPANY</u>
Defendant

II.    **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

III.    **TYPE OF CASE**        (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**EXHIBIT**

**Composite 1**

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**    **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.**    **NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   7

**VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☐ yes
    ☒ no

**IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ ALLAN S REISS           Fla. Bar # 858500
    Attorney or party                (Bar # if attorney)

ALLAN S REISS                08/03/2022
  (type or print name)           Date

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICAL CIRCUIT IIN AND FOR MIAMI
DADE COUNTY FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER

SETAI HOTEL ACQUISITION, LLC.,
a foreign limited liability company,

        Plaintiff,                    **COMPLAINT FOR DAMAGES**

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

        Defendants,

_____/

        Plaintiff, SETAI HOTEL ACQUISITION, LLC., a foreign limited liability company, by

and through its undersigned counsel sues Defendants, WESTCHESTER SURPLUS LINES

INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, LIBERTY

SURPLUS LINES INSURANCE COMPANY, AXIS SURPLUS INSURANCE COMPANY,

EVEREST INDEMNITY INSURANCE COMPANY, SCOTTSDALE INSURANCE

COMPANY, and UNITED NATIONAL INSURANCE COMPANY, and alleges, as follows:

        1.       This is an action for damages in excess of $30,000.00 exclusive of interest court

costs and attorney' and is within the jurisdiction of this Court.

        2.       Plaintiff is a foreign limited liability company which is authorized and conducting

business in Miami-Dade County Florida and is the owner of the real property, improvements,

1

buildings, and certain personal property located at 2001 Collins Avenue, Miami Beach, Florida 33139 (the "Property").

 3. Defendants, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, LIBERTY SURPLUS LINES INSURANCE COMPANY, AXIS SURPLUS INSURANCE COMPANY, EVEREST INDEMNITY INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, and UNITED NATIONAL INSURANCE COMPANY are foreign corporations engaged in general insurance business within the State of Florida.

 4. Defendants, in consideration of a premium Plaintiff paid to each Defendant, Plaintiff was issued a written insurance policy by each respective Defendant under which Plaintiff's Property was insured for one year commencing on April 27, 2017, against risks as provided therein including, but not limited to windstorm and hurricane, pursuant to the polices of insurance attached hereto as follows:

> WESTCHESTER SURPLUS LINES INSURANCE COMPANY, policy number D37341849003, effective dates April 27, 2017-April 27, 2018. Exhibit "A" (the "Westchester Policy").

> LANDMARK AMERICAN INSURANCE COMPANY, policy number LHD900392, effective dates April 27, 2017-April 27, 2018. Exhibit "B".

> LIBERTY SURPLUS LINES INSURANCE COMPANY, policy number 1000202527-02, effective dates April 27, 2017-April 27, 2018. Exhibit "C".

> AXIS SURPLUS INSURANCE COMPANY, policy number EAF786617-17, effective dates April 27, 2017-April 27, 2018. Exhibit "D".

> EVEREST INDEMNITY INSURANCE COMPANY, policy number CA3X000840-171, effective dates April 27, 2017-April 27, 2018. Exhibit "E".

SCOTTSDALE INSURANCE COMPANY, policy number AJS0000541, effective dates April 27, 2017-April 27, 2018. Exhibit "F".

UNITED NATIONAL INSURANCE COMPANY, policy number LP000907, effective dates April 27, 2017-April 27, 2018. Exhibit "G".

5.       Defendants are all subject to the jurisdiction of this Court pursuant to Florida Statutes Section 48.193 by contracting to insure a person, property, or risk located within the State of Florida at the time of contracting, breaching a contract in the State of Florida by failing to perform acts required by the contract to be performed in the State of Florida out of which the claims asserted herein arise, and by engaging in substantial and not isolated activity within the State of Florida.

6.       The subject polices aforesaid are written and issued in a layered structure such that the Westchester Policy is the first layer of coverage with each succeeding policy as listed above engages when its predecessor's layer of coverage is exhausted in accordance with terms and conditions of each respective policy of insurance.

7.       Accordingly, the policies of insurance, good faith and fair dealing, and common sense dictate that each insurer would take reasonable steps to communicate as necessary to give intended effect to the layered insurance program which each insurer undertook to participate and for which each Defendant accepted an insurance premium.

8.       On or about September 10, 2017, Plaintiff's Property was seriously damaged by Hurricane Irma.

9.       The full extent of the loss was not readily determinable or discoverable due to the invasive nature of the damages to Plaintiff's Property.

10.      Plaintiff presented an initial claim which was partially paid.

11.     The passage of time revealed additional serious damage to Plaintiff's Property including but not limited to the structure of the buildings, windows, and water proofing.

12.     A supplemental claim for Plaintiff's damages was timely presented to Defendants.

13.     Defendants failed and refused to adjust the loss, notify Plaintiff of their position on the claim, failed to communicate with one another, and failed and refused, and still fails and refuses, to pay the loss or any part of it, in breach of the terms and conditions of their respective polices of insurance and duties of good faith and fair dealing, and fiduciary duties to their insured.

14.     All conditions precedent to this action have occurred, been waived, or excused.

15.     Plaintiff has retained undersigned counsel to prosecute this case on its behalf and has bound and obligated itself to pay its attorneys a reasonable fee for their services in connection herewith.

16.     Plaintiff is entitled to recover its reasonable attorney's fees pursuant to Florida Statutes Section 627.428

## COUNT I - BREACH OF CONTRACT- WESTCHESTER SURPLUS LINES INSURANCE COMPANY

17.     Plaintiff, realleges paragraphs 1-16 above as if fully set forth herein.

18.     Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, owned a contractual duty to adjust the loss, communicate with its insured, communicate with the other participants of the layered program, and pay the loss in accordance with the terms of its policy and its duties of good faith and fair dealing.

19.     Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, breached its duties aforesaid.

20.     Plaintiff was damaged as a result of Defendant's, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, breach of duty.

WHEREFORE Plaintiff demands judgement against Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, in the amount of its damages, prejudgment interest since presentation of its supplemental claim, post judgement interest, court costs, and attorney's fees.

## COUNT II - BREACH OF CONTRACT- LANDMARK AMERICAN INSURANCE COMPANY

21.     Plaintiff, realleges paragraphs 1-16 above as if fully set forth herein.

22.     Defendant, LANDMARK AMERICAN INSURANCE COMPANY, owned a contractual duty to adjust the loss, communicate with its insured, communicate with the other participants of the layered program, and pay the loss in accordance with the terms of its policy and its duties of good faith and fair dealing.

23.     Defendant, LANDMARK AMERICAN INSURANCE COMPANY, breached its duties aforesaid.

24.     Plaintiff was damaged as a result of Defendant's, LANDMARK AMERICAN INSURANCE COMPANY, breach of duty.

WHEREFORE Plaintiff demands judgement against Defendant, LANDMARK AMERICAN INSURANCE COMPANY, in the amount of its damages, prejudgment interest since presentation of its supplemental claim, post judgement interest, court costs, and attorney's fees.

## COUNT III - BREACH OF CONTRACT- LIBERTY SURPLUS LINES INSURANCE COMPANY

25.     Plaintiff, realleges paragraphs 1-16 above as if fully set forth herein.

26.     Defendant, LIBERTY SURPLUS LINES INSURANCE COMPANY, owned a contractual duty to adjust the loss, communicate with its insured, communicate with the other

participants of the layered program, and pay the loss in accordance with the terms of its policy and its duties of good faith and fair dealing.

27.     Defendant, LIBERTY SURPLUS LINES INSURANCE COMPANY, breached its duties aforesaid.

28.     Plaintiff was damaged as a result of Defendant's, LIBERTY SURPLUS LINES INSURANCE COMPANY, breach of duty.

WHEREFORE Plaintiff demands judgement against Defendant, LIBERTY SURPLUS LINES INSURANCE COMPANY, in the amount of its damages, prejudgment interest since presentation of its supplemental claim, post judgement interest, court costs, and attorney's fees.

### COUNT IV - BREACH OF CONTRACT- AXIS SURPLUS INSURANCE COMPANY

29.     Plaintiff, realleges paragraphs 1-16 above as if fully set forth herein.

30.     Defendant, AXIS SURPLUS INSURANCE COMPANY, owned a contractual duty to adjust the loss, communicate with its insured, communicate with the other participants of the layered program, and pay the loss in accordance with the terms of its policy and its duties of good faith and fair dealing.

31.     Defendant, AXIS SURPLUS INSURANCE COMPANY, breached its duties aforesaid.

32.     Plaintiff was damaged as a result of Defendant's, AXIS SURPLUS INSURANCE COMPANY, breach of duty.

WHEREFORE Plaintiff demands judgement against Defendant, AXIS SURPLUS INSURANCE COMPANY, in the amount of its damages, prejudgment interest since presentation of its supplemental claim, post judgement interest, court costs, and attorney's fees.

### COUNT V - BREACH OF CONTRACT- EVEREST INDEMNITY INSURANCE COMPANY

33.     Plaintiff, realleges paragraphs 1-16 above as if fully set forth herein.

34.     Defendant, EVEREST INDEMNITY INSURANCE COMPANY, owned a contractual duty to adjust the loss, communicate with its insured, communicate with the other participants of the layered program, and pay the loss in accordance with the terms of its policy and its duties of good faith and fair dealing.

35.     Defendant, EVEREST INDEMNITY INSURANCE COMPANY, breached its duties aforesaid.

36.     Plaintiff was damaged as a result of Defendant's, EVEREST INDEMNITY INSURANCE COMPANY, breach of duty.

WHEREFORE Plaintiff demands judgement against Defendant, EVEREST INDEMNITY INSURANCE COMPANY, in the amount of its damages, prejudgment interest since presentation of its supplemental claim, post judgement interest, court costs, and attorney's fees.

### COUNT VI - BREACH OF CONTRACT- SCOTTSDALE INSURANCE COMPANY

37.     Plaintiff, realleges paragraphs 1-16 above as if fully set forth herein.

38.     Defendant, SCOTTSDALE INSURANCE COMPANY, owned a contractual duty to adjust the loss, communicate with its insured, communicate with the other participants of the layered program, and pay the loss in accordance with the terms of its policy and its duties of good faith and fair dealing.

39.     Defendant, SCOTTSDALE INSURANCE COMPANY, breached its duties aforesaid.

40.     Plaintiff was damaged as a result of Defendant's, SCOTTSDALE INSURANCE COMPANY, breach of duty.

WHEREFORE Plaintiff demands judgement against Defendant, SCOTTSDALE INSURANCE COMPANY, in the amount of its damages, prejudgment interest since presentation of its supplemental claim, post judgement interest, court costs, and attorney's fees.

### <u>COUNT VII - BREACH OF CONTRACT- UNITED NATIONAL INSURANCE COMPANY</u>

41.     Plaintiff, realleges paragraphs 1-16 above as if fully set forth herein.

42.     Defendant, UNITED NATIONAL INSURANCE COMPANY, owned a contractual duty to adjust the loss, communicate with its insured, communicate with the other participants of the layered program, and pay the loss in accordance with the terms of its policy and its duties of good faith and fair dealing.

43.     Defendant, UNITED NATIONAL INSURANCE COMPANY, breached its duties aforesaid.

44.     Plaintiff was damaged as a result of Defendant's, UNITED NATIONAL INSURANCE COMPANY, breach of duty.

WHEREFORE Plaintiff demands judgement against Defendant, UNITED NATIONAL INSURANCE COMPANY, in the amount of its damages, prejudgment interest since presentation of its supplemental claim, post judgement interest, court costs, and attorney's fees.

DATED this 03rd day of August, 2022.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com

BY:  s/Allan S. Reiss_____
        ALLAN S. REISS, ESQ.
        FLORIDA BAR NO: 858500

# *Common Policy Declarations*



**Westchester**
A Chubb Company

Policy Number: D37431849 003

Company Name: Westchester Surplus Lines Insurance Company

Named Insured & Mailing Address:
**Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal**
**1400 Broadway**
**New York, NY 10018**

Producer's Name & Address:
**ALL RISKS LTD**
**275 SCIENTIFIC DRIVE SUITE 1500**
**NORCROSS, GA 30092**
**272640  -  Renewal**

**General Policy Information**

| | |
|---|---|
| Business Description: | **Hotel** |
| When Coverage Begins: | **04/27/2017** — 12:01 A.M. Local Time at Named Insured's Address |
| When Coverage Ends: | **04/27/2018** — 12:01 A.M. Local Time at Named Insured's Address |

**In return for the payment of premium, and subject to all the terms and conditions of this policy, we agree to provide the insurance as stated in this policy.**

The premium for this policy is indicated below next to the applicable Coverage Form(s).

*Coverage Form*

| | |
|---|---|
| **COMMERCIAL PROPERTY** | $ ███ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Total Premium: | $ ███ |
| Total Assessments, Fees, Surcharges, Taxes: | $ 0 |
| Total Amount Due: | $ ███ |
| Minimum Earned Premium: | $ ███ |

**Attached Forms Information**

*Subject To Hurricane Minimum Earned Premium Endorsement, whichever is greater
See Forms Schedule CPfs2

**Authorization Information**

Date: 5/16/2017

**EXHIBIT "A"**

JOHN J. LUPICA, President
Authorized Representative

**These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to form a part thereof, complete the above numbered policy.**

©Chubb. 2016. All rights reserved.

## *Surplus Lines Declarations*



| Policy No.  D37431849 003 | Renewal of:  D37431849 002 |
|---|---|

**NAMED INSURED & MAILING ADDRESS**

Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal
1400 Broadway
New York, NY 10018

**POLICY PERIOD**

| When Coverage Begins: | 04/27/2017 | 12:01 A. M. Local Time At Named Insured's Address |
|---|---|---|
| When Coverage Ends: | 04/27/2018 | 12:01 A. M. Local Time At Named Insured's Address |

| INSURING COMPANY | Producer's Name & Address: |
|---|---|
| **Westchester Surplus Lines Insurance Company** | ALL RISKS LTD<br>275 SCIENTIFIC DRIVE SUITE 1500<br>NORCROSS, GA 30092<br><br>Producer No:  272640 |

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

SURPLUS LINES AGENT: Chris B. McGovern
LIC # E043040
10150 York Road, 5th Floor
Hunt Valley, MD 21030
PROD. AGT. _____ Phyllis Walsh_____
Street _____ 101 South Livingston Ave _____
City_____ Livingston _____ Zip _____ 07039 _____
This insurance is issued pursuant to the Florida
Surplus Lines Laws. Persons insured by Surplus
Lines carriers do not have the protection of the
Florida Insurance Guaranty Act to the extent of
any right of recovery for the obligation of an
insolvent unlicensed insurer.
Quarter_____ 2ND 2017 _____
Premium____ ██████████ ____ Tax ██████████
Agents Countersignature _____ ~~~~~ _____

Policy Fee: ____ ████████
Inspection Fee: _____ N/A
FL SL Tax: ██████████
FSLSO Service Fee: ___ ████████
Hurricane Cat. Fund: _____
Citizens Assess Fee: _____ ██████
EMPA Surcharge: _____ █
FLRES_____: _____ █
Total Payable at Inception: ████████████

# FLORIDA POLICYHOLDER NOTICE

**LAW AND ORDINACE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PUR- CHASE OF FLOOD INSURANCE FROM THE NA- TIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

ONE OR MORE OF THE FOLLOWING MAY APPLY TO YOUR POLICY:

A

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRI- CANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF- POCKET EXPENSES TO YOU.**

B

**THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

C

**THIS POLICY MAY EXCLUDE WIND THAT MAY RESULT IN HIGH OUT- OF-POCKET EXPENSES TO YOU.**

PLEASE REVIEW YOUR POLICY CAREFULLY AND CONTACT YOUR LICENSED AGENT IF YOU HAVE ANY QUESTIONS.

# *Westchester Surplus Lines Insurance Company*

11575 Great Oaks Way
Suite 200
Alpharetta, GA  30022

# NOTICE

**POLICY NO.**  D37431849 003

**NAME OF INSURED:**  Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal

**ADDRESS:**  1400 Broadway
New York, NY 10018

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

You further confirm that any applicable state requirement concerning a diligent search for coverage by admitted carriers has been fulfilled in accordance with state law.

Thank you for this placement and your regulatory compliance.

Date:  5/16/2017

WSG-084 (05/11)

# *Forms Schedule*

Company: Westchester Surplus Lines Insurance Company
SYM:   **FS**                     Policy ID: **D37431849 003**

| **Policy Period** | When Coverage Begins: | **04/27/2017** | 12:01 A.M. Local Time At Named Insured's Address |
|---|---|---|---|
| | When Coverage Ends: | **04/27/2018** | 12:01 A.M. Local Time At Named Insured's Address |

| **Applicable to all Coverage Parts** | **SLPD (03/08)-Surplus Lines Declarations**<br>**BB-5W58a (09/11)-Common Policy Declarations**<br>**IL 00 17 (11/98)-Common Policy Conditions**<br>**SL-44730 (11/14)-Service Of Suit Endorsement - Florida**<br>**TRIA24 (01/15)-Policyholder Disclosure Notice of Terrorism Insurance Coverage**<br>**ALL-20887 (10/06)-CHUBB Producer Compensation Practices & Policies**<br>**ALL-21101 (11/06)-Trade or Economic Sanctions Endorsement**<br>**ALL-5X45 (11/96)-Questions About Your Insurance**<br>**IL P 001 01 04-U.S. Treasury Departments' Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders**<br>**MA-608255p (04/15)-Claims Directory Property and Inland Marine**<br>**LD-5S23j (03/14)-Signature Endorsement** |
|---|---|
| **Commercial Property** | **CPd2 (08/16)-Commercial Property Declarations**<br>**CPsd2 (06/02)-Commercial Property Supplemental Declarations**<br>**CPfed2 (05/16)-Flood Endorsement Declarations**<br>**ACE0755 (02/13)-Commercial Property Conditions**<br>**CP 00 10 (10/12)-Building And Personal Property Coverage Form**<br>**CP 00 30 (10/12)-Business Income (And Extra Expense) Coverage form**<br>**CP 00 60 (06/95)-Leasehold Interest Coverage Form**<br>**ACE0204 (05/10)-Fungus, Wet Rot, Dry Rot and Bacteria Exclusion**<br>**ACE0210 (01/08)-Nuclear, Biological, Chemical, Radiological Exclusion Endorsement**<br>**ACE0213 (09/13)-Accounts Receivable Sub-Limit Endorsement**<br>**ACE0239 (06/06)-Hurricane Minimum Earned Premium Endorsement**<br>**ACE0359 (12/10)-Earthquake Sprinkler Leakage Exclusion**<br>**ACE0363 (01/17)-Fine Arts Endorsement**<br>**ACE0376 (06/08)-Provisions For Maintenance Of Federal Flood Insurance Endorsement**<br>**ACE0377 (05/13)-Sub-Limit Provision Endorsement**<br>**ACE0381 (09/13)-Valuable Papers And Records Definition Endorsement**<br>**ACE0421 (08/09)-Pre-Existing Property Damage Exclusion**<br>**ACE0483 (10/14)-Loss Adjustment Costs Sub-Limit Endorsement**<br>**ACE052 (06/10)-Causes Of Loss - Windstorm Or Hail**<br>**ACE0538 (02/15)-Electronic Data Processing Sub-Limit Endorsement**<br>**ACE0546 (12/09)-Unnamed Locations Endorsement**<br>**ACE061 (10/13)-Asbestos Material Exclusion (Named Peril Exception)**<br>**ACE063 (07/16)-Occurrence Limit Of Liability Endorsement**<br>**ACE067 (03/14)-Permission For Excess Insurance Endorsement**<br>**ACE0681 (10/11)-Definition Of Loss Occurrence Endorsement**<br>**ACE0762 (09/13)-Valuable Papers And Records Sub-Limit Endorsement**<br>**ACE0774 (12/13)-Ordinance Or Law Coverage**<br>**ACE0832 (04/16)-Ingress Egress Endorsement**<br>**ACE126 (10/14)-Electronic Data Amendment Endorsement** |

|  | **ALL-10750 (01/15)-Terrorism Exclusion Endorsement**<br>**CP 04 08 (10/12)-Higher Limits**<br>**CP 04 17 (10/12)-Utility Services - Direct Damage**<br>**CP 04 40 (06/07)-Spoilage Coverage**<br>**CP 10 38 (10/12)-Discharge From Sewer, Drain Or Sump (Not Flood-Related)**<br>**CP 10 65 (06/07)-Flood Coverage Endorsement**<br>**CP 15 32 (06/07)-Civil Authority Changes**<br>**CP 15 45 (10/12)-Utility Services - Time Element**<br>**ACE0845 (09/16)-Reported Construction Exclusion**<br>**SE18492C (02/16-Named Windstorm Percentage Deductible Endorsement** |
|---|---|
| **Commercial Inland Marine** | **Not Covered** |
| **Commercial General Liability** | **Not Covered** |
| **Commercial Boiler & Machinery** | **Not Covered** |

## *Commercial Property Declarations*



Company: **Westchester Surplus Lines Insurance Company**

SYM: **FS**      Policy ID: **D37431849 003**

| Location | |
|---|---|
| | ☒ Most recent schedule on file with Company totaling $ ██████ . |
| | ☐ See attached Schedule CPs2 |
| | Loc. No.   Bld. No.   Address |

**Coverages and Limits Provided**

| Loc. No. | Bld. No | Coverage | Covered Causes of Loss Form | Co-Insurance % | Limit of Insurance $ |
|---|---|---|---|---|---|
| | | Insurance At Described Location Applies Only For Coverages For Which A Limit Of Liability Is Shown | | | |
| All | All | Buildings, Personal Property and Business Income Including Extra Expense | Windstorm Or Hail | NIL | ██████ Per Occurrence Primary (per schedule not blanket) |

**Deductible**

██████ Per Occurrence All Other Wind/Hail

Deductible Ingress/Egress

**Special Deductible Provisions**

☐ See Multiple Deductible Form      ☒ See Windstorm or Hail % Deductible Form
☐ See Hurricane % Deductible

**Coverage Options:**

The following coverage options are provided where indicated by an x or entry:

Building      ☐ Agreed Value  Exp. Date      ☒ Replacement Cost

Personal Property      ☐ Agreed Value  Exp. Date
☒ Replacement Cost ( ☐ Inc. Stock)  ( ☐ Inc. Personal Property of Others)

Business Income:      ☐ Monthly Limit of Indemnity      ☐ Maximum Period of Indemnity
☒ Extended Period of Indemnity 365 Days
Actual Loss Sustained

**Attached Forms Information**

☒ Refer to Forms Schedule CPfs2

# *Commercial Property Supplemental Declarations*



**Company:**  **Westchester Surplus Lines Insurance Company**

**SYM:**  **FS**                     **Policy ID:**  **D37431849 003**

---

Named Insureds

Abbey Hotel Acquisition, LLC
Setai Hotel Acquisition, LLC
Setai Resort & Residences Condominium Association, Inc.

# *Flood Endorsement Declarations*

Company: Westchester Surplus Lines Insurance Company
SYM:   **FS**                            Policy ID: D37431849 003

**THE FOLLOWING SCHEDULE PROVIDES SUPPLEMENTARY INFORMATION TO BE USED WITH THE FLOOD COVERAGE ENDORSEMENT**

| | |
|---|---|
| **Location Information** | Covered Locations for Flood are the same as the Covered Locations shown in the Commercial Property Declarations, subject to the following exceptions:<br><br>Exceptions:  (applicable if indicated by an X)<br><br>☐<br><br>☐ **No Flood coverage is provided under this endorsement for Locations wholly or partially <u>located within</u> the following Federal Emergency Management Agency (FEMA) Flood Zones:** |
| **Coverage Information** | Covered Property and Coverages for Flood are the same as the Covered Property and Coverages shown in the Commercial Property Declarations and in the Sub-Limit Provision Endorsement, subject to the terms of the Flood Coverage Endorsement and the following exceptions:<br><br>Exceptions: |
| **Limit of Insurance Information**<br><br><br><br><br><br><br>Option A or B applies (as indicated by an X) | **Occurrence & Annual Aggregate Limit:**<br><br>**Flood Limits of Insurance are Annual/Term Aggregate Limits. (Refer to the Limit Of Insurance Provisions in the Flood Coverage Endorsement for an explanation.)**<br><br>**The Flood limit, indicated in option A or B below, is part of and included in the Limit of Insurance which applies to other Covered Causes of Loss under the Causes of Loss-Form.  The Flood limit is not a separate or additional Limit of Insurance.**<br><br>☒ **Option A. –Full Limit**  (Coinsurance Condition, if any, in the applicable Coverage Form Flood is covered for the same Limit of Insurance shown in the Commercial Property Declarations which applies to other Covered Causes of Loss under the Causes of Loss-Form, subject to the following exceptions:<br><br>Exceptions: |

# *Flood Endorsement Declarations*

☐ **Option B. –Reduced Limit**  (No Co-insurance option applies)  $

☐  Reduced Limit for Locations in FEMA Flood Zones  : $  (This Limit does not apply separately to the Reduced Limit shown above)

The Reduced Limit does not apply separately to the Premises, Locations, Covered Property or Coverages listed.  It is the most we will pay for all loss of damage to the indicated Covered Property/Coverages at the Premises and Locations listed, subject to all other applicable policy provisions.

| | |
|---|---|
| **Flood Deductible**<br><br>(If no entry appears, the Deductible shown in the Commercial Property Declarations applies to Flood.) | **The following deductible(s) applies at  Locations wholly or partially located in FEMA Flood Zones  :**<br><br> % of the separate insurable value of each unit of insurance involved in the loss as of the date of loss, subject to a minimum of $  per occurrence<br><br> % of the total values (including 12 months loss of income/extra expense if covered) at the time and place of loss in any loss arising out of one occurrence or event, subject to a minimum of $  per occurrence<br><br> % of the total insurable value at each covered location (including 12 months loss of income/extra expense if covered) involved in the loss as of the date of loss; subject to a minimum of $  per occurrence<br><br>$500,000  Per Building (Real Property)<br><br>$500,000  Per Building (Personal Property)<br><br>$100,000  Per Occurrence (Business Income)<br><br> Waiting Period (Business Income)<br><br>☐ The maximum amount recoverable under the National Flood Insurance Program for the Real or Personal Property at each Building, whether or not such coverage is purchased or maintained.  In addition, the following deductible will apply to property not eligible and coverages not available under the National Flood Insurance Program that are covered under this policy and any difference in the valuation between the policies: $  Per Occurrence<br><br>**The following deductible applies at all other Locations:**<br><br>$22,000,000  Per Occurrence for Condominium Building |
| **Special Provisions**<br>(applicable if indicated by an X | ☐ 72 hour waiting period in Section **D.5.a.**   apply<br><br>☐ Underlying NFIP Insurance Waiver  to locations:<br><br>☐ |

## *Flood Endorsement Declarations*

**"Unit of Insurance" if used in this endorsement means:** (a) each separate building or structure; (b) your business personal property or property of others in each building or structure; (c) property in the open at each Covered Location or (d) loss of income or extra expense and (e) all other covered items.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions); and

**b.** Puerto Rico.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
©Chubb. 2016. All rights reserved.

**I.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1.  Prior to a loss to your Covered Property or Covered Income.

2.  After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a.  Someone insured by this insurance;

    b.  A business firm:

        (1)  Owned or controlled by you; or

        (2)  That owns or controls you; or

    c.  Your tenant.

This will not restrict your insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
©Chubb. 2016. All rights reserved.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc.,  1998

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

   **(1)** Are licensed for use on public roads; or

   **(2)** Are operated principally away from the described premises.

   This paragraph does not apply to:

     **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

 © Insurance Services Office, Inc., 2011 **CP 00 10 10 12**

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)  Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ |
| Amount of Deductible: | |
| Amount of Loss: | |
| Amount of Loss Payable: | |
| | |
| Debris Removal Expense: | |
| Debris Removal Expense Payable: | |




($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | |
| Amount of Deductible: | |
| Amount of Loss: | |
| Amount of Loss Payable: | |
| | |
| Debris Removal Expense: | |
| Debris Removal Expense Payable | |
| Basic Amount: | |
| Additional Amount: | |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b.  Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

© Insurance Services Office, Inc., 2011

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f.  Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

   © Insurance Services Office, Inc., 2011

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

 © Insurance Services Office, Inc., 2011 CP 00 10 10 12

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the business personal property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

3. Increased Cost Of Construction; and

4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 2 |
| Limit of Insurance – Building 1: | $ | |
| Limit of Insurance – Building 2: | $ | |
| Loss to Building 1: | $ | |
| Loss to Building 2: | $ | |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$ 

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.



| | |
|---|---|
| Loss to Building 1: | $ |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4.  Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

© Insurance Services Office, Inc., 2011

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

(4) Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | $ | 100,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

Step **(1)**: $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | $ | 200,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:   The value of the property is:

| | | |
|---|---|---:|
| Building at Location 1: | $ | 75,000 |
| Building at Location 2: | $ | 100,000 |
| Personal Property at Location 2: | $ | 75,000 |
| | $ | 250,000 |

The Coinsurance percentage for it is:   90%

The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is:   $   180,000

The Deductible is:   $   1,000

The amount of loss is:

| | | |
|---|---|---:|
| Building at Location 2: | $ | 30,000 |
| Personal Property at Location 2: | $ | 20,000 |
| | $ | 50,000 |

**Step (1):** $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

   **a.** The term mortgageholder includes trustee.

   **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

   **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

   **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

   All of the terms of this Coverage Part will then apply directly to the mortgageholder.

   **e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

   At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   **f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

   If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

   **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

   © Insurance Services Office, Inc., 2011   **CP 00 10 10 12**

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If:  The applicable Limit of Insurance is:          $ 100,000
     The annual percentage increase is:                    8%
     The number of days since the
     beginning of the policy year
     (or last policy change) is:                          146
     The amount of increase is:
     $100,000 x .08 x 146 ÷ 365 =                 $     3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

**COMMERCIAL PROPERTY**
**CP 00 30 10 12**

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

© Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

© Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

© Insurance Services Office, Inc., 2011

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

   **(1)** Prepaid freight – outgoing;

   **(2)** Returns and allowances;

   **(3)** Discounts;

   **(4)** Bad debts;

   **(5)** Collection expenses;

   **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

   **(7)** Cost of merchandise sold (including transportation charges);

   **(8)** Cost of other supplies consumed (including transportation charges);

   **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

   **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

   **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

   **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ | 400,000 |
|---|---|---|---|
| | The Coinsurance percentage is: | | 50% |
| | The Limit of Insurance is: | $ | 150,000 |
| | The amount of loss is: | $ | 80,000 |

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ | 400,000 |
|---|---|---|---|
| | The Coinsurance percentage is: | | 50% |
| | The Limit of Insurance is: | $ | 200,000 |
| | The amount of loss is: | $ | 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

   If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

   **1. Maximum Period Of Indemnity**

      **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

When: The Limit of Insurance is: $ ██████

The fraction shown in the Declarations for this Optional Coverage is: 1/4

The most we will pay for loss in each period of 30 consecutive days is: $ ██████

($120,000 x 1/4 = $30,000)

If, in this example, the actual amount of loss is:

Days 1–30: $ ██████
Days 31–60: $ ██████
Days 61–90: $ ██████
$ ██████

We will pay:

Days 1–30: $ ██████
Days 31–60: $ ██████
Days 61–90: $ ██████
$ ██████

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example**



When: The Limit of Insurance is: $ ██████
The Agreed Value is: $ ██████
The amount of loss is: $ █,000

Step (1): ██████████████

Step (2): .██████████

We will pay ██████████████is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incured in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

 © Insurance Services Office, Inc., 2011

**COMMERCIAL PROPERTY**
**CP 00 60 06 95**

# LEASEHOLD INTEREST COVERAGE FORM

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION **F.** – DEFINITIONS.

## A. COVERAGE

We will pay for loss of Covered Leasehold Interest you sustain due to the cancellation of your lease. The cancellation must result from direct physical loss of or damage to property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Leasehold Interest

Covered Leasehold Interest means the following for which an amount of "net leasehold interest" at inception is shown in the Leasehold Interest Coverage Schedule:

**a. Tenants' Lease Interest,** meaning the difference between the:

(1) Rent you pay at the described premises; and

(2) Rental value of the described premises that you lease.

**b. Bonus Payments,** meaning the unamortized portion of a cash bonus that will not be refunded to you. A cash bonus is money you paid to acquire your lease. It does not include:

(1) Rent, whether or not prepaid; or

(2) Security.

**c. Improvements and Betterments,** meaning the unamortized portion of payments made by you for improvements and betterments. It does not include the value of improvements and betterments recoverable under any other insurance, but only to the extent of such other insurance.

Improvements and betterments are fixtures, alterations, installations or additions:

(1) Made a part of the building or structure you occupy but do not own; and

(2) You acquired or made at your expense but cannot legally remove.

**d. Prepaid Rent,** meaning the unamortized portion of any amount of advance rent you paid that will not be refunded to you. This does not include the customary rent due at:

(1) The beginning of each month; or

(2) Any other rental period.

### 2. Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

## B. EXCLUSIONS AND LIMITATIONS

See applicable Causes of Loss Form as shown in the Declarations.

## C. LIMITS OF INSURANCE

### 1. Applicable to Tenants' Lease Interest

**a.** The most we will pay for loss because of the cancellation of any one lease is your "net leasehold interest" at the time of loss.

But, if your lease is cancelled and your landlord lets you continue to use your premises under a new lease or other arrangement, the most we will pay for loss because of the cancellation of any one lease is the lesser of:

(1) The difference between the rent you now pay and the rent you will pay under the new lease or other arrangement; or

(2) Your "net leasehold interest" at the time of loss.

**CP 00 60 06 95**          Copyright,  ISO Commercial Risk Services, Inc.,  1994          **Page 1 of 4**

**b.** Your "net leasehold interest" decreases automatically each month. The amount of "net leasehold interest" at any time is your "gross leasehold interest" times the lease-hold interest factor for the remaining months of your lease. A proportionate share applies for any period of time less than a month.

Refer to the end of this form for a table of leasehold interest factors.

**2. Applicable to Bonus Payments, Improvements and Betterments and Prepaid Rent**

**a.** The most we will pay for loss because of the cancellation of any one lease is your "net leasehold interest" at the time of loss.

But, if your lease is cancelled and your landlord lets you continue to use your premises under a new lease or other arrangement, the most we will pay for loss because of the cancellation of any one lease is the lesser of:

**(1)** The loss sustained by you; or

**(2)** Your "net leasehold interest" at the time of loss.

**b.** Your "net leasehold interest" decreases automatically each month. The amount of each decrease is your "monthly leasehold interest". A proportionate share applies for any period of time less than a month.

**D. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss Of Covered Leasehold Interest**

**a.** You must see that the following are done in the event of loss of Covered Leasehold Interest:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the property at the described premises from further damage by a Covered Cause of Loss. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this  within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Copyright,  ISO Commercial Risk Services, Inc.,  1994

**3. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

**a.** You have complied with all of the terms of this Coverage Part; and

**b.(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**4. Vacancy**

**a. Description of Terms**

**(1)** As used in this Vacancy Condition, with respect to the tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions – Subleased Premises**

The following provisions apply if the building where direct physical loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs, provided you have entered into an agreement to sublease the described premises as of the time of loss or damage:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to a Covered Cause of Loss not listed in **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**c.** If you have not entered into an agreement to sublease the described premises as of the time of loss or damage, we will not pay for any loss of Covered Leasehold Interest.

**E. ADDITIONAL CONDITION**

The following condition replaces the Cancellation Common Policy Condition:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund.

**6.** If this coverage is cancelled, we will calculate the earned premium by:

**a.** Computing the average of the "net leasehold interest" at the:

**(1)** Inception date, and

**(2)** Cancellation date,

of this coverage.

**b.** Multiplying the rate for the period of coverage by the average "net leasehold interest".

**c.** If we cancel, we will send you a premium refund based on the difference between the:

**(1)** Premium you originally paid us; and

**(2)** Proportion of the premium calculated by multiplying the amount in paragraph **a.** times the rate for the period of coverage for the expired term of the policy.

**d.** If you cancel, your refund may be less than the refund calculated in paragraph **c.**

**7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**F. DEFINITIONS**

1. **"Gross Leasehold Interest"** means the difference between the:

   a. Monthly rental value of the premises you lease; and

   b. Actual monthly rent you pay including taxes, insurance, janitorial or other service that you pay for as part of the rent.

   This amount is not changed:

   (1) Whether you occupy all or part of the premises; or

   (2) If you sublet the premises.

   **Example:**

   | | |
   |---|---|
   | Rental value of your leased premises | $5000 |
   | Monthly rent including taxes, insurance, janitorial or other service that you pay for as part of the rent | -4,000 |
   | "Gross Leasehold Interest" | $1,000 |

2. **"Monthly Leasehold Interest"** means the monthly portion of covered Bonus Payments, Improvements and Betterments and Prepaid Rent. To find your "monthly leasehold interest", divide your original costs of Bonus Payments, Improvements and Betterments or Prepaid Rent by the number of months left in your lease at the time of the expenditure.

   **Example:**

   | | |
   |---|---|
   | Original cost of Bonus Payment | $12,000 |
   | With 24 months left in the lease at time of Bonus Payment | ÷ 24 |
   | "Monthly Leasehold Interest" | $500 |

3. **"Net Leasehold Interest":**

   a. Applicable to Tenants' Lease Interest.

   **"Net Leasehold Interest"** means the present value of your "gross leasehold interest" for each remaining month of the term of the lease at the rate of interest shown in the Leasehold Interest Coverage Schedule.

   The "net leasehold interest" is the amount that, placed at the rate of interest shown in the Leasehold Interest Coverage Schedule, would be equivalent to your receiving the "Gross Leasehold Interest" for each separate month of the unexpired term of the lease.

   To find your "net leasehold interest" at any time, multiply your "gross leasehold interest" by the leasehold interest factor found in the table of leasehold interest factors attached to this form.

   **Example:**

   (20 months left in lease, 10% effective annual rate of interest)

   | | |
   |---|---|
   | "Gross Leasehold Interest" | $  |
   | Leasehold Interest Factor | x 18.419 |
   | "Net Leasehold Interest" | $ |

   b. Applicable to Bonus Payments, Improvements and Betterments or Prepaid Rent.

   **"Net Leasehold Interest"** means the unamortized amount shown in the Schedule. Your "net leasehold interest" at any time is your "monthly leasehold interest" times the number of months left in your lease.

   **Example:**

   | | |
   |---|---|
   | " Monthly Leasehold Interest" | $  500 |
   | With 10 month left in lease | x  10 |
   | " Net Leasehold Interest" | $ 5,000 |

## FUNGUS, WET ROT, DRY ROT AND BACTERIA EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

A.  The following exclusion is added:

We will not pay for *loss*, or physical loss or damage, caused directly or indirectly by any of the following. Such *loss* or physical loss or damage, is excluded regardless of any cause or event that contributes concurrently or in any sequence to the *loss*, or physical loss or damage:

1.  Presence, growth, proliferation, spread or activity of "fungus", wet rot or dry rot or bacteria. But if "fungus" wet rot, dry rot or bacteria results in a "specified cause of loss", we will pay for the *loss* caused by that "specified cause of loss". This exclusion does not apply when "fungus", wet rot or dry rot, or bacteria results from fire or lightning;

2.  Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot, or bacteria; or

3.  The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot or dry rot, or bacteria.

B.  The following are added to the Definitions:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

"Specified cause of loss" means: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; water damage.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement may be attached to a coverage form or an endorsement with a different definition from the listed definitions. If there is a different definition, that definition does not apply to this endorsement.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

# NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL
# EXCLUSION ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BOILER AND MACHINERY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

The following exclusions are added to your Policy or Coverage Part.

This insurance does not apply to:

**A.** Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

**B.** Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

**C.** If this endorsement is attached to a Commercial Inland Marine Policy or Coverage Part, the term loss or damage is changed to Loss.

©Chubb. 2016. All rights reserved.

**ACCOUNTS RECEIVABLE SUB-LIMIT ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

**COVERAGE**

1. You may extend the insurance that applies to Business Personal Property to apply to covered losses and expenses that you incur as a result of loss or damage to your records of "accounts receivable."

2. For the purposes of this endorsement, "accounts receivable" means:
   a) All amounts due from your customers that you are unable to collect;
   b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;
   c) Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and
   d) Other reasonable expenses that you incur to re-establish your records of "accounts receivable."

3. If you cannot accurately establish the amount of "accounts receivable" outstanding as of the time of loss, the following method will be used to determine the loss:
   a) Determine the total of the average monthly amounts of "accounts receivable" for the 12 months immediately preceding the month in which the loss occurred; and
   b) Adjust that total for any normal fluctuations in the amount of "accounts receivable" for the month in which the loss occurred or for any demonstrated variance from the average for that month.

4. The following will be deducted from the total amount of "accounts receivable," however that amount is established:
   a) The amount of the accounts for which there is no loss or damage;
   b) The amount of the accounts that you are able to re-establish or collect;
   c) An amount to allow for probable bad debts that you are normally unable to collect; and
   d) All unearned interest and service charges.

5. You will pay us the amount of all recoveries you receive for loss or damage paid by us. But you will not pay us any recoveries in excess of the amount we have paid.

**EXCLUSIONS**

We will not pay for loss or damage caused by or resulting from any of the following:

1. Delay, loss of use, loss of market or any other consequential loss.
2. Dishonest or criminal act (including theft) committed by:
   a) You, any of your partners, employees, officers, directors, trustees, or authorized representatives;
   b) A manger or member if you are a limited liability company; or
   c) Anyone else with an interest in the property, or their employees (including temporary employees and leased workers) or authorized representatives;

©Chubb. 2016. All rights reserved.

Whether acting alone or in collusion with each other or with any other party.

This exclusion applies whether or not an act occurs during your normal hours of operation.

This exclusion does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary and leased workers) or authorized representatives is not covered.

3.  Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

    This exclusion applies only to the extent of the wrongful giving, taking or withholding.

4.  Bookkeeping accounting or billing errors or omissions.

5.  Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

    a) Programming errors or faulty machine instructions;
    b) Faulty installation or maintenance of data processing equipment or component parts;
    c) An occurrence that took place more than 100 feet from your "premises"; or
    d) Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

    But we will pay for direct loss or damage caused by lightning

6.  Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

7.  Unauthorized instructions to transfer property to any person or to any place.

8.  Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

9.  Theft by any person (except carriers for hire) to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

    This exclusion applies whether or not an act occurs during your normal hours of operation.

We will not pay for loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

## DEFINITIONS

For the purposes of this endorsement, "premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

## SUB-LIMIT OF INSURANCE

The most we will pay under this coverage extension is the limit stated in the Declarations or in the Sub-limit Provision Endorsement attached to this Policy. This additional coverage is provided within, not in addition to, the Limit of Insurance stated in the Declarations.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

| Named Insured<br>Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37431849 003 | Policy Period<br>04/27/2017 **to** 04/27/2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**Commercial Property Coverage Part**

**Commercial Inland Marine Coverage Part**

**HURRICANE MINIMUM EARNED PREMIUM ENDORSEMENT**

The following terms and conditions will apply to this policy:

1.  If you cancel this policy, remove a location or reduce the amount of insurance on a location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands, and coverage existed any time during the period of June 1st to November 30th, the amount of premium we will return will be the Unearned Premium for the location.  The Unearned Premium is the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor noted below. The location premium is the 100% annual rate multiplied by the location value as scheduled in the most current Statement of Values on file with the Company.

<div align="center">1 year Policy</div>

| Days Policy<br>In Force | Unearned Factor |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

2.  If a Location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands is added during the term of the policy and coverage exists at any time during the period of June 1st to November 30th, the rate will be calculated as 100% of the annual rate, less the Unearned Factor as calculated in No. 1 above based upon the number of days remaining in the policy term.

3.  The provisions of this endorsement replace any short rate provisions stipulated in this policy for all locations that are within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands and coverage existed any time during the period of June 1st to November 30th.

ACE0239 (06/06)                    ©Chubb. 2016. All rights reserved.                    Page 1 of 2

4. Nothing herein will act to provide coverage outside the automatic acquisition clause, if any, that is located elsewhere in the policy.

**All other terms and conditions remain unchanged.**

<div style="text-align: right;">
_____
Authorized Representative
</div>

©Chubb. 2016. All rights reserved.

**EARTHQUAKE SPRINKLER LEAKAGE EXCLUSION**

| Named Insured<br>Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37431849 003 | Policy Period<br>04/27/2017 **to** 04/27/2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

This policy does not insure against loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Loss or damage by sprinkler leakage caused directly by earthquake, earth movement or volcanic eruption.

Definitions

Sprinkler leakage means:

A.   Leakage or discharge of water or other substances from within any automatic sprinkler system, or

B.   Direct loss caused by collapse or fall of a tank forming a part of such system.

Automatic sprinkler system means:

Any automatic fire protective system including sprinklers, discharge nozzles and ducts, pipes, valves, fittings, tanks (including their component parts and supports), pumps and private fire protection mains, all connected with and constituting a part of an automatic protective system; and non-automatic fire protective systems, hydrants, standpipes or outlets supplied from an automatic fire protective system.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

## FINE ARTS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) | |
|---|---|
| Westchester Surplus Lines Insurance Company | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

**COVERAGE**

Coverage is extended to insure Fine Arts being paintings, etchings, pictures, tapestries, and other bona fide works of art (such as statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass and bric-a-brac) of rarity, historical value or artistic merit.

It is agreed that Fine Arts shall include unspecified Fine Arts. However, if such property cannot be replaced with other of like kind and quality then such property will not be considered unspecified and must be specifically declared and described in order to be covered under this extension of coverage.

In the event of loss or damage covered under this endorsement the liability of this Company shall not exceed the lesser of:

(a)  The cost to repair or restore the article to the condition that existed immediately prior to the loss; or

(b)  The cost to replace the article; or

(c)  The value designated for the article on the Schedule of Fine Arts.

In the event of loss or damage by a peril insured against to any article or articles of fine arts which are a part of a pair or set, the measure of loss or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss to the pair or set.

**SUB-LIMIT OF INSURANCE**

The most we will pay under this coverage extension is the Fine Arts limit stated in the Declarations or in the Sub-limit Provision Endorsement attached to this Policy. This additional coverage is provided within, not in addition to, the Limit of Insurance stated in the Declarations.

All other terms and conditions remain unchanged.

©Chubb. 2017. All rights reserved.

**PROVISIONS FOR MAINTENANCE OF FEDERAL FLOOD INSURANCE ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE FORM**

For commercial property risks, or those habitational risks not eligible for excess Flood insurance over the basic coverage provided by the National Flood Insurance Program, this insurance shall be excess of the maximum limit available, whether purchased or not.  This limitation includes the deduction shown in the Flood Endorsement,

Property Excluded:

Seawalls, bulkheads, dams, levees, fences, retaining walls, cabanas, outdoor furniture and equipment not used for service of building, swimming pools and equipment, septic tanks, other open structures located on or over water, including boathouses or other similar structures or buildings in which boats are floated, or any other personal property in the open.

All other terms and conditions remain unchanged.

ACE0376 (06/08)                    ©Chubb. 2016. All rights reserved.

**SUB-LIMIT PROVISION ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

The most that the Company will pay for all covered loss and damage in any one Occurrence is the Per Occurrence LIMIT OF LIABILITY shown in the Declarations (hereinafter, the "Occurrence Limit"), regardless of the number of Insureds, Insured Locations, Breakdowns or Coverages.

The SUB-LIMITS OF LIABILITY shown in the Schedule below are included within, and are not in addition to, the Occurrence Limit.  Sub-limits of Liability do not increase the Occurrence Limit, or any other Sub-Limit of Liability.

Unless otherwise stated in the Schedule below, all Sub-limits of Liability apply on a "Per Occurrence" basis, which is the most that the Company will pay for all covered loss and damage for the type of Coverage or peril to which the sub-limit applies in any one Occurrence, regardless of the number of Coverages, Insureds or Insured Locations.

If it is stated in the Schedule below that a Sub-Limit of Liability applies on an "Annual Aggregate" basis, then that sub-limit is the most the Company will pay in any one 12 month period for the type of Coverage or peril to which the sub-limit applies, regardless of the number of Occurrences, Coverages, Insureds, or Insured Locations.  Sub-limits of Liability that apply on an "Annual Aggregate" basis apply to all covered loss and damage under Property Damage and Time Element, combined.

If it is stated in the Schedule below that a Sub-limit of Liability applies on a "Term Aggregate" basis, then that sub-limit is the most that the Company will pay for all covered loss and damage during the Policy Period for the type of Coverage or peril to which the sub-limit applies, regardless of the number of Occurrences, Coverages, Insureds, or Insured Locations.  Sub-limits of Liability that apply on a "Term Aggregate" basis apply to all covered loss and damage under Property Damage and Time Element, combined.

If it is stated that a Sub-limit of Liability applies for a specific Insured Location or for a specified Covered Property, then that sub-limit will be the most that the Company will pay, for all covered loss and damage arising from direct physical loss or damage at such Insured Location or to such specified Covered Property.

With respect to any Sub-limit of Liability that is also shown below as subject to a specific Time Limit:

**(1)**     The amount shown is the most that the Company will pay for all covered loss and damage in any one Occurrence, regardless of the number of Insured Locations or Insureds; and

**(2)**     The Time Limit shown is the longest continuous time period for which the Company will provide the applicable coverage, regardless of the number of Insured Locations or Insureds.

The maximum Sub-limit of Liability amount payable under this Policy will be the Sub-limit of Liability applicable to all covered loss and damage resulting from the peril insured against by this Policy that causes the loss and damage, regardless of any other applicable Sub-limit of Liability.

ACE0377 (05/13)                           ©Chubb. 2016. All rights reserved.

**Schedule:**

The Company's liability for all loss or damage arising out of one Occurrence shall not exceed Westchester Surplus Lines Insurance Company participation of 100 % of the stated Sub-Limits of Liability shown below:

| | |
|---|---|
| $500,000 Per Occurrence | Accounts Receivable |
| $500,000 Per Occurrence | Electronic Data Processing Equipment and Media |
| $500,000 Per Occurrence | Errors and Omissions (Clerical only) |
| $5,000,000 Per Occurrence | Extra Expense |
| $250,000 Per Occurrence | Fine Arts |
| $250,000 Per Occurrence | Ingress/Egress |
| Included | Ordinance or Law Coverage A |
| $10,000,000 Per Occurrence | Ordinance or Law Coverage B |
| $10,000,000 Per Occurrence | Ordinance or Law Coverage C |
| $500,000 Per Occurrence | Unnamed Locations |
| $100,000 Per Occurrence | Spoilage |
| $500,000 Per Occurrence | Leasehold Interest |
| $100,000 Per Occurrence | Professional Fees |
| $1,000,000 Per Occurrence | Utility Service - Direct Damage and Time Element |

All other terms and conditions remain unchanged.

## VALUABLE PAPERS AND RECORDS DEFINITINON ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**CONDOMINIUM ASSOCIATION COVERAGE FORM**

The following is added to **H. Definitions**:

4. "Valuable Papers And Records (Other Than Electronic Data)" means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.  "Valuable Papers and Records (Other Than Electronic Data)" does not include money or securities, Electronic Data, Electronic Media, electronic material, electronic information, converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

**PRE-EXISTING PROPERTY DAMAGE EXCLUSION**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**   04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**PROPERTY COVERAGE PART**

**INLAND MARINE COVERAGE PART**

This policy excludes any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing property damage at the time of loss.

ACE0421 (08/09) ©Chubb. 2016. All rights reserved. Page 1 of 1

**LOSS ADJUSTMENT COSTS SUB-LIMIT ENDORSEMENT**

| Named Insured<br>Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37431849 003 | Policy Period<br>04/27/2017 **to**  04/27/2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

This Policy covers the actual, reasonable, and necessary loss adjustment costs incurred by the Insured at the request of the Company for the purpose of determining the extent or amount of any loss or damage under this Policy for which the Company has accepted liability, subject to a claim for covered physical loss or damage to Covered Property having first been submitted to and accepted by the Company, and subject to the Insured having first obtained the approval of the Company prior to entering into any agreement with a vendor or incurring any loss adjustment costs.  Costs covered by this coverage part are subject to the deductible(s) applicable to the peril that necessitated such costs; however, where covered physical loss or damage to Covered Property is less than the applicable deductible(s), loss adjustment costs shall not be applied to the total amount of the loss for purposes exceeding the deductible.

Claim preparation costs include:

(a) The cost of using the Insured's employees for producing and certifying any particulars or details contained within the Insured's books or documents, or such other proofs, information or evidence required by the Company;

(b) The cost of taking inventory, obtaining independent appraisals, and gathering and preparing other data to substantiate the extent or amount of loss or damage; and

(c) Fees payable to the Insured's accountants, auditors, contractors, architects, engineers and other professionals solely for the purpose of determining the extent or amount of loss or damage.

Claim preparation costs do not include the fees and costs of attorneys, public adjusters, loss consultants, and loss appraisers retained by the Insured or a subsidiary or affiliate of the Insured for the purpose of or associated with:

(a) establishing that any claim or part of a claim is covered by the Policy;

(b) negotiation or presentation of any claim or part of a claim that the Company has advised the Insured is disputed or denied;

(c) representing the Insured's interests in the adjustment of a claim; and

(d) any examination under oath, even if requested by the Company.

   ©Chubb. 2016. All rights reserved.

The most we will pay under this coverage extension is the limit stated in the Declarations or in the Sub-limit Provision Endorsement attached to this Policy. This additional coverage is provided within, not in addition to, the Limit of Insurance stated in the Declarations.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

# CAUSES OF LOSS – WINDSTORM OR HAIL

## A. Covered Causes Of Loss

When Windstorm or Hail is shown in the Declarations, Covered Causes of Loss means the following:

Windstorm or Hail, but not including:

**a.** Frost or cold weather;

**b.** Ice (other than hail), snow or sleet, whether driven by wind or not; or

**c.** Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(1)** An ordinance or law that is enforced even if the property has not been dam-aged; or

**(2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expan-sion, freezing, thawing, erosion, improp-erly compacted soil and the action of water under the ground surface.

**(5)** Volcanic eruption, explosion or effusion.

### c. Governmental Action

Seizure or destruction of property by order of governmental authority.

### d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

### e. Utility Services

The failure of power or other utility service supplied to the described premises, how-ever caused, if the failure occurs away from the described premises.

This exclusion does not apply to the Business Income coverage or to Extra Expense coverage. Instead, the Special Exclusion in Paragraph **B.3.a.(1)** applies to these coverages.

### f. War And Military Action

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by gov-ernmental authority in hindering or de-fending against any of these.

### g. Water

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain, sump, sump pump or related equipment

(4) Water under the ground surface press-ing on, or flowing or seeping through:

   (a) Foundations, walls, floors or paved surfaces;

   (b) Basements, whether paved or not; or

   (c) Doors, windows or other openings.

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.**, **3.** or **4.**, or material carried or otherwise moved by mudslide or mudflow.

Exclusions **B.1.a.** through **B.1.g.** apply whether or not the loss event results in widespread damage or affects a substantial area.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **5.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, sea-wall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

2. We will not pay for loss or damage caused by or resulting from:

  **a.** Artificially generated electrical current, in-cluding electric arcing, that disturbs electri-cal devices, appliances or wires.

  **b.** Rupture or bursting of water pipes unless caused by a Covered Cause of Loss.

  **c.** Leakage or discharge of water or steam from any part of a system or appliance con-taining water or steam, unless the leakage or discharge occurs because the system or appliance was damaged by a Covered Cause of Loss.

  **d.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your con-trol.

  **e.** Mechanical breakdown, including rupture or busting caused by centrifugal force.

  **f.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. **Special Exclusions**

The following provisions apply only to the speci-fied Coverage Forms.

  **a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused directly or indirectly by the failure of power or other utility ser-vice supplied to the described premises, however caused, if the failure occurs outside of a covered building.

(2) Any loss caused by or resulting from:

   (a) Damage or destruction of "finished stock"; or

   (b) The time required to reproduce "fin-ished stock".

  This exclusion does not apply to Extra Expense.

(3) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(4) Any increase of loss caused by or result-ing from:

   (a) Delay in rebuilding, repairing or re-placing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspen-sion" of "operations", we will cover such loss that affects your Business Income during the "period of restora-tion" and any extension of the "period of restoration" in accordance with the terms of the Extended Business In-come Additional Coverage and the Extended Period of Indemnity Op-tional Coverage or any variation of these.

(5) Any Extra Expense caused by or result-ing from suspension, lapse or cancella-tion of any license, lease or contract be-yond the "period of restoration".

(6) Any other consequential loss.

  **b. Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.,** Ordinance Or Law; does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

   (a) Your canceling the lease;

   (b) The suspension, lapse or cancella-tion of any license; or

   (c) Any other consequential loss.

**ELECTRONIC DATA PROCESSING SUB-LIMIT ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

**A.  COVERAGE**

1.  Subject to any applicable limitations and exclusions set forth elsewhere in this Policy, this Policy insures direct physical loss or damage to Electronic Data Processing Equipment and Electronic Media at the premises described in the Declarations.

2.  Subject to coverage under paragraph **1.** above and if this Policy provides coverage for Extra Expense, this Policy covers the necessary Extra Expense, as hereinafter defined, incurred by the insured in order to continue as nearly as practicable the Normal operations of the insured's business following direct physical loss or damage to or destruction of electronic data processing equipment and/or media.

    In the event of such direct physical loss or damage or destruction, this company shall be liable for such necessary Extra Expense incurred for only such length of time, hereinafter referred to as the  "period of restoration", as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of damage or destruction and  not limited  by  the date of expiration  of this  Policy.

    a.  Resumption of Operations: It is a condition of this insurance that as soon as practicable the insured shall resume normal operation of the business and shall dispense with such extra expense.

    b.  For the purposes of this endorsement, "Extra Expense" means the excess (if any) of the total cost incurred during the period of restoration chargeable to the operation of the insured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no damage or destruction occurred.  Any salvage value of property obtained for temporary use during the period of restoration, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

**B.  DEFINITIONS**

The following definitions are added to the Policy:

1.  "Computers" includes but is not limited to mainframes, servers, workstations and portable computing devices, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

2.  "Electronic Data" means information, facts or "Computer Programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hardware, computer memory, hard or floppy disks, zip drives, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

3.  "Computer Programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to send, receive, process, store,

©Chubb. 2016. All rights reserved.

retrieve, erase, or destroy data, and "Electronic Data" which is integrated in and operates or controls the building's elevator, lighting, plumbing, electricity, heating, ventilation, air conditioning,  security system, safety system, and fire protection system, but does not include prepackaged software held in storage.

4.  "Electronic Media" means any physical device the purpose of which is to hold, store, contain or transfer "Electronic Data", and includes but is not limited to disks, drives, films, tapes, records, drums, or cells.

5.  "Electronic Data Processing Equipment" means "Computers", computer servers and similar equipment and component parts thereof, the purpose of which is to process Electronic Data.

6.  "Normal" means the condition that would have existed had no loss occurred.

## C.  EXCLUSIONS

1.  This company shall not be liable for any expense resulting from:

    a.  interference at the described premises, by strikers or other persons, with rebuilding,  repairing or replacing the property or with the resumption or continuation of business;  or

    b.  the suspension, lapse or cancellation of any lease or license, contract or order beyond the period of restoration;  or

    c.  any electrical injury or disturbance to electrical appliances, devices, fixtures or wiring caused by electrical currents artificially generated unless fire as insured against ensues, and then this company shall be liable for only its proportion of extra expense caused by the ensuing fire.

2.  Nor shall this company be liable for:

    a.  loss of income, except as provided elsewhere in this Policy;

    b.  the cost of repairing or replacing any of the property herein described, or the cost of research or other expense necessary to replace or restore damaged or destroyed records including film,  tape,  disc,  drum, cell  and  other  magnetic  recording  or  storage  media  for  electronic  data  processing,  that  have  been damaged or destroyed by the peril (s) insured against,  except cost in excess of the normal cost of such repair,  replacement or restoration necessarily incurred for the purpose of reducing loss under this Policy.  In no event shall such excess cost exceed the amount by which the total extra expense loss otherwise payable under this  Policy is hereby reduced; or

    c.  any other consequential or remote loss.

## D.  SUB-LIMIT OF INSURANCE

The most we will pay under this coverage extension is the limit stated in the Declarations or in the Sub-limit Provision Endorsement attached to this Policy. This additional coverage is provided within, not in addition to, the Limit of Insurance stated in the Declarations.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

## UNNAMED LOCATIONS ENDORSEMENT

| Named Insured<br>Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | Endorsement Number |
|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37431849 003 | Policy Period<br>04/27/2017 **to**  04/27/2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

Schedule:

      See ACE0377  Per Occurrence Unnamed Location

This policy insures against direct physical loss or damage by a covered cause of loss, to business personal property while the property is at an unscheduled fixed location, within the policy territory, but not in transit. Business Personal Property at unscheduled location(s) include property at processors, offsite for repair or service, on consignment or approval, or at temporary locations but not while on the premises of any exhibition, exposition, fair or trade show.

There is no coverage for Named Windstorm, Flood or Earthquake at an Unnamed Location.

All other terms and conditions remain unchanged.

ACE0546 (12/09)

©Chubb. 2016. All rights reserved.

## ASBESTOS MATERIAL EXCLUSION
### (Named Peril Exception)

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

The following exclusions are added to the policy; supersede any term, provision or endorsement to the contrary in this policy; and apply notwithstanding any such term, provision or endorsement in this policy or in any underlying, contributing or followed policy:

This policy does not apply to loss, damage, cost, expense, fine or penalty arising out of, resulting from or related in any way to:

1.  Removal of any asbestos, asbestos-containing product, or asbestos-containing material, unless the asbestos, asbestos-containing product, or asbestos-containing material itself incurs direct physical loss or damage caused by fire, lightning, explosion, windstorm, hail, smoke, aircraft or vehicle impact, riot, strike, or civil commotion, vandalism, sprinkler leakage, or accidental discharge from automatic fire protective systems; provided, however, the policy insures loss or damage arising out of or resulting from such specified perils.

2.  Demolition or increased cost of reconstruction, repair, debris removal, or loss of use necessitated by enforcement of any law, regulation, rule or ordinance regulating asbestos, asbestos-containing product, or asbestos-containing material, except to the extent that coverage is provided by an additional coverage or coverage extension providing insurance for demolition and increased costs of construction.

3.  Any governmental direction or request declaring that any asbestos, asbestos-containing product, or asbestos-containing material present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

| Named Insured<br>Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37431849 003 | Policy Period<br>04/27/2017 **to** 04/27/2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

The following terms and conditions will apply to this policy:

1.      The amount of insurance shown on the face of this policy is an amount per occurrence.  In no event will the liability of this Company exceed this amount in any one covered loss, disaster or casualty, irrespective of the number of locations involved.

2.      The premium for this policy is based upon the Statement of Values on file with the Company.  In the event of a covered loss, the covered loss sustained by individual items or elements of coverage will be individually adjusted for purpose of determining whether the individual value of the covered property (hereinafter the "Covered Property Value") is greater or lesser than the actual adjusted amount of the loss. As respects specifically scheduled items or elements of coverage that are identified in the most current Statement of Values on file with the Company, the Covered Property Value shall be the amount individually identified for each specifically scheduled item or element of coverage.  As respects items or elements of coverage for which an individual amount is not shown on the most current Statement of Values or other documentation on file with the Company, the Covered Property Value of such items or elements of coverage shall be determined as follows:

   (a)     The value for each real property item will be developed by multiplying the total reported value for real property by the proportion that the square footage of the individual real property item to the total square footage of all real property contemplated in the total reported real property values; and

   (b)     The value of personal property at each location will be developed by multiplying the total reported personal property value by the proportion that the square footage of all real property at the individual location bears to the total square footage of all real property at all locations contemplated in the total reported personal property values.

   (c)     The value of business income and/or rental income at each location will be developed by multiplying the total reported business income and/or rental income value by the proportion that the square footage of all real property at the individual location bears to the total square footage of all real property at all locations contemplated in the total reported business income and/or rental income values.

3.      In the event of covered loss, liability of the Company shall be limited to the least of the following:

   (a)     the actual adjusted amount of covered loss, less applicable deductible(s);

   (b)     100 % of the total Covered Property Value of all items or elements of coverage that sustained a covered loss in a single Occurrence, less applicable deductibles;

   (c)     the Limit of Liability or amount of insurance shown on the face of this policy.

All other terms and conditions remain unchanged.

## PERMISSION FOR EXCESS INSURANCE

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

In consideration of the rate and premium for which this policy is written, the following additional provisions are hereby made a part of this policy superseding any provisions to the contrary:

1.  EXCESS INSURANCE:  Permission is hereby granted to purchase insurance in excess of the Limit of Liability stated in this policy.  Such excess insurance shall not be considered other insurance for the purposes of the Other Insurance clause.

2.  SALVAGE AND RECOVERIES: This clause is amended to include the following:

    When, in connection with any loss hereunder, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be figured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined.  Any amount thus found to be due either party from the other shall be paid promptly.

    The expense of all proceedings necessary to such recoveries shall be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled.  If there should be no recovery and proceedings are conducted solely by this Company, the expense thereof shall be borne by this Company.

All other terms and conditions of the policy remain unchanged.

©Chubb. 2016. All rights reserved.

**DEFINITION OF LOSS OCCURRENCE ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

The following definition is added to this policy; supersedes any other definition, express or implied, of the term "Loss Occurrence" in any term, provision or endorsement to this policy; and applies not withstanding such term, provision or endorsement:

1.  "Loss Occurrence" means the sum of all individual losses arising out of and directly caused by any one disaster, accident or loss or series of disasters, accidents or losses arising out of one event which occurs anywhere within the Coverage Territory.  The duration and extent of any one Loss Occurrence will be limited to all individual losses sustained by the Insured occurring during any period of 72 consecutive hours arising out of and directly caused by the same event, except:

    A.  As regards Windstorm (including Tier 1 Counties), Flood, Hail or Tornado, including ensuing collapse, Flood and Water Damage: all individual losses sustained by the Insured occurring during any period of 96 consecutive hours arising out of and directly caused by the same event.

    B.  As regards the perils of riot, strike or civil commotion, vandalism and malicious mischief, including losses from all other perils covered hereunder following as a result of the aforesaid perils: all losses or series of losses occurring during any period of 72 consecutive hours arising out of and directly caused by the same event. The maximum duration of 72 consecutive hours may be extended in respect of individual losses which occur beyond such 72 consecutive hours during the continued occupation of the Insured's premises by strikers, provided such occupation commenced during the aforesaid period.

    C.  As regards the peril of Earthquake, including losses from all other perils covered hereunder following as a result of Earthquake: only those individual losses covered hereunder, which commence during the period of 168 consecutive hours, may be included in the Loss Occurrence.

    D.  As regards the peril of freeze: only those individual losses directly caused by collapse, breakage of glass, water and/or liquid damage due to burst pipes tanks or pressure vessels; damage to machinery or equipment, stock and/or work in progress due to freeze; and/or individual losses arising directly out of the lack of supply of power, current, coolant and/or fuel due to frozen pipes and/or frozen feed lines may be included in the Loss Occurrence.

    Except for those Loss Occurrences referred to in sub-paragraphs A. and B. above, the Insured may chose the date and time when such period of consecutive hours commences, provided that it is not earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising out of that disaster, accident or loss and provided that only one such period of consecutive hours will apply with respect to one event.

    However, as respects those Loss Occurrences referred to in sub-paragraphs A. and B. above, if the disaster, accident or loss occasioned by the event is of greater duration than the specified period of consecutive hours, then the Insured may divide that disaster, accident or loss into two or more Loss Occurrences, provided no two periods overlap and no individual loss is included in more than one such period and provided that no period commences earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising from that disaster, accident or loss.

 ©Chubb. 2016. All rights reserved.

However, we shall not be liable hereunder for any loss or damage:

   a)  Occurring before this policy becomes effective; or

   b)  Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

   c)  Occurring after the expiration of this policy, except loss or damage arising from an "occurrence" in progress at the time this policy expires.

This provision in no way alters any Policy Limit of Liability or Sub-limit of Liability.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

## VALUABLE PAPERS AND RECORDS SUB-LIMIT ENDORSEMENT

| Named Insured<br>Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37431849 003 | Policy Period<br>04/27/2017 **to**  04/27/2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### COMMERCIAL PROPERTY COVERAGE PART

### COMMERCIAL INLAND MARINE COVERAGE PART

## COVERAGE

1. This Policy covers the least of the cost of restoring, researching, replacing or reproducing the Insured's Valuable Papers and Records that are lost or damaged as a result of covered physical loss or damage to the Valuable Papers and Records while within the Coverage Territory, including while in transit.

2. This Additional Coverage does not apply to:

   a. loss or damage to property described below, if such property cannot be replaced with other of like kind and quality, unless specifically identified to the Company in writing prior to the date of the Occurrence:

      i.   currency, money or securities; or

      ii.  property held as samples or for sale or for delivery after sale;

   b. errors or omissions in processing, or copying, unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured; or

   c. deterioration, inherent vice, vermin or wear and tear;

   all unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured.

## VALUATION

In the event of loss, the basis of adjustment will be as follows, for no more than the interest of the Insured:

1. On exposed film, records, manuscripts and drawings that are not Valuable Papers and Records, the cost of blank materials plus the cost of copying information from back-up or from originals of a previous generation.  These costs will not include research, engineering or any costs of restoring or recreating lost information.

2. On Valuable Papers and Records, the lesser of the following:

   a. the cost to repair or restore the Valuable Paper and Record to the condition that existed immediately prior to the loss.

   b. the cost to replace the Valuable Paper and Record.

   c. the amount, if any, designated for the Valuable Paper and Record on the Schedule of Insured Locations.

ACE0762 (09/13) ©Chubb. 2016. All rights reserved. Page 1 of 2

**ADDITIONAL DEFINITION**

"Valuable Papers and Records" means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured. "Valuable Papers and Records" does not include Electronic Data, Electronic Media, electronic material, or electronic information.

**SUB-LIMIT OF INSURANCE**

The most we will pay under this coverage extension is the limit stated in the Declarations or in the Sub-limit Provision Endorsement attached to this Policy. This additional coverage is provided within, not in addition to, the Limit of Insurance stated in the Declarations.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

## ORDINANCE OR LAW COVERAGE

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

**A.** Each Coverage – Coverage **A,** Coverage **B** and Coverage **C** – is provided under this endorsement only if the limit is stated for that Coverage(s) in the Declarations or in the Sub-limit Provision Endorsement attached to this Policy.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement applies only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

   **1.** The ordinance or law:

   **a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   **b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

   **2.a.** The building sustains direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

   **b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

   **c.** But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

   **3.** In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B,** and/or **C** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

   (Section **H.** of this endorsement provides an example of this procedure.)

   However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement.

**C.** We will not pay under Coverage **A, B** or **C** of this endorsement for:

   **1.** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

   **2.** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
©Chubb. 2016. All rights reserved.

### D. Coverage

**1. Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit Of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.

**2. Coverage B – Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

**3. Coverage C – Increased Cost Of Construction Coverage**

**a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(1)** Repair or reconstruct damaged portions of that building; and/or

**(2)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(1)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

**b.** When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.:**

**(1)** The cost of excavations, grading, backfilling and filling;

**(2)** Foundation of the building;

**(3)** Pilings; and

**(4)** Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this provision, **3.b.**

### E. Loss Payment

**1.** All following loss payment provisions, **E.2.** through **E.5.,** are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

**2.** When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**a.** If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

**(1)** The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(2)** The Limit Of Insurance shown in the Declarations as applicable to the covered building.

**b.** If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission
©Chubb. 2016. All rights reserved.

    **(1)** The actual cash value of the building at the time of loss; or

    **(2)** The Limit Of Insurance shown in the Declarations as applicable to the covered building.

**3.** Unless Paragraph **E.5.** applies, loss payment under Coverage **B** – Demolition Cost Coverage will be determined as follows:

We will not pay more than the lesser of the following:

    **a.** The amount you actually spend to demolish and clear the site of the described premises; or

    **b.** The applicable Limit Of Insurance shown for Coverage **B** in the Schedule above.

**4.** Unless Paragraph **E.5.** applies, loss payment under Coverage **C** – Increased Cost Of Construction Coverage will be determined as follows:

    **a.** We will not pay under Coverage **C:**

        **(1)** Until the property is actually repaired or replaced, at the same or another premises; and

        **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    **b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

        **(1)** The increased cost of construction at the same premises; or

        **(2)** The applicable Limit Of Insurance shown for Coverage **C** in the Schedule above.

    **c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

        **(1)** The increased cost of construction at the new premises; or

        **(2)** The applicable Limit Of Insurance shown for Coverage **C** in the Schedule above.

**5.** If a Combined Limit Of Insurance is shown for Coverages **B** and **C** in the Schedule above, Paragraphs **E.3.** and **E.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit Of Insurance shown for Coverages **B** and **C** in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

    **a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

    **b.** With respect to the Increased Cost of Construction:

        **(1)** We will not pay for the increased cost of construction:

            **(a)** Until the property is actually repaired or replaced, at the same or another premises; and

            **(b)** Unless the repair or replacement is made as soon as reasonably possible after the loss or   damage, not to exceed two years. We may extend this period in writing during the two years.

        **(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another   premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

        **(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**F.** The most we will pay under this coverage extension is the limit stated in the Declarations or in the Sub-limit Provision Endorsement attached to this Policy.  This coverage is provided within, not in addition to, the Limit of Insurance stated in the Declarations.

**G.** Under this endorsement we will not pay for loss due to any ordinance or law that:

    **1.** You were required to comply with before the loss, even if the building was undamaged; and

    **2.** You failed to comply with.

**H.** Example of proportionate loss payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement).

Includes copyrighted material of Insurance Services Office, Inc., with its permission
©Chubb. 2016. All rights reserved.

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage **C** of this endorsement: $60,000

**Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

**Step 2:** Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**Note:** The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

**I.** The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

©Chubb. 2016. All rights reserved.

## INGRESS EGRESS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**

**A.** This policy covers the actual loss sustained and extra expense incurred by the Insured when ingress to or egress from an insured location is prohibited as a direct result of physical damage of the type insured by this policy, to the kind of property not excluded by this policy, which occurs at or within 1  statutory mile(s) of such insured location, whether or not the premises or property of the Insured is damaged.

**B.** The amount of coverage provided under this Ingress/Egress coverage extension will be the lesser of:

1.  the actual loss sustained from the time that such physical prevention of ingress to or egress from the affected insured location begins and ending at the earlier of (a) the time when physical prevention of ingress to or egress from an insured location described in sub-paragraph **A.** above ends, in whole or part, or (b) after 30  consecutive days; or

2.  the amount shown for Ingress/Egress in the Declarations, Sub-Limit Provision Endorsement, or elsewhere in this policy.

**C.** The following additional exclusions apply to this Coverage Extension:

This Policy does not insure loss resulting from:

1.  lack of incoming or outgoing service consisting of electric, fuel, gas, water, steam, refrigerant, sewerage, voice, data, or video.

2.  picketing or other action by strikers except for physical damage not excluded by this Policy.

**D.** This coverage extension does not apply if there is coverage for the loss under Civil Authority.

All other terms and conditions remain unchanged.

**ELECTRONIC DATA AMENDMENT ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BOILER AND MACHINERY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

The following terms and provisions are added to the Policy; supersede any term, provision or endorsement to the contrary in this Policy; and apply notwithstanding any such term, provision or endorsement in this Policy or in any underlying, contributing or followed policy:

1.  This Policy excludes loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of:

    a.  "Electronic Data" by any cause whatsoever (including but not limited to "Computer Virus");

    b.  "Electronic Data Processing Equipment" caused by or resulting from the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data"; regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media"; and/or

    c.  "Electronic Media" caused by or resulting from the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data"; regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media".

    This exclusion does not apply to loss or damage to "Electronic Data", "Electronic Data Processing Equipment", and "Electronic Media" caused by or resulting from a "Named Peril", if and to the extent such Named Peril is already covered by this or by any underlying policy.

2.  This Policy excludes loss, damage, cost or expense resulting from or arising out of any failure, malfunction, deficiency, deletion, fault, Computer Virus or corruption of computer code that results from or arises out of any authorized or unauthorized access by any means and for any purpose, whether intentional or inadvertent, in, of or to any "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media" and similar data, media, devices, and equipment in the ownership, possession, or control of a third party.

Definitions

1.  "Electronic Data" means information, facts or "Computer Programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hardware, computer memory, hard or floppy disks, zip drives, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

     ©Chubb. 2016. All rights reserved.

2. "Computer Programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to send, receive, process, store, retrieve, erase, or destroy data, and "Electronic Data" which is integrated in and operates or controls the building's elevator, lighting, plumbing, electricity, heating, ventilation, air conditioning,  security system, safety system, and fire protection system, but does not include prepackaged software held in storage.

3. "Electronic Data Processing Equipment" means "Computers", computer servers and similar equipment and component parts thereof, the purpose of which is to process Electronic Data.

4. "Electronic Media" means any physical device the purpose of which is to hold, store, contain or transfer "Electronic Data", and includes but is not limited to disks, drives, films, tapes, records, drums, or cells.

5. "Computers" includes but is not limited to mainframes, servers, workstations and portable computing devices, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

6. "Computer Virus" means instructions, code, files, applications or any software program that has the ability or is suspected to have the ability to damage, destroy, erase, corrupt, alter, impede, or prevent access to "Electronic Data", "Electronic Media" or "Computers", or to disrupt or interfere with the operations of "Computers", or to disrupt or interfere with the operation of any software or the reliability of any "Electronic Data", including but not limited to malicious codes, malware, Trojan Horses, worms and time or logic bombs.

7. "Named Peril" means the perils of Fire; Lightning; Explosion; Windstorm or Hail; Smoke; Aircraft or Vehicles; Riot and Civil Commotion; Willful or malicious physical loss or damage by a means other than "Computer Virus" and/or an authorized or unauthorized access in, of or to any "Electronic Data", "Electronic Data Processing Equipment" and/or "Electronic Media"; Leakage from fire extinguishing equipment; Sinkhole Collapse; Volcanic Action; Building glass breakage; Falling Objects, Weight of snow, ice or sleet, Water Damage; Sonic Boom; Theft; Flood, Earthquake or Earth Movement.

All other terms and conditions remain unchanged.

ACE126 (10/14) ©Chubb. 2016. All rights reserved.

**TERRORISM EXCLUSION ENDORSEMENT**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | |
| **Policy Symbol**<br>FS | **Policy Number**<br>D37431849 003 | **Policy Period**<br>04/27/2017 **to**  04/27/2018 | **Effective Date of Endorsement** |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BOILER AND MACHINERY COVERAGE PART**
**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE FORM**
**COMMERCIAL PROPERTY COVERAGE PART**
**STANDARD PROPERTY POLICY**

The following exclusion is added to this policy and applies to all coverages, additional coverages, and coverage extensions, notwithstanding any provision to the contrary in this policy or any other endorsement hereto:

A.  This insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this policy, contributing concurrently or in any other sequence thereto:

1.  "Act of Terrorism"; or

2.  Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism; or

3.  dispersal, application, or release of any actual or alleged pathogen, poison, biologic or chemical product, material, waste or substance as a result of an Act of Terrorism, and it reasonably appears that one purpose of the Act of Terrorism was to release such product, material, waste or substance.

This exclusion applies whether or not the "Act of Terrorism" was committed in concert with or on behalf of any organization or government.

The terms and limitations of this exclusion do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as, but not limited to, losses excluded by the "Nuclear Exclusion" or the "War Exclusion" or similar provision.

B.  As used in this endorsement:

1.  "Act of Terrorism" means any act against persons, organizations or property of any nature that involves the following or preparation for the following:

a.  Use or threat of force or violence; or

b.  Commission or threat of a dangerous act; or

c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

ALL-10750 (01/15)                    ©Chubb. 2016. All rights reserved.                    Page 1 of 2

2. Appears to be intended, in whole or in part, to:

    a. Intimidate or coerce a government or the civilian population; or

    b. Disrupt any segment of a nation's economy; or

    c. Influence the policy of a government by intimidation or coercion; or

    d. Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

    e. Further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; or

    f. Respond to governmental action or policy.

"Act of Terrorism" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

C. Exception Covering Certain Fire Losses

If an Act of Terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy, to the lesser of the actual cash value of the property at the time of the loss or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

POLICY NUMBER:D37431849 003

**COMMERCIAL PROPERTY**
**CP 04 08 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIGHER LIMITS

**SCHEDULE**

| | |
|---|---|
| **Premises Number:** All | **Building Number:** All |
| **Applicable Coverage Form:** Building And Personal Property | |
| **Description Of Coverage:** Debris Removal | |
| **Revised Amount Of Insurance:** $ ██████r 25% of loss, whichever is less | **Additional Premium:** Included |
| **Premises Number:** All | **Building Number:** All |
| **Applicable Coverage Form:** Building And Personal Property | |
| **Description Of Coverage:** Fire Department Service Charge | |
| **Revised Amount Of Insurance:** $ ██████ | **Additional Premium:** Included |
| **Premises Number:** All | **Building Number:** All |
| **Applicable Coverage Form:** Building And Personal Property | |
| **Description Of Coverage:** Newly Acquired Property (subject to 90 day reporting) | |
| **Revised Amount Of Insurance:** $ ██████ | **Additional Premium:** Included |
| **Premises Number:** All | **Building Number:** All |
| **Applicable Coverage Form:** Building And Personal Property | |
| **Description Of Coverage:** Outdoor Plants, Trees, Shrubs | |
| **Revised Amount Of Insurance:** $ ██████ (subject to maximum $5,000 per Tree, Plant or Shrub and excluding freeze) | **Additional Premium:** Included |
| **Premises Number:** All | **Building Number:** All |
| **Applicable Coverage Form:** Building And Personal Property | |
| **Description Of Coverage:** Pollution Clean-up (Annual Aggregate Applies) | |
| **Revised Amount Of Insurance:** $ ██████ | **Additional Premium:** Included |
| **Premises Number:** All | **Building Number:** All |
| **Applicable Coverage Form:** Causes of Loss Form - Special | |
| **Description Of Coverage:** Transit | |

© Insurance Services Office, Inc., 2011

| | | | |
|---|---|---|---|
| **Revised Amount Of Insurance:** | $  250,000 | **Additional Premium:** | Included |

**Premises Number:**    All                    **Building Number:**    All

**Applicable Coverage Form:**    Building And Personal Property

**Description Of Coverage:** Valuable Papers and Records

| | | | |
|---|---|---|---|
| **Revised Amount Of Insurance:** | $  500,000 | **Additional Premium:** | Included |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to each Coverage identified in the Schedule, the amount of insurance provided in this policy is replaced by the higher amount (Revised Amount Of Insurance) shown in the Schedule for such Coverage. All limitations and provisions which relate to the amount of insurance stated in the policy for such Coverage continue to apply with respect to the revised amount.

POLICY NUMBER: D37431849 003

<div align="right">

**COMMERCIAL PROPERTY**
**CP 04 17 10 12**

</div>

# UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

      BUILDERS' RISK COVERAGE FORM
      BUILDING AND PERSONAL PROPERTY COVERAGE FORM
      CONDOMINIUM ASSOCIATION COVERAGE FORM
      CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
      STANDARD PROPERTY POLICY
      TOBACCO SALES WAREHOUSES COVERAGE FORM

<div align="center">

**SCHEDULE**

</div>

| Premises Number | Building Number | Utility Services Limit Of Insurance | Enter **"X"** for each applicable property. | | | | |
|---|---|---|---|---|---|---|---|
| | | | Water Supply Property | Communication Supply Property (including overhead transmission lines) | Communication Supply Property (not including overhead transmission lines) | Power Supply Property (including overhead transmission lines) | Power Supply Property (not including overhead transmission lines) |
| All | All | **See ACE0377** | | | X | | X |
| **Covered Property:** | | Per Schedule on File with Company | | | | | |
| **Causes Of Loss Form Applicable:** | | Windstorm Or Hail | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | | | |

**A. Coverage**

We will pay for loss of or damage to Covered Property described in the Schedule, caused by an interruption in utility service to the described premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss (as indicated in the Schedule) to the property described in Paragraph **C.** if such property is indicated by an "X" in the Schedule.

**B. Exception**

Coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Coverage Form to which this endorsement applies.

**C. Utility Services**

**1.** Water Supply Services, meaning the following types of property supplying water to the described premises:

**a.** Pumping stations; and

**b.** Water mains.

**2.** Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**a.** Communication transmission lines, including optic fiber transmission lines;

**b.** Coaxial cables; and

**c.** Microwave radio relays except satellites.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**3.** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

**a.** Utility generating plants;

**b.** Switching stations;

**c.** Substations;

**d.** Transformers; and

**e.** Transmission lines.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**D.** As used in this endorsement, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**E.** If a Utility Services Limit Of Insurance is shown in the Schedule, such limit is part of, not in addition to, the Limit Of Insurance stated in the Declarations or in the Separation Of Coverage endorsement as applicable to the Covered Property.

If no Limit of Insurance is shown for Utility Services, coverage under this endorsement is subject to the applicable Limit Of Insurance on the Covered Property as shown in the Declarations or in the Separation Of Coverage endorsement. But this Utility Services endorsement does not increase the applicable Limit of Insurance.

 © Insurance Services Office, Inc., 2011 **CP 04 17 10 12**

POLICY NUMBER: D37431849 003

**COMMERCIAL PROPERTY**
**CP 04 40 06 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPOILAGE COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Limit Of Insurance |
| --- | --- | --- |
| All | All | See ACE0377 |

**Description Of Property: Per Schedule on File with Company**

**Deductible: See CPd2**

**Refrigeration Maintenance**
**Agreement: X**

**Selling Price: Not Applicable**

| Causes Of Loss |
| --- |
| **Breakdown Or Contamination: Windstorm Or Hail** |
| **Power Outage: Windstorm or Hail** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The Coverage Form to which this endorsement applies is extended to insure against direct physical loss or damage by the Covered Causes of Loss, but only with respect to coverage provided by this endorsement.

**A.** Paragraph **A.1., Covered Property,** is replaced by the following:

**1. Covered Property**

Covered Property means "perishable stock" at the described premises owned by you or by others that is in your care, custody or control.

**B.** With respect to the coverage provided by this endorsement, property located on buildings or in the open or in vehicles is considered to be Property Not Covered.

**C.** Paragraph **A.3., Covered Causes Of Loss,** is replaced by the following:

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**D. Selling Price**

If Selling Price is indicated by an "X" in the Schedule, the following is added to the **Valuation** Loss Condition:

We will determine the value of finished "perishable stock" in the event of loss or damage at:

**1.** The selling price, as if no loss or damage had occurred;

**2.** Less discounts and expenses you otherwise would have had.

**E.** Paragraph **A.5., Coverage Extensions,** does not apply.

© ISO Properties, Inc., 2006

**3. Covered Causes Of Loss**

Covered Causes of Loss means the following only if indicated by an "X" in the Schedule:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment, only while such equipment or apparatus is at the described premises; and

**(2)** Contamination by the refrigerant.

**2.** The following Exclusions are added:

We will not pay for loss or damage caused by or resulting from:

**a.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**b.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**c.** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

**(1)** Lack of fuel; or

**(2)** Governmental order.

**d.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**e.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**G.** Paragraph **D., Deductible,** is replaced by the following:

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance. No other deductible in this policy applies to the coverage provided by this endorsement.

**F.** Paragraph **B., Exclusions,** is replaced by the following:

**B. Exclusions**

**1.** Only the following Exclusions contained in Paragraph **B.1.** of the Causes of Loss Form applicable to this Coverage Part apply to Spoilage Coverage:

**a.** Earth Movement;

**b.** Governmental Action;

**c.** Nuclear Hazard;

**d.** War And Military Action; and

**e.** Water.

**H.** Paragraph **F., Additional Conditions,** is replaced by the following:

**ADDITIONAL CONDITION**

The following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

**REFRIGERATION MAINTENANCE AGREEMENTS**

If Breakdown or Contamination is designated as a Covered Cause of Loss and a refrigeration maintenance agreement is shown as applicable by an "X" in the Schedule, the following condition applies:

You must maintain a refrigeration maintenance or service agreement. If you voluntarily terminate this agreement and do not notify us, the insurance provided by this endorsement will be automatically suspended at the involved location.

**I.** Paragraph **G., Optional Coverages,** does not apply.

**J.** The following is added to the **Definitions:**

"Perishable stock" means personal property:

**a.** Maintained under controlled conditions for its preservation; and

**b.** Susceptible to loss or damage if the controlled conditions change.

POLICY NUMBER: D37431849 003

**COMMERCIAL PROPERTY**
**CP 10 38 10 12**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DISCHARGE FROM SEWER, DRAIN OR SUMP
# (NOT FLOOD-RELATED)

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM
TOBACCO SALES WAREHOUSES COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number | Discharge Limit (Property Damage) | Discharge Limit (Business Interruption) | Annual Aggregate Limitation Applies |
|---|---|---|---|---|
| All | All | See ACE0377 | See ACE0377 | [X] |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** If a Discharge Limit for Property Damage is entered in the Schedule, the following applies:

With respect to the premises identified in the Schedule, we will pay for direct physical loss or damage to Covered Property, caused by or resulting from discharge of water or waterborne material from a sewer, drain or sump located on the described premises, provided such discharge is not induced by flood or flood-related conditions.

The aforementioned references to flood include surface water, waves (including tidal wave and tsunami), tides, tidal water, and overflow of any body of water, including storm surge.

For the purpose of this endorsement, the term drain includes a roof drain and related fixtures.

**B.** If a Discharge Limit for Business Interruption is entered in the Schedule, the following applies:

With respect to the premises identified in the Schedule, we will pay for business income loss and/or extra expense in accordance with the terms of the Coverage Form applicable to such premises under your policy, when such loss or expense arises out of the direct physical loss or damage described in Paragraph **A.**

© Insurance Services Office, Inc., 2011

**C.** There is no coverage under this endorsement if:

**1.** The discharge results from an insured's failure to perform routine maintenance or repair necessary to keep a sewer or drain or a sump, sump pump or related equipment free from obstruction and in proper working condition. This limitation does not apply to sudden mechanical breakdown of a sump pump or its related equipment, provided the breakdown is not the result of an insured's negligence; or

**2.** Sump pump failure is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

**D.** To the extent that the Water Exclusion might conflict with the coverage provided under this endorsement, the Water Exclusion does not apply to such coverage.

**E.** We will not pay the cost of repairing or replacing a sewer, drain, sump, sump pump or any related parts or equipment.

**F.** The most we will pay under this endorsement, for the total of all covered loss and expense, is the applicable Discharge Limit shown in the Schedule. Such Limit is part of, not in addition to, the Limit of Insurance applicable to the Covered Property, business income or extra expense.

**G.** If the Annual Aggregate Limitation is shown as applicable in the Schedule, then the following applies:

The applicable Discharge Limit is an annual aggregate limit and as such is the most we will pay for the total of all covered loss and expense caused by all occurrences in a 12-month period (starting with the beginning of the present annual policy period), regardless of the number of occurrences during that period of time. Thus, if the first occurrence does not exhaust the applicable Discharge Limit, then the balance of that Limit is available for a subsequent occurrence. If an occurrence begins during one annual policy period and ends during the following annual policy period, any Discharge Limit applicable to the following annual policy period will not apply to that occurrence.

**H.** All policy provisions apply to the coverage provided under this endorsement unless otherwise indicated, including the Deductible for direct physical loss or damage and the "period of restoration" for business income and extra expense. If an occurrence results in loss payable only under this endorsement, the Deductible applicable to Fire will apply to this endorsement. But if an occurrence also causes other loss or damage that is paid under this policy, a separate Deductible will not apply to the loss or damage covered under this endorsement.

   © Insurance Services Office, Inc., 2011   **CP 10 38 10 12**

COMMERCIAL PROPERTY
CP 10 65 06 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy, the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

**B.** This endorsement applies to the Covered Property and Coverages for which a Flood Limit of Insurance is shown in the Flood Coverage Schedule or in the Declarations.

**C. Additional Covered Cause Of Loss**

The following is added to the Covered Causes Of Loss:

Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**1.** The overflow of inland or tidal waters;

**2.** The unusual or rapid accumulation or runoff of surface waters from any source; or

**3.** Mudslides or mudflows which are caused by flooding as defined in **C.2.** above. For the purpose of this Covered Cause Of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single flood.

**D. Exclusions, Limitations And Related Provisions**

**1.** The Exclusions and Limitation(s) sections of the Causes Of Loss Form (and the Exclusions section of the Mortgageholders Errors And Omissions Coverage Form and the Standard Property Policy) apply to coverage provided under this endorsement except as provided in **D.2.** and **D.3.** below.

**2.** To the extent that a part of the Water Exclusion might conflict with coverage provided under this endorsement, that part of the Water Exclusion does not apply.

**3.** To the extent that a tsunami causes the overflow of tidal waters, the exclusion of earthquake, in the Earth Movement Exclusion, does not apply.

**4.** The **Ordinance Or Law** Exclusion in this Coverage Part continues to apply with respect to any loss under this Coverage Part including any loss under this endorsement, unless Ordinance Or Law Coverage is added by endorsement.

**5.** The following exclusions and limitations are added and apply to coverage under this endorsement:

**a.** We will not pay for any loss or damage caused by or resulting from any Flood that begins before or within 72 hours after the inception date of this endorsement. If you request and we provide an increase in the stated Limit of Insurance for Flood, the increase will not apply to loss or damage from any Flood that begins before or within 72 hours after your request was made.

If the Flood is due to the overflow of inland or tidal waters, then the Flood is considered to begin when the water first overflows its banks.

**b.** We will not pay for loss or damage caused by or resulting from destabilization of land arising from the accumulation of water in subsurface land areas.

**c.** Under this Coverage Part, as set forth under Property Not Covered in the Coverage Form to which this endorsement is attached, land is not covered property, nor is the cost of excavations, grading, backfilling or filling. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land due to the collapse or sinking of land caused by or resulting from Flood. However, coverage under this endorsement includes damage to the covered portions of the building and to covered personal property, caused by collapse or sinking of land along the shore of a body of water as the result of erosion or undermining caused by waves or currents of water which exceed the cyclical levels and cause Flood.

**d.** We do not cover loss or damage by Flood to personal property in the open except to the extent that such coverage, if any, is specified in the Flood Coverage Schedule or in the Declarations.

**e.** Property Not Covered, in the Coverage Form to which this endorsement is attached, is amended and supplemented as follows with respect to Flood Coverage:

**(1)** Property Not Covered includes any building or other property that is not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act, 16 U.S.C. 3501 *et seq.* and the Coastal Barrier Improvement Act of 1990, Pub. L. 101-591, 16 U.S.C. 3501 *et seq.*

**(2)** Property Not Covered includes boat houses and open structures, and any property in or on the foregoing, if the structure is located on or over a body of water.

**(3)** If bulkheads, pilings, piers, wharves, docks, or retaining walls that are not part of a building, have been removed from Property Not Covered and added as Covered Property by separate endorsement, this Flood Coverage Endorsement does not apply to such property.

**(4)** The following are removed from Property Not Covered and are therefore Covered Property:

**(a)** Foundations below the lowest basement floor or the subsurface of the ground; and

**(b)** Underground pipes, flues and drains.

**f.** We will not pay for loss or damage caused by sewer back-up or overflow unless such back-up or overflow results from Flood and occurs within 72 hours after the flood recedes.

**E. Additional Coverages And Coverage Extensions**

**1.** With respect to Flood Coverage, the Debris Removal Additional Coverage (and any additional limit for Debris Removal under a Limit Of Insurance clause or an endorsement) is not applicable and is replaced by the following:

**DEBRIS REMOVAL**

**a.** We will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from Flood. However, we will not pay to remove deposits of mud or earth from the grounds of the described premises.

**b.** We will also pay the expense to remove debris of Covered Property that has floated or been hurled off the described premises by Flood.

**c.** This coverage for Debris Removal, as set forth in **E.1.a.** and **E.1.b.** above, does not increase the applicable Limit of Insurance for Flood. Therefore, the most we will pay for the total of debris removal and loss or damage to Covered Property is the Limit of Insurance for Flood that applies to the Covered Property at the affected described premises covered under this endorsement.

**2.** With respect to Flood Coverage, the Coverage Extension for Newly Acquired or Constructed Property is amended by adding the following:

**a.** With respect to Flood Coverage, this Coverage Extension does not apply to any building or structure that is not fully enclosed by walls and roof.

**b.** With respect to a building or structure covered under this Coverage Extension, the amounts of coverage stated in the Coverage Extension do not apply to Flood Coverage. Instead, the most we will pay for all loss or damage to property covered under this Coverage Extension is 10% of the total of all Limits of Insurance for Flood Coverage as provided under this endorsement. Such coverage does not increase the Limit of Insurance for Flood.

 © ISO Properties, Inc., 2007

3. With respect to any applicable Additional Coverages and Coverage Extensions in the Coverage Form to which this endorsement is attached, other than those addressed in **E.1.** and **E.2.** above, amounts payable under such other provisions, as set forth therein, do not increase the Limit of Insurance for Flood.

**F. Coinsurance**

1. The **Coinsurance** Condition, if any, in the applicable Coverage Form applies to the coverage provided under this endorsement, unless the No-Coinsurance Option, in the Flood Coverage Schedule or in the Declarations, is specified as being applicable.

2. Various Coverage Extensions, in the Coverage Form to which this endorsement is attached, require coinsurance. If the No-Coinsurance Option applies, then the coinsurance requirement for such Coverage Extensions is eliminated.

**G. Limit Of Insurance**

1. **General Information**

Flood Coverage may be written at a Limit of Insurance that is equal to or less than the Limit of Insurance which applies to other Covered Causes of Loss (e.g., Fire) under this Commercial Property Coverage Part.

The Limit of Insurance for Flood is shown in the Flood Coverage Schedule or in the Declarations. If such Limit is not shown, then the Limit applicable to Fire also applies to Flood.

2. **Application Of Limit And Aggregate**

The Limit of Insurance for Flood is the most we will pay in a single occurrence of Flood for loss or damage caused by the Flood. If there is more than one Flood in a 12-month period (starting with the beginning of the present annual policy period), the most we will pay for the total of all loss or damage sustained during that period of time and caused by Flood is the amount that is identified as the Annual Aggregate for Flood as shown in the Flood Coverage Schedule or the Declarations.

If the Limit of Insurance and the Annual Aggregate amount are the same, or if there is no amount stated as an Annual Aggregate, then the Limit of Insurance is the most we will pay for the total of all loss or damage that is caused by Flood in a 12-month period (starting with the beginning of the present annual policy period), even if there is more than one occurrence of Flood during that period of time. Thus, if the first Flood does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for a subsequent Flood(s).

If a single occurrence of Flood begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance or Annual Aggregate applicable to the following annual policy period will **not** apply to that Flood.

3. **Ensuing Loss**

In the event of covered ensuing loss, for example, loss caused by Fire, Explosion and/or Sprinkler Leakage which results from the Flood, the most we will pay, for the total of all loss or damage caused by flood, fire, explosion and sprinkler leakage, is the Limit of Insurance applicable to Fire. We will **not** pay the sum of the Fire and Flood Limits.

**EXAMPLES – ENSUING LOSS**

Two examples follow, using these facts: The Commercial Property Coverage Part, in these examples, includes the Causes of Loss – Basic Form (which covers fire) and this Flood Coverage Endorsement. A building is damaged by Flood and by Fire which is caused by the Flood. The value of the damaged building is $1,000,000. The Limit of Insurance applicable to the building, for the Basic Causes of Loss, is $800,000. The Limit of Insurance for Flood is $400,000. The Flood Deductible amount is $5,000.

**EXAMPLE #1**

The damage due to Flood is $500,000. The damage due to Fire is $500,000.

Payment for Flood damage is $400,000 ($500,000 damage minus $5,000 Flood deductible = $495,000; Limit is $400,000).

Payment for Fire damage is $400,000 ($500,000 damage capped at the difference between the Basic Limit and the Flood Limit).

Total Loss Payment is $800,000.

**EXAMPLE #2**

The damage due to Flood is $800,000. The damage due to Fire is $100,000.

Payment for Flood damage is $400,000 ($800,000 damage minus $5,000 Flood deductible = $795,000; Limit is $400,000).

Payment for Fire damage is $100,000 (amount of damage).

Total Loss Payment is $500,000.

**Note:** These Examples are given only to illustrate the situation of flood and ensuing loss. Therefore, the loss payment stated for flood damage does not address the situation where another policy also covers the flood damage.

**H. Deductible**

1. The Deductible for coverage provided under this endorsement is the Deductible applicable to Flood as shown in the Flood Coverage Schedule or in the Declarations.

2. We will not pay that part of the loss that is attributable to any Deductible(s) in the National Flood Insurance Program policy.

3. If Flood results in another Covered Cause of Loss and if both Covered Causes of Loss cause loss or damage, then only the higher deductible applies (e.g., the Flood deductible or the Fire deductible).

**I. Other Insurance**

The **Other Insurance** Commercial Property Condition is replaced by the following with respect to the coverage provided under this endorsement:

1. If the loss is also covered under a National Flood Insurance Program (NFIP) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on the NFIP policy. We will not, under any circumstances, pay more than the applicable Limit of Insurance for Flood as stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

However, this Provision **I.1.** does not apply under the following circumstances:

a. At the time of loss, the property is eligible to be written under an NFIP policy but such policy is not in effect due solely to ineligibility of the property at the time this Flood Coverage Endorsement was written; or

b. An NFIP policy is not in effect because we have agreed to write this Flood Coverage Endorsement without underlying NFIP coverage. There is such an agreement only if the Flood Coverage Schedule or the Declarations indicate that the Underlying Insurance Waiver applies.

2. If there is other insurance covering the loss, other than that described in **I.1.**, we will pay our share of the loss. Our share is the proportion that the applicable Limit of Insurance under this endorsement bears to the total of the applicable Limits of Insurance under all other such insurance. But we will not pay more than the applicable Limit of Insurance stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

POLICY NUMBER: D37431849 003

**COMMERCIAL PROPERTY**
**CP 15 32 06 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CIVIL AUTHORITY CHANGE(S)

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Schedule Part A Coverage Period (Number Of Days) | Schedule Part B Radius (Number Of Miles) |
|---|---|---|---|
| All | All | 30 Days | 1 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage Period**

Under the Additional Coverage – Civil Authority, the four-week coverage period is replaced by the number of days indicated in Part **A** of the Schedule, subject to all other provisions of that Additional Coverage. If there is no entry in Part **A** of the Schedule, the four-week coverage period continues to apply, subject to all other provisions of the Additional Coverage – Civil Authority.

**B. Radius**

The Additional Coverage – Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. Such one-mile radius is replaced by the number of miles indicated in Part **B** of the Schedule, subject to all other provisions of that Additional Coverage. If there is no entry in Part **B** of the Schedule, the one-mile radius continues to apply, subject to all other provisions of the Additional Coverage – Civil Authority.

**C.** The coverage provided under this endorsement does not increase the applicable Limit of Insurance.

© ISO Properties, Inc., 2006

POLICY NUMBER: D37431849 003

**COMMERCIAL PROPERTY**
**CP 15 45 10 12**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UTILITY SERVICES – TIME ELEMENT

This endorsement modifies insurance provided under the following:

    BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
    BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
    EXTRA EXPENSE COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number | Utility Services Limit Of Insurance | Enter **"X"** for each applicable property. | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Water Supply Property | Waste-water Removal Property | Commu-nication Supply Property (including overhead transmis-sion lines) | Commu-nication Supply Property (not including overhead transmis-sion lines) | Power Supply Property (including overhead transmis-sion lines) | Power Supply Property (not including overhead transmis-sion lines) |
| All | All | See ACE0377 | | | | X | | X |
| **Causes Of Loss Form Applicable:**  Windstorm Or Hail | | | | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | | | | |

## A. Coverage

Your coverage for Business Income and/or Extra Expense, as provided and limited in the applicable Coverage Form, is extended to apply to a "suspension" of "operations" at the described premises caused by an interruption in utility service to that premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss (as provided under the applicable Causes of Loss Form indicated in the Schedule) to the property described in Paragraph **C.** if such property is indicated by an "X" in the Schedule.

## B. Exception

Coverage under this endorsement does not apply to Business Income loss or Extra Expense related to interruption in utility service which causes loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Coverage Form to which this endorsement applies.

## C. Utility Services

**1.** Water Supply Property, meaning the following types of property supplying water to the described premises:

**a.** Pumping stations; and

**b.** Water mains.

**2.** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the described premises, other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities.

Coverage under this endorsement does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**3.** Communication Supply Property, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

**a.** Communication transmission lines, including optic fiber transmission lines;

**b.** Coaxial cables; and

**c.** Microwave radio relays except satellites.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**4.** Power Supply Property, meaning the following types of property supplying electricity, steam or gas to the described premises:

**a.** Utility generating plants;

**b.** Switching stations;

**c.** Substations;

**d.** Transformers; and

**e.** Transmission lines.

It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**D.** As used in this endorsement, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**E.** The **Coinsurance** Additional Condition does not apply to this endorsement.

**F.** The Utility Services Limit Of Insurance, as shown in the Schedule, is the only Limit which applies to the coverage provided under this endorsement, and is part of, not in addition to, the Limit Of Insurance stated in the Declarations as applicable to the described premises.

 © Insurance Services Office, Inc., 2011 **CP 15 45 10 12**

## SERVICE OF SUIT ENDORSEMENT - FLORIDA

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to**  04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

Chief Financial Officer of the State of Florida
Department of Financial Services
200 E. Gaines Street
Tallahassee, FL 32399

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.  However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Florida law requires that the Chief Financial Officer of the State of Florida be designated as the company's agent for service of process. In Florida the company designates the Chief Financial Officer as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Chief Financial Officer to mail process received on the company's behalf to the company person named below.

Saverio Rocca, Assistant General Counsel
Chubb Group of Insurance Companies
436 Walnut Street
Philadelphia, PA 19106-3703

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____

Authorized Representative



| | |
|---|---|
| | **Westchester Surplus Lines Insurance Company** |
| | Insurance Company |
| | **Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal** |
| | Policyholder |
| | **D37431849 003** |
| | Policy Number |
| | **ALL RISKS LTD** |
| | Broker/Producer |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury---in consultation with the Secretary of Homeland Security, and the Attorney General of the United States---to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY YOUR POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.  UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% FOR YEAR 2015, 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017, 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.  THE PREMIUM THAT WOULD BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.**

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

| |
|---|
| Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $19,821 , however you elected to decline such coverage. |

## REPORTED CONSTRUCTION EXCLUSION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**

This insurance does not apply to buildings or structures with wood or metal exterior walls and/or structural wood in the roof, including but not limited to sheathing. However, this exclusion does not apply to locations reported on the Schedule on file with the Company as Frame (ISO 1) , Joisted Masonry (ISO 2) or Non-Combustible (ISO 3) .

All other terms and conditions remain unchanged.



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

### TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

_____

Authorized Agent

ALL-21101 (11-06) Ptd. In U.S.A.



# Questions About Your Insurance?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by calling Chubb, Customer Support Service Department, at 1-800-352-4462.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc.,  2004

## Named Windstorm Percentage Deductible Endorsement

| Named Insured<br>Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37431849 003 | Policy Period<br>02/27/2017 **to**     04/27/2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### Commercial Property Coverage Part

Schedule:   Per Schedule on File with Company

Deductible Percentage: **5** %

Minimum Deductible **$100,000** Per Occurrence

Applicable to **Named Windstorm** and **Named Windstorm Flood**:        Yes

The **Named Windstorm** deductible, shown above and otherwise set forth in the policy, applies to all covered loss or covered damage to Covered Property, occurring during the **Named Windstorm** deductible period and resulting from:
1. wind and/or hail directly or indirectly from a **Named Windstorm;**
2. rain damage to the interior of any building or structure, or the property inside the building or structure, whether the rain is driven by wind or not, provided the building or structure first sustains wind or hail damage to its roof or walls through which the rain enters.
3. **Named Windstorm Flood** meaning Flood directly resulting from a **Named Windstorm**.

A **Named Windstorm** is a storm system that has been declared to be either a Tropical Depression or Tropical Storm, or a Hurricane, by the National Hurricane Center of the National Weather Service.

The **Named Windstorm** deductible period begins at the time a watch or warning is issued by the National Hurricane Center and ends 72 hours after the termination of the last watch or warning issued.

**Deductible:**
The percentage, shown in the schedule above, of the sum of all values listed in the most recent Schedule of Values on file with the Company for each separately identifiable building or structure that has sustained a loss or damage and for which a claim is being made under this policy; subject to the minimum deductible shown in the schedule.

**Calculation of the Deductible:**

A deductible is calculated separately for, and applies separately to:
1. The Total Insurable Values (TIV) per each separate building or structure.  The TIV per building  or structure shall be calculated as the sum of all values listed in the most recent Schedule of Values on file with the Company for Buildings, Personal Property, Business Income, and any other values for which coverage is provided under this policy related to each separately identifiable structure.
2. Personal property in the open.  The TIV for personal property in the open shall be the sum of all personal property in the open per location.

If a covered structure is not included on the Schedule of Values, the values at that structure at the time and place of loss will be used.

Copyright 2011

If coverage is provided for Business Income, the deductible shown above  the 72 hour waiting period as stated in Form CP 0030 "Business Income (and Extra Expense) Coverage Form" or Form CP 0032 "Business Income (without Extra Expense) Coverage Form" as regards loss described above.

All other terms and conditions remain unchanged.

Copyright 2011



# Claims Directory
# Property and Inland Marine

**Claims or Loss Notices related to this policy should be reported to the following:**

| Claim Office | Email and Fax | Location |
|---|---|---|
| Chubb North American Claims | First Notices Email: <br> ACEClaimsFirstNotice@chubb.com <br><br> First Notices Fax: <br> (877)-395-0131 (Toll Free) <br> (302)-476-7254 (Local) <br><br> Phone: <br> (800)-433-0385 - Business Hours <br> (800)-523-9254 – After Hours | P.O. Box 5122 <br> Scranton, PA <br> 18505-0554 |

©Chubb. 2016. All rights reserved.

# SIGNATURES

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 04/27/2017 **to** 04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

Chubb. Insured.℠

# COMMON POLICY DECLARATIONS

*RSUI*

COMPANY NAME:   Landmark American Insurance Company

BRANCH ADDRESS:   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

POLICY NO.:  LHD900392

RENEWAL OF:   LHD395619

**NAMED INSURED AND MAILING ADDRESS:**
Setai Hotel Acquisition, LLC, Abbey Hotel Acquisition, LLC, and Setai Resort & Residences Condominium Association, Inc.
1400 Broadway
New York, NY 10018

**PRODUCER:**

POLICY PERIOD: From     4/27/2017     To     4/27/2018     12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

☒ **SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

☐ **THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

☐ **THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**EXHIBIT**
**"B"**

RSG 40011 0913

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, ISO Properties, Inc., 2001

Page 1 of 2

A member of Alleghany Insurance Holdings LLC

# COMMON POLICY DECLARATIONS

*RSUI*

COMPANY NAME: __Landmark American Insurance Company__

BRANCH ADDRESS: __945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160__

POLICY NO.: __LHD900392__                    RENEWAL OF: __LHD395619__

**NAMED INSURED AND MAILING ADDRESS:**          **PRODUCER:**

Setai Hotel Acquisition, LLC, Abbey Hotel Acquisition, LLC,
and Setai Resort & Residences Condominium Association,
Inc.
1400 Broadway
New York, NY 10018

**POLICY PERIOD:** From __4/27/2017__ To __4/27/2018__  12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM | COMM. |
|---|---|---|
| **Commercial Property** | $ ▮ | DO NOT WRITE IN THIS AREA |
|  | $ |  |
|  | $ |  |
| **STATE ASSESSMENTS & FEES** |  |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
| **TOTAL** | $ ▮ |  |

**FORMS APPLICABLE TO ALL COVERAGE PARTS:**

SEE SCHEDULE OF POLICY ATTACHMENTS AND FORMS, RSG 94106 1009

**BUSINESS DESCRIPTION:** Hotel

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORMS(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Countersigned: __June 02, 2017__   By: _____
                        Date          FB              Authorized Representative

RSG 40011 0913          Includes copyrighted material of Insurance Services Office, Inc., with its permission
                        Copyright, ISO Properties, Inc., 2001                          Page 2 of 2

A member of Alleghany Insurance Holdings LLC

SURPLUS LINES AGENT: Chris B. McGovern
LIC # E043040
10150 York Road, 5th Floor
Hunt Valley, MD 21030
PROD. AGT. _____ Phyllis Walsh _____
Street _____ 101 South Livingston Ave _____
City _____ Livingston _____ Zip _____ 07039 _____
This insurance is issued pursuant to the Florida
Surplus Lines Laws. Persons insured by Surplus
Lines carriers do not have the protection of the
Florida Insurance Guaranty Act to the extent of
any right of recovery for the obligation of an
insolvent unlicensed insurer.
Quarter _____ 2ND 2017 _____
Premium _____ ███████ _____ Tax _____ █████ _____
Agents Countersignature _____ ~~~~ _____

Policy Fee: _____ ████
Inspection Fee: _____ N/A
FL SL Tax: ██████
FSLSO Service Fee: _____ ████
Hurricane Cat. Fund: _____
Citizens Assess Fee: _____ N/A
EMPA Surcharge: _____ N/A
FLRES _____ : _____ ██
Total Payable at Inception: ████████

# FLORIDA POLICYHOLDER NOTICE

**LAW AND ORDINACE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

ONE OR MORE OF THE FOLLOWING MAY APPLY TO YOUR POLICY:

A

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

B

**THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

C

**THIS POLICY MAY EXCLUDE WIND THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

PLEASE REVIEW YOUR POLICY CAREFULLY AND CONTACT YOUR LICENSED AGENT IF YOU HAVE ANY QUESTIONS.



# Commercial Insurance Protection

## CLAIM NOTICE

| | |
|---|---|
| **Mail notices to:** | **RSUI Group, Inc.**<br>**945 East Paces Ferry Rd.**<br>**Suite 1800**<br>**Atlanta, GA 30326-1160** |
| **Fax notices to:** | **(404) 231-3755**<br>**Attn: Claims Department** |
| **E-mail notices to:** | **reportclaims@rsui.com** |

RSG 94001 0916

LANDMARK AMERICAN INSURANCE COMPANY

# *IMPORTANT NOTICE*

**IMPORTANT INFORMATION TO FLORIDA POLICYHOLDERS**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**QUESTIONS ABOUT YOUR INSURANCE? -** If you have any inquiries, need to obtain coverage information or need assistance in resolving complaints, please do not hesitate to contact your insurance company or agent.

FOR **COMMERCIAL INSURANCE** CONTACT:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326

Call Collect          (404) 231-2366

RSG 99003 0803

| | |
|---|---|
| Policy Number: | LHD900392 |
| Insurer: | Landmark American Insurance Company |
| Named Insured: | Setai Hotel Acquisition, LLC, Abbey Hotel Acquisition, LLC, and Setai Resort & Residences Condominium Association, Inc. |

## NOTICE - REJECTION OF TERRORISM COVERAGE

Coverage has been "rejected" by the Insured for all acts of terrorism including but not limited to "certified acts of terrorism" under the federal Terrorism Risk Insurance Act.

A member of Alleghany Insurance Holdings LLC

LANDMARK AMERICAN INSURANCE COMPANY

## State Fraud Statements
## Fraud Statements – Signature Required for New York Only

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form.  Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### DELAWARE FRAUD STATEMENT

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

### FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

A member of Alleghany Insurance Holdings LLC

### HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

### IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### KANSAS FRAUD STATEMENT

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

### KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

### MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

### NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

A member of Alleghany Insurance Holdings LLC

## OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## PUERTO RICO FRAUD STATEMENT

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

## TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.


## SIGNATURE REQUIRED

## NEW YORK FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_____
Insured/Applicant/Claimant

_____
By (Authorized Representative)

_____
Title

_____
Date

A member of Alleghany Insurance Holdings LLC

# *IMPORTANT NOTICE*

### FLORIDA SURPLUS LINES DISCLOSURE NOTICE

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**LANDMARK AMERICAN INSURANCE COMPANY**

---

*This Endorsement Changes The Policy.  Please Read It Carefully.*

---

### SCHEDULE OF POLICY ATTACHMENTS AND FORMS

| Form Number | Form Title |
|---|---|
| | Endorsement No.1  - Amendatory Cancellation Clause |
| RSG 94062 1009 | Excess Physical Damage Schedule |
| RSG 91002 1116 | Excess Physical Damage Coverage Form |
| RSG 93041 0110 | Florida Changes - Cancellation and Nonrenewal |
| RSG 94005 0715 | Certificates Of Insurance |
| RSG 94011 0407 | Service Of Suit |
| RSG 94030 1003 | Exclusion And Limited Additional Coverage - Electronic Data |
| RSG 94056 0304 | Cancellation Clause |
| RSG 94060 0515 | Scheduled Limit Of Liability |
| RSG 94095 0512 | Minimum Earned Premium (Insureds with Coastal Property) |
| RSG 96004 0210 | Exclusion And Limited Additional Coverage For Fungus |
| RSG 96005 0315 | Exclusion Of Terrorism |
| IL 0017 1198 | Common Policy Conditions |

---

**Policy No.:** LHD900392

RSG 94106 1009

**LANDMARK AMERICAN INSURANCE COMPANY**

---

## *This Endorsement Changes The Policy.  Please Read It Carefully.*

It is hereby agreed the Cancellation Clause, RSG 94056 0304, is amended to read as follows:

This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the address shown in this policy or last known address, written notice, with or without tender of the excess or paid premium above the pro rata premium for the expired time, stating when, not less than sixty (60) days thereafter, or not less than *fifteen (15)* days in the event of non-payment of premiums, such cancellation shall be effective. The mailing of notice aforesaid shall be sufficient prod of notice. The effective date and hour of cancellation stated in the notice, whether by the Insured or this Company, shall be equivalent to mailing. If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made as soon as practicable after cancellation becomes effective.

---

**Endorsement No.: 1**                          **Policy No.:** LHD900392      **Effective:** 4/27/2017

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCESS PHYSICAL DAMAGE SCHEDULE

<u>Item</u>

1.  Named Insured:   Setai Hotel Acquisition, LLC, Abbey Hotel Acquisition, LLC, and Setai Resort & Residences Condominium Association, Inc.

2.  Addresses of Insured Premises:   Various - as per schedule on file with Company submitted 3/7/2017

3.  Perils Covered:   Windstorm or Hail & Flood
       Excluding Terrorism

4.  Property Covered:   Building
       Personal Property
       Business Income with Extra Expense including "Rental Value"
       Ordinance or Law - Coverage A (Included in Building Limit)

5.  Primary Insurers and Policy Numbers:   Westchester Surplus Lines Insurance Company
       D37431849 003

**Policy No.:** LHD900392     **Effective:** 4/27/2017

6.   Primary Limits and Underlying Excess Limits: ████████ per occurrence Windstorm / Hail and
     per occurrence and annual aggregate Flood

7.   Limit Insured: ████████████████████ Windstorm / Hail and per occurrence
     and annual aggregate Flood, subject to conditions of the Scheduled Limit of Liability form

     *Sublimits:*

     *Sublimits are part of, not in addition to, the Limit Insured.*

8.   Notification of Claims to:    RSUI Group, Inc.
                                   945 East Paces Ferry Road
                                   Suite 1800
                                   Atlanta, GA 30326
                                   Attn: Claims Department

# EXCESS PHYSICAL DAMAGE COVERAGE FORM

**Notwithstanding any provision(s) contained within the primary or underlying policies to the contrary, this policy is amended as follows:**

1. **INSURING CLAUSE:**

   Subject to the limitations, terms and conditions contained in this Policy or added hereto, the Company agrees to indemnify the Insured named in the Excess Physical Damage Schedule ("Schedule") herein in respect of direct physical **loss** or damage to the property described in the Schedule while located or contained as described in the Schedule, occurring during the period stated in the Schedule and caused by any of such perils as are set forth in Item 3 of the Schedule, and which are also covered by and defined in the policy(ies) specified in the Schedule and issued by the "Primary Insurer(s)" stated therein.

2. **LIMIT:**

   Provided always that liability attaches to the Company only after any self-insured retention, any primary and underying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or have admitted liability for the full amount of their respective **ultimate net loss** liability as set forth in Item 6 of the Schedule and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Company's liability shall be those set forth in Item 7 of the Schedule under the designation "Limit Insured" and the Company shall be liable to pay the **ultimate net loss** up to the full amount of such "Limit Insured."

   The maximum recovery in any one occurrence for any coverage(s) or peril(s) subject to a sublimit shall be that sublimit provided by the primary and/or underlying excess policy(ies) and in no event shall the Company be liable for any amounts over the sublimit contained within the primary and/or underlying excess policy(ies) for the coverage(s) or peril(s) to which that sublimit applies.

   In the event that any perils against which this Policy insures are subject to an aggregate limit in the primary and/or underlying excess policy(ies), liability attaches to the Company only in the event that:

   (a) The **Ultimate Net Loss** exceeds the "Primary and Underlying Excess Limit(s)" as a result of **loss** or damage arising out of a single occurrence; or

   (b) Item 6 of the Schedule specifies that the "Primary and Underlying Excess Limit(s)" apply on an aggregate basis for the peril which caused the loss or damage.

3. **DEFINITIONS:**

   (a) **Loss:** The word **Loss** shall mean a loss or series of losses arising out of one event or occurrence.

   (b) **Ultimate Net Loss:**  The words **Ultimate Net Loss** shall mean the loss sustained by the Insured as a result of the happening of the perils covered by this Policy after making deductions for all salvages, recoveries, self-insured retentions and other valid and collectible insurance [other than recoveries under the policy(ies) of the primary and underlying excess insurer(s)].

   (c) **Earth Movement**

   1) **Earthquake**, including any earth sinking, rising or shifting related to such event;

   2) Landslide, including any earth sinking, rising or shifting related to such event;

   3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   5) Volcanic eruption, meaning the eruption, explosion or effusion of a volcano.

**Policy No.: LHD900392**       **Effective:  4/27/2017**

(d) **Earthquake**

1) Quaking, vibratory or undulating movement of a portion of the earth's crust, produced by tectonic or underground volcanic forces or by breaking, shaking, trembling or shifting of rock beneath the earth's crust.  This definition of Earthquake does not include subsidence, landslide, rock slide, mudflow, earth rising, earth sinking, earth shifting or settling; unless, as a direct result of such Earthquake.

   Earthquake shock shall be defined as the sum total of all the Insured's losses attributable directly from the peril of Earthquake sustained during any period of seventy two (72) consecutive hours by reason of one Earthquake shock or a series of Earthquake shocks.

2) Volcanic eruption, meaning the eruption, explosion or effusion of a volcano.  All volcanic eruptions that occur within any one hundred sixty eight (168) hour period will constitute a single occurrence.

(e) **Flood**

1) Flood, surface water, rising waters, waves, tides, tidal waves, storm surge, overflow of any body of water or their spray, all whether driven by wind or not;

2) Mudslide or mudflow;

3) Water that backs up or overflows from any sewer or drain;

4) Water that seeps, leaks or flows from below the surface of the ground;

5) The rising, overflowing or breaking of boundaries of natural or man-made bodies of water;

6) The release of water held by a dam, levee or dike or by a water or flood control device;

7) The release of water caused by the Acts, Errors or Omissions by you or others in the design, specifications, workmanship, repair, construction, or renovation of all or any part of a water or flood control device, levee, dam or dike;

8) Inundation of normally dry land by natural or man-made causes;

9) Water inundation from any cause whatsoever.

However, **Flood** does not include the accidental discharge or leakage of water as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance.

**4. PRIORITY OF PAYMENTS / APPLICATION OF RECOVERIES:**

There is no recovery under this excess policy as respects the coverage(s) or peril(s) which are sublimited within the primary and/or underlying excess policies to amounts less than or equal to the amount set forth in Item 6 of the Schedule, nor for those coverages excluded in this excess policy; however, the Company recognizes that the primary and underlying excess policy limits can be eroded or exhausted, wholly or partially, by application of said sublimits.

All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company; provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's **ultimate net loss** has been fully ascertained.

**5. DROP DOWN CLAUSE:**

In the event of reduction or exhaustion of the underlying aggregate limit(s) provided for **Flood** and/or **Earthquake**, such insurance if afforded by this Policy shall apply in excess of such reduced underlying limit(s), or if such limit is exhausted, shall apply as underlying insurance, notwithstanding anything to the contrary in the terms and conditions of this Policy. Sublimited coverages provided in the primary or underlying excess policies may contribute to the exhaustion of the underlying aggregate limit(s) provided for **Flood** and/or **Earthquake**; however, this excess layer will not drop down over or expand those sublimited amounts.

In the event of exhaustion of the underlying aggregate limit(s) provided for **Flood** and/or **Earthquake**, the deductible applicable to coverage if provided by this Policy for such peril(s) shall be the same as the deductible(s) stated in the primary policy.

In no event, shall this Company be liable for more than the "Limit Insured" as set forth in Item 7 of the Schedule.

**6. MAINTENANCE OF PRIMARY INSURANCE:**

In respect of the perils hereby insured against, this Policy follows the form of and is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any; and EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy(ies) of the primary insurer(s) prior to the happening of a loss for which claim is made hereunder, and should any alteration be made in the premium for the policy(ies) of the primary insurer(s), then the premium hereon shall be adjusted accordingly.

It is a condition of this Policy that the policy(ies) of the primary insurer(s) and underlying excess insurer(s) shall be maintained in full effect during the currency of this Policy except for any reduction or exhaustion of the aggregate limits contained therein solely by payment of losses during the Policy year.

**7. CANCELLATION:**

This insurance may be cancelled by the Insured at any time by written notice or by surrender of this Policy.

This insurance may also be cancelled by or on behalf of the Company by delivering to the Insured or by mailing to the Insured, by registered, certified or other first class mail, at the Insured's address as shown on this insurance, written notice stating when, not less than 30 days (10 for non-payment of premium) thereafter, the cancellation shall be effective.

The mailing of such notice as aforesaid shall be sufficient proof of notice and this insurance shall terminate at the date and hour specified in such notice.

If this insurance shall be cancelled by the Insured, the Company shall retain the customary short rate proportion of the premium hereon except that if this insurance is on an adjustable basis, the Company shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein, whichever is the greater.

If this insurance shall be cancelled by or on behalf of the Company, the Company shall retain the pro rata proportion of the premium hereon, except that if this insurance is on an adjustable basis, the Company shall receive the earned premium hereon or the pro rata proportion of any minimum stipulated therein, whichever is greater.

Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**8. NOTIFICATION OF CLAIMS:**

The Insured, upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give immediate written notice thereof to the person(s) or firm named for the purpose in the schedule.

**9. EXCLUSIONS:**

(a) Pollution

Notwithstanding any provision to contrary in any underlying policy whether primary or excess, this Policy does not cover loss or damage caused directly or indirectly by or resulting from release, discharge or dispersal of contaminants or pollutants or the cost of cleaning up polluting and contaminating substances. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(b) Perils Excluded in Item 3 of the Schedule

Notwithstanding any provision to the contrary in any underlying policy whether primary or excess, this Policy does not cover loss or damage caused directly or indirectly by the perils which are specifically excluded in Item 3 of the Schedule.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

The following conditions are added and supersede any provisions to the contrary:

**A. CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** Cancellation For Policies In Effect 90 Days Or Less

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with underwriting requirements established by the insurer.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**7.** Cancellation For Policies In Effect For More Than 90 Days

If this policy has been in effect for more than 90 days, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation for any other reason.

**B. NONRENEWAL**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of the policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**Policy No.:** LHD900392      **Effective:** 4/27/2017

© ISO Properties, Inc., 2006

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CERTIFICATES OF INSURANCE

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

Holders of Certificates of Insurance issued against this policy that are shown as Mortgagees or Loss Payees are added to this policy as their interest may appear as respects the property listed on the certificate.

**Policy No.:** LHD900392          **Effective:** 4/27/2017

RSG 94005 0715

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy. It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.   The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

**Policy No.:  LHD900392        Effective:  4/27/2017**

RSG 94011 0407

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION AND LIMITED ADDITIONAL COVERAGE ELECTRONIC DATA

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

It is agreed that, except as provided in Additional Coverages, below, this policy does not cover Electronic Data.

Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This Paragraph does not apply to your "stock" of prepackaged software.

**Additional Coverages**

Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

This additional coverage applies only if caused by any of the following causes of loss and only in the event that the applicable cause of loss is not otherwise excluded by this policy:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage; earthquake; flood.

a.  Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    (1)  The cost of filling sinkholes; or

    (2)  Sinking or collapse of land into man-made underground cavities.

b.  Falling objects does not include loss or damage to property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c.  Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

This additional coverage also applies to loss caused by a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**Policy No.:** LHD900392    **Effective:** 4/27/2017

The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CANCELLATION CLAUSE

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the address shown in this policy or last known address, written notice, with or without tender of the excess or paid premium above the pro rata premium for the expired time, stating when, not less than sixty (60) days thereafter, or not less than ten (10) days in the event of non-payment  of premiums, such cancellation  shall  be  effective.  The mailing of notice aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice, whether by the Insured or this Company, shall be equivalent to mailing. If the Insured cancels, earned premiums shall be computed in accordance with   the customary short rate table and procedure.  If the Company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made as soon as practicable after cancellation becomes effective.

**Policy No.:** LHD900392     **Effective:** 4/27/2017

RSG 94056 0304

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SCHEDULED LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

## ALL COVERAGE PARTS

It is understood and agreed that the following special terms and conditions apply to this policy:

1. In the event of loss hereunder, liability of the Company shall be limited to the least of the following liability limitation measures in any one "occurrence":

   **a.** The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits; or

   **b.** 100% of the individually stated value for each scheduled item of coverage insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits; or

   **c.** The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy, if, after the application of the limits in **a.** or **b.** above to each scheduled item of coverage which had the loss, the total exceeds such Limit of Liability.

   If no value is shown for a scheduled item then there is no coverage for that item.  Where the loss or "occurrence" involves more than one insured location or scheduled item of coverage, the liability of the Company for each individually scheduled item of coverage shall be measured separately and on a per scheduled item basis.  Nothing herein requires the Company to utilize the same liability limitation measure for all insured scheduled items or insured locations involved in any one "occurrence".  The liability limitation measure to be used by the Company shall be the measure providing the least amount of coverage for each scheduled item individually.  The Company may have no liability after applying the liability limitation measures, applicable deductibles and primary and underlying excess limits.

2. Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or as endorsed on to this policy.

3. The premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy.

The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

When the term "occurrence" applies to a loss or series of losses from the perils of tornado, cyclone, named storm, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours.  When filing a proof of loss the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to occur at any covered location.

**Example:**

The limits shown in the example below apply for this example only and do not reflect the limits in this policy.  The example also assumes there is no coinsurance penalty or other limits involved:

Location 1
Scheduled value – Building
Actual adjusted amount of loss – Building
Scheduled value – Rents
Actual adjusted amount of loss – Rents



Location 2
Scheduled value – Building
Actual adjusted amount of loss – Building

**Policy No.: LHD900392        Effective:  4/27/2017**

Scheduled value – Rents
Actual adjusted amount of loss – Rents 

Limit of Liability on Declarations page

In this example, the total liability of the Company for the Occurrence is limited to $300,000 less applicable deductible(s) and primary and underlying excess limits.  This is because:

1. The liability of the Company on each scheduled item of coverage is limited as follows:

    a. Location 1 Building is limited to $25,000 because the actual adjusted amount of the loss is less than the scheduled value for that item,

    b. Location 1 Rents is limited to $50,000 because the scheduled value is less than the actual adjusted amount of the loss for that item,

    c. Location 2 Building is limited to $200,000 because the scheduled value is less than the actual adjusted amount of the loss for that item, and

    d. Location 2 Rents is limited to $25,000 because the actual adjusted amount of the loss is less than the scheduled value for that item; and

2. The total of the liability limitation measures on each scheduled item of coverage ($25,000 + $50,000 + $200,000 + $25,000 = $300,000) less applicable deductibles is less than the policy's Limit of Liability (in this example) of $1,000,000 per occurrence.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MINIMUM EARNED PREMIUM
# (Insureds with Coastal Property)

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

This endorsement replaces any cancellation provision in regards to refund or return premium calculations if we cancel the policy for non-payment of premium or the First Named Insured cancels or removes a location(s) or coverage(s) from the policy.

If we cancel this policy for non-payment of premium, the First Named Insured cancels, removes a location(s) or removes coverage(s) from this policy, the minimum premium earned for this policy, if cancelled, or for the removed location(s) or coverage(s), will be based on the Schedule below.

| SCHEDULE |
|---|
| Minimum Earned Premium:   80% of the Total Premium excluding Terrorism shown on the COMMON POLICY DECLARATIONS or the Location Premium for the removed location(s), **if coverage for the policy or the removed location(s) was in effect at any time during the period from June 1st to November 30th.** |
| 25% of the Total Premium excluding Terrorism shown on the COMMON POLICY DECLARATIONS or the Location Premium for the removed location(s), **if coverage for the policy or the removed location(s) was NOT in effect at any time during the period from June 1st to November 30th.** |

---

RSG 94095 0512                        **Policy No.: LHD900392**        **Effective:  4/27/2017**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

**A.** The following Exclusion is added:

**EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria**

We will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But if "fungus", wet or dry rot or bacteria results in a "specified covered cause of loss", we will pay for the loss or damage caused by that "specified covered cause of loss".

This exclusion does not apply:

**1.** When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**2.** To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

**B.** The following Additional Coverage is added:

**ADDITIONAL COVERAGE - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** This limited coverage applies only when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence, and only if any loss resulting from the following is reported to us within 60 days of the occurrence.

    **a.** A "specified covered cause of loss" other than fire or lightning; or

    **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

**2.** Under conditions described in item **B.1.** above, we will pay for loss or damage by "fungus", wet or dry rot or bacteria.  As used in this Limited Coverage, the term loss or damage means:

    **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage provided under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property.  If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

**Policy No.:  LHD900392        Effective:  4/27/2017**

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss.  Any such increase in the loss will be subject to the terms of this Limited Coverage.

**C.** The following Definition is added:

    **1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    **2.** "Specified covered cause of loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

        **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

            **(1)** The cost of filling sinkholes; or

            **(2)** Sinking or collapse of land into man-made underground cavities.

        **b.** Falling objects does not include loss or damage to:

            **(1)** Personal property in the open; or

            **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

        **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

**A.  Definitions**

1.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in that Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    a.  The act resulted in  insured  losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.  "Other act of terrorism" means activities against persons, organizations or property of any nature:

    A.  That involves the following or preparation for the following:

        1.  Use or threat of force or violence; or

        2.  Commission or threat of a dangerous act; or

        3.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    B.  When one or both of the following applies:

        1.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        2.  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

    C.  The act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act.

**B.  The following exclusion is added:**

**Exclusion of Certified Acts of Terrorism and the following Other Acts of Terrorism**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism".  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  But with respect to an "other act of terrorism" which may be subject to any underlying policy exclusion, this exclusion applies only when one or more of the following are attributed to such act:

1.  That involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2.  That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

3.  In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**Policy No.: LHD900392       Effective:  4/27/2017**

RSG 96005 0315

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

Your policy has been signed on our behalf by our President and by our Secretary.  However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

President

**RSUI Indemnity Company
Landmark American Insurance Company
Covington Specialty Insurance Company**

Secretary

**RSUI Indemnity Company
Landmark American Insurance Company
Covington Specialty Insurance Company**

*A member of Alleghany Insurance Holdings LLC*

RSG 94001 0916



## Commercial Property

# LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")
175 Berkeley Street; Boston, MA 02116
Toll-free number: 1-800-677-9163

## POLICY DECLARATIONS

**Policy No.:** 1000202527-02

At 12:01 a.m. Standard Time, the Named Insurance Companies shown, (hereinafter referred to as the Company), in consideration of the payment of the premium specified in this policy and subject to each company's percent of participation, the limits of insurance, exclusions, conditions and other terms of this policy [or as may be added by form(s) or endorsement(s)] does agree with you to provide the insurance as stated in this policy.

**Insured's Name & Mailing Address:**

Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc
1400 Broadway
New York, NY 10018

**Policy Period:**

**From:** 04/27/2017          **To:** 04/27/2018

| | |
|---|---|
| **Coverage Part(s):** | Commercial Property |
| **Limit of Liability:** | $7,500,000 (50.00%) part of $15,000,000 per occurrence excess of $10,000,000 per occurrence. Flood is subject to an annual aggregate. |
| **Maximum Limit of Liability:** | $7,500,000 in any one occurrence |
| **Coverage Forms** | LIU Excess Physical Damage Form |
| **Interests Covered:** | Building; Personal Property; Business Income |
| **Perils Insured Against:** | Wind or Hail & Flood |
| **Deductible(s):** | As per Lead Policy |
| **Valuation:** | As per Lead Policy |
| **Coinsurance:** | As per Lead Policy |

**Policy Premium:** $60,000

**Minimum Earned Premium:** 35%

**Minimum Premium endorsement(s) applies.**

**Total Insured Values:** Policy Premium is based on $180,010,000 as respects property and interest covered as of 04/05/2017 reported by the Insured in the application or request of this insurance.

# EXHIBIT
## "C"





LSI-CPD001-0813

**Lead Carrier(s):**   Westchester Surplus Lines Insurance Company
Policy No. D37431849 003

This policy is made and accepted subject to the above statement together with the provisions, stipulations and agreements contained in the form(s) and endorsement(s) made a part of this policy and shown in the **Forms and Endorsement Schedule.**

**Brokerage Firm:**  ALL RISKS, LTD

**Attn:**  Andrew Thompson
275 Scientific Drive
Suite 1500
Norcross, GA 30092

**DATE ISSUED:**  04/26/2017                    **RENEWAL OF:**  1000202527-01

> The Insurer is a surplus lines insurer, is not licensed by the State and is subject to limited regulation.  In the event of insolvency of the Insurer, the insurance is not covered by the State's guaranty fund.  This policy may be subject to surplus lines taxes, stamping fees, surcharges, and certain surplus lines reporting requirements mandated by state regulations.  The Surplus Lines Broker is responsible for the disclosure of all related taxes, surcharges, and fees.  The Surplus Lines Broker is also responsible for the applicable surplus lines reporting requirements including but not limited to the submission of diligent search forms.

**THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS.  THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE INSURANCE DEPARTMENT PERTAINING TO POLICY FORMS.**

**This policy is issued by a surplus lines insurer. In the event of insolvency of the insurer, this insurance is not covered by the Guaranty Fund or Guarantee Association.**

In consideration of the payment of premium and in reliance upon statements made in the application, this policy including all endorsements issued herewith shall constitute the contract between Company and the Named Insured. This policy is valid only if signed below by a duly authorized representative of the company.

This policy, including all endorsements issued herewith, is hereby signed by:

PRESIDENT
Christopher L. Peirce

VICE PRESIDENT and SECRETARY
Mark C. Touhey

05/19/2017
Date

SURPLUS LINES AGENT: Chris B. McGovern
LIC # E043040
10150 York Road, 5th Floor
Hunt Valley, MD 21030
PROD. AGT. _____ Phyllis Walsh_____
Street ___ 101 South Livingston Ave_____
City_____ Livingston _____ Zip ____ 07039 ___
This insurance is issued pursuant to the Florida
Surplus Lines Laws. Persons insured by Surplus
Lines carriers do not have the protection of the
Florida Insurance Guaranty Act to the extent of
any right of recovery for the obligation of an
insolvent unlicensed insurer.
Quarter_____ 2ND 2017_____
Premium____ $60,000.00 _____ Tax ___ $3,001.75 __
Agents Countersignature _____ _____

| | |
|---|---|
| Policy Fee: | $35.00 |
| Inspection Fee: | N/A |
| FL SL Tax: | $3,001.75 |
| FSLSO Service Fee: | $60.04 |
| Hurricane Cat. Fund: | |
| Citizens Assess Fee: | N/A |
| EMPA Surcharge: | N/A |
| FLRES : | $4.00 |
| Total Payable at Inception: | $63,100.79 |

# FLORIDA POLICYHOLDER NOTICE

**LAW AND ORDINACE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

ONE OR MORE OF THE FOLLOWING MAY APPLY TO YOUR POLICY:

A

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

B

**THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

C

**THIS POLICY MAY EXCLUDE WIND THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

PLEASE REVIEW YOUR POLICY CAREFULLY AND CONTACT YOUR LICENSED AGENT IF YOU HAVE ANY QUESTIONS.



# LIBERTY SURPLUS INSURANCE CORPORATION

# COMMERCIAL PROPERTY

In Witness Whereof, we have caused this policy to be signed by its President and Secretary.

PRESIDENT
Christopher L. Peirce

VICE PRESIDENT and SECRETARY
Mark C. Touhey

Liberty Surplus Insurance Corporation



## Commercial Property

# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

The following are the forms attached to and forming a part of this policy:

## FORMS AND ENDORSEMENTS SCHEDULE

Policy Jacket

Commercial Property Policy Declarations LSI-CPD001-0813

Forms and Endorsements Schedule LSI-CPE007-1210

Commercial Property Conditions LSI-CPP001-1113

Asbestos Exclusion LSI-CPE001-1210

Electronic Data Limited Coverage Endorsement LSI-CPE002-1210

Exclusion of Pathogenic or Poisonous Biological or Chemical Materials LSI-CPE010-0111

Priority of Payments Endorsement LSI-CPE031-0814

Excess Limit of Liability Drop Down Clause LSI-CPE020-0814

Fungus, Wet Rot, Dry Rot and Bacteria Limited Coverage Endorsement LSI-CPE003-1210

Minimum Earned Premium (Insureds with Coastal Property) LSI-CPE012-0911 80%

New York Liability State Amendatory Endorsement LE001-NY

Nuclear Reaction or Nuclear Radiation or Radioactive Contamination Exclusion LSI-CPE008-0111

Occurrence Limit of Liability Endorsement LSI-CPE004-0513

Permission for Excess Insurance LSI-CPE005-1210

Pollutant Exclusions LSI-CPE006-1210

U.S Economic and Trade Sanctions Clause OFAC  08/09

Service of Suit Clause SC-9-NY (05/16)

Exclusion of Certified Acts of Terrorism CG 21 73 01 08

Notification of Claims



**Commercial Property**

# LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

## COMMERCIAL PROPERTY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

1. **Cancellation**
   A. **You** may cancel this policy by mailing or delivering to **us** an advanced written notice of cancellation stating when the cancellation shall be effective.
   B. **We** may cancel this policy for any reason by giving **you** written notice of cancellation at least:
      i. 10 days before the date of cancellation if **we** cancel for non-payment of premium; or
      ii. 30 days before the date of cancellation if **we** cancel for any other reasons
   C. The cancellation will be effective even if **we** have not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.
   D. If this policy is cancelled, **we** will send to **you** any refund premium due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund will be 90% of pro rata.

2. **Abandonment**
   You may not abandon property to us.

3. **Appraisal**
   If you disagree with us on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within 60 days after our receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within 30 days of the written demand for appraisal.

   The two appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within 15 days, you or we may petition a judge of a court of record in the state where the covered loss occurred, to select an umpire.

   The appraisers will then set the amount of the loss or damage. If the appraisers submit a written report of an agreement to you and us, the amount they agree on will be the amount of our payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of loss or damage.

   Each party will pay its chosen appraiser and bear the other expenses of the appraisal and umpire equally.

4. **Assignment**
   Your assignment of this policy will not be valued except with our written consent.

5. **Brands and Labels**
   In the event of a covered loss to branded or labeled merchandise, we may choose to take title to all or any part of that merchandise, at the value established by the terms of this policy.



## Commercial Property

You may, at your own expense, stamp "salvage" on the merchandise or its containers, or may remove or obliterate the brands or labels. If such stamp, removal or obliteration will not physically damage the merchandise, but you must re-label the merchandise or containers in compliance with the requirements of law.

6. **Changes**

This policy contains all the agreements between **you** and **us** concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with **our** consent. The policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

7. **Collection from Others**

Payment to you for a covered loss will be reduced to the extent you have collected that loss from others.

8. **Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud by **you** as it relates to this Coverage Part at any time. It is also void if **you**, at any time, intentionally conceal or misrepresent a material fact concerning:

A. This Coverage Part;
B. The Coverage Property;
C. **Your** interest in the Covered Property; or
D. A claim under this Coverage Part.

9. **Control of Property**

Any act or neglect of any person other than **you** beyond **your** direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

10. **Coverage Territory**

Under this Coverage Part the coverage territory is the United States of America, Puerto Rico, Canada, and Virgin Islands.

11. **Examination of Your Books and Records**

We may examine and audit **your** books and records as they relate to this policy at any time during the policy period and up to three years thereafter.

12. **Inspections and Surveys**

A. **We** have the right to:
     i.   Make inspections and surveys at any time;
     ii.  Give you reports on the conditions we find; and
     iii. Recommend changes.
B. **We** are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. **We** do not make safety inspections. **We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And **we** do not warrant that condition:
     i.   Are safe or healthful; or
     ii.  Comply with laws, regulations, codes or standards.
C. Paragraph a. and b. of this condition apply not only to **us**, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
D. Paragraph b. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

LSI-CPP001-1113



## Commercial Property

13. **Legal Action Against Us**
No suit or other legal proceeding shall be brought against us unless there has been full compliance with all the policy terms and conditions. Any suit against us must be brought within one (1) year after the date on which the direct physical loss or damage occurred, or the shortest time permitted by law, whichever is greater.

14. **No Benefit to Bailee**
No person or organization, having custody of **your** insured property, will benefit from this policy.

15. **Notification of Claim**
The insured, upon knowledge of any occurrence likely to give rise to claim for loss or damage as covered shall notify the Company as soon as practicable but no later than one (1) year from Policy expiration.

16. **Other Insurance**
A. If there is any other insurance that would apply in the absence of this policy, **we** will pay for a covered loss only after the limits of all other applicable insurance are exhausted.
B. If this policy is deemed by law to contribute to a loss with other insurance, **we** will pay only our proportionate share of the loss, up to the applicable limit of liability. **Our** share will be the proportion that the applicable limit of liability of this policy bears to the total applicable limits of liability available from all insurance.
C. **You** are permitted to have other insurance over any limits or sublimits of liability specified in this policy.
D. The existence of such insurance will not reduce any limit or sublimit of liability in this policy.
E. To the extent this policy replaces another policy, coverage under this policy shall not become effective until such other policy has terminated.

17. **Our Options**
At our option, we will repair, rebuild or replace damaged insured property with other property of like kind and quality within a reasonable period of time. If we elect to repair or replace the insured property, we will notify you of that decision within 60 days of our receipt of your proof of loss. We will, at our option, take the title to all or any part of the damaged or destroyed property at the agreed or appraised value.

18. **Pair, Sets, or Parts**
In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

A. The cost to repair or replace any part to restore the pair or set to its value before the **covered loss**; or
B. The difference between the value of the pair or set before and after the **covered loss**.
In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

When **insured property** consists of several parts, **we** will pay only for the lost or damaged part.

19. **Payment of Loss**
**We** will pay the **covered loss** within 30 days after **we** receive and accept the signed, sworn Proof of Loss, if:

A. **you** have complied with all the terms of this policy;
B. **we** have reached agreement with **you** on the amount of **covered loss**; or
C. an appraisal award is made as provided for in the APPRAISAL condition of this policy.

20. **Premiums**
The first Named Insured shown in the Declarations:

A. Is responsible for the payment of all premiums; and
B. Will be the payee for any return premiums **we** pay.



## Commercial Property

**21. Preservation of Property**

If it is necessary to move insured property from a covered location to preserve it from loss or damage by a peril insured against, we will pay for the cost of removal and any direct physical loss or damage to that property:

A. While it is being moved or while temporarily stored at another location; but
B. Only if the loss or damage occurs within 10 days after the property is first moved.
C. Payment under this Coverage Extension will not exceed the amount we would have paid if the insured property had not been removed.

Payment under this Coverage Extension will not increase the applicable Limit of Liability.

**22. Requirements in Case of a Loss**

In case of a loss, **you** will:

A. Give **us** immediate written notice of the loss;
B. Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;
C. As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;
D. Take all reasonable steps to preserve and protect the **insured property** from further damage;
E. Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;
F. Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the policy;
G. Keep an accurate record of all repair costs;
H. Keep all bills, receipts and related documents that establish the amount of loss;
I. As often as may reasonably be required:
   i. Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.
   ii. Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.
   iii. Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.
J. Submit to **us**, within 60 days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:
   i. The time and origin of the loss;
   ii. **Your** interest and the interest of all others in the property involved;
   iii. Any other policies of insurance that may provide coverage for the loss;
   iv. Any changes in title or occupancy of the property during the **policy period**, and
   v. The amount of **your** claimed loss.
K. Cooperate with **us** in the investigation and adjustment of the loss.

**23. Salvage and Recoveries**

All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this policy, shall reduce the loss accordingly.

**24. Service of Suit:**

It is agreed that in the event of the failure of this Company hereon to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction with the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

LSI-CPP001-1113



## Commercial Property

It is further agreed that service of process in such suit may be made upon the Company Presidents, or their nominees.  In any suit against any one of them upon this policy, the Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

Company Presidents, or their nominees are authorized and directed to accept service of process on behalf of the Companies in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statue of any state, territory or district of the United States of America, which makes provision therefore, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance of other officer specified for that purpose in the stature or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

25. **Titles of Paragraphs**
    The titles of paragraphs of this policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

26. **Transfer of Rights of Recovery Against Others to Us:**
    If any person or organization to or for whom the Company makes payment under this Coverage Part has rights to recover damages from another, those rights are transferred to **us** to the extent of **our** payment.  That person or organization must do everything necessary to secure **our** rights and must do nothing after loss to impair them.  But **you** may waive **your** rights against another party in writing:

    A.  Prior to a loss to the Insured's Covered Property of Covered Income.
    B.  After a loss to the Insured's Covered Property or Covered Income only if, at time of loss, that party is one of the following:
       i.   Someone insured by this insurance;
       ii.  A business firm:
            (a)  Owned or controlled by **you**; or
            (b)  That owns or controls **you**; or
            (c)  **Your** tenant.
            This will not restrict the Insured's insurance.

27. **Transfer of Your Rights and Duties Under This Policy**
    **Your** rights and duties under this policy may not be transferred without our written consent.

LSI-CPP001-1113



**Commercial Property**

# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASBESTOS EXCLUSION**

The following exclusion is added to the Policy:

Absolute Asbestos Exclusion

This Policy does not apply to any loss, demand, claim, occurrence, direct physical loss or damage, suit or expense arising out of or related in any way to asbestos containing material that is alleged to have contained asbestos. The Company shall have no duty of any kind with respect to any such loss, demand, claim, occurrence, direct physical loss or damage, expense or suit. This exclusion applies to all coverages under this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

LSI-CPE001-1210



**Commercial Property**

# LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ELECTRONIC DATA – LIMITED COVERAGE ENDORSEMENT

This policy does not cover Electronic Data, except as provided below. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This clause does not apply to your "stock" of prepackaged software.

This clause does not cover the cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems.

Subject to the above provisions of this clause, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss which include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type. There is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system

The most will pay under this clause is $10,000 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



**Commercial Property**

## LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION OF PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS

This endorsement modifies insurance provided under the following coverage parts:

We will not pay for loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials.  Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence to the loss.

However, if both A and B below apply, we will pay up to a maximum of $10,000 for any and all claims for such loss or damage arising out of events occurring within the term of this policy:

    a.   the pathogenic or poisonous biological or chemical materials are normally kept at or brought onto your premises, with your consent, for use in your business operations at your premises; and

    b.   The discharge, dispersal, seepage, migration, release, escape or application of the pathogenic or poisonous biological or chemical materials is accidental and is not the result of a willful or malicious act against any persons, organization, or property of any nature.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

LSI-CPE010-0111



## Commercial Property

**LIBERTY SURPLUS INSURANCE CORPORATION**

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| Named Insured: | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| --- | --- |
| Policy Number: | 1000202527-02 |
| Effective Date: | 04/27/2017 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FUNGUS, WET ROT, DRY ROT AND BACTERIA LIMITED COVERAGE ENDORSEMENT

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria. But if "fungus", wet or dry rot or bacteria results in a covered cause of loss, we will pay for the loss or damage caused by that covered cause of loss.

This coverage only applies when the "fungus", wet or dry rot or bacteria is the result of one of more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

1) Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;
2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria;
3) The cost of testing performed after removal, repair, replacement or restoration of the damage property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

This coverage is limited to $10,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of covered causes of loss which take place in a 12 month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $10,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property and any Covered Business Income and/or Extra Expense. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance.

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.


### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**Commercial Property**



Liberty
Surplus Insurance
Corporation

# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MINIMUM EARNED PREMIUM**
**(Insureds with Coastal Property)**

This endorsement modifies insurance provided under the following coverage parts:

ALL COVERAGE PARTS

This endorsement replaces any cancellation provision in regards to refund or return premium calculations if we cancel the policy for non-payment of premium or the First Named Insured cancels or removes a location(s) from the policy.

If we cancel this policy for non-payment of premium or the First Named Insured cancels or removes a location(s) from this policy, the minimum premium earned for this policy, if cancelled, or for the removed location(s), will be based on the Schedule below.

| Schedule |
|---|
| Minimum Earned Premium: |
| <u>80%</u> of the Total Premium excluding TRIA shown on the Common Policy Declarations or the location premium for the removed location(s), if coverage for the policy or removed location (s) was in effect at any time during the period from June 1st to November 30th. |
| |
| <u>35%</u> of the Total Premium excluding TRIA shown on the Common Policy Declarations or the location premium for the removed location (s) if coverage for the policy or removed location (s) was not in effect at any time during the period from June 1st to November 30th. |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

LSI-CPE012-0911



**Commercial Property**

## LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NEW YORK LIABILITY STATE AMENDATORY ENDORSEMENT**

The failure to give notice as prescribed by this policy will not invalidate a claim made by the insured, an insured person, or any other claimant, unless the late notice has prejudiced the insurer.  With respect to a personal injury or wrongful death claim, if the insurer disclaims liability or denies coverage based on a failure to provide timely notice, then the injured person or other claimant may maintain an action directly against the insurer, on the sole question of late notice, unless the insured or the insurer, within 60 days of the disclaimer, initiates an action to declare the rights of the parties under the policy, and names the injured person or other claimant as a party to the action.



## Commercial Property

---

# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| Named Insured: | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
|---|---|
| Policy Number: | 1000202527-02 |
| Effective Date: | 04/27/2017 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NUCLEAR REACTION OR NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION EXCLUSION

1. We will not pay for nuclear reaction or nuclear radiation or nuclear radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or is contributed to or aggravated by a covered cause of loss.  However:

   a. If fire not otherwise excluded results, the Company shall be liable for direct physical loss or damage by such resulting fire, but not including, any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination, and

   b. This policy does insure against physical loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, form material used or stored or from processes conducted on the Insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured premises.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



**Commercial Property**

# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
|---|---|
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

It is understood and agreed that the following special terms and conditions apply to this policy:

1. In the event of loss hereunder, liability of this company shall be limited to the least of the following in any one occurrence:

    a. The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;

    b. 100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest statement of values on file with this company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or

    c. The Limit of Liability section as shown on the Declaration page of this policy or as endorsed to this policy.

2. Coverage under this policy is provided only at the locations listed or described on the latest statement of values on file with this Company or endorsed on to this policy.

3. The premium for this policy is based upon the state of values on file with this Company or attached to this policy.

    The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

    When the term "occurrence" applies to a loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing a proof of loss the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to occur at any covered location.

Less applicable deductible(s).

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**



## Commercial Property

# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PERMISSION FOR EXCESS INSURANCE

A.   Excess Insurance

Permission is granted for you to purchase specific or blanket limits of insurance in excess of the occurrence limit specified in our policy.  The Other Insurance Section of the Commercial Property Conditions of this policy will not apply to such excess insurance.

This policy will be considered as primary insurance to such excess insurance, subject to the maximum limits of insurance provided by our policy.

B.   Coinsurance

The provisions of the Coinsurance Clause contained within the policy are deleted.

C.   Liberalization Clause

The provisions of the Liberalization Clause contained within the policy are deleted.

D.   Salvage of Recoveries

If salvage or recovery is received by us subsequent to payment of a loss, such loss will be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time such loss was originally settled.  Any amounts found to be due either party from the other will be paid promptly.

The expense of all proceedings necessary to such salvage or recovery will be appointed between the interests concerned in the ratio of their respective recoveries as finally settled.  If there should be no salvage or recovery and proceedings are conducted solely by us, the total of all such expenses will be borne by us.

E.   Conflicting Clauses

The clauses in this endorsement will be considered to supersede and annual any similar clauses found in the policy that may be in conflict or contrary to the clauses in this endorsement.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

LSI-CPE005-1210



## Commercial Property

# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| Named Insured: | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
|---|---|
| Policy Number: | 1000202527-02 |
| Effective Date: | 04/27/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**POLLUTANT EXCLUSIONS**

The following exclusions are added to the policy:

Absolute Pollutant Exclusion

This policy does not apply to any loss, direct physical loss or damage, demand, claim, occurrence, expense or suit arising out of or in any way related to pollution including any cost or expense arising out of or in any way related to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing pollution. The company shall have no duty of any kind with respect to any such loss, direct physical loss or damage, demand, claim, occurrence, expense or suit. This exclusion applies to all coverages under this policy.

As used in this exclusion "pollution" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**



**Commercial Property**

# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE**

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

| 1 | 1 |
|---|---|

OFAC 08/09

**Commercial Property**



# LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### SERVICE OF SUIT CLAUSE
### (METHOD OF SUIT IN STATE OF NEW YORK)

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS IN THIS POLICY

The Liberty Surplus Insurance Corporation hereby appoints Corporation Service Company, 80 State Street, Albany, NY 12207 as the true and lawful attorney of Liberty Surplus Insurance Corporation in and for the State of New York upon whom all lawful process may be served in any action, "suit" or proceeding instituted in the State of New York by or on behalf of any insured or beneficiary against the Liberty Surplus Insurance Corporation arising out of the insurance policy to which this provision is attached.

**Commercial Property**



Liberty
Surplus Insurance
Corporation™

## LIBERTY SURPLUS INSURANCE CORPORATION

(A New Hampshire Stock Insurance Company, hereinafter the "Company")

| | |
|---|---|
| **Named Insured:** | Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC; Setai Resort & Residences Condominium Association, Inc |
| **Policy Number:** | 1000202527-02 |
| **Effective Date:** | 04/27/2017 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the con- duct of the United States Government by coercion.

**Important Notice to Our Insureds/Brokers/Agents**

## <u>NOTIFICATION OF CLAIMS</u>

**Upon knowledge of any occurrence likely to give rise to a claim hereunder, "you" must give immediate notice to:**

## Liberty International Underwriters Property Claims Department

**Claim Reporting Email:** <u>EandSClaims@LibertyIU.com</u>

**Commercial Property** 

## LIBERTY SURPLUS INSURANCE CORPORATION
(A New Hampshire Stock Insurance Company, hereinafter the "Company")

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### PRIORITY OF PAYMENTS ENDORSEMENT

It is hereby agreed that in the event of a claim which involves more than one interest and/or coverage and/or peril, it shall be at the sole option of the Insured to apportion recovery under this policy when submitting final proof of loss, subject to the overall amount of claim not exceeding the overall limit of liability contained for any one loss.

For the purpose of attachment of coverage for excess layers, it is further agreed that loss involving any interest and/or peril covered in primary or underlying excess layers, but excluded in higher excess layers, shall be recognized by such excess layers as eroding or exhausting the occurrence limits of the primary and/or underlying excess layer(s).  There is no recovery under this excess policy as respects those coverages which are sublimited within the primary and/or underlying policy(ies) to amounts less than the primary and underlying excess limits.

Notwithstanding the above, losses to locations not covered by this excess policy shall not erode or exhaust underlying policy limits.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

LSI-CPE031-0814



## Commercial Property

## LIBERTY SURPLUS INSURANCE CORPORATION
(A member of Liberty Mutual Group and hereinafter the "Company")

### EXCESS PHYSICAL DAMAGE FORM

**1.   INSURING AGREEMENT:**

Subject to the limitations, terms and conditions contained in this Policy or added hereto, the Company agrees to indemnify the Insured named in the Declarations for direct physical loss or damage to the property described in the Declarations, while located or contained as described in the Declarations, occurring during the period stated in the Declarations and caused by any of such perils as are set forth in the Declarations and which are also covered by and defined by the Policy(ies) specified in the Declarations and issued by the Primary Insurer(s) stated therein.

**2.   LIMIT OF LIABILITY:**

The Company's liability attaches only after the Primary and Underlying Excess Insurer(s) have paid or have admitted liability for the full amount of their respective ultimate net loss liability. The limits of the Company's liability as those set forth in the Declarations and the Company shall be liable to pay up to the full amount of such excess limit.

The maximum recovery in any one occurrence for any coverage(s) or peril(s) subject to a sublimit shall be that sublimit provided by the primary and/or underlying excess policy(ies) and in no event shall the Company be liable for any amounts over the sublimit contained within the primary and/or underlying excess policy(ies) for the coverage(s) or peril(s) to which that sublimit applies.

**3.   APPLICATION OF UNDERLYING PROVISIONS:**

In respect of the coverage(s) or peril(s) hereby insured, this Policy is subject to the same warranties, terms, and conditions (except as regards  the premium, the amount and Limits of Liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any, and except as otherwise provided herein) as are contained in or may be added to the Policy(ies) of the Primary Insurer(s) prior to the happening of a loss for which claim is made hereunder and should any alteration be made in the premium for the Policy(ies) of the Primary Insurers(s), then the premium hereon may be adjusted accordingly.

**4.   MAINTENANCE OF PRIMARY AND UNDERLYING POLICIES:**

The Insured must comply with the following conditions precedent to maintain coverage under this policy:

A.  The "underlying policies" that are in effect at the inception date of this policy must be maintained in full effect during the currency of this policy.

B.  Immediate notice of any replacement, amendments, or changes to the terms, conditions, limits of liability and/or premium for the "underlying policies" shall be made to the Company's authorized representatives by the Insured.

Failure to comply with the above conditions precedent, in whole or in part, will negate the following form nature of this coverage, and this policy will then apply in the same manner as if the original "primary policy" in



# Commercial Property

effect at the time the policy incepted remained in full effect. This policy will apply as though the limits of liability and terms and conditions of the "underlying policies" in effect at the inception of the policy remain in effect and the Insured shall bear all liability resulting from any such decrease in limits of liability or coverage.

5. **UNCOLLECTIBLE INSURANCE:**

In the event that the limits of liability of any "underlying policies" or other insurance are uncollectible, this policy will not drop down or replace such uncollectible limits of liability. This policy shall apply as if the "underlying policies" or other insurance are in force and their limits of liability are collectible. The risk of uncollectibility (in whole and in part) of any other insurance, whether because of financial impairment or insolvency of an underlying or other insurer(s) or for any other reason, is expressly retained by the Insured and is not any way or under any circumstances insured or assumed by the Company.

6. **APPLICATION OF RECOVERIES:**

All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

There is no recovery under this excess policy as respects those coverage(s) or perils(s) which are sublimited within the primary and/or underlying excess policy(ies) to amounts less than or equal to the amount indicated in the Declarations. However, the Company of this excess policy recognize that the primary and underlying excess policy limits can be eroded or exhausted, wholly or partially, by application of said sublimits.

7. **NOTIFICATION OF CLAIMS:**

The Insured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate written notice to the broker or agent of record named for the purpose in the Declarations.

8. **DEFINITIONS:**

    a) Loss: The word "loss" shall mean each and every loss or series of losses arising out of one "loss occurrence".

    b) Ultimate Net Loss: The words "ultimate net loss" shall mean the actual loss sustained by the insured to insured property as a direct result of the perils insured against by the policy(ies) of the Primary and/or the Underlying Excess Insurer(s) limited by:

        1) Any sublimits contained within this policy or the policy(ies) of the Primary and/or Underlying Excess Insurer(s), and

        2) Making deductions for all salvages, recoveries, self-insured retentions and other valid and collectible insurance [other than recoveries under the Policy/ies of the Primary and Underlying Excess Insurer(s)].

    c) Policy Year: The words "policy year" shall be understood to mean the period in the Declarations.

POLICY NUMBER:    EAF786617-17



# COMMON POLICY DECLARATIONS

| AXIS SURPLUS INSURANCE COMPANY<br>111 SOUTH WACKER DRIVE, SUITE 3500<br>CHICAGO, IL 60606 | ALL RISKS, LTD.<br>275 SCIENTIFIC DRIVE, SUITE 1500<br>NORCROSS, GA 30092 |
|---|---|

NAMED INSURED:   Setai Hotel Acquisition, LLC – See Endorsement A
MAILING ADDRESS:   1400 Broadway
New York, NY 10018
POLICY PERIOD:  FROM   April 27, 2017   TO   April 27, 2018   AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

| BUSINESS DESCRIPTION | Hotel and Condominium Tower |
|---|---|

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | PREMIUM |
|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ _____ |
| CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART | $ _____ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ _____ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ _____ |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ _____ |
| EXCESS PROPERTY COVERAGE PART | $ 58,000 |
| CRIME AND FIDELITY COVERAGE PART | $ _____ |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ _____ |
| FARM COVERAGE PART | $ _____ |
| LIQUOR LIABILITY COVERAGE PART | $ _____ |
| POLLUTION LIABILITY COVERAGE PART | $ _____ |
| PROFESSIONAL LIABILITY COVERAGE PART | $ _____ |
| INSPECTION FEE | $ _____ |
| INSURED PURCHASED TRIA TERRORISM COVERAGE ☒NO ☐ YES | $ _____ |
| **TOTAL:** | $ 58,000 |

Premium shown is payable:   $ 58,000   at inception.

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.
This surplus line contract is required to bear the name, address and identification number of the surplus lines agent and the producing agent. EMPA FEE - $4.00

ES 024 0607    **Page 1 of 2**
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

**EXHIBIT "D"**

**FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS):**

01 - AXIS Surplus Common Policy Declarations – ES 024 0607

02 - Notice to Policyholder – ES 115 0106

03 - State Fraud Statements – LI-FS 001 07 15

04 - AXIS Excess Follow Form – ES Excess 0607

05 - Named Insured Schedule – Endorsement A – ES 024 0607

06 - Flood Endorsement - Endorsement B – ES 702 0509

07 - Terrorism Exclusion Endorsement – Endorsement C – AXIS TERROR EXCLUSION 01 06

08 - Exclusion Of Certified Acts Of Terrorism – IL 09 53 01 15

09 - Service of Suit Clause – Florida – Endorsement D – SOS-FL (07-04)

10 - Florida Changes – Cancellation and Nonrenewal – CXL-CL-FL (08-06)

11 - AXIS Surplus Signature Page – ES 020 0607

12 - Claim Notice – ES 036 0512

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**

OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.

ES 024 0607

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

SURPLUS LINES AGENT: Chris B. McGovern
LIC # E043040
10150 York Road, 5th Floor
Hunt Valley, MD 21030
PROD. AGT. _____ Phyllis Walsh _____
Street _____ 101 South Livingston Ave _____
City _____ Livingston _____ Zip _____ 07039 ___
This insurance is issued pursuant to the Florida
Surplus Lines Laws. Persons insured by Surplus
Lines carriers do not have the protection of the
Florida Insurance Guaranty Act to the extent of
any right of recovery for the obligation of an
insolvent unlicensed insurer.
Quarter _____ 2ND 2017
Premium ___ ████████ ___ Tax ███████
Agents Countersignature _____ ~~~~~ ___

Policy Fee: ████
Inspection Fee: N/A
FL SL Tax: ████
FSLSO Service Fee: ████
Hurricane Cat. Fund: _____
Citizens Assess Fee: N/A
EMPA Surcharge:
FLRES _____: ████
Total Payable at Inception: ████

# FLORIDA POLICYHOLDER NOTICE

**LAW AND ORDINACE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

ONE OR MORE OF THE FOLLOWING MAY APPLY TO YOUR POLICY:

A

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

B

**THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

C

**THIS POLICY MAY EXCLUDE WIND THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

PLEASE REVIEW YOUR POLICY CAREFULLY AND CONTACT YOUR LICENSED AGENT IF YOU HAVE ANY QUESTIONS.

**NOTICE TO POLICYHOLDER**

This policy is composed of various forms explaining the insurance coverage provided.  It may also include one or more endorsements.  Endorsements are documents that change the policy.  Endorsements may provide additional coverage to the policy.  Endorsements can also restrict or remove coverage provided in the policy.  THE POLICY SHOULD BE READ CAREFULLY TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

As the context may require, the words "you", "your", "Insured", and "the Insured" refer to the Named Insured shown on the Declarations Page.  The words "we", "us", "our", "Company", "the Company", and "this Company" refer to the Company providing this insurance.



**ES 115 0106**

# STATE FRAUD STATEMENTS

Applicable in Alabama

## Alabama Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison or any combination thereof."

Applicable in Arkansas, Louisiana, Rhode Island, and West Virginia

## Arkansas, Louisiana, Rhode Island, and West Virginia Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Applicable in Colorado

## Colorado Fraud Statement

"It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies."

Applicable in District of Columbia

## District of Columbia Fraud Statement

"Warning: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant."

Applicable in Florida

## Florida Fraud Statement

"Any person who knowingly and with intent to injure, defraud, or deceive any insurer  files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree."

Applicable in Kansas

## Kansas Fraud Statement

"A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows

to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto."

Applicable in Kentucky

### Kentucky Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime."

Applicable in Maine

### Maine Fraud Statement

"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits."

Applicable in Maryland

### Maryland Fraud Statement

"Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Applicable in New Jersey

### New Jersey Fraud Statement

"Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties."

Applicable in New Mexico

### New Mexico Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties."

Applicable in New York

### New York Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."

Applicable in Ohio

### Ohio Fraud Statement

"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."

Applicable in Oklahoma

## Oklahoma Fraud Statement

"WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony."

Applicable in Oregon

## Oregon Fraud Statement

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

In order for us to deny a claim on the basis of misstatements, misrepresentations, omissions or concealments on your part, we must show that:

A. The misinformation is material to the content of the policy;
B. We relied upon the misinformation; and
C. The information was either:
      1. Material to the risk assumed by us; or
      2. Provided fraudulently.

For remedies other than the denial of a claim, misstatements, misrepresentations, omissions or concealments on your part must either be fraudulent or material to our interests.

With regard to fire insurance, in order to trigger the right to remedy, material misrepresentations must be willful or intentional.

Misstatements, misrepresentations, omissions or concealments on your part are not fraudulent unless they are made with the intent to knowingly defraud.

Applicable in Pennsylvania

## Pennsylvania Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

Applicable in Puerto Rico

## Puerto Rico Fraud Statement

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

Applicable in Tennessee, Virginia and Washington

### Tennessee, Virginia and Washington Fraud Statement

"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits."

## AXIS EXCESS FOLLOW FORM

Attached to and forming part of Policy Number:  <u>EAF786617-17</u>

**SCHEDULE**

1.  Total Limit of Liability:  $██████ part of ███████ any one Occurrence.

2.  Scheduled Limit of Liability Provision

    A.  For the purposes of determining the attachment of coverage under this Policy and the amount payable under this Policy, this Policy shall not recognize:

        1.  Covered loss for each type of covered property at a location in an amount greater than the value on the latest Statement of Values on file with the Company for that type of covered property at that location

        2.  Covered loss, damage, cost, claim or expense for each type of time element coverage caused by or resulting from insured direct physical loss or damage to covered property at a location in an amount greater than the value for that type of time element coverage reported on the latest Statement of Values on file with the Company for that location.

    B.  Claims payable under this Policy shall be adjusted as if any Underlying Insurance also contained this provision and were settled accordingly.

    C.  Notwithstanding anything in Sub-paragraph E. Priority of Payments and Sub-paragraph F. Earthquake and Flood Drop Down of Paragraph 6. UNDERLYING INSURANCE CLAUSE to the contrary, for the purpose of determining the attachment of coverage under this Policy and the amount payable under this Policy any amounts paid by any Underlying Insurance, over and above what would have been paid if such insurance contained this provision, shall not be recognized by this Policy as reducing, eroding or exhausting the limits of any Underlying Insurance.

    D.  For the purpose of the application of this provision, location shall mean:

        1.  as specified in latest Statement of Values on file with the Company ; or

        2.  if not so specified, a building, yard, dock, wharf, pier or bulkhead bounded on all sides by public streets, clear land space or open waterways.

    E.  For the purpose of the application of this provision, time element shall mean indirect loss, including, but not limited to, business interruption, business income, extra expense and rents.

3.  Total Limit of Liability of the Underlying Insurance: ████████

4.  Lead Insurance Policy:

    A.  Name of Insurer:  Westchester Surplus Lines Insurance Company
    B.  Policy Number:  D37431849-003
    C.  Limit of Liability: ny one Occurrence

5.  Minimum Earned Premium Percentage:  35%



**COMMERCIAL PROPERTY EXCESS POLICY**

1.  INSURING AGREEMENT

    Subject to the limitations, terms, and conditions contained in this Policy or any endorsement attached hereto, the Company agrees to indemnify the Insured for direct physical loss or damage to covered property at covered locations, occurring during the Policy Period, and caused by covered perils, all as defined or described in the Lead Insurance Policy

    Except as regards the premium, the amount and Limit of Liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any, AND EXCEPT AS OTHERWISE PROVIDED HEREIN, this Policy is subject to the same limitations, terms, and conditions contained in the Lead Insurance Policy and, to the extent that coverage is further limited or restricted thereby, to those contained in any other Underlying Insurance.

2.  SOLE AGENT

    If this Policy insures more than one entity, the first named Insured in this Policy will act as the sole agent on behalf of the others for all of the Insured's obligations and duties in this Policy.

3.  LOSS PAYABLE

    Loss, if any, shall be payable to the Insured, whose receipt shall constitute a release in full of all liability under this Policy with respect to such loss.

4.  TERM OF INSURANCE

    This Policy will begin and end at 12:01 A.M. standard time on the dates shown in the Policy Period.

5.  CONDITIONS OF COVERAGE

    A.  By acceptance of this Policy, the Insured agrees to pay the premium shown in the Policy Declarations and to comply with all the provisions of the Policy.

    B.  The Company may, in its sole discretion, condition its agreement to follow any changes in the Underlying Insurance on the Insured paying any additional premium required by the Company for such change.

        This policy contains all of the agreements between the Insured and the Company concerning this insurance.  The Insured and the Company may request changes to this Policy.  This Policy can be changed only by endorsements issued by the Company and made a part of this Policy.

        Notice to any agent or knowledge possessed by any agent or by any other person other than the Company will not:

        1.  create a waiver, or change any part of this Policy; or

        2.  prevent the Company from asserting any rights under the provisions of this Policy.



6. UNDERLYING INSURANCE CLAUSE

A. Application of Underlying Insurance

Liability of the Company attaches only after direct, physical loss or damage occurs to property covered under this Policy resulting directly from a peril insured under this Policy and:

1. The loss sustained by the Insured arising out of any one Occurrence exceeds the Limit of Liability of the Underlying Insurance as shown in the Schedule of this Policy plus the applicable amount of the deductible(s) or self-insurance retention(s); and

2. The Company(ies) providing Underlying Insurance has paid the full amount of their respective liability.

B. Maintenance of Underlying Insurance

It is a condition precedent to a recovery under this Policy that the Underlying Insurance and the Limit of the Underlying Insurance shall be maintained in full force and effect during the term of this Policy, except for any reduction or exhaustion of any underlying aggregate limit of liability for flood and earthquake, solely by the amount of loss(es) paid during the Policy Period.  Failure to comply with this condition will not invalidate this Policy; however, the Insurer will not be liable under this Policy to any greater extent than it would have been if there had been full compliance with this condition. If any Underlying Insurance is not maintained, the Insured will be deemed to be self-insured for the limit(s) of liability of such Underlying Insurance. Notwithstanding anything to the contrary in this Policy, all coverage under this Policy will be void from its inception in the event that any Underlying Insurance is rescinded by agreement or legal process for fraud or other material misrepresentation by the Insured.

C. Relationship to Sub-limited Coverage

Underlying Insurance may impose a dollar or percentage limit on some aspects of coverage (commonly called a sub-limit) at less than the total limit over which this Policy is excess.  This Company shall not drop down over any such sub-limits and shall always be excess over the maximum limits of the Underlying Insurance.

D. Uncollectibility of Other Insurance

Notwithstanding any of the terms of this Policy, which might be construed otherwise, the insurance provided by this Policy shall always be excess over the maximum monetary limit(s) of the Underlying Insurance.  For purposes of determining attachment of coverage under this Policy, such Underlying Insurance shall not be considered reduced due to the uncollectibility, in whole or part, of any underlying insured amount(s), for any reason, including the financial impairment or insolvency of an Underlying Insurer(s).

The risk of uncollectibility, for any reason, is expressly retained by the Insured and is not in any way or under any circumstances insured or assumed by this Company.

E. Priority of Payments

Except as otherwise provided in this Policy or endorsements attached hereto, for the purpose of determining the attachment of coverage under this Policy and the amount payable under this Policy, any loss, damage, cost, claim or expense excluded by this Policy, but provided by the Underlying Insurance, shall be recognized by this Policy as eroding or exhausting the Limits of



Insurance of the Underlying Insurance.  Nothing herein; however, shall be deemed to extend coverage in this Policy to include such loss, damage, cost, claim or expense.

F.   Earthquake and Flood Drop Down

1.   If flood coverage is endorsed to this Policy, in the event of reduction or exhaustion of the flood aggregate limits of Underlying Insurance due solely from insured direct physical loss or damage to covered property, the flood coverage in this Policy will apply in excess of the reduced flood underlying limit, or if such limit is exhausted, will apply as underlying insurance. In no event, however, shall the Company be liable for flood coverage not specifically provided by the flood endorsement attached to this Policy.  Nor shall this Policy be liable for more than the applicable amount of insurance stated in the flood endorsement to this Policy.

Should this Company's limit(s) for flood drop down over an exhausted underlying amount, the coverage provided under this Policy for direct physical loss or damage caused by flood shall always be subject to the Lead Insurance Policy deductible(s) or $100,000 per Occurrence, whichever is greater.

2.   If earthquake coverage is endorsed to this Policy, in the event of reduction or exhaustion of the earthquake aggregate limits of Underlying Insurance due solely from insured direct physical loss or damage to covered property, the earthquake coverage in this Policy will apply in excess of the reduced underlying limit, or if such limit is exhausted, will apply as underlying insurance.  In no event, however, shall the Company be liable for earthquake coverage not specifically provided by the earthquake endorsement to this Policy.  Nor shall this Policy be liable for more than the applicable amount of insurance stated in the Sublimits of Liability section of this Policy.

Should this Company's limit(s) for earthquake drop down over an exhausted underlying amount, the coverage provided under this Policy for direct physical loss or damage caused by earthquake shall always be subject to the Lead Insurance Policy deductible(s) or ███████ per Occurrence, whichever is greater.

7.   EXCLUSIONS

A.   Earth Movement

This Policy does not insure against loss or damage caused by any of the following, regardless of any other cause or event contributing concurrently or in any other sequence to the loss or damage:

1.   all earth movement (whether occurring naturally or not) including, but not limited to, earthquake, landslide, subsidence and volcanic eruption.

2.   collapse, cracking, shrinking, bulging, expansion, shifting, rising, settling, sinking, lateral or other movement, or other kinds of loss or damage to property which would not have occurred but for an event as described in 1. above.

3.   Tsunami

If fire or explosion is covered by this Policy, this exclusion shall not apply to loss or damage from fire or explosion resulting from 1. through 3. above.



ES EXCESS 0607

B.  Flood

This policy does not insure against loss or damage caused by any of the following, regardless of the cause of such event and regardless of any other cause or event contributing concurrently or in any other sequence to the loss or damage:

1.  Flood, storm surge, surface water, mudslide or mud flow, waves, tidal water or tidal waves, overflow of streams, lakes, reservoirs, canals, drainage ditches, retention ponds or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not (all whether or not naturally occurring),

2.  Damage to, destruction, failure, or overflowing of levees, dams, dikes, floodgates and other similar works,

3.  Water under the ground surface pressing on, or flowing or seeping through:

    a.  Foundations, walls, floors or paved surfaces;

    b.  Basements, whether paved or not; or

    c.  Doors, windows or other openings.

4.  Tsunami

    If fire or explosion is covered by this Policy, this exclusion shall not apply to loss or damage from fire or explosion resulting from 1. through 4. above.

C.  Boiler and Machinery Exclusion

This Policy excludes loss or damage due to:

1.  Explosion in or of any of the following property: steam boilers, including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes connecting any of the foregoing; or gas turbines; except that this exclusion shall not apply to explosion of accumulated gases or unconsumed fuel within the firebox or the combustion chamber of any fired vessel, other than gas turbines, or within the flues or passages which conduct the gases of combustion therefrom

2.  Rupture, bursting, cracking, burning or bulging of any of the following property: steam boilers, including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes connecting any of the foregoing; hot water boilers or other equipment for heating water; pressure vessels, including equipment attached to and forming a part thereof; or gas turbines

3.  Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force

4.  Electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

D.  Special Exclusions

Notwithstanding anything in Sub-paragraph E. Priority of Payments and Sub-paragraph F. Earthquake and Flood Drop Down of Paragraph 6. UNDERLYING INSURANCE CLAUSE to the



contrary, any loss, damage, cost, claim or expense excluded under the following special exclusions but covered by the Underlying Insurance shall not be recognized by this Policy as reducing, eroding or exhausting the limit(s) of such Underlying Insurance.

1.  Fungi Exclusion

    This Policy does not cover:

    a.  Fungi, wet or dry rot, or Bacteria

    b.  Loss or damage caused directly or indirectly by Mold or Other Fungi, wet or dry rot, or Bacteria.

    c.  The costs associated with the enforcement of any ordinance or law which requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of Mold or Other Fungi, wet or dry rot, or Bacteria.

    d.  Any costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

        This Mold or Other Fungi, wet or dry rot, or Bacteria exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

2.  Electronic Exclusion

    This Policy does not insure against loss or damage to, or any cost, claim or expense directly or indirectly arising out of or relating to, any of the following, regardless of any other cause or event contributing concurrently or in any other sequence to the loss, damage, claim or expense:

    a.  Data, Electronic Data, Programs, or Electronic Computer Programs,

    b.  failure of, interruption of, loss of use of, loss of access to, or reduction or alteration in the accuracy, functionality, availability, or operation of Data, Electronic Data, Programs, or Electronic Computer Programs,

    c.  any instruction, including but not limited to any Computer Virus, introduced into, or caused to act upon Computer Operations,

    d.  errors in configuring Computer Operations,

    e.  failure of, interruption of, loss of use of, loss of access to, or reduction or alteration in the accuracy, functionality, availability, or operation of Computer Operations.

        Notwithstanding anything in the above to the contrary, and subject to the other terms and conditions of this Policy not in conflict herewith, this Policy insures against direct physical loss or damage caused by perils or causes of loss insured under this Policy to insured computer hardware and Electronic Data Processing Media.



3.  Pollution Exclusion

    This Policy does not cover any of the following:

    a.  Loss or damage caused by, or resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of Pollutants or Contaminants , however caused

    b.  The expense or cost to extract or remove Pollutants or Contaminants from debris;

    c.  The expense or cost to extract or remove Pollutants or Contaminants from land or water;

    d.  The expense or cost to extract or remove, restore or replace contaminated or polluted land or water;

    e.  The costs associated with the enforcement of any ordinance or law which requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of Pollutants or Contaminants;

    f.  Any cost to transport any property or debris to a site for storage or decontamination required because the property is infected by Pollutants or Contaminants, whether or not such removal, transport or decontamination is required by law, regulation or any authority governing such matters; or

    g.  Any cost to store or otherwise dispose of any property because Pollutants or Contaminants infect the property, or

    h.  Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above

4.  Materials Exclusion

    This Policy does not cover loss or damage caused directly or indirectly by any of the following:

    a.  Removal of asbestos, dioxin, and polychlorinated biphenols from any goods, products, structures or debris;

    b.  Demolition, increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such asbestos, dioxin, and polychlorinated biphenols;

    c.  Any governmental direction or request declaring that such asbestos, dioxin, and polychlorinated biphenols  present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified; or

    d.  Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

5.  Fines or Penalties

    This Policy will not pay any costs, expenses, fines or penalties incurred or sustained by or



imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

6.  Nuclear Exclusion

This Policy does not cover loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused.  This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.  This exclusion applies to all coverage under this Policy notwithstanding any coverage extension or any other endorsement.

7.  Chemical and Biological Exclusion

This Policy does not cover loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical or biological materials or agents that are harmful to property or human health, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy, however such dispersal, application, release or exposure may have been caused.  This exclusion applies to all coverage under Policy notwithstanding any coverage extension or any other endorsement.

8.  LIMIT OF LIABILITY

A.  Total Limit of Liability

The Company shall not be liable for more than the Total Limit of Liability for this Policy as shown on Item 1 of the Schedule in any one Occurrence regardless of the number of Locations or coverages involved.

This Policy or any extensions or endorsements to it may specify limits for certain aspects of coverage and the Company shall not be liable for more than the limit specified.  Such limits are part of and not in addition to the Total Limit of Liability.  Such limits do not increase the Total Limit of Liability or any other limit.

When a Sub-limit is shown as "in the aggregate", the Company's maximum limit of liability will not exceed such limit during the term of the Policy regardless of the number of Occurrences, locations and coverages involved.

The inclusion of more than one Insured shall not increase the liability of the Company.

9.  LOSS PROVISIONS

A.  Assistance and Cooperation of the Insured

The Insured will cooperate with the Company and, upon the Company's request and expense, will attend hearings and trials and will assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting lawsuits.



B. Notification of Loss

The Insured will provide the Company with prompt notice of any claim under any Underlying Insurance or any circumstance that could give rise to a claim under any Underlying Insurance.

C. Settlement and Defense

The Company may, at its sole discretion, elect to participate in the investigation, defense or settlement of any claim under this Policy, regardless of whether the applicable Underlying Insurance has been exhausted.

D. Proof of Loss

1. The Insured shall complete and sign a sworn proof of loss within 90 days after the Occurrence of a loss stating the following:

   a. The time, place, and cause of the loss, the damage or expense, and the interest of the Insured and of all others in the damaged or destroyed property;

   b. The value of the property involved in the loss and the amount of loss, damage or expense; and

   c. All other insurance thereon.

2. The proof of loss requirement for completion within 90 days after the Occurrence of a loss shall not be extended except with the prior written consent of the Company.

E. Salvage and Recoveries

Any salvage or recovery will apply as if recovered or received prior to the loss settlement and any costs or expenses incurred in salvaging or recovering shall be apportioned between the interests of all concerned based on the ratio of their respective recoveries.  If there is no recovery and the expenses are incurred solely by one interest, the costs shall be borne solely by that interest.

10. ADDITIONAL POLICY PROVISIONS

A. Assignment

Assignment or transfer of this Policy will not be valid except with the prior written consent of the Company.

B. Due Diligence Clause

The Insured shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss of or damage to the property insured hereunder.

C. Substitution of Terms And Conditions

If this Policy follows a Lead Insurance Policy or is attached to another policy, the terms and conditions of this Policy and endorsements attached hereto shall determine the coverage afforded by this Policy.



D. Reporting Clause

Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated in the Total Limit of Liability section of this Policy.

E. Statutory Requirements

1. Terms of this Policy, which are in conflict with the statutes of the state wherein this Policy is issued, are amended to conform to the minimum requirements of such statutes.

2. Any provisions required by law to be stated by policies issued by the Company shall be deemed to have been stated herein.

F. Contributing Insurance Clause

1. Permission is granted for other policies written upon the same plan, terms, conditions, and provisions as those contained in this Policy.

2. This Policy will contribute to the total of each loss otherwise payable herein to the extent of the participation of this Policy to the total limit of liability as provided by all such Contributing Insurance Policies, but only in accordance with the terms, conditions, provisions, exclusions, and limitations of this Policy.

G. Excess Insurance Clause

Permission is granted to the Insured to have excess insurance over the Total Limit of Liability set forth in this Policy without prejudice to this Policy, nor will the existence of such insurance, if any, reduce any liability under this Policy.

H. Brands, Labels, and Trademarks

In case of loss or damage by an insured peril to insured property bearing a brand, label, or trademark, and the Company elects to take all or any part of that property, the Insured may, at its own expense:

1. Stamp salvage on the property or its container, if the stamp will not physically damage the property; or

2. Remove the brand, label, or trademark, if doing so will not physically damage the property. The Insured must re-label the property or its container to comply with the law.

I. Cancellation

1. This insurance may be canceled by the Insured at any time by written notice or by surrender of this Policy.  This insurance may also be canceled by the Company by delivering or mailing to the Insured written notice by registered, certified or other first class mail, at the Insured's last mailing address as shown on or endorsed to this insurance Policy.  Notice of cancellation will state the effective date of cancellation, not less than **30** days, 10 days for non-payment of premium.

2. The mailing of such notice shall be sufficient proof of notice and this insurance Policy shall terminate at the date and hour specified in such notice.



3.  If this insurance is canceled by the Insured, the Company will retain the customary short rate proportion of the premium hereon except if this insurance is on an adjustable basis, the Company shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein, whichever is the greater.

4.  Payment of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

5.  If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended to be equal to the minimum period of limitation permitted by such law.

J.  Titles of Paragraphs

The titles of the various paragraphs in this Policy and of any endorsements and supplemental contracts, if any, now and hereafter attached to this Policy are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

K.  Terms

Nouns and pronouns used in this Policy and any endorsements or supplemental contracts, if any, now and hereafter attached to this Policy are deemed to refer to the masculine, feminine, neuter, singular, and plural, as the context may require.

L.  Misrepresentation & Fraud

This entire Policy shall be void if, whether before or after a loss, the Insured has willingly` concealed or misrepresented any material fact or circumstance concerning this insurance of the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

M.  Minimum Earned Premium

In the event of:

1.  cancellation of this Policy by the Insured or

2.  failure of the Insured to make timely payment of premium

the product of the percentage indicated in the Minimum Earned Premium Percentage section of the Schedule  times the original policy premium shall become earned; any conditions of the Policy to the contrary notwithstanding.

11. DEFINITIONS

A.  Company means the insurance company listed on the Common Policy Declarations.

B.  Lead Insurance Policy means the primary policy of insurance identified in Item 4 of the Commercial Property Schedule.

C.  Limit of Liability of the Underlying Insurance means the limits of liability set forth in Item 3 of the Schedule.



D.   Insured means the insured designated on the Common Policy Declarations.

E.   Occurrence means, except as may be more specifically defined by peril, all loss, expense or damage that is attributable directly or indirectly to one cause, event, incident or repeated exposure to the same cause, event or incident, or to one series of similar causes, events, incidents or repeated exposures to the same cause, event or incident.  All such loss, damage or expense will be treated as one Occurrence irrespective of the period of time, area or number of locations over which such loss, damage or expense occurs.

F.   Policy Period means the period designated on the Common Policy Declarations.

G.   Underlying Insurance consists of the Lead Insurance Policy and any other policy(ies) that affords coverage to the Insured for the covered property and is written for limits for which this Policy is excess, whether or not specifically listed in Item 3 of the Schedule.  The Underlying Insurance Policy(ies) is (are) the first policy(ies) of property insurance to respond to a claim in the event of loss or damage covered under this Policy.

H.   Mold or Other Fungi means:

1.   any type or form of mold or mildew;

2.   any other type or form of fungus; or

3.   any mycotoxin, spore, scent or byproduct that is produced or released by such mold, mildew or other fungus.

I.   Bacteria means:

1.   any type or form of bacterium; or

2.   any byproduct that is produced or released by such bacterium.

J.   Pollutants or Contaminants means:

1.   Any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

2.   Pollutants or Contaminants include, but are not limited to those materials that can cause or threaten damage to human health or human welfare or cause or threaten damage, deterioration, loss of value, marketability or loss of use to property including Bacteria, fungi, mold, mildew, virus or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency or any other governing authority.

K.   Computer Operations means Computer Systems or Electronic Data Communications System

L.   Computer Systems means computer hardware of any kind; Electronic Computer Programs; Electronic Data Processing Media; Electronic Data; operating system; media microchip; microprocessors (computer chips); integrated circuit or similar device; computer network and networking equipment; firmware; servers; web sites; Extranet; and all input, output, processing, storage, and off-line media libraries.



**Pg. 12 of 13**                    **ES EXCESS 0607**

M.  Computer Virus means any corrupting, harmful or otherwise unauthorized instructions or code including, but not limited to, any maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature.  Computer Virus includes, but is not limited to, 'Trojan Horses', 'worms' and 'time or logic bombs'.

N.  Data means information or knowledge

O.  Electronic Data Communications System means any communication system, including Computer Systems and the Internet, which provides the Insured with access to other Computer Systems, microchips, integrated circuits or similar devices in non-computer equipment, or which provides any party access to the Insured's Computer Systems, microchips, integrated circuits or similar devices in non-computer equipment.

P.  Electronic Data Processing Media means punch cards, paper tapes, floppy disks, CD-ROM, hard drives, magnetic tapes, magnetic discs or any other tangible personal property on which Electronic Data or Electronic Computer Programs are recorded or transmitted, but not the Electronic Data or Electronic Computer Programs themselves.  Money or Securities are not Electronic Data Processing Media.

Q.  Electronic Data means Data recorded or transmitted in a form usable in   Computer Systems, microchips, integrated circuits or similar devices in non-computer equipment, and which can be stored on Electronic Data Processing Media for use by Electronic Computer Programs.

R.  Extranet means an internal computer network that has been selectively opened to suppliers, customers, or other third parties via the Internet or otherwise.

S.  Internet means the worldwide publicly accessible network of computers, which is commonly referred to as "The Internet" or "World Wide Web", or any other similar publicly accessible network hereafter to be developed.

T.  Media means any item of tangible personal property on which Data or Programs can be recorded, but not the Data or Programs themselves.  Money or Securities are not Media.

U.  Money means currency, coins, bank notes and bullion; and travelers checks, register checks and money orders held for sale to the public.

V.  Securities means all negotiable and nonnegotiable instruments or contracts representing either Money or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include Money.



| Named Insured | | Endorsement Number |
|---|---|---|
| Setai Hotel Acquisition, LLC – See Endorsement A | | A |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF786617-17 | 04/27/2017   to   04/27/2018 | 04/27/2017 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 04/27/2017 |

**This Endorsement Changes The Policy.  Please Read It Carefully.**

**<u>NAMED INSURED SCHEDULE</u>**

The Named Insured section of the Common Policy Declarations is deleted in its entirety and replaced by:

Setai Hotel Acquisition, LLC

Abbey Hotel Acquisition, LLC

Setai Resort & Residences Condominium Association, Inc.



ES 109 0107

| Named Insured | | Endorsement Number |
|---|---|---|
| Setai Hotel Acquisition, LLC – See Endorsement A | | B |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF786617-17 | 04/27/2017    to    04/27/2018 | 04/27/2017 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 04/27/2017 |

**This endorsement changes the policy.  Please read it carefully.**

### FLOOD ENDORSEMENT

1.   COVERAGE

Subject to the terms and conditions of the Policy to which this endorsement is attached, this Policy is extended to cover direct physical loss or damage to covered property caused by Flood as defined herein.

2.   LIMIT

A.   Liability for all losses, per Occurrence and in the aggregate, as insured against by this endorsement shall not exceed $10,000,000 part of $10,000,000 any one Occurrence and in the aggregate excess of the Total Limit of Liability of the Underlying Insurance, as shown in the Schedule of this Policy, any one Occurrence and in the aggregate, but not to exceed the following sub-limit(s), which are part of and not in addition to this limit:

1.   $10,000,000 part of $10,000,000 any one Occurrence and in the aggregate excess of the Total Limit of Liability of the Underlying Insurance, as shown in the Schedule of this Policy, any one Occurrence and in the aggregate, for all losses caused by or resulting from physical loss or damage to locations wholly or partially in a High Hazard Flood Zone

2.   $ part of $ any one Occurrence and in the aggregate excess of the Total Limit of Liability of the Underlying Insurance, as shown in the Schedule of this Policy, any one Occurrence and in the aggregate, for all losses caused by or resulting from physical loss or damage to locations wholly or partially in areas designated by the Federal Emergency Management Agency to be in Zone B or Shaded X.

This limit is part of, and not in addition to the Total Limit of Liability of this Policy as shown in the Schedule of this Policy.

If a sub-limit is shown as No Coverage, it means that no such coverage is provided regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.



ES 702 0509

3. ADDITIONAL PROVISIONS

A. Each loss caused by Flood shall constitute a single claim payable under this Policy. All losses caused by Flood within a 72-hour period shall be deemed a single Occurrence within the meaning of this Policy. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to covered property occurs.

B. The Company will pay for direct physical loss or damage caused by Flood occurring for a period of up to 72-hours after the expiration of this Policy provided that the first Flood loss or damage occurs prior to the date and time of the expiration of this Policy.

C. This endorsement does not insure any loss or damage caused by any Flood commencing before the effective date and time of this policy nor commencing after the expiration date and time of this policy.

D. This endorsement does not increase any amounts or limits of insurance provided by this policy.

E. This endorsement does not insure against loss or damage to retaining walls, seawalls, bulkheads, wharves, piers, bridges, docks or other structures located on or partially over water, or personal property in the open.

4. DEFINITIONS

A. The term Flood shall mean:

1. Storm surge, Surface water, waves or tidal water, and the rising (including the overflow or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams or similar bodies of water, whether driven by wind or not.

2. Mudslide or mudflow;

3. Water that backs up from any sewer or drain;

4. Any release of water impounded by a dam;

5. Tsunami

B. High Hazard Flood Zone means areas which at time of loss or damage have been designated by the Federal Emergency Management Agency to be in an area having special flood, mudflow, or flood-related erosion hazards, and shown on a Flood Hazard Boundary Map or a Flood Insurance Rate Map as Zone A, AO, A1-A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1-A30, V1-V30, VE, or V.



**ES 702 0509**

5. SPECIFIC TERMS AND CONDITIONS

A provision applies if an "X" appears in the box along side it.

   A.  ☐ Basement Exclusion

This endorsement does not insure against loss or damage to any property located in a basement or below the surface of the ground.  The term basement shall mean any area of a structure having its bottom surface, whether floored or not, sub-grade (below ground level on all four sides of such structure).

   B.  ☐ No High Hazard Flood Erosion of Underlying Limits

For the purpose of determining the attachment of coverage under this Policy and the amount payable under this Policy, any loss, damage, cost, claim or expense directly or indirectly arising out of or relating to physical loss or damage to property at locations partially or wholly located within a High Hazard Flood Zone caused by or resulting from Flood shall not be recognized by this Policy as eroding or exhausting the Limits of Insurance of the Underlying Insurance.



**ES 702 0509**

# *TERRORISM EXCLUSION ENDORSEMENT*

| Named Insured | | Endorsement Number |
|---|---|---|
| Setai Hotel Acquisition, LLC – See Endorsement A | | C |

| Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|
| EAF786617-17 | 04/27/2017 to 04/27/2018 | 04/27/2017 |

| Issued by | Endorsement Issue Date |
|---|---|
| AXIS Surplus Insurance Company | 04/27/2017 |

**This Endorsement Changes Your Policy.  Please Read It Carefully.**

A.  The following exclusion is added:

Any other provision of this policy notwithstanding, this insurance does not cover loss, damage, injury, expense, cost or legal obligation directly or indirectly resulting from or arising out of or in any way related to any:

1. "Terrorism Act"; or

2. Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Terrorism Act."

This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in any sequence to the loss, damage, injury, expense, cost or legal obligation.

This exclusion applies whether or not the "Terrorism Act" was committed in concert with or on behalf of any organization or government.

B. As used in this endorsement:

"Terrorism Act" means any act, preparation in respect of action or the threat of action that:

1. Involves violence or is dangerous to human life or tangible or intangible property (including electronic, communications, information or mechanical systems or infrastructure), and

2. Reasonably appears to be intended, in whole or in part, to:

a. Intimidate or coerce a civilian population or any segment of a civilian population; or
b. Disrupt any segment of the economy of one or more nations; or

c. Overthrow or influence the policy or conduct of a government; ord. Respond to any governmental action or policy. "Terrorism Act" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

"Terrorism Act" includes the intentional dispersal or application of pathogenic, or poisonous biological or chemical materials and shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this policy

POLICY NUMBER: EAF786617-17                                                          **IL 09 53 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> STANDARD PROPERTY POLICY

## SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C)** applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| CA, GA, ME, HI, IA, IL, MO, NC, NJ, NY, OR, RI,   VI, WA, WI, WV | |
| | |
| | |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

© Insurance Services Office, Inc., 2015

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

© Insurance Services Office, Inc., 2015

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

| Named Insured | Endorsement Number |
|---|---|
| Setai Hotel Acquisition, LLC – See Endorsement A | D |

| Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|
| EAF786617-17 | 04/27/2017 to 04/27/2018 | 04/27/2017 |

| Issued by |
|---|
| AXIS Surplus Insurance Company |

**This Endorsement Changes The Policy.  Please Read It Carefully.**

<u>**SERVICE OF SUIT CLAUSE - FLORIDA**</u>

    The Company hereby designates the Chief Financial Officer of the Florida Office of Financial Regulation and his or her successors, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or by any beneficiary under this Policy against the Company arising out of this Policy, provided that all lawful process received by said Chief Financial Officer or his or her successors, is sent by certified or registered mail to the Company at:

                AXIS U.S. Insurance
                Attn:  Claims Administrator
                11680 Great Oaks Way
                Suite 500
                Alpharetta, GA  30022

    Service of process in any such action will also be valid if served upon any person in the State of Florida who, on behalf of the Company, solicits insurance within the State of Florida; makes, issues or delivers insurance policies within the State of Florida; or collects or receives any premiums or other consideration for the Company.

    Service of process shall be deemed to be proper and lawful when in compliance with Florida Statutes, Surplus Lines Law, Section 626.907.

SOS-FL (07-04)

CXL-CL-FL (08-06)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

Any **Cancellation** or **Nonrenewal** provision in this policy is replaced by the following. If the policy does not contain a **Cancellation** and/or **Nonrenewal** provision, the following is added to the policy:

**A. Cancellation**

  **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

  **2.** Cancellation For Policies In Effect 90 Days Or Less

  **a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

    **(a)** A material misstatement or misrepresentation; or

    **(b)** A failure to comply with underwriting requirements established by the insurer.

  **b.** We may not cancel:

   **(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

   **(2)** On the basis of filing of claims for partial loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

    **(a)** The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

    **(b)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

   **(3)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

  **3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

  **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

  **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

   If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will refund any premium within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

   The cancellation will be effective even if we have not made or offered a refund.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**7.** Cancellation For Policies In Effect For More Than 90 Days

    **a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

        **(1)** Nonpayment of premium;

        **(2)** The policy was obtained by a material misstatement;

        **(3)** There has been a failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

        **(4)** There has been a substantial change in the risk covered by the policy;

        **(5)** The cancellation is for all insureds under such policies for a given class of insureds;

        **(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

        **(7)** On the basis of filing of claims for partial loss caused by sinkhole damage, or on the basis of the risk associated with the occurrence of such a claim, if:

            **(a)** The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

            **(b)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

        **(8)** On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

    **b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

        **(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

        **(2)** 45 days before the effective date of cancellation if:

            **(a)** Cancellation is for one or more of the reasons stated in **7.a.(2)** through **7.a.(8)** above; and

            **(b)** This policy does not cover a residential structure or its contents; or

        **(3)** 90 days before the effective date of cancellation if:

            **(a)** Cancellation is for one or more of the reasons stated in **7.a.(2)** through **7.a.(8)** above; and

            **(b)** This policy covers a residential structure or its contents.

**B. NONRENEWAL**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

    **a.** 90 days prior to the expiration of the policy if this policy covers a residential structure or its contents; or

    **b.** 45 days prior to the expiration of the policy for all other policies.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** We may not refuse to renew this policy:

    **a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

    **b.** On the basis of filing of claims for partial loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may refuse to renew this policy if:

        **(1)** The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**C. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property:**

**1.** The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

**a.** Except as provided in **C.1.b.,** we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 90 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

**b.** We may cancel or nonrenew the policy prior to restoration of the structure, for any of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Material misstatement or fraud related to the claim;

**(3)** We determine that you have unreasonably caused a delay in the repair of the structure; or

**(4)** We have paid the policy limits.

If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel for a reason listed in **b.(2), b.(3)** or **b.(4),** we will give you 45 days' notice.

**2.** With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

**3.** With respect to **C.2.,** a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC, and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and Secretary to be affixed hereto, and has caused this policy to be signed on the Declarations Page by an authorized representative of the Company.

**Axis Surplus Insurance Company**

Carlton W. Maner
President

Andrew Weissert
Secretary



## <u>CLAIM NOTICE</u>

To report a new claim notice/loss, please notify:

**AXIS U.S. INSURANCE**

During business hours of 8:30 AM EST to 4:30 PM EST.

**Mailing Address**
PO Box 4470
Alpharetta, GA 30023

**Shipping Address**
11680 Great Oaks Way
Suite 500
Alpharetta, GA  30022

**Phone:**            (678) 746-9400
**Fax:**               (678) 746-9315
**Toll Free Fax:** (866) 770-5629
**E-mail:**           USClaimNoticeATL@axiscapital.com

**After business hours**
Please contact Cunningham Lindsey at 1-800-621-5410.



**ES 036 0512**

**EVEREST INDEMNITY INSURANCE COMPANY**
Everest Indemnity Insurance Company
c/o Mt.McKinley Managers L.L.C.
Westgate Corporate Center
477 Martinsville Road.
PO BOX 830
Liberty Corner, NJ, 07938-0830



## COMMON POLICY DECLARATIONS

| | |
|---|---|
| **Policy Number :** CA3X000840-171 | |
| **Renewal of Number :** CA3X000840-161 | |

| **Item 1. Named Insured and Mailing Address** | **Broker Name and Address** |
|---|---|
| Abbey Hotel Acquisition LLC | **ALL RISKS - NORCROSS** |
| **(See Schedule of Named Insureds)** | **275 Scientific Drive,Suite 1500** |
| **1400 Broadway** | **Norcross, GA 30092** |
| **New York, NY 10018** | **Broker No. C3066** |

| **Item 2. Policy Period:** | **From: 4/27/2017** | **To: 4/27/2018** |
|---|---|---|
| | at 12.01 A.M., Standard Time at your mailing address shown above. | |

**Item 3. Business Description:  Corporation**

**Item 4.**  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This Policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This Premium may be Subject to adjustment.

| **Coverage Part(s)** | **Premium** |
|---|---|
| Property Excess Coverage | ███ |
| | |
| **Premium Payable to Insurer** | ███ |
| Taxes, Surcharges or Fees | $ |
| **Total Cost** | ███ |

**Item 5. Forms and Endorsements**

Forms(s) and Endorsement(s) made a part of this policy at time of issue : see EDEC 568 0606.

**Item 6. Claims Organization**

Notice of claim or circumstances which may give raise to claim shall be given in writing to:

Engle Martin and Associates Inc

5180 Roswell Rd

Suite N-200

Atlanta, GA 30342

678-553-3800 Phone

678-553-3801 Fax

888-239-7872 Toll Free

Email: Claims@emcas.com

**AUTHORIZED REPRESENTATIVE**
(or countersignature where applicable)

THIS COMMON POLICY DECLARATIONS AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS,  COVERAGE PART(S), COVERAGE FORM(S), AND FORMS AND ENDORSEMENTS, IF ANY,  COMPLETE THE ABOVE NUMBERED POLICY.

EDEC 101 07 00

**EXHIBIT
"E"**

SURPLUS LINES AGENT: Chris B. McGovern
LIC # E043040
10150 York Road, 5th Floor
Hunt Valley, MD 21030
PROD. AGT. _____Phyllis Walsh_____
Street _____101 South Livingston Ave_____
City_____Livingston_____ Zip _____07039_____
This insurance is issued pursuant to the Florida
Surplus Lines Laws. Persons insured by Surplus
Lines carriers do not have the protection of the
Florida Insurance Guaranty Act to the extent of
any right of recovery for the obligation of an
insolvent unlicensed insurer.
Quarter_____2ND 2017_____
Premium___█████████___ Tax __██████___
Agents Countersignature _____[signature]____

Policy Fee: _____███
Inspection Fee: ____███
FL SL Tax: _____███
FSLSO Service Fee: __███
Hurricane Cat. Fund: _____
Citizens Assess Fee: ___███
EMPA Surcharge: _____███
FLRES_____: __███
Total Payable at Inception: ███████

# FLORIDA POLICYHOLDER NOTICE

**LAW AND ORDINACE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

ONE OR MORE OF THE FOLLOWING MAY APPLY TO YOUR POLICY:

A

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

B

**THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

C

**THIS POLICY MAY EXCLUDE WIND THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

PLEASE REVIEW YOUR POLICY CAREFULLY AND CONTACT YOUR LICENSED AGENT IF YOU HAVE ANY QUESTIONS.

THIS ENDORSEMENT CLARIFIES THIS POLICY. PLEASE READ CAREFULLY.
**EVEREST INDEMNITY INSURANCE COMPANY**

ADJ. NO.

| NAMED INSURED | Effective DATE | POLICY NUMBER |
|---|---|---|
| Abbey Hotel Acquisition LLC (see schedule of Named Insured) | 04/27/2017 | CA3X000840-171 |

| | COUNTERSIGNED BY: |
|---|---|
| IF THIS ENDORSEMENT IS LISTED IN THE POLICY DECLARATIONS, IT IS IN EFFECT FROM THE TIME COVERAGE UNDER THIS POLICY COMMENCES.  OTHERWISE, THE EFFECTIVE DATE OF THIS ENDORSEMENT IS AS SHOWN ABOVE AT THE SAME TIME OR HOUR OF THE DAY AS THE POLICY BECAME EFFECTIVE. | _____<br>AUTHORIZED REPRESENTATIVE |

THIS ENDORSEMENT IS USED AS AN OVERFLOW FOR FIELDS ON THE DECLARATIONS PAGE NOT LARGE ENOUGH FOR THE NECESSARY INFORMATION AND TO LIST OPTIONAL COVERAGES.

# CLAIM ORGANIZATION
IMPORTANT-DO NOT DISCARD
KEEP WITH INSURANCE DOCUMENTS

## What to do in the event of a PROPERTY loss??

The following guide has been created to assist you when a covered loss has occurred.

To ensure you receive expedient claim service Everest has partnered with third party administrator Engle Martin & Associates to administer your claim.

Engle Martin has established **a 24 hour toll free number** to assist in your CLAIM NEEDS.

# IMMEDIATELY FOLLOWING A LOSS WE ASK THAT YOU CALL
# 888-239-7872
A CLAIM PROFESSIONAL IS AVAILABLE 24 HOURS A DAY

PROMPT CLAIM REPORTING MAY HELP REDUCE THE COST OF YOUR CLAIM AND MAY ALSO ENSURE ANY RESPONSIBLE PARTY CAN BE EFFECTIVELY PURSUED.

Notice of claim or circumstances which may give rise to a claim shall be given in writing to:

Engle Martin & Associates Inc
5180 Roswell Rd
Suite N-200
Atlanta, GA 30342

Phone – 678-553-3800
Fax – 678-553-3801
Toll Free – 888-239-7872

Email: claims@emcas.com

Failure to report a claim in accordance with the terms and conditions of your insurance policy may result in that claim not being covered under the policy.  The FOLLOWING steps are recommendations to assist both you and Everest in the handling of your claim and do not in any way limit your obligation to fully comply with the terms and conditions set forth in your policy contract.

# *EVEREST*

## PLEASE FOLLOW THE FOLLOWING STEPS IMMEDIATELY AFTER A LOSS

### Preserve and Safeguard the loss scene

Until such time you receive formal notice from Everest/Engle Martin to release the scene. Preservation of a loss site encompasses the following:

- ✓ No unauthorized parties should be allowed access to the loss site. If emergency efforts are required, it is imperative that the loss scene be minimally impacted during those efforts
- ✓ Emergency temporary board up
- ✓ Emergency temporary perimeter fencing
- ✓ retention of a security company when necessary

### Retention of any and all evidence

Whenever possible, do not make nor have any repairs made until an inspection can be made. Many times immediate repairs are required. If so, it is crucial that **any and all parts** repaired or replaced **be retained and safeguarded until further notice.** In addition, please retain a copy of the repair invoice.

Everest is committed to providing you the best possible claim experience. Your assistance in this process will ensure your claim is promptly and effectively handled.

This policy is signed by officers of the Company shown on the Declarations page of this policy.

For:        Everest Indemnity Insurance Company

_____          _____
President                                        Secretary

EIL 00 502 03 07            © Everest Reinsurance Company, 1997

# COMMERCIAL PROPERTY EXCESS COVERAGE FORM
# DECLARATIONS PAGE

**POLICY NO.:  CA3X000840-161**                          **EFFECTIVE DATE: 4/27/2017**

**NAMED INSURED:  Abbey Hotel Acquisition LLC**   (See Schedule of Named Insureds)

| | |
|---|---|
| **YOUR RETAINED LIMIT** | **$35,000,000** |
| **EACH OCCURRENCE LIMIT OF COMMERCIAL PROPERTY EXCESS INSURANCE** | **$15,000,000 Part of $15,000,000** |

**LOCATIONS AND VALUES**

**See Schedule of Locations and Values**

**FORMS APPLICABLE:**

**EDEC 101 07 00 - Common Policy Declarations**
**EIL 00 502 03 07 - Company Signature Page**
**EDEC 568 06 06 - Commercial Property Excess Coverage Form Declarations Page**
**EDEC 567 06 06 - Schedule of Locations and Values**
**EIL 00 503 07 02 - Common Policy Conditions**
**EIL 00 591 09 12 - Minimum Earned Premium - Coastal Properties**
**EIL 01 510 07 08 - Pollution Changes**
**EIL 02 529 04 11 - Florida Changes - Cancellation and Nonrenewal**
**IL 01 75 09 07 - Florida Changes - Legal Action Against Us**
**IL 09 35 07 02 - Exclusion of Certain Computer-Related Losses**
**IL 09 53 01 15 - Exclusion of Certified Acts of Terrorism**
**ILU 003 05 89 - Schedule of Named Insured**
**CP 00 90 07 88 - Commerical Property Conditions**
**CP 01 25 02 12 - Florida Changes**
**ECP 00 534 05 06 - Commercial Property Excess Coverage Form**
**ECP 10 508 06 06 - Exclusion - Asbestos**
**ECP 10 510 06 06 - Exclusion - Earth Movement**
**ECP 10 525 08 10 - Exclusions Amendment - Coverage for Windstorm or Hail Only**
**ECP 12 501 10 10 - Amendment - Other Insurance Condition**
**ECP 12 502 05 06 - Deletion of Liberalization Condition**
**ECP 14 501 06 06 - Additional Property Not Covered for Windstorm or Hail**
**ECP 99 501 05 06 - Definition of Occurrence**

Copyright, Everest Reinsurance Company, 2006
Includes copyrighted material of ISO Properties, Inc. used with permission

**COMMERCIAL PROPERTY**
**EDEC 568 06 06**

## SCHEDULE OF UNDERLYING INSURANCE

**FIRST UNDERLYING INSURANCE COMPANY**

**Name:**   Westchester Surplus Lines Insurance Company

**Policy No.:**  D37431849 003

**Policy Period:**  4/27/2017   –   4/27/2018

**Limits of Insurance:**  $10,000,000 Part of $10,000,000 Excess Of $0 Per Occurrence

**OTHER UNDERLYING INSURANCE COMPANY(IES)**

**Name:**   Landmark American Insurance Company

**Policy No.:**  LHD395619

**Policy Period:** 4/27/2017   –   4/27/2018

**Limits of Insurance:**   $7,500,000 Part of $15,000,000 Excess Of $10,000,000 Per Occurrence

**Name:**  Liberty Surplus Lines Insurance Company

**Policy No.:** 1000202527-02

**Policy Period:** 4/27/2017   –   4/27/2018

**Limits of Insurance:** $7,500,000 Part of $15,000,000 Excess Of $10,000,000 Per Occurrence

**Name:**  Axis Surplus Insurance Company

**Policy No.:**  EAF786617-17

**Policy Period:** 4/27/2017   –   4/27/2018

**Limits of Insurance:**  $10,000,000 Part of $10,000,000 Excess Of $25,000,000 Per Occurrence

**Name:**

**Policy No.:**

**Policy Period:**             –

**Limits of Insurance:**

**Name:**

**Policy No.:**

**Policy Period:**             –

**Limits of Insurance:**

# SCHEDULE OF LOCATIONS AND VALUES

POLICY NO.: **CA3X000840-161**                    EFFECTIVE DATE: **4/27/2017**

NAMED INSURED   **Abbey Hotel Acquisition LLC**   (See Schedule of Named Insureds)

☐ **See attached Statement of Locations and Values dated:**

| Loc.No. | Location Description | B | YBPP | Other | BI |
|---------|---------------------|---|------|-------|-----|
| 1-1 | 2001 Collins Ave - Hotel, Miami, FL, 33139 | 36,900,000 | 3,500,000 | 0 | 36,100,000 |
| 2-1 | 2001 Collins Ave - Spa Fitness Center, Miami, FL, 33139 | 1,810,000 | 500,000 | 0 | 0 |
| 3-1 | 2001 Collins - Restaurant Bar, Miami, FL, 33139 | 1,500,000 | 500,000 | 0 | 0 |
| 4-1 | 300 21st St. - Abby, Miami, FL, 33139 | 4,100,000 | 1,500,000 | 0 | 0 |
| 5-1 | 101 20th St-Tower, Miami, FL, 33139 | 92,700,000 | 500,000 | 0 | 0 |
| 6-1 | 395 NE 59th St, Miami, FL, 33137 | 0 | 400,000 | 0 | 0 |

Total Insured Values                                                                 180,010,000

**\*B = Building; S = Stock; YBPP = Your Business Personal Property; PPO = Personal Property of Others;
BI = Business Income; EE = Extra Expense; Other – Specify Above**

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property

---

EIL 00 503 07 02          Copyright, Everest Reinsurance Company, 2000
Includes copyrighted material of Insurance Services Office, Inc. used with its permission.
Copyright, Insurance Service Office, Inc., 1998          Page 1 of 2

### G. METHOD OF CLAIM NOTICE

Under all of the coverages of this policy, notice of claim or circumstances which may reasonably be expected to give rise to a claim hereunder shall be given in writing to, and at the address for the Claims Organization shown in the Declarations. If no Claims Organization is shown in the Declarations, such notice shall be given in writing to Everest Indemnity Insurance Company, c/o Mt. McKinley Managers, L. L. C., Westgate Corporate Center, PO Box 830, Liberty Corner, NJ 07938-0830.

### H. SERVICE OF SUIT

It is agreed that in the event of our failure to pay any amount claimed to be due hereunder, we, at your request will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Everest Indemnity Insurance Company, c/o Mt. McKinley Managers, L. L. C., Westgate Corporate Center, PO Box 830, Liberty Corner, NJ  07938-0830 or his or her representative, and that in any suit instituted against us upon this contract, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named  Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM – COASTAL PROPERTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMON POLICY CONDITIONS

### SCHEDULE

| Minimum Earned Premium | 80 | % of the TOTAL PREMIUM shown on the COMMON POLICY DECLARATIONS, if the policy was in effect at any time during the period from June 1st to November 30th |
|---|---|---|
| | 35 | % of the TOTAL PREMIUM shown on the COMMON POLICY DECLARATIONS, if the policy was not in effect at any time during the period from June 1st to November 30th |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

The following applies to any location within 100 miles of the Atlantic Ocean or Gulf of Mexico:

**A.** Paragraph **A.5. – Cancellation** of the Common Policy Conditions is replaced by the following:
If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be pro rata, less 10%, and such refund will be subject to the minimum earned premium shown in the Schedule. The cancellation will be effective even if we have not made or offered a refund.

**B.** If you remove a location, or reduce the Limits of Insurance at a location, during the policy term, and the policy was in effect at any time during the peri-od from June 1st to November 30th, we will not return any premium

**C.** If you add a location during the policy term, and the policy was in effect at any time during the period from June 1st to November 30th, the rate for that location will be calculated as 100% of the annual premium; otherwise it will be prorated

**D.** Coverage may not be increased, nor may any locations be added, if a Named Storm is in force, unless the change is specifically accepted by us

EIL 00 591 09 12

Page 1 of 1

Copyright, Everest Reinsurance Company, 2012
Includes copyrighted material of ISO Properties, Inc. used with its permission

**EIL 01 510 07 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTION CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

Any exclusion, limitation or other provision relating to pollutants ("pollutants"), or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the pollutant has any function in, or is of essential, integral, necessary or significant use to, your business, operations, premises, site or location.

EIL 02 529 04 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the Named Insured(s) written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(1)** A material misstatement or misrepresentation; or

**(2)** A failure to comply with underwriting requirements established by the insurer.

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the Named Insured(s) at the last mailing address known to us.

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect.  The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation For Policies In Effect For More Than 90 Days**

If we cancel this policy, we will mail or deliver to the Named Insured(s) written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**a.** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation for any other reason.

Copyright, Everest Reinsurance Company, 2011
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

**E.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy we will mail or deliver to the Named Insured(s) written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least 45 days prior to the expiration of the policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the Named Insured(s) at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, Everest Reinsurance Company, 2011
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

**EIL 02 529 04 11**   □

IL 01 75 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART

The following replaces the second paragraph of the **Legal Action Against Us** Condition:

**LEGAL ACTION AGAINST US**

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including microprocessors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

© ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

## SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state (s), if covered under the indicated Coverage Form, Coverage Part or Policy.

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| Florida | Property |
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**
We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C.** **Exception Covering Certain Fire Losses**
The following exception to the exclusion in Paragraph B. applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

© Insurance Services Office, Inc., 2015

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

D. **Application Of Other Exclusions**
The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© Insurance Services Office, Inc., 2015
**IL  09 53 01 15**

Case 1:23-cv-20322-RNS Document 1-2 Entered on FLSD Docket 01/26/2023 Page 233 of 600

# EVEREST INDEMNITY INSURANCE COMPANY

ADJ. NO.

| NAMED INSURED<br>**Abbey Hotel Acquisition LLC Setai Hotel Acquisition LLC**<br>**(See Schedule of Named Insureds)** | EFFECTIVE DATE:<br>**4/27/2017** | POLICY NUMBER<br>**CA3X000840-161** |
|---|---|---|

| IF THIS ENDORSEMENT IS LISTED IN THE POLICY DECLARATIONS, | COUNTERSIGNED BY: |
|---|---|
| IT IS IN EFFECT FROM THE TIME COVERAGE UNDER THIS POLICY COMMENCES | |
| OTHERWISE, THE EFFECTIVE DATE OF THIS ENDORSEMENT IS AS SHOWN ABOVE | |
| AT THE SAME TIME OR HOUR OF THE DAY AS THE POLICY BECAME EFFECTIVE. | AUTHORIZED REPRESENTATIVE |

THIS ENDORSEMENT IS USED AS AN OVERFLOW FOR FIELDS ON THE DECLARATIONS PAGE NOT LARGE ENOUGH FOR
THE NECESSARY INFORMATION AND TO LIST OPTIONAL COVERAGES

## SCHEDULE OF NAMED INSURED

**ABBEY HOTEL ACQUISITION LLC**
**SETAI HOTEL ACQUISITION LLC**
**SETAI RESORT & RESIDENCES CONDOMINIUM ASSOCIATION INC**

ILU 003 (0589)

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

    **a.** During the policy period shown in the Declarations; and

    **b.** Within the coverage territory.

**2.** The coverage territory is:

    **a.** The United States of America (including its territories and possessions);

    **b.** Puerto Rico; and

    **c.** Canada.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987
**CP 00 90 07 88**   ☐

<div align="right">

**COMMERCIAL PROPERTY**
**CP 01 25 02 12**

</div>

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intracoastal Waterway in the counties of:

**a.** Indian River; and

**b.** St. Lucie.

**Windstorm Exterior Paint And Waterproofing Exclusion**

We will not pay for loss or damage caused by windstorm to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of buildings unless the building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** The **Loss Payment** Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage upon the earliest of the following:

**(1)** Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

**(2)** Within 30 days after we receive the sworn proof of loss and:

**(a)** There is an entry of a final judgment; or

**(b)** There is a filing of an appraisal award with us; or

**(3)** Within 90 days of receiving notice of an initial, reopened or supplemental claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment. If a portion of the claim is denied, then the 90-day time period for payment of claim relates to the portion of the claim that is not denied.

Paragraph **(3)** applies only to the following:

**(a)** A claim under a policy covering residential property;

**(b)** A claim for building or contents coverage if the insured structure is 10,000 square feet or less and the policy covers only locations in Florida; or

INSURED COPY

**(c)** A claim for contents coverage under a tenant's policy if the rented premises are 10,000 square feet or less and the policy covers only locations in Florida.

**E. Sinkhole Collapse Coverage Removed**

Sinkhole Collapse coverage is removed, as indicated in Paragraphs **E.1.** through **E.4.;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **F.**

1. In the Causes Of Loss — Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

2. In the Causes Of Loss — Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage — Collapse; and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

3. In the Causes Of Loss — Special Form, Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement Exclusion.

4. In the Mortgageholders Errors And Omissions Coverage Form, Sinkhole Collapse is deleted from the Covered Causes of Loss under Coverage **B** and from the "specified causes of loss", and is no longer an exception to the Earth Movement Exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

**F.** The following is added to this Coverage Part as a Covered Cause of Loss. In the Causes Of Loss — Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage — Collapse.

**Catastrophic Ground Cover Collapse**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. "Structural damage" to the building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

**G.** The following applies to the **Additional Coverage — Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

1. The Additional Coverage — Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

2. The Additional Coverage — Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four-week period is replaced by a three-week period.

3. Civil Authority coverage is subject to all other provisions of that Additional Coverage.

© Insurance Services Office, Inc., 2011

INSURED COPY

**H.** The following provisions are added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

    **(1)** A claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm is barred unless notice of claim is given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

    This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Legal Action Against Us Condition, including any amendment to that condition.

    **(2)** Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

**I.** The following definition of structural damage is added with respect to the coverage provided under this endorsement:

"Structural damage" means a covered building, regardless of the date of its construction, has experienced the following.

    **1.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**2.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**3.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**4.** Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**5.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

INSURED COPY

**COMMERCIAL PROPERTY**
**ECP 00 534 05 06**

# COMMERCIAL PROPERTY
# EXCESS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F. – Definitions.**

## A. Coverage

1. We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations, and any resulting loss of Business Income or Extra Expense, caused by or resulting from any Covered Cause of Loss.

2. This insurance applies only to losses which:

    a. Would be covered by the terms and conditions of the "first underlying insurance" as originally issued, unless they:

    (1) Conflict with the provisions of this insurance; or

    (2) Relate to any of the following:

        (a) Premium;

        (b) The amounts or Limits of Insurance;

        (c) Cancellation or non-renewal; or

        (d) Any renewal agreement; and

    b. Are in excess of "your retained limit".

3. Loss includes a single loss or series of losses arising out of any one occurrence.

4. **Covered Property**

    Covered Property, as used in this Coverage Form, means the property described in the "first underlying insurance".

5. **Covered Causes Of Loss**

    Covered Causes of Loss, as used in this Coverage Form, means the Covered Causes of Loss described in the "first underlying insurance", unless the loss is excluded or limited in Paragraph **B.** Exclusions of this Coverage Form.

## B. Exclusions

We will not pay for loss, expense or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. Any cause of loss that is excluded or limited to less than the full policy limits in the "first underlying insurance".

2. The discharge, dispersal, seepage, migration, existence, presence, growth, proliferation, spread, release, escape or any activity of any "organic pathogen", mold, fungus, wet rot or dry rot" at any time.

## C. Limit Of Insurance And Your Retained Limit

1. The most we will pay for loss, expense or damage in any one occurrence in excess of "your retained limit" is the lesser of:

    a. The Each Occurrence Limit Of Commercial Excess Insurance shown in the Declarations; or

    b. The individually stated value for each item of Covered Property, Business Income or Extra Expense shown in the Schedule of Locations and Values.

2. "Your retained limit":

    a. Will apply separately to each occurrence to which this insurance applies;

    b. Is excess of all applicable deductibles and self-insured retention(s) in the "first underlying insurance"; and

    c. May not be eroded by loss, expense or damage which is not covered by this insurance.

## D. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Abandonment**

    There can be no abandonment of any property to us.

© Everest Reinsurance Company, 2006
Includes copyrighted material of ISO Properties, Inc. used with permission

**2. Participation**

We may elect, but are not obligated, to participate in the investigation, settlement or defense of any claim or suit for matters covered by this policy.

**3. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, amount of Net Income and operating expense and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**4. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage covered by this insurance:

**(1)** Comply with all terms and conditions of the "first underlying insurance".

**(2)** Notify the police if a law may have been broken.

**(3)** Give us prompt notice of the loss or damage that might be in excess of "your retained limit". Include a description of the property involved.

**(4)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(5)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Commercial Excess Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(6)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(7)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(8)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(9)** Cooperate with us in the investigation or settlement of the claim.

**(10)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**5. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

Copyright, Everest Reinsurance Company, 2006
Includes copyrighted material of ISO Properties, Inc. used with permission

ECP 00 534 05 06     ☐

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property, unless specifically covered by the "first underlying insurance.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Form and:

   **(1)** We have reached agreement with you on the amount of loss; or

   **(2)** An appraisal award has been made.

**6. Recovered Property**

**a.** If either you or we recover any property after loss settlement, that party must give the other prompt notice. Any recoveries shall be distributed as follows:

   **(1)** First, we shall be entitled to recover to the extent of our payment; and

   **(2)** Next, any remaining amounts shall be paid to the "first underlying insurer", "other underlying insurer(s)" or any other party to the extent of their payment.

**b.** The expenses of the recovery will be distributed in proportion to the share of each party's recovery.  But, if we conduct the recovery proceedings in their entirety:

   **(1)** We will pay all expenses; and

   **(2)** If we make a recovery, we will be reimbursed in full from the recovery for our expenses before the recovery is distributed.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage in the same manner that the value was determined in the "first underlying insurance".

**E. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Endorsements To This Coverage Form**

Reference to Commercial Property Coverage Part or Building and Personal Property Coverage Form in any endorsement that is attached to or made a part of this Coverage Form shall mean this Coverage Form.

**2. Maintenance Of Underlying Insurance**

**a.** You will maintain the "first underlying insurance" and "other underlying insurance" in full force and effect during this policy period.

**b.** Failure to maintain the "first underlying insurance" and the "other underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "first underlying insurance" and "other underlying insurance" were in full effect.

**c.** You will notify us as soon as possible when the "first underlying insurance" or "other underlying insurance" is no longer in effect.

**F. Definitions**

**1.** "First Underlying Insurance" means the First Underlying Insurance Policy shown in the Declarations.

**2.** "First Underlying Insurer" means the First Underlying Insurance Company shown in the Declarations.

**3.** "Other Underlying Insurance" means the Underlying Insurance Policy(ies) shown in the Declarations.

**4.** "Other Underlying Insurer" means the Underlying Insurance Company(ies) shown in the Declarations.

**5.** "Organic pathogen, mold, fungus, wet rot or dry rot" means any bacteria, virus, fungi, mold, mildew or mycotoxin, or their spores, scent or by-products.

**6.** "Your Retained Limit" means the actual loss you must sustain as a result of the Covered Causes of Loss before this insurance applies.

Copyright, Everest Reinsurance Company, 2006
Includes copyrighted material of ISO Properties, Inc. used with permission

COMMERCIAL PROPERTY
ECP 10 508 06 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM
CAUSES OF LOSS – WINDSTORM OR HAIL
COMMERCIAL PROPERTY EXCESS COVERAGE FORM
COMMERCIAL PROPERTY DEDUCTIBLE BUY-BACK COVERAGE FORM

The following is added to the **Exclusions** section:

We will not pay for loss, expense or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**A.** The discharge, dispersal, seepage, existence, presence, proliferation, spread, release, escape, clean-up or any activity related to "asbestos" at any time;

**B.** Any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "asbestos"; or

**C.** Any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "asbestos".

Such loss, expense or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, expense or damage.

"Asbestos", as used in this endorsement, means any of several amphiboles or similar silicate minerals widely used for chemical inertness and heat-resistant properties that separate into threadlike fibers.

Everest Reinsurance Company, 2006
Includes copyrighted material of  ISO Properties, Inc. used with permission

COMMERCIAL PROPERTY
ECP 10 510 06 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - EARTH MOVEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY EXCESS COVERAGE FORM
COMMERCIAL PROPERTY DEDUCTIBLE BUY-BACK COVERAGE FORM

The following is added to the **Exclusions** section:

We will not pay for loss, expense or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**A.** Earthquake, including any earth sinking, rising or shifting related to such event;

**B.** Landslide, including any earth sinking, rising or shifting related to such event;

**C.** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**D.** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **A.** through **D.** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**E.** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**1.** Airborne volcanic blast or airborne shock waves;

**2.** Ash, dust or particulate matter; or

**3.** Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

Everest Reinsurance Company, 2006
Includes copyrighted material of  ISO Properties, Inc. used with permission

**COMMERCIAL PROPERTY**
**ECP 10 525 08 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSIONS AMENDMENT – COVERAGE FOR WIND-STORM OR HAIL ONLY

This endorsement modifies insurance provided under the following:

COMMMERCIAL PROPERTY EXCESS COVERAGE FORM

The following paragraph is added to the **Exclusions** section:

**3.** Any Covered Cause of Loss in the "first underlying insurance" other than windstorm or hail.

Copyright, Everest Reinsurance Company, 2010
Includes copyrighted material of ISO Properties, Inc. used with permission

COMMERCIAL PROPERTY
ECP  12 501 10 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – OTHER INSURANCE CONDITION (PERMITS INSURANCE SPECIFICALLY WRITTEN EXCESS OF THIS INSURANCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY CONDITIONS

Condition **G. Other Insurance** of the COMMERCIAL PROPERTY CONDITIONS is deleted and replaced by the following:

**G.  OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

3. Paragraph **G.2.** above does not apply to other insurance specifically written as excess over this insurance.

Copyright, Everest Reinsurance Company, 2010
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

COMMERCIAL PROPERTY
ECP  12 502 05 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DELETION OF LIBERALIZATION CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY CONDITIONS

The **Liberalization** Condition of the COMMERCIAL PROPERTY CONDITIONS is deleted and does not apply.

Copyright, Everest Reinsurance Company, 2006
Includes copyrighted material of ISO Properties, Inc.,
used with its permission.

ECP 14 501 06 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL PROPERTY NOT COVERED FOR WINDSTORM OR HAIL

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

CONDOMINIUM ASSOCIATION COVERAGE FORM

| **Schedule** |
|---|
|  |

**THE FOLLOWING PROPERTY IS NOT COVERED IF DAMAGE IS CAUSED BY WINDSTORM OR HAIL:**

Any structure or attachment, whether attached or separate from the covered building, where that structure's roof coverings are of screen, fabric, thatch, lattice, or slats and similar material; or where the structure's exterior wall coverings are of fabric, thatch, lattice, or slats and similar material; and

Greenhouses, glasshouses, hothouses, slathouses, trellises, chickees, gazebos, pergolas, cabanas, and tiki huts, or similar structures and personal property contained within or on these structures; and

Personal property in the open; and

Any property described in the Schedule of this endorsement.

ECP 14 501 06 06                                                                                                    Page 1 of 1

Copyright, Everest Reinsurance Company, 2006
Includes copyrighted material of ISO Properties, Inc. used with permission

**COMMERCIAL PROPERTY**
**ECP 99 501 05 06**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEFINITION OF OCCURRENCE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM
CAUSES OF LOSS – WINDSTORM OR HAIL
COMMERCIAL PROPERTY DEDUCTIBLE BUY-BACK COVERAGE FORM
COMMERCIAL PROPERTY EXCESS COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

The following is added to the definition section:

"Occurrence" means losses or damages attributable directly or indirectly to:

**1.** One cause, incident, event or repeated exposure to the same cause, incident or event;

**2.** One series of similar causes, events, incidents or repeated exposures to the same cause, event or incident that first takes place in the policy period; and/or

**3.** For windstorm or hail, "occurrence" includes the entire meteorological event.

Except in those instances where this insurance defines an occurrence as a specific time period, this definition applies whenever the word "occurrence" is used, whether the word appears in quotations, italics, bold or normal print.

## COMMON POLICY DECLARATIONS

| NEW | | **Policy Number** |
|-----|---|---|
| Renewal of Number | **SCOTTSDALE INSURANCE COMPANY®** | AJS0000541 |

Home Office:
One Nationwide Plaza o Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive o Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

**ITEM 1.** Named Insured and Mailing Address

NAKASH HOLDING, LLC;
(SEE SCHEDULE OF NAMED INSUREDS)
2001 COLLINS AVENUE
MIAMI BEACH FL 33139

Agent Name and Address

ALL RISKS LTD
275 SCIENTIFIC DR STE 1500
NORCROSS GA 30092-3311

Agent No.: 10719

Program No.: NONE

| **ITEM 2.** Policy Period | From: 04-27-2017 | To: 04-27-2018 | Term: 1 Year |
|---|---|---|---|

12:01 A.M., Standard Time at the mailing address shown in ITEM 1.

Business Description: CONDOMINIUMS

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | | Premium Summary |
|---|---|---|
| Commercial General Liability Coverage Part | $ | NOT COVERED |
| Commercial Property Coverage Part | $ | ████████ |
| Commercial Crime And Fidelity Coverage Part | $ | NOT COVERED |
| Commercial Inland Marine Coverage Part | $ | NOT COVERED |
| Commercial Auto Coverage Part | $ | NOT COVERED |
| Professional Liability Coverage Part | $ | NOT COVERED |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| **Total Policy Premium** | $ | ████████ |
| | $ | |
| Total Taxes, Surcharges or Fees | $ | 4.00 |
| **Policy Total** | $ | ████████ |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENT(S), IF ANY,
COMPLETE THE ABOVE-NUMBERED POLICY.

OPS-D-1 (8-10)

**EXHIBIT**

**"F"**

 **SCOTTSDALE INSURANCE COMPANY**®

## SCHEDULE OF TAXES, SURCHARGES OR FEES

Policy No. AJS0000541

Effective Date: 04-27-17
12:01 A.M., Standard Time

Named Insured NAKASH HOLDING, LLC;

Agent No. 10719

---

OPS-D-1 (cont.)

```
        TAXES, SURCHARGES OR FEES BREAKDOWN :

        FL-INSURANCE PREMIUM SURCHARGE              $    _____ ███

        TOTAL TAXES, SURCHARGES OR FEES            $              ███
```

UTS-126L (10-93)

SURPLUS LINES AGENT: Chris B. McGovern
LIC # E043040
10150 York Road, 5th Floor
Hunt Valley, MD 21030
PROD. AGT. _____ Phyllis Walsh _____
Street _____ 101 South Livingston Ave _____
City _____ Livingston _____ Zip _____ 07039 ____
This insurance is issued pursuant to the Florida
Surplus Lines Laws. Persons insured by Surplus
Lines carriers do not have the protection of the
Florida Insurance Guaranty Act to the extent of
any right of recovery for the obligation of an
insolvent unlicensed insurer.
Quarter _____ 2ND 2017 _____
Premium _____ ███████ _____ Tax _ ██████
Agents Countersignature _____ ✒ ___

Policy Fee:            _____ ███
Inspection Fee:        _____ N/A
FL SL Tax:             █____ ███
FSLSO Service Fee:     _____ ███
Hurricane Cat. Fund:   _____
Citizens Assess Fee:   _____ ██
EMPA Surcharge:        _____ █
FLRES _____:     ____██
Total Payable at Inception: ██████

# FLORIDA POLICYHOLDER NOTICE

**LAW AND ORDINACE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

ONE OR MORE OF THE FOLLOWING MAY APPLY TO YOUR POLICY:

A

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

B

**THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

C

**THIS POLICY MAY EXCLUDE WIND THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

PLEASE REVIEW YOUR POLICY CAREFULLY AND CONTACT YOUR LICENSED AGENT IF YOU HAVE ANY QUESTIONS.



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                    President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (1-16)



# FLORIDA POLICYHOLDER NOTICE

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

NOTS0381FL (7-09)



**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| **HOW TO REPORT A CLAIM** |
|---|
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com. |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible: |
| • Your policy number |
| • Date, time and location of the loss/accident |
| • Details of the loss/accident |
| • Name, address and phone number of any involved parties |
| • If applicable, name of law enforcement agency or fire department along with the incident number |
| **Please refer to your policy for specific claim reporting requirements.** |

NOTX0178CW (3-16)

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF NAMED INSUREDS

Policy No. AJS0000541

Named Insured **NAKASH HOLDING, LLC;**

Effective Date: 04-27-17
12:01 A.M., Standard Time

Agent No. 10719

NAKASH HOLDING, LLC;

ABBEY HOTEL ACQUISITION, LLC;

SETAI HOTEL ACQUISITION, LLC;

SETAI RESORT & RESIDENCES
CONDOMINIUM ASSOCIATION, INC.

UTS-SP-1 (8-96)


## SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. AJS0000541

Effective Date: 04-27-17
12:01 A.M., Standard Time

Named Insured NAKASH HOLDING, LLC;

Agent No. 10719

**COMMON POLICY FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| UTS-COVPG | 01-16 | COVER PAGE |
| NOTS0381FL | 07-09 | FLORIDA POLICYHOLDER NOTICE |
| NOTX0178CW | 03-16 | CLAIM REPORTING INFORMATION |
| OPS-D-1 | 08-10 | COMMON POLICY DECLARATIONS |
| UTS-126L | 10-93 | SCHEDULE OF TAXES, SURCHARGES OR FEES |
| UTS-SP-1 | 08-96 | SCHEDULE OF NAMED INSUREDS |
| UTS-SP-2L | 12-95 | SCHEDULE OF FORMS & ENDORSEMENTS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 01 75 | 09-07 | FLORIDA CHANGES-LEGAL ACTION AGAINST US |
| IL 04 01 | 02-12 | FLORIDA - SINKHOLE LOSS COVERAGE |
| IL 09 35 | 07-02 | EXCL OF CERTAIN COMPUTER-RELATED LOSSES |
| IL 09 53 | 01-15 | EXCL/CERT ACTS-TERROR; COV/FIRE LOSSES |
| UTS-119G | 06-14 | MINIMUM EARNED CANCELLATION PREMIUM |
| UTS-29-FL | 06-97 | FL-CANCELLATION & NONRENEWAL |
| UTS-9G | 05-96 | SERVICE OF SUIT CLAUSE |

**PROPERTY FORMS AND ENDORSEMENTS**

| | | |
|---|---|---|
| CFS-XS-SD1 | 08-08 | COMM PROP EXCESS SUPP DEC |
| CP 01 40 | 07-06 | EXCL OF LOSS DUE TO VIRUS OR BACTERIA |
| CFS-XS-P-1 | 08-08 | EXCESS COMM PROP COV FORM |

UTS-SP-2L (12-95)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

---

IL 00 17 11 98    Copyright, Insurance Services Office, Inc., 1998    **Page 1 of 1**   ☐

IL 01 75 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES -- LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

      CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
      COMMERCIAL INLAND MARINE COVERAGE PART
      COMMERCIAL PROPERTY COVERAGE PART
      EQUIPMENT BREAKDOWN COVERAGE PART
      FARM COVERAGE PART

The following replaces the second paragraph of the **Legal Action Against Us** Condition:

**LEGAL ACTION AGAINST US**

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

Insured Copy

POLICY NUMBER: AJS0000541

IL 04 01 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA – SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| ALL | ALL |
| FLORIDA | FLORIDA |
| LOCATIONS | LOCATIONS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the location(s) indicated in the Schedule, the following provisions apply:

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** When this endorsement is attached to the Farm Livestock Coverage Form, reference to loss (other than in the term Sinkhole Loss itself) means "loss" as defined in that coverage form.

**C.** The following is added to this Coverage Part as a Covered Cause of Loss. In the forms which address "specified causes of loss", the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

© Insurance Services Office, Inc., 2012

Insured Copy

You must enter into a contract for the performance of building stabilization and / or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your Sinkhole Loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**D.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**E.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**F.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**G.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this Coverage Part) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

   © Insurance Services Office, Inc., 2012   IL 04 01 02 12

Insured Copy

**H.** The following provision is added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**I.** The following definitions are added with respect to the coverage provided under this endorsement:

**1.** "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

**a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**J.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**K.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**L.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**M.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

 © Insurance Services Office, Inc., 2012

Insured Copy

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including micro-processors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

  due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss - Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss - Basic Form or the Causes Of Loss - Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

 © ISO Properties, Inc., 2001 ☐

Insured Copy

POLICY NUMBER:                                                                  **IL 09 53 01 15**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| CA, CT, GA, HI, IL, IA, ME, MO, NJ, NY, NC, OR, RI, VA, WA, WV, or WI | COMMERCIAL PROPERTY |
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

Insured Copy

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Insured Copy

**SCOTTSDALE INSURANCE COMPANY®**

ENDORSEMENT NO. _____

Attached to and forming a part of

Policy No. AJS0000541

Named Insured NAKASH HOLDING, LLC; ABBEY HOTEL

Endorsement Effective Date 04-27-2017
12:01 A.M., Standard Time
Agent No. 10719

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than  25%  of the original premium.

AUTHORIZED REPRESENTATIVE                DATE

UTS-119g (6-14)

Page 1 of 1

Insured Copy

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.**_____

Attached to and forming a part of
Policy No. AJS0000541
Named Insured NAKASH HOLDING, LLC;

Endorsement Effective Date 04-27-17
12:01 A.M., Standard Time
Agent No. 10719

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION AND NONRENEWAL - FLORIDA

The Cancellation Condition is deleted in its entirety and replaced by the following:

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. If this policy has been in effect for ninety (90) days or less and is not a renewal of a policy we issued, we may cancel by mailing or delivering written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Twenty (20) days before the effective date of cancellation, if we cancel for any other reason, except, we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) A failure to comply with underwriting requirements established by us.

3. If this policy has been in effect for more than ninety (90) days or is a renewal or continuation of a policy we issued, we may cancel by mailing or delivering written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Forty-five (45) days before the effective date of cancellation, if we cancel for any other reason.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

5. Notice of cancellation by us will state the effective date of the cancellation. The policy period will end on that date.

6. If we fail to mail or deliver our written notice of cancellation to the first Named Insured at least forty-five (45) days or twenty (20) days as required in A.2.b. and A.3.b. above, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

7. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first

---

Page 1 of 2

Insured Copy

Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient proof of notice.

The following Condition is added to the policy and supersedes any other provision to the contrary:

B. Nonrenewal

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, including the specific reasons for nonrenewal, to the first Name Insured at least forty-five (45) days prior to the expiration of the policy.

2. If notice is mailed, we will mail it to the last mailing address known to us of the first Named Insured. Proof of mailing will be sufficient proof of notice.

3. If we fail to mail or deliver written notice of nonrenewal to the first Named Insured at least forty-five (45) days prior to the effective date of nonrenewal, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

_____/_____

AUTHORIZED REPRESENTATIVE          DATE

UTS-29-FL (6-97)

Insured Copy

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

Attached to and forming a part of

Policy No.   AJS0000541

Named Insured   NAKASH HOLDING, LLC;

Endorsement Effective Date   04-27-17
12:01 A.M., Standard Time

Agent No.   10719

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of  insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

CHIEF FINANCIAL OFFICER

DEPARTMENT OF FINANCIAL SERVICES

200 EAST GAINES STREET

TALLAHASSEE, FL 32399

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

RECIPIENT NOT REQUIRED

,

_____   /   _____
                        AUTHORIZED REPRESENTATIVE                              DATE

UTS-9g (5-96)

Insured Copy

# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL PROPERTY COVERAGE PART
## EXCESS SUPPLEMENTAL DECLARATIONS

Policy No.: AJS0000541

Effective Date: 04-27-17
12:01 A.M. Standard Time

Named Insured: NAKASH HOLDING, LLC;

**ITEM 1. INSURED PREMISES**

PER SCHEDULE ON FILE WITH THE COMPANY.
THE PREMIUM FOR THIS POLICY IS BASED ON THE TOTAL INSURABLE VALUES OF
$180,010,000.

**ITEM 2. COVERED CAUSES OF LOSS**

WIND COVERAGE INCLUDING FLOOD ONLY AND EXCLUDING EARTHQUAKE,
EQUIPMENT BREAKDOWN, AND TRIPRA.

**ITEM 3. COVERED PROPERTY**

BUILDINGS, BUSINESS PERSONAL PROPERTY, AND BUSINESS INCOME WITH EXTRA
EXPENSE AS FULLY DESCRIBED IN THE PRIMARY POLICY.

**ITEM 4. PRIMARY INSURANCE**

| PRIMARY INSURER(S) | POLICY NUMBER | LIMIT/ PARTICIPATION |
|---|---|---|
| ON FILE WITH COMPANY | | |

**ITEM 5. UNDERLYING EXCESS INSURANCE**

| UNDERLYING EXCESS INSURER(S) | POLICY NUMBER | LIMIT/ PARTICIPATION |
|---|---|---|
| ON FILE WITH COMPANY | | |

**ITEM 6. LIMIT OF INSURANCE**

███████████████████████

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH THE
COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S), IF ANY, COMPLETE
THE ABOVE-NUMBERED POLICY.

CFS-XS-SD-1 (8-08)

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage — Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

Insured Copy

# SCOTTSDALE INSURANCE COMPANY®

A Stock Company, herein called the Company

## EXCESS COMMERCIAL PROPERTY COVERAGE FORM
### (FOLLOW FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to **Section D. Definitions.**

## A. Insuring Agreement

We will indemnify you for the "ultimate net loss" in excess of the "primary insurance" and "underlying excess insurance" for direct physical loss of or damage to Covered Property at the Insured Premises, subject to the following:

1. The "occurrence" takes place during the Policy Period as stated in **ITEM 2.** of the Common Policy Declarations;

2. The loss or damage is covered by and defined in the "primary insurance"; and

3. The loss or damage is caused by or resulting from the Covered Causes Of Loss as described in **ITEM 2.** of the Excess Supplemental Declarations.

Subject to our Limit Of Insurance, terms, conditions, exclusions and endorsements; if any, and, except as otherwise stated in this policy, we agree to follow-form of the terms, conditions, exclusions, definitions and endorsements as issued by the "primary insurance."

## B. Limit Of Insurance

The Limit Of Insurance shown in **ITEM 6.** of the Excess Supplemental Declarations will apply as follows:

1. The Limit Of Insurance is the most we will pay for loss or damage in any one "occurrence." In no event, shall our liability exceed this limit or amount in any one "occurrence" irrespective of the number of locations involved.

2. The Limit Of Insurance only applies after the "primary insurance" and "underlying excess insurance" limit(s) have been paid or they have all admitted liability for the full amount of their limit(s).

3. If there is no recovery available because of the insolvency, or a declaration of impairment or insolvency of the "primary insurance" and/or the "underlying excess insurance" insurer(s), coverage under this policy shall apply as if the "primary insurance" and "underlying excess insurance" limits of insurance were in full effect and recoverable.

4. Our liability shall be limited to the least of the following:

   a. The actual "ultimate net loss" in excess of the "primary insurance" and "underlying excess insurance."

   b. The total stated value for the Covered Property, as shown on the latest statement of values on file with us.

CFS-XS-P-1 (8-08)                    Page 1 of 3

    **c.** The Limit Of Insurance shown on the Excess Supplemental Declarations or endorsed on to this policy.

## C. Conditions

### 1. Application of Recoveries

All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Coverage Part shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between you and us.

### 2. Maintenance of Primary and Underlying Excess Insurance

**a.** Any "primary insurance" and "underlying excess insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of limits in accordance with the provisions of such "primary insurance" and "underlying excess insurance" that results from loss or damage to which this insurance applies. Such exhaustion or reduction is not a failure to maintain "primary insurance" and "underlying excess insurance." Failure to maintain "primary insurance" and "underlying excess insurance" will not invalidate insurance provided under this policy, but insurance provided under this policy will apply as if the "primary insurance" and "underlying excess insurance" were in full effect.

**b.** The Named Insured must notify us in writing, as soon as practicable, if any "primary insurance" and "underlying excess insurance" is cancelled, not renewed, replaced or otherwise terminated (bankruptcy or insolvency), or if the limits or scope of coverage of any "primary insurance" and "underlying excess insurance" is changed.

### 3. Sublimits

Sublimits of liability for coverages and/or loss or damage provided in the "primary insurance" and "underlying excess insurance" shall apply as the maximum amount of insurance for such coverages and/or loss or damage recoverable from the "primary insurance," "underlying excess insurance" and this policy combined.

### 4. Priority of Payments

Notwithstanding any provision to the contrary, in the event of a claim that involves more than one interest/party and/or coverage and/or causes of loss, it shall be at the sole option of the Named Insured to apportion recovery under this policy when submitting final proof of loss, subject to the total amount of the claim not exceeding our Limit Of Insurance for any one "occurrence."

For the purpose of attachment of coverage, it is further agreed that loss involving any interest/party and/or coverage and/or covered causes of loss in the "primary insurance" and/or "underlying excess insurance," but excluded in our policy, shall be recognized as eroding or exhausting the occurrence limits of the "primary insurance" and/or "underlying excess insurance."

### 5. Earthquake and Flood Drop Down

If Earthquake and/or Flood is a Covered Cause of Loss in this policy, in the event of reduction or exhaustion of the annual aggregate limit(s) designated in the "primary insurance" and "underlying excess insurance" solely by payment of losses from Earthquake and/or Flood during the policy period, such insurance as is afforded by this policy shall apply in excess of the reduced "primary insurance" and "underlying excess insurance" limit or, if such limit is exhausted, shall apply as the "primary insurance" and "underlying excess insurance." When the underlying limit(s) of insurance is exhausted, this policy shall always remain excess of the deductibles as specified in the "primary insurance."

Insured Copy

**6. Permission for Excess Insurance**

Permission is hereby granted to purchase insurance in excess of the Limit Of Insurance stated in this policy.

**D. Definitions**

**1.** "Occurrence" means all elements of loss or damage due to any Covered Cause of Loss or combination of Covered Causes of Loss described in the Excess Supplemental Declarations, arising out of a single event and including all resultant or concomitant losses to one or more Insured Premises, unless defined by the "primary insurance."

**2.** "Primary insurance" means any policy of insurance provided by the insurer(s) described in **ITEM 4. Primary Insurance** of the Excess Supplemental Declarations.

**3.** "Underlying excess insurance" means any policy of insurance provided by the insurer(s) described in **ITEM 5. Underlying Excess Insurance** of the Excess Supplemental Declarations.

**4.** "Ultimate net loss" means the loss or damage sustained by you as a result of Covered Causes of Loss provided by this policy after making reduction for recoveries or salvages collectible and other valid and collectible insurance, other than recoveries under the "primary insurance" and "underlying excess insurance."

Insured Copy

# FOLLOWING FORM PROPERTY EXCESS OF LOSS POLICY DECLARATIONS

| [X] **New** | [ ] **Renewal of:** NEW | | **Diamond State** GROUP |
|---|---|---|---|

**POLICY NUMBER:** LP0000907

**1. NAMED INSURED:**

Setai Hotel Acquisition, LLC

Abbey Hotel Acquisition, LLC

**2. ADDRESS: (Number & Street, Town & State)**

1400 Broadway

New York

NY  10018

**UNITED NATIONAL INSURANCE COMPANY**
**A Stock Company**
**Three Bala Plaza East, Suite 300**
**Bala Cynwyd, PA  19004**

**PRODUCER'S NAME & ADDRESS:**

All Risks, Ltd.
275 Scientific Drive
Suite 1500

Norcross
GA  30092

**PRODUCER'S CODE:**  B1213

---

**3. POLICY PERIOD:** From: April 27, 2017          To: April 27, 2018
12:01 A.M. Standard Time at the address shown above.

---

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE COVERAGE STATED IN THIS POLICY.**

---

**4. LIMITS OF INSURANCE:**  See Section IV of Policy

**5. SCHEDULE OF PRIMARY INSURANCE:** See Section III of Policy

**6. BUSINESS DESCRIPTION:**  Condominiums

**7. PREMIUM**

| | | |
|---|---|---|
| Property Excess of Loss Premium: | $ | ███████ |
| Optional Terrirosm Coverage Premium: | $ | |
| | $ | |
| | $ | |
| | $ | |
| Premium Payable at Inception: | $ | ██████ |
| Minimum Earned Premium: | $ | |
| Inspection Fee Payable at Inception: | $ | |

**8. FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT ITS INCEPTION:**

**SEE ATTACHED SCHEDULE OF POLICY FORMS AND ENDORSEMENTS SAA-100 (8/98)**

---

# EXHIBIT
## "G"

_____

**COUNTERSIGNATURE**                    **DATE**

KNM
06/22/17

SURPLUS LINES AGENT: Chris B. McGovern
LIC # E043040
10150 York Road, 5th Floor
Hunt Valley, MD 21030
PROD. AGT. _____ PHYLLIS WALSH _____
Street _____ 101 South Livingston Ave _____
City_____ Livingston _____ Zip ____ 07039 ____
This insurance is issued pursuant to the Florida
Surplus Lines Laws. Persons insured by Surplus
Lines carriers do not have the protection of the
Florida Insurance Guaranty Act to the extent of
any right of recovery for the obligation of an
insolvent unlicensed insurer.
Quarter_____ 2ND 2017 _____
Premium____ ▮▮▮▮▮▮ _____ Tax __ ▮▮▮▮▮▮ __
Agents Countersignature _____ ~~~~~~~ __

Policy Fee: _____▮▮
Inspection Fee: ____▮▮
FL SL Tax: __▮_____
FSLSO Service Fee: __▮▮
Hurricane Cat. Fund: ___
Citizens Assess Fee: ___▮
EMPA Surcharge: _____
FLRES_____: __▮
Total Payable at Inception: ▮▮▮▮

# FLORIDA POLICYHOLDER NOTICE

**LAW AND ORDINACE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

ONE OR MORE OF THE FOLLOWING MAY APPLY TO YOUR POLICY:

A

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

B

**THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

C

**THIS POLICY MAY EXCLUDE WIND THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

PLEASE REVIEW YOUR POLICY CAREFULLY AND CONTACT YOUR LICENSED AGENT IF YOU HAVE ANY QUESTIONS.

**United National Insurance Company**
**Bala Cynwyd, Pennsylvania**

### Surplus Lines License Information

| | |
|---|---|
| Policy No.: | LP0000907 |
| Issued to: | Setai Hotel Acquisition, LLC |
| Effective Date: | April 27, 2017 |
| Expiration Date: | April 27, 2018 |
| Risk State (see below): | NEW YORK |
| SLA Licensee Name: | |
| Agency Affiliation: | |
| SLA License Number: | |
| Licensee Address: | |

---

**INDEPENDENTLY PROCURED COVERAGE - PLEASE ATTACH COPY OF TAX INVOICE FROM THE STATE**

**\*If the risk is located in any of the following states, the SLA information listed below is required for state reporting and/or internal capturing purposes.  Please enter the exact number you receive from the state (note that the number may vary from the SPECS below).**

1. Alabama\*\*         (SL # SPECS: 7 digits - 1 letter, 6 numbers)
2. Colorado          (SL # SPECS: 5 digits)
3. Connecticut       (SL # SPECS: 2 - 7 digits)
4. Florida           (SL # SPECS: 7 digits - 1 letter, 6 numbers)
5. Hawaii            (SL # SPECS: 6 digits)
6. Iowa\*\*            (SL # SPECS: 6 digits)
7. Kansas            (SL # SPECS: 5 - 6 digits)
8. Kentucky          (SL # SPECS: 6 digits)
9. Louisiana         (SL # SPECS: 5 - 6 digits)
10. Massachusetts     (SL # SPECS: 7 digits)
11. Mississippi       (SL # SPECS: 6 - 8 digits)
12. Missouri          (SL # SPECS: 1 - 6 digits)
13. Montana           (SL # SPECS: 5 - 6 digits)
14. Nevada            (SL # SPECS: 5 - 6 digits)
15. New Hampshire     (SL # SPECS: 6 digits)
16. New Jersey\*       (SL # SPECS: 5 digits: inside of state - 1 letter, 4 numbers; out of state - 5 numbers)
17. New Mexico        (SL # SPECS: 1 - 6 digits)
18. New York          (SL # SPECS: 6 digits)
19. Oklahoma          (SL # SPECS: 5 - 6 digits - 1 letter, 4 - 5 numbers)
20. Rhode Island      (SL # SPECS: 6 - 7 digits)
21. South Dakota\*\*    (SL # SPECS: 7 digits)
22. Tennessee         (SL # SPECS: up to 10 digits)
23. Texas             (SL # SPECS: 2 - 7 digits)
24. West Virginia     (SL # SPECS: 6 digits)
25. Virgin Islands    (SL # SPECS: 7 digits - 3 letters, 4 numbers)

\* TRANSACTION NUMBER (issued by State) & SL NUMBER

\*\* SURPLUS LINES LICENSE INFORMATION OF INDIVIDUAL NOT BUSINESS ENTITY

## GLOBAL INDEMNITY GROUP, INC.

### <u>PRIVACY NOTICE</u>

We at Global Indemnity Group, Inc., which includes Diamond State Insurance Company, Penn-America Insurance Company, Penn-Patriot Insurance Company, Penn-Star Insurance Company, United National Insurance Company, and our affiliated companies and subsidiaries, are required to protect our customers' nonpublic personal financial information.

We collect your nonpublic personal financial information from the following sources:

- Information obtained from you, including information from your application, such as name, address, telephone number, social security number, assets and income.

- Information about transactions and experiences, such as your premium payment and claims history.

- Information from a consumer reporting agency, such as your credit history.

**WE DO NOT DISCLOSE YOUR NONPUBLIC PERSONAL FINANCIAL INFORMATION, EXCEPT AS PERMITTED OR REQUIRED BY LAW.  WE RESERVE THE RIGHT, HOWEVER, TO CHANGE THIS POLICY AT ANY TIME.  SHOULD THIS POLICY CHANGE, WE WILL GIVE AFFECTED CUSTOMERS AN OPPORTUNITY TO DIRECT THAT THEIR NONPUBLIC PERSONAL FINANCIAL INFORMATION NOT BE DISCLOSED.**

We maintain electronic, physical and procedural safeguards that comply with Federal regulations to protect your nonpublic personal financial information.  We limit access to your nonpublic personal financial information to those employees who need to know that information to perform their job responsibilities.

We disclose nonpublic personal financial information of former customers to affiliated and nonaffiliated third parties as permitted by law.

NAA-105 (06/2016)                                                                 Page 1 of 1

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br><br>**LP0000907** | NAMED INSURED<br>**Setai Hotel Acquisition, LLC**<br>**Abbey Hotel Acquisition, LLC**<br>**etal** |
|---|---|

| Form/Endorsement No./Edition Date | | Form/Endorsement No./Edition Date |
|---|---|---|
| | | **ADDITIONAL FORMS ATTACHED** |

| JAA101 | 0308 | POLICY JACKET |
|---|---|---|
| DPB104 | 0508 | FF PROPERTY EXCESS DECLARATIONS |
| XPB100 | 0508 | FOLLOWING FORM PROPERTY EXCESS OF LOSS POLICY |
| SPB106 | 0508 | STATEMENT OF VALUES SCHEDULE |
| EAA100 | 0112 | IN WITNESS CLAUSE |
| EAA146 | 1209 | TERRORISM EXCLUSION |
| IL0003 | 0907 | CALCULATION OF PREMIUM |
| IL0935 | 0898 | EXCL - COMPUTER RELATED LOSSES |
| IL0985 | 0115 | DISCLOSURE PURSUANT TO TRIA |
| EAA235 | 1209 | SERVICE OF SUIT - NY |
| SC16 | 0298 | POLICY CHANGE ENDORSEMENT |
| EPA440 | 1103 | ELECTRONIC DATA & CYBER RISK EXCL |

**SAA-100 (8-98)**

# COMMERCIAL INSURANCE POLICY



**ADMINISTRATIVE OFFICES**

THREE BALA PLAZA EAST, BALA CYNWYD, PA 19004
610-664-1500

JAA-101 (03/2008)

**FOLLOWING FORM PROPERTY EXCESS OF LOSS POLICY**

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.  Refer to **SECTION VI - DEFINITIONS** of this Policy.


**INSURING AGREEMENT**

In return for the payment of premium stated in the Declarations, and in reliance upon your statements we agree with you as follows:


**SECTION I - COVERAGE**

Subject to the Limits of Insurance stated in **Section IV**, we will pay for the part of your "insured loss" in excess of the Limit of Insurance of the "primary insurance".

This policy is subject to the same terms, conditions, warranties, agreements, exclusions and definitions of the "primary insurance" except:

    A.  Any term, condition, warranty, agreement, exclusion or definition relating to the Limits of Insurance, premium, deductibles, any renewal agreement, any obligation to investigate or defend; and

    B.  When the terms, conditions, warranties, agreements, exclusions and definitions of the policies are inconsistent, then the provisions of this policy will apply.

This policy does not provide excess coverage over any primary coverage that is subject to a sub-limit in the "primary insurance".  If the "primary insurance" is subject to an aggregate limit, this insurance will only apply after that aggregate is exhausted and then only excess of what would have been the limit for loss or damage in any one "occurrence", had there been no aggregate.

Any amendments or endorsements added to the "primary insurance" subsequent to the issuance of this policy do not apply to this policy unless they are specifically endorsed onto this policy.

**SECTION II - EXCLUSIONS**

This policy does not apply to loss or damage caused by or resulting from the following, regardless of any other cause or event that directly or indirectly contributes concurrently to, contributes in any sequence to, or worsens the loss or damage, even if such other cause or event would otherwise be covered:

**A.     Earth Movement**

**1.** Earthquake, including any earth sinking, rising or shifting related to such event;

**2.** Landslide, including any earth sinking, rising or shifting related to such event;

**3.** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased; or

**4.** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty.  Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **A.1.** through **4.** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**5.** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or "volcanic action", we will pay for the loss or damage caused by that fire, building glass breakage or "volcanic action".

B.   Water

**1.** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**2.** Mudslide or mudflow;

**3.** Water that backs up or overflows from a sewer, drain or sump; or

**4.** Water under the ground surface pressing on, or flowing or seeping through:

**a.**     Foundations, walls, floors or paved surfaces;

**b.**     Basements, whether paved or not; or

**c.**     Doors, windows or other openings.

**5.** Storm Surge.

But if Water, as described in **B.1.** through **B.4.** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**C.** Fungus, Wet Rot, Dry Rot and Bacteria

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**1.** When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**2.** To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **A.** through **C.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**D.    Pollution**

The discharge, dispersal, seepage, migration, release or escape of "pollutants".

This exclusion does not apply if the discharge, dispersal, seepage, migration, release or escape of "pollutants" is covered by the "primary insurance".

## SECTION III –- SCHEDULE OF "PRIMARY INSURANCE"

Company:      **SEE SC-16**

Policy No.:      **SEE SC-16**

Policy Term:   **4/27/2017 - 4/27/2018**

Covered Locations:   As per the Statement of Values schedule attached

"Primary Insurance" - Limit of Insurance for Building, Business Personal Property, Business Income and Extra Expense:   ▮▮▮▮▮▮   Per Occurrence

SECTION IV - LIMITS OF INSURANCE

**A.** The most we will pay in any one "occurrence" is ▮▮▮▮▮▮ excess of the Limit of Insurance provided by the "primary insurance".

**B.**  Subject to the "occurrence limit", we will not pay more than 100% of the stated value for each scheduled coverage for each scheduled location and building:

**1.** As shown on the Statement of Values; and

**2.** Involved in any loss;

less the Limit of Insurance provided by the "primary insurance", as shown in the Schedule of "Primary Insurance", and less any deductible(s) applicable to the "primary insurance".

## SECTION V - CONDITIONS

### A. Ability To Collect On "Primary Insurance"

The Limits of Insurance provided by this policy are excess over the limits of insurance of the "primary insurance", whether collectible or not collectible for any reason, including but not limited to the financial impairment or insolvency of the "primary insurer".

The risk of your ability to collect the Limits of Insurance of the "primary insurance" is expressly retained by you and is not in any way or under any circumstances covered or assumed by us.

### B. Filing Proof Of Loss

When filing a Proof of Loss, you may elect the moment at which the seventy-two (72) hour "occurrence" period is deemed to have commenced. However, this cannot be earlier than when the first loss or damage occurs to the covered property.

### C. Maintenance Of "Primary Insurance"

1. The "primary insurance" or replacements or renewals thereof (not more restrictive in coverage), with Limits of Insurance not less than those shown in the Schedule of "Primary Insurance" must be:

   a. in effect at the inception of this insurance; and

   b. maintained in effect during the policy period of this insurance.

2. Failure of the insured to comply with:

   a. paragraph **1.a.** above will invalidate this insurance;

   b. paragraph **2.a.** above will not invalidate this insurance, but in the event of such failure this insurance will apply in the same manner as though the "primary insurance" had been maintained in accordance with this condition.

**D. Notification of Loss or Damage**

You must notify us as soon as possible of loss or damage to covered property if the:

1. Amount of loss or damage is likely to exceed the applicable limit of the "primary insurance";

2. "Primary insurer" has reserved at least 74% of the applicable limit of the "primary insurance" for the loss or damage; or

3. Loss or damage is caused by a covered catastrophe or disaster that is unusually severe.

**E. Other Insurance**

If you have other insurance covering the same loss or damage as the insurance provided by the "primary insurance", we will pay only the excess over what you should have received from the other insurance and the "primary insurance" combined, whether or not you can collect on the other insurance or the "primary insurance".

**F. Statement of Values**

The coverage provided by this policy and the premium charged for this policy is based on the Statement of Values attached to this policy.

**G. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

Any recoveries will be applied first to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder; and lastly to reimburse such interests (including the insured) as to which this policy is excess, as are entitled to the residue, if any.

When we assist in pursuit of the insured's rights of recovery, reasonable expenses resulting therefrom will be apportioned among all interests in the ratio of their respective recoveries.

If there should be no recovery as a result of proceedings instituted solely at our request, we will bear all expenses of such proceedings.

## SECTION VI - DEFINITIONS

**A.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**B.** "Insured loss" means:

Loss or damage insured under the terms and conditions of the "primary insurance" after application of any deductibles, self-insured retentions or coinsurance penalties.

**C.** "Occurrence" means:

Any one loss, disaster or casualty or series of losses, disasters or casualties arising out of one event. When the event is a result of tornado, cyclone, hurricane, riot, civil commotion, vandalism or malicious mischief, one event is considered to be all loss or damage occurring during a continuous period of seventy-two (72) hours.

**D.** "Pollutants" means:

Any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**E.** "Primary insurance" means:

The coverage(s) afforded under the insurance policy designated in **Section III - Schedule of Primary Insurance**, above.

**F.** "Primary insurer" means:

The insurer designated in **Section III - Schedule of Primary Insurance**, above.

**G.** "Volcanic action" means:

Direct loss or damage resulting from the volcanic eruption, explosion or effusion when the loss or damage is caused by:

    **a.** Airborne volcanic blast or airborne shock waves;

    **b.** Ash, dust or particulate matter; or

    **c.** Lava flow.

All volcanic eruptions, explosions or effusion that occurs within any 168 hour period will constitute a single "occurrence".

"Volcanic action" does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

**POLICY NUMBER:** LP0000907

**EFFECTIVE DATE:** April 27, 2017

## STATEMENT OF VALUES

| LOC. NO. | BLDG. NO. | ADDRESS | COVERAGE TYPE | STATED VALUE |
|---|---|---|---|---|
| ALL | ALL | As Per Schedule on File with Company | | ███████ |

SPB-106 (05/2008)

# In Witness Clause

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

Executive Vice President

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

ALL PARTS OF THE POLICY

Notwithstanding any other provision of this policy to the contrary, this insurance does not apply to any loss, cost, expense, damage, injury or economic detriment, whether arising by contract, operation of law or otherwise whether or not concurrent or in any sequence with any other cause or event, that in any way, form or manner, directly or indirectly, arises out of, results from or is caused by "terrorism", and also including any action taken in hindering or defending against "terrorism".

"Terrorism" means any act of force or violence or other illegal means, whether actual, alleged or threatened, by any person, persons, group, private or governmental entity or entities, or any other type of organization of any nature whatsoever, whether the identity of which is known or unknown, that appears to be for political, religious, racial, ethnic, ideological, ecological or social purposes, objectives or motives and that causes or appears to be intended to cause:

1. alarm, fright, fear of danger, concern or apprehensions for public safety;

2. the interference or disruption of an electronic, communication, information or mechanical system;

3. the intimidation or coercion of the civilian population, or any governmental body; or

4. the alteration of the policies, foreign or domestic of any governmental body,

This exclusion does not affect the applicability of, and is in addition to, any exclusion of war, warlike or military action, whether or not specifically denominated as such.

EAA-146 (12/2009)                                                                                    Page 1 of 1

IL 00 03 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

 © ISO Properties, Inc.,  2006

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 09 35 08 98

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

**1.** The failure, malfunction or inadequacy of:

**a.** Any of the following, whether belonging to any insured or to others:

**(1)** Computer hardware, including microprocessors;

**(2)** Computer application software;

**(3)** Computer operating systems and related software;

**(4)** Computer networks;

**(5)** Microprocessors (computer chips) not part of any computer system; or

**(6)** Any other computerized or electronic equipment or components; or

**b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph **A.1.a.** of this endorsement;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause Of Loss as described in paragraph **A.** of this endorsement results:

**1.** In a Covered Cause Of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

**2.** Under the Commercial Property Coverage Part:

**a.** In a "Specified Cause Of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes Of Loss - Special Form; or

**b.** In a Covered Cause Of Loss under the Causes Of Loss - Basic Form or the Causes Of Loss - Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause Of Loss", elevator collision, or Covered Cause Of Loss.

**C.** We will not pay for repair, replacement or modification of any items in paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER:  LP0000907

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.  THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)**     $     ▮▮▮▮▮ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses**     ▮▮  **% Year: 20** _17_ |
| (Refer to Paragraph **B.** in this endorsement.) |
| |
| **Federal share of terrorism losses**     82  **% Year: 20** _18_ |
| (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

©  Insurance Services Office, Inc., 2015

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

          ©  Insurance Services Office, Inc., 2015          IL 09 85 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SERVICE OF SUIT CLAUSE**
(Method of Suit in the State of New York)

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS IN THIS POLICY

We appoint the Superintendent of Insurance of the State of New York and his successor and successors in office as his and their duly authorized deputies, as the true and lawful attorney of UNITED NATIONAL INSURANCE COMPANY  in and for the State of New York, upon whom all lawful process may be served in any action, "suit" or proceeding instituted in the State of New York by or on behalf of any insured or beneficiary against us, arising out of this insurance policy.

EAA235 (12/2009)                                          Page 1 of 1

Policy Change No.   1

# ENDORSEMENT

**This endorsement, effective**  April 27, 2017        **at 12:01 a.m. standard time, forms a part of**

**Policy # :**    **LP0000907**

**Issued to :**   **Setai Hotel Acquisition, LLC**

**By :**          **UNITED NATIONAL INSURANCE COMPANY**

## POLICY CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is hereby agreed and understood that the Named Insured is to read as follows:

Setai Hotel Acquisition, LLC
Abbey Hotel Acquisition, LLC
Setai Resort & Residences Condominium Association, Inc

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersignature

SC-16 (2/98)

Policy Change No.  2

# ENDORSEMENT

**This endorsement, effective**  April 27, 2017        **at 12:01 a.m. standard time, forms a part of**

**Policy # :**    **LP0000907**

**Issued to :**   **Setai Hotel Acquisition, LLC**

**By :**        **UNITED NATIONAL INSURANCE COMPANY**

## POLICY CHANGE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is hereby agreed and understood that the SECTION III - SCHEDULE OF "PRIMARY INSURANCE" on form XPB-100
FOLLOWING FORM PROPERTY EXCESS OF LOSS POLICY is as follows:

Company: Westchester Surplus Lines Insurance Company
Policy Term: 4/27/2017 – 4/27/2018
Policy No: D373431849 009
$10,000,000 Primary

Other "Primary Insurance" is as follows:

Policy No: 1000202527-02
$7,500,000 part of $15,000,000 excess $10,000,000

Policy No: LHD900392 00
$7,500,000 part of $15,000,000 excess $10,000,000

Policy No: EAF786617-17
$10,000,000 excess $25,000,000

Policy No: CA3X000840171
$15,000,000 excess $35,000,000

Policy No: AJS0000541
$25,000,000 excess $50,000,000

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersignature

SC-16 (2/98)

(The attaching clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

**This endorsement, effective**   April 27, 2017                    **at 12:01 A.M. standard time, forms a part of**

**Policy No.:**  LP0000907

**Issued To:**  Setai Hotel Acquisition, LLC

**By:**            UNITED NATIONAL INSURANCE COMPANY

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ELECTRONIC DATA AND CYBER RISK EXCLUSION

We will not pay for loss or damage, directly or indirectly arising out of, caused by, contributed to by or resulting from any:

1. Functioning, nonfunctioning, misfunctioning, availability or nonavailability of:

   a. the internet or similar facility; or

   b. any intranet or private network or similar facility; or

   c. any website, bulletin board, chat room, search engine, protal or similar third party application service.

2. Alteration, corruption, destruction, distortion, erasure, theft or other loss of or damage to data, software, information repository, microchip, integrated system or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set;

3. Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of the insured to conduct business;

   Unless such loss or damage:

   a. arises out of physical damage occurring at the insured's premises; and

   b. results from a covered cause of loss under the policy.

This exclusion supplements any exclusion elsewhere in the policy.

EPA-440 (11/2003)                                                                                                    Page 1 of 1

Filing # 157340644 E-Filed 09/13/2022 05:21:53 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

     Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

     Defendants,

_____/

THE STATE OF FLORIDA:

## **SUMMONS**

To Each Sheriff of the State:

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the
Complaint:

WESTCHESTER SURPLUS LINES INSURANCE COMPANY
By serving the Chief Financial Officer

     Each defendant is required to serve written defenses to the Complaint on Plaintiff's
attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY
STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that
defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk
of this Court either before service on Plaintiff's attorney or immediately thereafter. If a
defendant fails to do so, a default will be entered against that defendant for the relief demanded
in the Complaint.

Dated on _____, 2022.

                    HARVEY RUVIN, Clerk
                    As Clerk of the Court

                    By:_____
                         Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

THE STATE OF FLORIDA:

**<u>SUMMONS</u>**

To Each Sheriff of the State:

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

UNITED NATIONAL INSURANCE COMPANY
By serving the Chief Financial Officer

     Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____, 2022.

                       HARVEY RUVIN, Clerk
                       As Clerk of the Court

                       By:_____
                              Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

       Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

       Defendants,
_____/

THE STATE OF FLORIDA:

**<u>SUMMONS</u>**

To Each Sheriff of the State:

       YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

<div align="center">

SCOTTSDALE INSURANCE COMPANY
By serving the Chief Financial Officer

</div>

       Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____, 2022.

                                 HARVEY RUVIN, Clerk
                                 As Clerk of the Court

                                 By:_____
                                     Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,
_____/

THE STATE OF FLORIDA:

**<u>SUMMONS</u>**

To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

LIBERTY SURPLUS LINES INSURANCE COMPANY
By serving the Chief Financial Officer

      Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____, 2022.

                        HARVEY RUVIN, Clerk
                        As Clerk of the Court

                        By:_____
                            Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

THE STATE OF FLORIDA:

## SUMMONS

To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

LANDMARK AMERICAN INSURANCE COMPANY
By serving the Chief Financial Officer

      Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____, 2022.

                                 HARVEY RUVIN, Clerk
                                 As Clerk of the Court

                                 By:_____
                                       Deputy Clerk

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 304 of 600

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

THE STATE OF FLORIDA:

**SUMMONS**

To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

EVEREST INDEMNITY INSURANCE COMPANY
By serving the Chief Financial Officer

      Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____, 2022.

                        HARVEY RUVIN, Clerk
                        As Clerk of the Court

                        By:_____
                                  Deputy Clerk

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 305 of 600

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

THE STATE OF FLORIDA:

**<u>SUMMONS</u>**

To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

AXIS SURPLUS INSURANCE COMPANY
By serving the Chief Financial Officer

      Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____, 2022.

                          HARVEY RUVIN, Clerk
                          As Clerk of the Court

                          By:_____
                              Deputy Clerk

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 306 of 600

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

THE STATE OF FLORIDA:

## SUMMONS

To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

WESTCHESTER SURPLUS LINES INSURANCE COMPANY
By serving the Chief Financial Officer

      Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____9/15/2022_____, 2022.

HARVEY RUVIN, Clerk
As Clerk of the Court

By:____38213_Calebia Sutton_____

Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

THE STATE OF FLORIDA:

**<u>SUMMONS</u>**

To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

UNITED NATIONAL INSURANCE COMPANY
By serving the Chief Financial Officer

      Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _9/15/2022_____, 2022.

                        HARVEY RUVIN, Clerk
                        As Clerk of the Court
                        217043
                        By: _____
                        Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

THE STATE OF FLORIDA:

## SUMMONS

To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

SCOTTSDALE INSURANCE COMPANY
By serving the Chief Financial Officer

      Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____9/15/2022_____, 2022.

               HARVEY RUVIN, Clerk
               As Clerk of the Court

               217043
               By: _____
                     Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

     Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

     Defendants,

_____/

THE STATE OF FLORIDA:

## SUMMONS

To Each Sheriff of the State:

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

LANDMARK AMERICAN INSURANCE COMPANY
By serving the Chief Financial Officer

     Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on    9/15/2022   , 2022.

     HARVEY RUVIN, Clerk
     As Clerk of the Court

     **217043**

     By:_____

     Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

       Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

       Defendants,

_____/

THE STATE OF FLORIDA:

## SUMMONS

To Each Sheriff of the State:

       YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

EVEREST INDEMNITY INSURANCE COMPANY
By serving the Chief Financial Officer

       Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on  9/15/2022_____, 2022.

                        HARVEY RUVIN, Clerk
                        As Clerk of the Court

                        **217043**

                        By:_____

                             Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

        Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

        Defendants,

_____/

THE STATE OF FLORIDA:

## SUMMONS

To Each Sheriff of the State:

        YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

        LIBERTY SURPLUS LINES INSURANCE COMPANY
        By serving the Chief Financial Officer

        Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____9/15/2022_____, 2022.

        HARVEY RUVIN, Clerk
        As Clerk of the Court

        By:_____
                Deputy Clerk

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

THE STATE OF FLORIDA:

<div align="center">

**SUMMONS**

</div>

To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint:

<div align="center">

AXIS SURPLUS INSURANCE COMPANY
By serving the Chief Financial Officer

</div>

      Each defendant is required to serve written defenses to the Complaint on Plaintiff's attorney: ALLAN S. REISS, ESQUIRE, Levine & Partners P.A., whose address is 3350 MARY STREET, Miami, Florida 33l33, within twenty (20) days after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

Dated on _____9/15/2022_____, 2022.

HARVEY RUVIN, Clerk
As Clerk of the Court

**217043**

By:_____
           Deputy Clerk



IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

## **NOTICE OF FILING**

     Plaintiff, SETAI HOTEL ACQUISITION, LLC ("Plaintiff" or "Landlord"), by and through its undersigned counsel, files this Notice of Filing the attached Notice of Service of Process on Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, Notice of Service of Process on Defendant, LANDMARK AMERICAN INSURANCE COMPANY, Notice of Service of Process on Defendant, AXIS SURPLUS INSURANCE COMPANY, Notice of Service of Process on Defendant, LIBERTY SURPLUS LINES INSURANCE COMPANY, Notice of Service of Process on Defendant, EVEREST INDEMNITY INSURANCE COMPANY, Notice of Service of Process on Defendant, SCOTTSDALE INSURANCE

COMPANY, Notice of Service of Process on  Defendant, UNITED NATIONAL INSURANCE

COMPANY of the Summons and Complaint.

Dated September 22, 2022.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350
Fax:(305)423-3203
Email: asr@levinelawfirm.com

BY: s/Allan S. Reiss_____
          ALLAN S. REISS, ESQ.
          FLORIDA BAR NO: 858500

*22-000343138*

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
STATE OF FLORIDA

---

SETAI HOTEL AQUISITION LLC

PLAINTIFF(S)

VS.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, ET AL

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT

| | |
|---|---|
| **CASE #:** | **2022-14511** |
| **COURT:** | **11TH JUDICIAL CIRCUIT** |
| **COUNTY:** | **MIAMI-DADE** |
| **DFS-SOP #:** | 22-000343138 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday,
September 19, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, September
21, 2022 to the designated agent for the named entity as shown below.

        WESTCHESTER SURPLUS LINES INSURANCE COMPANY

        DONNA MOCH

        1200 SOUTH PINE ISLAND ROAD
        PLANTATION, FL 33324

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

                                Jimmy Patronis
                                Chief Financial Officer

ALLAN REISS
3350 MARY STREET
3350 MARY STREET
MIAMI, FL 33133

                                                        JD1

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

---

SETAI HOTEL AQUISITION LLC

PLAINTIFF(S)

VS.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, ET AL

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT

**CASE #:** 2022-14511
**COURT:** 11TH JUDICIAL CIRCUIT
**COUNTY:** MIAMI-DADE
**DFS-SOP #:** 22-000343151

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Monday, September 19, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, September 21, 2022 to the designated agent for the named entity as shown below.

LANDMARK AMERICAN INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jimmy Patronis
Chief Financial Officer

ALLAN REISS
3350 MARY STREET
3350 MARY STREET
MIAMI, FL 33133

JD1

*22-000343161*

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
STATE OF FLORIDA

SETAI HOTEL AQUISITION LLC

PLAINTIFF(S)

VS.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, ET AL

DEFENDANT(S)
_____/

SUMMONS, COMPLAINT

| | |
|---|---|
| **CASE #:** | **2022-14511** |
| **COURT:** | **11TH JUDICIAL CIRCUIT** |
| **COUNTY:** | **MIAMI-DADE** |
| **DFS-SOP #:** | 22-000343161 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday,
September 19, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, September
21, 2022 to the designated agent for the named entity as shown below.

> AXIS SURPLUS INSURANCE COMPANY
> LYNETTE COLEMAN
> 1201 HAYS STREET
> TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

ALLAN REISS
3350 MARY STREET
3350 MARY STREET
MIAMI, FL 33133

JD1

*22-000343156*

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
**STATE OF FLORIDA**

---

SETAI HOTEL AQUISITION LLC

PLAINTIFF(S)

VS.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, ET AL

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT

| | |
|---|---|
| **CASE #:** | **2022-14511** |
| **COURT:** | **11TH JUDICIAL CIRCUIT** |
| **COUNTY:** | **MIAMI-DADE** |
| **DFS-SOP #:** | 22-000343156 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday,
September 19, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, September
21, 2022 to the designated agent for the named entity as shown below.

      LIBERTY SURPLUS INSURANCE CORPORATION
      LYNETTE COLEMAN
      1201 HAYS STREET
      TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer

ALLAN REISS
3350 MARY STREET
3350 MARY STREET
MIAMI, FL 33133

JD1

*22-000343162*

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
STATE OF FLORIDA

SETAI HOTEL AQUISITION LLC

PLAINTIFF(S)

VS.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, ET AL

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT

**CASE #:**      **2022-14511**
**COURT:**      **11TH JUDICIAL CIRCUIT**
**COUNTY:**    **MIAMI-DADE**
**DFS-SOP #:** 22-000343162

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday,
September 19, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, September
21, 2022 to the designated agent for the named entity as shown below.

EVEREST INDEMNITY INSURANCE COMPANY
DAVID STEINER
P.O. BOX 830
LIBERTY CORNER, NJ 0830 United States

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer

ALLAN REISS
3350 MARY STREET
3350 MARY STREET
MIAMI, FL 33133

JD1

*22-000343167*

**CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA**

SETAI HOTEL AQUISITION LLC

PLAINTIFF(S)

VS.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, ET AL

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT

| | |
|---|---|
| **CASE #:** | **2022-14511** |
| **COURT:** | **11TH JUDICIAL CIRCUIT** |
| **COUNTY:** | **MIAMI-DADE** |
| **DFS-SOP #:** | 22-000343167 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday,
September 19, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, September
21, 2022 to the designated agent for the named entity as shown below.

SCOTTSDALE INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer

ALLAN REISS
3350 MARY STREET
3350 MARY STREET
MIAMI, FL 33133

JD1

*22-000343173*

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
STATE OF FLORIDA

---

SETAI HOTEL AQUISITION LLC

PLAINTIFF(S)

VS.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, ET AL

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT

| | |
|---|---|
| **CASE #:** | **2022-14511** |
| **COURT:** | **11TH JUDICIAL CIRCUIT** |
| **COUNTY:** | **MIAMI-DADE** |
| **DFS-SOP #:** | 22-000343173 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday,
September 19, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, September
21, 2022 to the designated agent for the named entity as shown below.


UNITED NATIONAL INSURANCE COMPANY
STEPHEN W RIES
THREE BALA PLAZA EAST, STE 300
BALA CYNWYD, PA 19004


**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule  #1.080**


Jimmy Patronis
Chief Financial Officer


ALLAN REISS
3350 MARY STREET
3350 MARY STREET
MIAMI, FL 33133

JD1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA
CIVIL DIVISION

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability company,

                                               Case No.: 2022-014511-CA-01

        Plaintiff,

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

        Defendants.
_____/

## <u>NOTICE OF APPEARANCE</u>
## <u>AND DESIGNATION OF E-MAIL ADDRESSES</u>

COMES NOW WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ.,

with the law firm of Butler Weihmuller Katz Craig LLP and hereby files their Notice of

Appearance to represent the Defendant, WESTCHESTER SURPLUS LINES

INSURANCE COMPANY. It is respectfully requested that all future pleadings and

discovery be served upon the undersigned in connection with this action.

NOTICE IS ALSO HEREBY GIVEN that the Defendant, WESTCHESTER

SURPLUS LINES INSURANCE COMPANY, by and through its undersigned counsel,

and pursuant to the Supreme Court of Florida No. SC10-2101, Fla. Judicial Admin.

R. 2.516(b)(1)(A), hereby designate the following primary and secondary e-mail

addresses:

        Primary:        wlewis@butler.legal
                           klokuta@butler.legal

Secondary:     jdearborn@butler.legal
               tgarcia@butler.legal


BUTLER WEIHMULLER KATZ CRAIG LLP


_Katelyn Lokuta_ (signature)
_____

WILLIAM R. LEWIS, ESQ.
Florida Bar No.:  0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No.:  106198
klokuta@butler.legal
Secondary:   jdearborn@butler.legal
             tgarcia@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Defendant, Westchester Surplus Lines
Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was served utilizing the Court's e-filing portal and e-service in accordance with Fla.R.Jud.Admin. 2.516 and AOSC13-49 on September 26, 2022 to:

> Allan S. Reiss, Esq.
> Levine & Partners, P.A.
> 3350 Mary Street
> Miami, FL 33133
> *Counsel for Plaintiff, Setai Hotel Acquisition, LLC*

_____
KATELYN N. LOKUTA, ESQ.

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 325 of 600

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-014511-CA-01

SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation,

        Plaintiff,

v.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, LIBERTY SURPLUS LINES INSURANCE COMPANY, AXIS SURPLUS INSURANCE COMPANY, EVEREST INDEMNITY INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, and UNITED NATIONAL INSURANCE COMPANY,

        Defendants.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESSES BY DEFENDANT, UNITED NATIONAL INSURANCE COMPANY

        PLEASE TAKE NOTICE that the undersigned counsel hereby appear in the above-styled action on behalf of defendant, United National Insurance Company, and request that all papers in this action be served upon Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP, SunTrust International Center, One Southeast Third Avenue, Suite 1600, Miami, FL 33131.

        PLEASE TAKE FURTHER NOTICE that pursuant to Fla. R. Jud. Admin. 2.516(b)(1)(A), the undersigned counsel hereby designate the following primary and secondary e-mail addresses for the purpose of service of all documents required to be served in this proceeding:

| Attorney | Primary E-Mail Address | Secondary E-Mail Address |
|---|---|---|
| **Jason M. Chodos, Esq.** | jchodos@zellelaw.com | jruiz@zellelaw.com |
| **Hayley H. Ryan, Esq.** | hryan@zellelaw.com | jruiz@zellelaw.com |

Dated: September 28, 2022

Respectfully submitted,

ZELLE LLP

By:    s/Hayley H. Ryan
       Jason M. Chodos, Esq. (FL Bar No. 025823)
       jchodos@zellelaw.com
       Hayley H. Ryan, Esq. (FL Bar No. 1032623)
       hryan@zellelaw.com
       SunTrust International Center
       One Southeast Third Avenue, Suite 1600
       Miami, FL 33131
       Tel.: (786) 693-2351
       Fax: (612) 336-9100
       *Attorneys for Defendant,*
       *United National Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 28, 2022, I served the foregoing Notice of Appearance and Designation of E-Mail Addresses upon counsel for plaintiff, Allan S. Reiss, Esq., Levine & Partners, P.A., 3350 Mary Street, Miami, FL 33133-5215, and counsel for defendant, Westchester Surplus Lines Insurance Company, William R. Lewis, Esq. and Katelyn N. Lokuta, Esq., Butler Weihmuller Katz Craig LLP, 400 N. Ashley Drive, Suite 2300, Tampa, FL 33602 by e-mail via the Florida ePortal system.

                          s/Hayley H. Ryan
                          Hayley H. Ryan

Case 1:23-cv-20318-RNS Document 1-2 Entered on FLSD Docket 01/26/2023 Page 327 of 600

IN THE COUNTY COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability company,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES
INSURANCE COMPANY, AXIS
SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE
INSURANCE COMPANY, and UNITED
NATIONAL INSURANCE COMPANY,

      Defendant.

CASE NO.: 2022-014511 CA 01

## NOTICE OF APPEARANCE AND DESIGNATION OF EMAIL ADDRESSES

The undersigned law firm hereby gives notice of its appearance as counsel for Defendant, LIBERTY SURPLUS LINES INSURANCE COMPANY, in the above-captioned matter and requests that all further pleadings, papers, notices, motions, discovery and correspondence be directed to the attention of the undersigned.

Pursuant to Florida Rule of Judicial Administration 2.516(b)(1), the undersigned law firm hereby designates the following primary and secondary email addresses:

Primary email:               crenella@zellelaw.com

Secondary email:          jwalker@zellelaw.com

All papers and pleadings filed in this action should be served on the undersigned at the email addresses set forth above.

ZELLE LLP
SunTrust International Center, One Southeast Third Avenue, Ste. 1600, Miami, Florida 33131
Telephone 786-693-2350 – Facsimile 612-336-9100

CASE NO.:  2022-014511 CA 01

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **September 28, 2022** a true and correct copy of the foregoing was filed with the Court through the use of the Florida Courts eFiling Portal, and has been served upon all parties on the attached Service List via ☐ First Class U.S. Mail, and/or ☑ via the Florida Courts eFiling Portal eService, in accordance with rule 2.516, Florida Rules of Judicial Administration.

**ZELLE LLP**
*Counsel for Defendant* Liberty Surplus Lines
Insurance Company
SunTrust International Center
One Southeast Third Avenue, Ste. 1600
Miami, Florida 33131-4332
Tel:  786-693-2350
Fax:  612-336-9100

By:   */s/ Christine M. Renella*
**CHRISTINE M. RENELLA**
Florida Bar No. 65485
crenella@zellelaw.com
**JACARRI WALKER**
Florida Bar No. 1010474
jwalker@zellelaw.com

## SERVICE LIST

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, Florida 33133-5215
Tel: 305-372-1350
Fax: 305-423-3203
Email: asr@levinelawfirm.com
*Counsel for Plaintiff*

4894-1900-5235v1

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 329 of 600

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

## AGREED ORDER ON DEFENDANT, LIBERTY SURPLUS LINES INSURANCE COMPANY'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' COMPLAINT

**THIS CAUSE,** having come before the Court on Defendant's Motion for Extension of Time to Respond to Plaintiffs' Complaint, and the Court being fully advised that this Order was agreed to by Defendant, LIBERTY SURPLUS LINES INSURANCE COMPANY and Plaintiffs, SETAI HOTEL ACQUISITION, LLC, and being otherwise fully advised in the premises, it is hereupon,

**ORDERED AND ADJUDGED** that:

1. Defendant shall respond to Plaintiffs' Complaint on or before Friday, November 11, 2022.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 9th day of October, 2022.

2022-014511-CA-01 10-09-2022 10:20 PM
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal


**Physically Served:**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

**AGREED ORDER ON DEFENDANT, UNITED NATIONAL INSURANCE COMPANY'S
UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

**THIS CAUSE**, having come before the Court on the Unopposed Motion for Extension of
Time to Respond to Complaint filed by defendant, UNITED NATIONAL INSURANCE
COMPANY, on October 10, 2022 (the "Motion"), and the Court being fully advised that this Order
was agreed to by UNITED NATIONAL and Plaintiff, SETAI HOTEL ACQUISITION, LLC, and
being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1. United National's Motion for Extension of Time to Respond to Complaint is GRANTED.

2. Defendant shall file a response to Plaintiff's Complaint on or before Friday, November 11,
   2022.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>10th day of October, 2022</u>.



<u>2022-014511-CA-01 10-10-2022 3:19 PM</u>
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="color:red; border:1px solid red">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal


**Physically Served:**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

### AGREED ORDER ON DEFENDANT'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT

UPON AGREEMENT of the parties and the Court having been advised of the agreement of counsel, and being otherwise advised in the premises, it is hereupon,

ORDERED and ADJUDGED that said Defendant, Everest Indemnity Insurance Company's, Motion for Extension of Time to Respond to Plaintiff's Complaint is GRANTED. Defendant shall file their responses to Plaintiff's Complaint on or before Monday, October 31, 2022.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 10th day of October, 2022.

2022-014511-CA-01 10-10-2022 3:21 PM
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal

**Physically Served:**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                Case No.: 2022-014511 CA 01

        Plaintiff,

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY

        Defendants.

_____/

## <u>DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S, ANSWER & AFFIRMATIVE DEFENSES</u>

COMES NOW, the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Westchester"), by and through its undersigned counsel, and responds to the Complaint filed herein as follows:

## <u>COMMON ALLEGATIONS</u>

1.      Admitted that Plaintiff has alleged that their action is one for damages that exceed Thirty Thousand Dollars ($30,000.00), exclusive of attorney's fees and costs; otherwise, denied.

2.      Admitted that Plaintiff is an LLC only. Westchester is without knowledge of the remaining allegations and are therefore denied.

3.      Admitted that Westchester is a surplus lines insurance carrier licensed to conduct business in Florida, including Miami Date County, FL. All allegations not specifically admitted are denied.

4.      Admitted that Westchester issued policy number D37431849-003 to Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC, Setai Resort & Residences Condominium Association, Inc. with an address of 1400 Broadway, New York, NY 10018, for the policy period of April 27, 2017 to April 27, 2018 ("Subject Policy") for the property located at 2001 Collins Avenue, Miami Beach, FL 33139 ("Subject Property") subject to the terms, conditions, limitations, and exclusions contained therein in exchange for a premium to be paid by the Plaintiff. All allegations not specifically admitted are denied.

5.      Admitted for jurisdictional purposes only; otherwise denied.

6.      Admitted that Westchester issued a policy of insurance to Setai Hotel Acquisition, LLC, 1400 Broadway, New York, NY 10018. The terms and conditions of the policy are contained therein; otherwise denied.

7.      Denied.

8.      Admitted that on September 15, 2017, Plaintiff reported a loss to Westchester for damages having reportedly occurred as a result of Hurricane Irma on or about September 10, 2017. All allegations not specifically admitted are denied.

9.      Denied.

10.     Plaintiff presented an initial claim which was subject to the applicable deductibles. Any amount paid for Business Income loss was inaccurate as the incorrect deductible was applied, resulting in an over payment of that portion of the claim; All allegations not specifically admitted are denied.

11.     Admitted that on June 16, 2020, a letter of representation was provided to Westchester with a request to reopen the claim with no additional details as to any supplemental claimed damage.  On September 3, 2020, almost three years after the date of loss and almost three months after the request to reopen the claim, Plaintiff provided Westchester with a sworn proof of loss and estimates. All allegations not specifically admitted are denied.

12.     Denied.

13.     Denied.

14.     Denied.

15.      Westchester is without knowledge as to Plaintiff's arrangement with their counsel; therefore, denied.

16.     Denied.

## COUNT I – BREACH OF CONTRACT – WESTCHESTER SURPLUS LINES INSURANCE COMPANY

17.     Westchester readopts and realleges their responses to paragraphs 1 through 16 as if fully set forth herein.

18.     Denied

19.     Denied.

20.     Denied.

Westchester denies all allegations not expressly admitted. Westchester denies all allegations and prayers for relief set forth in Plaintiff's Wherefore Claus.

## COUNT II – BREACH OF CONTRACT – LANDMARK AMERICAN INSURANCE COMPANY

Paragraphs 21-24 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT III – BREACH OF CONTRACT – LIBERTY SURPLUS LINES INSURANCE COMPANY

Paragraphs 25-28 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT IV – BREACH OF CONTRACT – AXIS SURPLUS INSURANCE COMPANY

Paragraphs 29-32 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT V – BREACH OF CONTRACT – EVEREST INDEMNITY INSURANCE COMPANY

Paragraphs 33-36 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT VI – BREACH OF CONTRACT – SCOTTSDALE INSURANCE COMPANY

Paragraphs 37-40 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT VII – BREACH OF CONTRACT – UNITED NATIONAL INSURANCE COMPANY

Paragraphs 41-44 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint alleges a cause of action for an insurance claim under a commercial policy of insurance issued to Setai Hotel Acquisition, LLC, 1400 Broadway New York, NY 10018. Under Florida's choice-of-law rules, lex loci contractus applies in contract matters. Pursuant to this rule, the law of the jurisdiction where the surplus lines

insurance contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. Here, this Court must apply the law of the state where the surplus lines insurance policy was bound.

## SECOND AFFIRMATIVE DEFENSE

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY
COVERAGE FORM**

\*\*\*

**E.      Loss Conditions**

\*\*\*

**3.      Duties In The Event Of Loss Or Damage**

**a.**      You must see that the following are done in the event of loss or damage to Covered Property:

\*\*\*

**(2)**      Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)**      As soon as possible, give us a description of how, when and where the loss or damage occurred.

\*\*\*

Plaintiff did not give Westchester prompt notice of the supplemental claim and alleged damages to the property. On June 16, 2020, a letter of representation was provided to Westchester with a request to reopen the claim with no additional details as to any supplemental claimed damage.  On September 3, 2020, almost three years after the date of loss and almost three months after the request to reopen the claim, Plaintiff provided Westchester with a sworn proof of loss and estimates. Therefore, Plaintiff did not provide prompt notice of the loss or damage.

## THIRD AFFIRMATIVE DEFENSE

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY
COVERAGE FORM**

\*\*\*

**E.      Loss Conditions**

\*\*\*

**3.      Duties In The Event Of Loss Or Damage**

**a.**      You must see that the following are done in the event of loss or damage to Covered Property:

\*\*\*

**(5)**      At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.

**(6)**      As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

\*\*\*

**(8)**      Cooperate with us in the investigation or settlement of the claim.

\*\*\*

Westchester requested additional information from Plaintiff on September 22, 2020, January 25, 2021, February 24, 2021, March 25, 2021, April 8, 2021, March 3, 2022, June 29, 2022, and August 12, 2022. Plaintiff failed to provide requested records related to construction of planned renovation projects prior to Hurricane Irma ("Renovation Project"), construction contracts pertaining to repairs related to Hurricane Irma damage, and failed to delineate which expenditures were made by the insured for

the Renovation Project, despite Westchester's repeated requests. Therefore, Plaintiff breached the policy terms by failing to comply with their duties in the event of a loss and prejudiced Westchester's investigation. Plaintiff's failure to comply with their duties in the event of a loss prevented Westchester from making a coverage determination at the time the above captioned action was filed despite its good faith attempt to obtain necessary information to do so.

## FOURTH AFFIRMATIVE DEFENSE

The relief sought by Plaintiff in this lawsuit and the underlying claim is barred under the following policy provision:

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

\*\*\*

**D.    LEGAL ACTION AGAINST US**
No one may bring a legal action against us under this Coverage Part unless:
1.  There has been full compliance with all of the terms of this Coverage Part; and

2.  The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

\*\*\*

As set forth in Westchester's Second and Third Affirmative Defense, Plaintiff failed to comply with the duties after a loss as required by the Subject Policy. Further, Plaintiff is barred from recovering in this action because Plaintiff failed to bring this action within two years after the date of loss.

## FIFTH AFFIRMATIVE DEFENSE

The Subject Policy is a "named perils" policy, providing coverage for the perils of

Windstorm and Hail. The Policy provides, in relevant part, as follows:

**A.   Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

\*\*\*

**3.   Covered Causes of Loss**
See applicable Causes of Loss form as shown in the Declarations

\*\*\*

## *Commercial Property Declarations*     

Company: **Westchester Surplus Lines Insurance Company**
SYM:   **FS**      Policy ID: **D37431849 003**

| Location | | |
|---|---|---|
| [X] | Most recent schedule on file with Company totaling **$180,010,000.** | |
| [ ] | See attached Schedule CPs2 | |
| Loc. No. | Bld. No. | Address |
| | | |

| Coverages and Limits Provided | Insurance At Described Location Applies Only For Coverages For Which A Limit Of Liability Is Shown | | | | |
|---|---|---|---|---|---|
| | Loc. No. | Bld. No | Coverage | Covered Causes of Loss Form | Co-Insurance % | Limit of Insurance $ |
| | All | All | Buildings, Personal Property and Business Income Including Extra Expense | Windstorm Or Hail | NIL | $10,000,000 Per Occurrence Primary (per schedule not blanket) |

\*\*\*

## CAUSES OF LOSS- WINDSTORM OR HAIL

**A.   Covered Causes of Loss**

When Windstorm or Hail is shown in the Declaration, Covered Causes of Loss means the following:

Windstorm or Hail, but not including:

a.   Frost or cold weather
b.   Ice (other than hail), snow or sleet, whether driven by wind or not; or
c.   Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain,

snow, sand or dust enters.

It is Plaintiff's burden to prove windstorm damage to covered property under the policy. Further, Plaintiff cannot recover for loss or damage to the interior of any building caused by rain until it first establishes that the building sustained wind damage to its roof or walls through which rain entered.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the following terms as set forth in the policy of insurance and stated here in pertinent part:

### Named Windstorm Percentage Deductible Endorsement

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| FS | D37431849 003 | 02/27/2017 to 04/27/2018 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**Commercial Property Coverage Part**

Schedule: Per Schedule on File with Company

Deductible Percentage: **5** %

Minimum Deductible $**100,000** Per Occurrence

Applicable to **Named Windstorm** and **Named Windstorm Flood**:        Yes

The **Named Windstorm** deductible, shown above and otherwise set forth in the policy, applies to all covered loss or covered damage to Covered Property, occurring during the **Named Windstorm** deductible period and resulting from:
1. wind and/or hail directly or indirectly from a **Named Windstorm**;
2. rain damage to the interior of any building or structure, or the property inside the building or structure, whether the rain is driven by wind or not, provided the building or structure first sustains wind or hail damage to its roof or walls through which the rain enters.
3. **Named Windstorm Flood** meaning Flood directly resulting from a **Named Windstorm**.

A **Named Windstorm** is a storm system that has been declared to be either a Tropical Depression or Tropical Storm, or a Hurricane, by the National Hurricane Center of the National Weather Service.

The **Named Windstorm** deductible period begins at the time a watch or warning is issued by the National Hurricane Center and ends 72 hours after the termination of the last watch or warning issued.

**Deductible:**
The percentage, shown in the schedule above, of the sum of all values listed in the most recent Schedule of Values on file with the Company for each separately identifiable building or structure that has sustained a loss or damage and for which a claim is being made under this policy; subject to the minimum deductible shown in the schedule.

**Calculation of the Deductible:**

A deductible is calculated separately for, and applies separately to:
1.  The Total Insurable Values (TIV) per each separate building or structure.  The TIV per building  or structure shall be calculated as the sum of all values listed in the most recent Schedule of Values on file with the Company for Buildings, Personal Property, Business Income, and any other values for which coverage is provided under this policy related to each separately identifiable structure.
2.  Personal property in the open.  The TIV for personal property in the open shall be the sum of all personal property in the open per location.

If a covered structure is not included on the Schedule of Values, the values at that structure at the time and place of loss will be used.

The Plaintiff's deductible as shown in the above Named Windstorm Percentage Deductible Endorsement is 5% of the total insurable values per each building. Any covered damage under the Subject Policy is therefore subject to this deductible. Per the Schedule of Values, there are three (3) buildings at the loss location 2001 Collins Avenue. As identified on the Schedule of Values, Location # 1, Building # 2 2001-2009 Collins Ave (Hotel), has a total insurable value of $76,500,000.00. Five-percent (5 %) of the Total Insurable Values (TIV) for the hotel building equates to a deductible of $3,825,000.00. As identified on the Schedule of Values Location #1, Building # 3 2001-2009 Collins Ave (Spa Fitness Center), has a total insurance value of $2,310,000.00. Five percent (5 %) of the TIV for the Spa Fitness Center equates to a deductible of $115,000.00. As identified on the Schedule of Values Location #1, Building # 4 2001-2009 Collins Ave (Restaurant/Bar), has a total insurable value of $2,000,000.00. Five percent (5%) of the TIV for the Restaurant/Bar equates to a deductible of $100,000.00.

Defendant's post-loss investigation revealed the repairs to the property are below the applicable deductibles.

10

To the extent that it is determined that some or all of Plaintiff's alleged loss or damage is covered under the Subject Policy, the applicable deductibles must be accounted for.

## SEVENTH AFFIRMATIVE DEFENSE

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

* * *

**G.    Option Coverages**

* * *

**3.    Replacement Cost**

* * *

**d.**    We will not pay on a replacement cost basis for any loss or damage:

**(1)**    Until the lost or damaged property is actually repaired or replaced; and

**(2)**    Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

* * *

**e.**    We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2), (3), subject to f. below:

**(1)**    The Limit of the Insurance applicable to the lost or damaged; property;

**(2)**    The cost to replace the lost or damaged property with other property:
**(a)** Of comparable material or quality; and
**(b)** Used for the same purpose; or

**(3)**    The amount actually spent that is necessary to repair or replace the lost or damaged property.

Westchester is not required to pay on a replacement cost basis for any purported loss or damage that was not actually repaired or replaced, and/or for repairs or replacements that were not made as soon as reasonably possible after the purposed loss or damage. To the extent that Plaintiff made repairs or replacements to damaged property prior to filing suit, these repairs did not exceed the applicable deductible amounts under

the Subject Policy. Any payment on a replacement cost basis under the Policy is limited as set forth above.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the following terms as set forth in the policy of insurance and stated here in pertinent part:

**ORDINANCE OR LAW COVERAGE ENDORSEMENT (ACE 0774)**

**D. Coverage**

***

   **3. Coverage C – Increased Cost of Construction Coverage**

    **a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
      (1) Repair or reconstruct damaged portions of that building; and/or
      (2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;
      When the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

***

**E. Loss Payment**

***

   **4.** Unless paragraph **E.5.** applies, loss payment under Coverage C- Increased Cost of Construction Coverage will be determined as follows:

    **a.** We will not pay under Coverage C:

       **i.** Until the property is actually repaired or replaced at the same or another premises; and
      **ii.** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

Pursuant to the foregoing provisions, Plaintiff is not entitled to costs to conform to any law or ordinance, unless and until the property is actually repaired or replaced, and it is done so within two years of the date of loss.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the

following terms as set forth in the policy of insurance and stated here in pertinent part:

**FLOOD COVERAGE ENDORSEMENT**
**CP 10 65 06 07**

**C.      Additional Covered Cause of Loss**

The following is added to the Covered Causes of Loss:

Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:

1. The overflow of inland or tidal waters;
2. The unusual or rapid accumulation or runoff of surface waters from any source; or

**\*\*\***

**PROVISIONS FOR MAINTENANCE OF FEDERAL FLOOD INSURANCE**
**ENDORSEMENT**
**ACE0376 (06/08)**

For commercial property risks, or those habitational risks not eligible for excess Flood insurance over the basic coverage provided by the National Flood Insurance Program, this insurance shall be excess of the maximum limit available, whether purchased or not. This limitation includes the deduction shown in the Flood Endorsement.

Flood coverage provided by the Flood Coverage Endorsement is in excess of $500,000.00; the maximum coverage limit available for commercial properties through the National Flood Insurance Program. To the extent that Plaintiff can establish that the alleged loss or damage was caused by Flood, coverage is afforded under the Subject Policy for only that portion of damages which exceeds $500,000.00 and the applicable deductible.

## TENTH AFFIRMATIVE DEFENSE

Westchester is a surplus lines insurance carrier and therefore, is not subject to the Chapter 627, Florida Statutes, including Fla. Sta. §627.428. To the extent that some other state's law applies, Chapter 627 would not be applicable.

## STATEMENT

Westchester hereby reserves the right to amend, modify, or supplement its Affirmative Defenses as further facts become known to it during the pendency of this litigation.

WHEREFORE, the Defendant, Westchester Surplus Insurance Company, respectfully requests judgment in its favor, costs of this action and such other relief as this Court deems appropriate under the circumstances.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM R. LEWIS, ESQ.
Florida Bar No.: 0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No: 106198
klokuta@butler.legal
Secondary: jdearborn@butler.legal
          tgarcia@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Counsel for Defendant, Westchester Surplus Lines Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was filed via the Court's e-filing portal on

October 11, 2022 to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL 33133
*Counsel for Plaintiff, Setai Hotel Acquisition, LLC*

Jason M. Chodos, Esq.
Hayley H. Ryan, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, United National Insurance Company*

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, Liberty Surplus Lines Insurance Company*

Elizabeth D. Salinas, Esq.
Mozley, Finlayson & Logins LLP
4767 New Broad Street
Orlando, FL 32814
*Counsel for Defendant, Landmark American Insurance Company*


WILLIAM R. LEWIS, ESQ.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                                     Case No.: 2022-014511 CA 01

        Plaintiff,

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY

        Defendants.

_____/

## WESTCHESTER'S MOTION TO STRIKE BAD FAITH ALLEGATIONS
## IN PLAINTIFF'S COMPLAINT

        COMES NOW, the Defendant, WESTCHESTER SURPLUS LINES INSURANCE

COMPANY ("Westchester"), by and through its undersigned counsel, and pursuant to

Florida Rule of Civil Procedure 1.140(f) hereby moves this Honorable Court to strike

allegation 13 and 18 of the Complaint as they contain "bad-faith" allegations which are

not ripe until the underlying breach of contract action is resolved, and support thereof

states as follows:

        1.      Plaintiff filed a breach of contract action against multiple Defendants,

concerning a supplemental claim for alleged damages caused by Hurricane Irma.

        2.      Plaintiff's Complaint concerns a policy issued by Westchester Surplus Lines

Insurance Company, which insured the property located at 2001 Collins Avenue, Miami

Beach, Florida 331239 for the period of April 27, 2017 through April 27, 2018. *See* ¶4 of

Plaintiff's Complaint.

3.      Throughout the complaint, Plaintiff contends that Westchester breached some alleged duty of good faith.

4.      Specifically, Paragraph 13 of the Complaint alleges:

***

13.     *Defendants failed and refused to adjust the loss, notify Plaintiff of their position on the claim, <u>failed to communicate with one another</u>, and failed and refused, and still fails and refuses, to pay the loss or any part of it, in breach of the terms and conditions of their respective policies of insurance and <u>duties of good faith and fair dealing, and fiduciary duties to their insured</u>* (emphasis added).

***

*See* ¶13 of Plaintiff's Complaint

5.      Furthermore, in Paragraph 18, under Count 1, for Breach of Contract as to Westchester, Plaintiff makes the following bad faith allegations:

***

18.     *Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, owed a contractual duty to adjust the loss, communicate with its insured, <u>communicate with the other participants of the layered program</u>, and pay the loss in accordance with the terms of its policy and <u>its duties of good faith and fair dealing</u>* (emphasis added).

***

*See* ¶18 of Plaintiff's Complaint

6.      It is well settled Florida law that an action for bad faith does not exist "until there is a determination of liability and extent of damages owed on the first-party insurance contract."  *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000); *See Imhof v. Nationwide Mutual Insurance Co.,* 643 So.2d 617, 619 (Fla.1994), *receded in part on other grounds by State Farm Mut. Auto. Ins. Co. v. Laforet,* 658 So.2d 55, 63 (Fla.1995) ("a complaint for a bad-faith claim requires an allegation that there has been a determination of damages."); *See Hartford Ins. Co. v. Mainstream Const. Group, Inc.*, 864 So. 2d 1270, 1272 (Fla. 5th DCA 2004) ("there must first be a determination regarding coverage and contractual issues . . . before an action for bad faith can proceed). Moreover, the "underlying . . . action for insurance benefits . . . must be resolved favorably to the insured" before an action for bad faith can accrue.  *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). *Citizens Property Insurance Corporation v. Mendoza,* 250 So.3d 715 (3d DCA 2018) (Court noted that it was error for the trial court to allow jury instructions to jury whether the adjuster "properly adjusted" the claim and noted that these instructions "may be appropriate in a bad faith case, they have no place in a simple breach of contract action.")

7.      "A party may move to strike or the court may strike redundant, immaterial, impertinent, or scandalous matter from any pleading at any time." Fla. R. Civ. Pro. 1.140(f).

8.      Since a coverage action must be resolved in the insured's favor before the insured can bring a bad faith action, allegations relating to a potential bad faith claim brought within the coverage action are immaterial and impertinent and, therefore, should be stricken. *See Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.,*

618CV1639ORL40DCI, 2019 WL 2176947 (M.D. Fla. Jan. 29, 2019) (explaining that because it "is well settled that a coverage action must be resolved in the insured's favor before the insured can bring a bad faith action, "any allegations relating to a bad faith claim "would be immaterial and impertinent to this [coverage] case and should be stricken"); citing *Dennis v. The Northwestern Mut. Life Ins. Co.*, Case No. 3:06-cv-43-J-20MCR, 2006 WL 1000308, at *2-4 (M.D. Fla. Apr. 14, 2006) (striking bad faith allegations from insurance coverage action); *See also Stallworth v. Hartford Ins. Co.*, 2007 WL 805610 at *1 (N.D. Fla., Mar. 14, 2007) (agreeing with recommendation and striking paragraph with bad faith allegations because they were immaterial to plaintiffs' claim).

WHEREFORE, the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, respectfully requests that this Honorable Court enter an Order granting its Motion to Strike Plaintiff's Bad Faith allegations in paragraph 13 and 18 of the Complaint, and all other relief as this Court deems just and proper.

BUTLER WEIHMULLER KATZ CRAIG LLP

WILLIAM R. LEWIS, ESQ.
Florida Bar No.:  0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No.:  106198
klokuta@butler.legal
Secondary:   jdearborn@butler.legal
                     tgarcia@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Defendant, Westchester Surplus Lines Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was filed via the Court's e-filing portal on

October 11, 2022 to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL 33133
*Counsel for Plaintiff, Setai Hotel Acquisition, LLC*

Jason M. Chodos, Esq.
Hayley H. Ryan, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, United National Insurance Company*

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, Liberty Surplus Lines Insurance Company*

Elizabeth D. Salinas, Esq.
Mozley, Finlayson & Logins LLP
4767 New Broad Street
Orlando, FL 32814
*Counsel for Defendant, Landmark American Insurance Company*

WILLIAM R. LEWIS, ESQ.

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 355 of 600

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

### AGREED ORDER ON DEFENDANT LANDMARK AMERICAN INSURANCE COMPANY'S UNOPPOSED MOTION TO EXTEND DEADLINE TO RESPOND TO PLAINTIFF'S COMPLAINT

UPON AGREEMENT of the parties and the Court having been advised of the agreement of counsel, and being otherwise advised in the premises, it is hereupon:

**ORDERED AND ADJUDGED** that said defendant Landmark American Insurance Company's Motion to Extend Deadline to Respond to Plaintiff's Complaint is **GRANTED**. Defendant shall file its response to plaintiff's Complaint on or before Friday, November 11, 2022.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 11th day of October, 2022.

2022-014511-CA-01 10-11-2022 9:25 PM
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border: 2px solid red; padding: 10px; color: red;">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Elizabeth Salinas, esalinas@mfllaw.com
Elizabeth Salinas, cmotley@mfllaw.com
Elizabeth Salinas, wtaylor@mfllaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal


**Physically Served:**

2154997

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-14511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability company,

Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, LANDMARK AMERICAN INSURANCE
COMPANY, LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE COMPANY,
and UNITED NATIONAL INSURANCE COMPANY.

Defendants.

_____/

## **DEFENDANT'S MOTION FOR EXTENSION OF TIME**
## **TO RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant, Everest Indemnity Insurance Company, by and through the undersigned counsel, files this Motion for Extension of Time to Respond to Plaintiff's, SETAI HOTEL ACQUISITION, LLC, Complaint and as grounds therefore would state:

1. The undersigned counsel was recently retained to represent the interest of the Defendant.

2. The Defendant needs additional time in order to fully and properly respond to Plaintiff's Complaint.

3. Florida Rule of Civil Procedure 1.090(b) allows this Court to extend the time within which to respond to Plaintiff's Complaint.

4.      This Motion is not made for purposes of delay or avoidance, but to allow Defendant to a serve complete, accurate and proper response to Plaintiff's Complaint.

5.      As such, there would be no prejudice to Plaintiff(s), in allowing Defendant additional time as requested herein.

WHEREFORE, the Defendant, Everest Indemnity Insurance Company, respectfully requests this Honorable Court grant the Defendant a twenty (20) day extension in which to respond to Plaintiff's, SETAI HOTEL ACQUISITION, LLC, Complaint and/or grant any other relief deemed just and proper.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been served on all Counsel of Record via the Florida E-Filing Portal this  7  day of ___October_____, 2022.

CONROY SIMBERG
Attorney for Setai Hotel Acquisition, LLC
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Telephone:  (561) 697-8088
Facsimile:  (561) 697-8664
Primary Email:  eservicewpb@conroysimberg.com
Secondary Email:  alezama@conroysimberg.com


By:   /s/ Alexis D. Lezama___
        Alexis D. Lezama, Esquire
        Florida Bar No. 121516

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-014511-CA-01

SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation,

      Plaintiff,

v.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, LIBERTY SURPLUS LINES INSURANCE COMPANY, AXIS SURPLUS INSURANCE COMPANY, EVEREST INDEMNITY INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, and UNITED NATIONAL INSURANCE COMPANY,

      Defendants.

_____/

## UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT

      Defendant, United National Insurance Company ("United National"), through its undersigned counsel, respectfully submits this Unopposed Motion for Extension of Time to Respond to Complaint, and in support thereof states as follows:

      1.     Plaintiff, Setai Hotel Acquisition, LLC ("Setai"), commenced this action by filing its Complaint for Damages (the "Complaint") in this Court on August 3, 2022.

      2.     United National was served with a summons and a copy of the Complaint on September 21, 2022, via electronic delivery, by the Chief Financial Officer of the State of Florida.

      3.     Pursuant to Fla. R. Civ. P. 1.140(a), United National's deadline to respond to the Complaint is October 11, 2022.

4.      Rule 1.090(b) of the Florida Rules of Civil Procedure states that "[w]hen an act is required or allowed to be done at or within a specified time by order of court, by these rules, or by notice given thereunder, for cause shown the court at any time in its discretion (1) with or without notice, may order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ."

5.      United National's undersigned counsel is in the process of reviewing United National's file and preparing a draft response to the Complaint. But, due to the recent retention of the undersigned counsel, and numerous intervening deadlines in other matters, United National reasonably requires additional time to complete its response to the Complaint.

6.      In order to allow sufficient time for United National to respond to the Complaint, United National respectfully requests an extension of time, up to and including November 11, 2022, by when to file its response to the Complaint.

7.      No party will be prejudiced by granting this extension of time.

8.      This motion is not being made in bad faith or for any undue purpose of delay.

**WHEREFORE**, defendant, United National Insurance Company, respectfully requests that the Court grant this Unopposed Motion for Extension of Time to Respond to Complaint and enter an order allowing United National an extension of time, up to and including November 11, 2022, by when to file its response to the Complaint.

## <u>CERTIFICATE OF CONFERRAL</u>

The undersigned counsel for the movant hereby certifies that they conferred with Plaintiff's counsel about the relief requested in this motion and that Plaintiff's counsel agrees to the relief requested herein.

Dated: October 10, 2022

Respectfully submitted,

ZELLE LLP

By:    s/Hayley H. Ryan
Jason M. Chodos, Esq. (FL Bar No. 025823)
jchodos@zellelaw.com
Hayley H. Ryan, Esq. (FL Bar No. 1032623)
hryan@zellelaw.com
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
Tel.: (786) 693-2351
Fax: (612) 336-9100
*Attorneys for Defendant,*
*United National Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2022, I served the foregoing Unopposed Motion for Extension of Time to Respond to Complaint by Defendant, United National Insurance Company, upon all counsel of record by e-mail via the Florida ePortal system.

s/Hayley H. Ryan
Hayley H. Ryan

3

Case 1:23-cv-20318-RNS  Document 1-2  Entered on FLSD Docket 01/26/2023  Page 362 of 600

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

     Plaintiff,

vs.                                            CASE NO. 2022-CA-014511

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY; LANDMARK AMERICAN
INSURANCE COMPANY; LIBERTY SURPLUS
LINES INSURANCE COMPANY; AXIS SURPLUS
INSURANCE COMPANY; EVEREST INDEMNITY
INSURANCE COMPANY; SCOTTSDALE
INSURANCE COMPANY AND UNITED
NATIONAL INSURANCE COMPANY,

     Defendants.

## **NOTICE OF APPEARANCE**

Please take notice of the appearance of Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, 4767 New Broad Street, Orlando, FL 32814, as attorneys of record for Defendant Landmark American Insurance Company.

## **DESIGNATION OF EMAIL**

Pursuant to Florida Rule of Judicial Administration 2.516, counsel for Defendant Landmark American Insurance Company hereby designates the following primary and secondary email addresses for use:

        Primary:     esalinas@mfllaw.com
        Secondary:  wtaylor@mfllaw.com
                      cmotley@mfllaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this document has been served on the 10th day of October 2022, to the parties identified below (i) through the Florida Courts E-Filing Portal and/or by e-mail pursuant to Fla. R. Jud. Admin. 2.516(b)1, or (ii) by the alternative method specified above the party's name.

Allan S. Reiss, Esq.
Levine & Partners, P.A.
asr@levinelawfirm.com
*Counsel for Plaintiff*

*/s/ Elizabeth D. Salinas*
Elizabeth D. Salinas
Florida Bar No. 113394
MOZLEY, FINLAYSON & LOGGINS LLP
4767 New Broad Street
Orlando, Florida 32814
Tel: (407) 514-2765 Ext. 2317
Fax: (404) 250-9355
esalinas@mfllaw.com

2154997

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-14511 CA 01

SETAI HOTEL ACQUISITION, LLC.,
a foreign limited liability company,

Plaintiff,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY, LIBERTY
SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY.

Defendants.
_____/

## NOTICE OF APPEARANCE

     PLEASE TAKE NOTICE that the law offices of CONROY SIMBERG hereby files

this Notice of Appearance as counsel on behalf of EVEREST INDEMNITY INSURANCE

COMPANY and requests that all future correspondence and pleadings be directed to the

undersigned.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a copy hereof has been furnished by service through the
eportal to William "Bill" Lewis, Esquire, Butler Weihmuller Katz Craig LLP, 400 N. Ashley
Drive, Suite 2300, Tampa, FL 33602; Allan S. Reiss, Esquire, Levine and Partners, P.A.,
1110 Brickell Avenue, 7th Floor, Miami, FL 33131 on this  19  day of  October   2022.

               CONROY SIMBERG
               Attorney for Abbey Hotel Acquisition, LLC
               1801 Centrepark Drive East, Suite 200

CASE NO. 2022-14511 CA 01

West Palm Beach, FL 33401
Telephone:  (561) 697-8088
Facsimile:  (561) 697-8664
Primary Email:  eservicewpb@conroysimberg.com
Secondary Email:  alezama@conroysimberg.com


By:   /s/ Alexis D. Lezama
        Alexis D. Lezama, Esquire
        Florida Bar No. 121516

Case 1:23-cv-20318-RNS Document 1-2 Entered on FLSD Docket 01/26/2023 Page 366 of 600

2154997

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-14511 CA 01

SETAI HOTEL ACQUISITION, LLC.,
a foreign limited liability company,

Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, LANDMARK AMERICAN INSURANCE
COMPANY, LIBERTY SURPLUS LINES
INSURANCE COMPANY, AXIS SURPLUS
INSURANCE COMPANY, EVEREST INDEMNITY
INSURANCE COMPANY, SCOTTSDALE
INSURANCE COMPANY, and UNITED NATIONAL
INSURANCE COMPANY.

Defendants.

_____/

## NOTICE OF COMPLIANCE WITH RULE 2.516
## AND DESIGNATION OF EMAIL ADDRESSES

Alexis D. Lezama, as Attorney for SETAI HOTEL ACQUISITION, LLC, hereby

gives notice of compliance with Rule 2.516 of the Florida Rules of Judicial Administration

and designates the following email addresses:

| Primary Email Address | Secondary Email Address |
|---|---|
| eservicewpb@conroysimberg.com | alezama@conroysimberg.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by
service through the eportal to William "Bill" Lewis, Esquire, Butler Weihmuller Katz Craig
LLP, 400 N. Ashley Drive, Suite 2300, Tampa, FL 33602; Allan S. Reiss, Esquire, Levine
and Partners, P.A., 1110 Brickell Avenue, 7th Floor, Miami, FL 33131 on this __19__ day
of __October__, 2022.

CASE NO. 2022-14511 CA 01

CONROY SIMBERG
Attorney for Abbey Hotel Acquisition, LLC
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Telephone:  (561) 697-8088
Facsimile:  (561) 697-8664
Primary Email:  eservicewpb@conroysimberg.com
Secondary Email:  alezama@conroysimberg.com


By:    /s/ Alexis D. Lezama
        Alexis D. Lezama, Esquire
        Florida Bar No. 121516

2154997

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-14511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability company,

Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, LANDMARK AMERICAN
INSURANCE COMPANY, LIBERTY SURPLUS
LINES INSURANCE COMPANY, AXIS SURPLUS
INSURANCE COMPANY, EVEREST INDEMNITY
INSURANCE COMPANY, SCOTTSDALE
INSURANCE COMPANY, and UNITED
NATIONAL INSURANCE COMPANY.

Defendants.

_____/

## **DEFENDANT, , NOTICE OF PROPOUNDING INTERROGATORIES TO PLAINTIFF,**

Defendant, EVEREST INDEMNITY INSURANCE COMPANY, by and through

undersigned counsel, propounds its Interrogatories to Plaintiff, SETAI HOTEL

ACQUISITION, LLC, and demand that their answer under oath, in writing, within thirty

(30) days from the receipt hereof, so as to furnish Defendant with all responsive information

available to the Plaintiff, their agents, attorneys or any other persons acting on Plaintiffs

behalf, according to Rule 1.340 of the Florida Rules of Civil Procedure

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy hereof, together with attached original

interrogatories, has been furnished by service through the eportal to William "Bill" Lewis,

Esquire, Butler Weihmuller Katz Craig LLP, 400 N. Ashley Drive, Suite 2300, Tampa, FL

CASE NO. 2022-14511 CA 01

33602; Allan S. Reiss, Esquire, Levine and Partners, P.A., 1110 Brickell Avenue, 7th

Floor, Miami, FL 33131 on this __19__ day of __October_____, 2022.

CONROY SIMBERG
Attorney for Abbey Hotel Acquisition, LLC
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Telephone:  (561) 697-8088
Facsimile:  (561) 697-8664
Primary Email:  eservicewpb@conroysimberg.com
Secondary Email:  alezama@conroysimberg.com


By:  /s/ Alexis D. Lezama
        Alexis D. Lezama, Esquire
        Florida Bar No. 121516

## DEFINITIONS AND INSTRUCTIONS

### I.      GENERAL GUIDELINES

A.      These interrogatories shall be considered to be continuing and Plaintiff's answers therefore should be modified or supplemented if information requested in these interrogatories is obtained at a later date by Plaintiff or their counsel.

B.      These interrogatories seek all information that is known or available to Plaintiff, their agents, representatives, investigators and unless privileged, their attorneys and their attorney's agents, servants, employees, representatives or investigators.

### II.     DEFINITIONS

As used herein, the following terms are defined as indicated.

A.      The terms "you", "yours", "yourself", means the Plaintiff, SETAI HOTEL ACQUISITION, LLC, responding to these interrogatories.

B.      The word "Plaintiff" means SETAI HOTEL ACQUISITION, LLC.

C.      The word "person" includes an individual, corporation, partnership or any other entity.

The word "Assignor" means SETAI HOTEL ACQUISITION, LLC.

The word "Insured" means SETAI HOTEL ACQUISITION, LLC.

The word "Insured Location" means ***SEE ATTACHED DESIGNATION OF PREMESIS***.

D.      The word "document" as used herein means all written, graphic and audio or visually recorded matter of every kind and description, however produced or reproduced, whether draft or final, original or reproduction, in the actual or constructive possession, custody or control of Plaintiff, SETAI HOTEL ACQUISITION, LLC, including but not limited to: plans, drawings, graphs, deeds, title policies, commitments or abstracts, writings, letters, correspondence, memoranda, notes, films, photographs, audio recordings, transcripts, contracts, agreements, covenants, permits, licenses, memoranda of telephone or personal conversations or communications, microfilm, microfiche, telegrams, books, magazines, advertisements, periodicals, bulletins, circulars, pamphlets, statements, notices, reports, rules, regulations, directives, teletype messages, written communications, minutes or notes of meetings, interoffice communications, reports, financial statements, ledgers, books of account, proposals, prospectuses, offers, receipts, working papers, desk calendars, appointment books, diaries, time sheets, logs, movies, tapes for visual or audio reproduction, recordings, or materials similar to any of the foregoing, however denominated by Plaintiff.  The term "document" shall also include all copies of each document if the copies contain any additional matter or are not identical copies of the originals.

E.      The word "communication" means any transmission or exchange of information between two or more persons, orally or in writing, and includes, without limitation, any conversation or discussion, whether face-to-face or by means of any telephone, telegraph, telecopies, electronic or other media.

F.      The term "identify" or "identification", when referring to (i) an individual person, means state the full name, title or company position, company or business affiliation, and last known address and home address of such person; (ii) any other type of person means state the nature of the person, (e.g., corporation, partnership) and the street address of its last known office; (iii) a document means state the nature of the

document (e.g.) letter, handwritten notes, telegram), identify its present custodian, and state its author or originator, address or title, publisher, number of pages, and any other basis for identification thereof.  In lieu of identifying a document previously unproduced, you may produce such document for inspection and copying by mail if you indicate as to each such document produced in the interrogatory answer in which such document would otherwise be identified; (iv) an oral communication means state the date and place thereof, the names of all persons present and the substance of the oral communication; and (v) a specified event or occurrence means state the date (as further defined below) and, if applicable, the occurrence, and the person(s) or organization giving the directions or orders leading to the happening of said occurrence.

G.      The word "date" means the exact day, month and year, if ascertainable or, if not, the best approximation thereof, including relationship to other events.

H.      The term "or" means both "or" and "and".

I.       Whenever you are asked in these interrogatories to "state", "explain" or "describe" a fact, event, phenomenon or allegation, you should explain or describe such fact, event, phenomenon or allegation in detail, giving reasons therefore.

J.       "Complaint" as used herein refers to the Complaint entitled, SETAI HOTEL ACQUISITION, LLC V. EVERESY SETAI HOTEL ACQUISITION, LLC v. EVEREST INDEMNITY INSURANCE COMPANY, filed in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2022-14511-CA-01.

### III.      INSTRUCTIONS

1.       Unless a different meaning is stated or obvious from its context, all terms used herein shall have the same meaning as in the Complaint.

2.       The use of the singular herein shall include the plural and the masculine the feminine as appropriate in the context.

3.       With respect to any answers called for by these interrogatories, but withheld due to a claim of privilege, list for each such answer the paragraph to which it is responsive and the nature of the privilege claimed.

4.       Unless otherwise indicated, all words and terms used in these requests shall have the same meaning as in the Complaint filed in this action.

5.       Unless otherwise specified, the period covered by these interrogatories shall be from the date of September 10, 2011 through the date of filing of your answers to these interrogatories.

6.       If objection is taken to any of the following interrogatories or if Plaintiff fails to fully respond to any interrogatory, state the specific grounds therefore and respond to such interrogatory to the extent to which there is no objection.  If privilege is asserted as to any of the interrogatories, fully identify for each: (a) its date; (b) the type of document (e.g., letter, memo, etc.); (c) the author; (d) the recipient; and (e) the general subject matter.

7.       The term "all" means "any" and "all".

8.       If there is insufficient space to fully respond, attach additional sheets.

CASE NO. 22-CA-005903

## **INTERROGATORIES**

1.      What is the name and address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed.

2.      Identify any and all policies of insurance prior to and subsequent to the alleged loss in connection with the Insured Location detailing as to such policy the name of the insured, the number of the policy and the effective date of the policy, the available limits of the policy, and the name and address of the custodian of the policy.

3.      Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit including yourself, concerning any issue in this lawsuit?  If so, identify the person who made the statement or statements, the date, time and place and substance of each statement.

CASE NO. 22-CA-005903

4.      State whether you or anyone acting on your behalf have obtained statements in any form from any person regarding any of the issues in this lawsuit.  If so, state:

      a.      The date such statement was taken;

      b.      The name and address of the person taking the statement; and

      c.      All persons present possessing a copy of the statement.

5.      Identify all persons you intend to call as witnesses or for any evidentiary hearing of this matter and provide a brief summary of the witnesses expected to testify, including topics of such subject matter.

6.      Identify each expert witness you intend to call at trial on this case, and for each such expert, identify and please provide the following:

      a.      Their educational background, including specialized training in his/her field of expertise;

      b.      See the subject matter upon which he/she is expected to testify;

      c.      The subject and facts to which he/she is expected to testify; and

      d.      The summary of the ground of such opinions.

CASE NO. 22-CA-005903

7.      Identify the matter, extent and result of any investigation or testing done by you, agents, or anyone on your behalf, including but not limited to any and all vendors to determine the cause of the damage, including without limitations when and by whom such testing was performed.

8.      Have you made any agreement with any persons that would limit that party's liability for any of the damage sued upon in this case; if so, identify the person and agreement and explain its terms fully.

9.      Please describe the chronology of when you first discovered the subject loss and when you made any claims to any insurance company relative to the subject loss at any other time including a description and explanation when any claim or claims was paid, whether any claim was denied.

CASE NO. 22-CA-005903

10.     List the names and street addresses of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any of the issues raised by the pleadings in this case, and specify the subject about which the witness has knowledge and whether the persons identified actually witnessed the incident described in the Complaint.

11.     Please list all property you are claiming in this action to be damaged or destroyed as a result of the loss which is the subject of the Complaint.

12.     Please state the actual cash value of all the property you are claiming to be damaged or destroyed as a result of the subject loss just prior to the loss, and just subsequent to the loss.  In answering this question, as to the value given for each item, identify what is the source of information forming the basis for the claimed value.

CASE NO. 22-CA-005903

13.     Please provide the names and addresses of all persons expected to establish the value of the property allegedly damaged; on what date they inspected the property; and whether they generated a written report of their evaluation.

14.     Please state if the property claimed to be damaged or destroyed as a result of the herein complained of loss was owned by a third party, and if so, how long have they owned said property, from whom the third party purchased the said property and what price the third party paid for the said property, whether the third party purchased the said property under the terms of an oral or written agreement and the terms of the said agreement.

CASE NO. 22-CA-005903

15.     Has anything been paid or is anything payable from any third party for the damages listed in your answers to these interrogatories?  If so, state the amounts paid or payable, the name and business street address of the person or entity who paid or owes the amounts, and state which of those third parties have or claim a right of subrogation.

16.     List the name, residence and business street address and telephone numbers of each person believed or known by you, your agents or attorneys, to have heard or who is purported to have heard this Defendant or anyone you claim to be an agent, servant, or employee of this Defendant, make any statement, remark or comment about the loss described in the Plaintiff Complaint and state the substance of each statement, remark or comment.

17.     Do you, your attorneys, agents, servants or employees have any photographs which are relevant to the issues raised by the pleadings in this case and if so, please state the name and street address of the person having possession of the photographs, the date the photographs were taken and the number of photographs taken.

18.     As to each of the photographs referred to in your answer to the previous interrogatory, please state if any one of them depicts persons, objects or scenes which no longer exist or which have been materially altered in any way such as appearance or location since the photographs were taken; if so, as to each such photograph describe what persons, objects or scenes they depict, the dates the photographs were taken, the names and street addresses of the persons who took the photographs, and the names and street addresses of the persons who have possession of the photographs.

19.     If any of the property which is the subject of this claim was repaired, please state when such repairs or replacements took place, the name and street address of those persons who either repaired or replaced the said property in question, the cost of repair and/or replacement of the said property; if not, the name and street address of the party who paid for such repairs and/or replacements, whether it was an individual, a corporation and/or an insurance company.

CASE NO. 22-CA-005903

20.     List the name, address and telephone number of any general contractor, subcontractor, architect, engineer or other construction-type entity who you have contacted for any reason regarding repairs to the Insured Location since the date of purchase.

21.     Describe all prior insurance claims in the last ten years including the name of the insurance carrier, type of claim, type of damage and claim payment amount related to the Insured Location.

22.     If you are claiming Lost Business Income, describe the amount, the method of calculation, the documents or specific accounting records utilized to calculate the amount or the person or entity which has possession of those documents.

CASE NO. 22-CA-005903

23.    Identify and list the names, addresses, and contact information for each of the tenants from September 10, 2014 to present.

24.    Please identify, with specificity, all vendors in which the Plaintiff has assigned insurance benefits to.

CASE NO. 22-CA-005903

CLAIM NO.

_____

SETAI HOTEL ACQUISITION, LLC

STATE OF FLORIDA

COUNTY OF _____

       Sworn to and subscribed before me, by means of ☐ physical presence or ☐ online notarization, this _____ day of _____, 2022, by _____, who says that the foregoing answers to interrogatories are true and correct, and is personally known to me or has produced _____ as identification.

(Seal)

_____

Signature of Notary Public

_____

Print, Type or Stamp Name of Notary

2154997

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-14511 CA 01

SETAI HOTEL ACQUISITION, LLC.,
a foreign limited liability company,

Plaintiff,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY, LIBERTY
SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY.

Defendants.

_____/

## DEFENDANT, EVEREST INDEMNITY INSURANCE COMPANY'S, FIRST REQUEST FOR PRODUCTION TO PLAINTIFF, SETAI HOTEL ACQUISITION, LLC

Defendant, EVEREST INDEMNITY INSURANCE COMPANY, by and through

undersigned counsel, and pursuant to Rule 1.350 of the Florida Rules of Civil Procedure,

hereby requests that Plaintiff, SETAI HOTEL ACQUISITION, LLC, produce for inspection

and copying at the offices of Conroy Simberg, 1801 Centrepark Drive East, Suite 200,

West Palm Beach, FL 33401, within thirty (30) days of the date of service of these

requests the documents referenced below.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished by service through the

eportal to William "Bill" Lewis, Esquire, Butler Weihmuller Katz Craig LLP, 400 N. Ashley

CASE NO. 2022-14511 CA 01

Drive, Suite 2300, Tampa, FL 33602; Allan S. Reiss, Esquire, Levine and Partners, P.A.,

1110 Brickell Avenue, 7th Floor, Miami, FL 33131 on this __19__ day of __October__, 2022.

CONROY SIMBERG
Attorney for Abbey Hotel Acquisition, LLC
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Telephone:  (561) 697-8088
Facsimile:  (561) 697-8664
Primary Email:  eservicewpb@conroysimberg.com
Secondary Email:  alezama@conroysimberg.com


By:  _/s/ Alexis D. Lezama_
        Alexis D. Lezama, Esquire
        Florida Bar No. 121516

## DEFINITIONS AND INSTRUCTIONS

### I.    GENERAL GUIDELINES

**A.**      These interrogatories shall be considered to be continuing and Plaintiff's answers therefore should be modified or supplemented if information requested in these interrogatories is obtained at a later date by Plaintiff or their counsel.

**B.**      These interrogatories seek all information that is known or available to Plaintiff, their agents, representatives, investigators and unless privileged, their attorneys and their attorney's agents, servants, employees, representatives or investigators.

### II.    DEFINITIONS

As used herein, the following terms are defined as indicated.

**A.**      The terms "you", "yours", "yourself", means the Plaintiff, SETAI HOTEL ACQUISITION, LLC, responding to these interrogatories.

**B.**      The word "Plaintiff" means SETAI HOTEL ACQUISITION, LLC.

**C.**      The word "person" includes an individual, corporation, partnership or any other entity.

The word "Assignor" means SETAI HOTEL ACQUISITION, LLC.

The word "Insured" means SETAI HOTEL ACQUISITION, LLC.

The word "Insured Location" means ***SEE ATTACHED DESIGNATION OF PREMESIS***.

**D.**      The word "document" as used herein means all written, graphic and audio or visually recorded matter of every kind and description, however produced or reproduced, whether draft or final, original or reproduction, in the actual or constructive possession, custody or control of Plaintiff, SETAI HOTEL ACQUISITION, LLC, including but not limited to: plans, drawings, graphs, deeds, title policies, commitments or abstracts, writings, letters, correspondence, memoranda, notes, films, photographs, audio recordings, transcripts, contracts, agreements, covenants, permits, licenses, memoranda of telephone or personal conversations or communications, microfilm, microfiche, telegrams, books, magazines, advertisements, periodicals, bulletins, circulars, pamphlets, statements, notices, reports, rules, regulations, directives, teletype messages, written communications, minutes or notes of meetings, interoffice communications, reports, financial statements, ledgers, books of account, proposals, prospectuses, offers, receipts, working papers, desk calendars, appointment books, diaries, time sheets, logs, movies, tapes for visual or audio reproduction, recordings, or materials similar to any of the foregoing, however denominated by Plaintiff.  The term "document" shall also include all copies of each document if the copies contain any additional matter or are not identical copies of the originals.

**E.**      The word "communication" means any transmission or exchange of information between two or more persons, orally or in writing, and includes, without limitation, any conversation or discussion, whether face-to-face or by means of any telephone, telegraph, telecopies, electronic or other media.

**F.**      The term "identify" or "identification", when referring to (i) an individual person, means state the full name, title or company position, company or business affiliation, and last known address and home address of such person; (ii) any other type of person means state the nature of the person, (e.g., corporation, partnership) and the

street address of its last known office; (iii) a document means state the nature of the document (e.g.) letter, handwritten notes, telegram), identify its present custodian, and state its author or originator, address or title, publisher, number of pages, and any other basis for identification thereof.  In lieu of identifying a document previously unproduced, you may produce such document for inspection and copying by mail if you indicate as to each such document produced in the interrogatory answer in which such document would otherwise be identified; (iv) an oral communication means state the date and place thereof, the names of all persons present and the substance of the oral communication; and (v) a specified event or occurrence means state the date (as further defined below) and, if applicable, the occurrence, and the person(s) or organization giving the directions or orders leading to the happening of said occurrence.

      **G.**    The word "date" means the exact day, month and year, if ascertainable or, if not, the best approximation thereof, including relationship to other events.

      **H.**    The term "or" means both "or" and "and".

      **I.**    Whenever you are asked in these interrogatories to "state", "explain" or "describe" a fact, event, phenomenon or allegation, you should explain or describe such fact, event, phenomenon or allegation in detail, giving reasons therefore.

      **J.**    "Complaint" as used herein refers to the Complaint entitled, SETAI HOTEL ACQUISITION, LLC V. EVERESY SETAI HOTEL ACQUISITION, LLC v. EVEREST INDEMNITY INSURANCE COMPANY, filed in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2022-14511-CA-01.

### III.   INSTRUCTIONS

      1.    Unless a different meaning is stated or obvious from its context, all terms used herein shall have the same meaning as in the Complaint.

      2.    The use of the singular herein shall include the plural and the masculine the feminine as appropriate in the context.

      3.    With respect to any answers called for by these interrogatories, but withheld due to a claim of privilege, list for each such answer the paragraph to which it is responsive and the nature of the privilege claimed.

      4.    Unless otherwise indicated, all words and terms used in these requests shall have the same meaning as in the Complaint filed in this action.

      5.    Unless otherwise specified, the period covered by these interrogatories shall be from the date of September 10, 2011 through the date of filing of your answers to these interrogatories.

      6.    If objection is taken to any of the following interrogatories or if Plaintiff fails to fully respond to any interrogatory, state the specific grounds therefore and respond to such interrogatory to the extent to which there is no objection.  If privilege is asserted as to any of the interrogatories, fully identify for each: (a) its date; (b) the type of document (e.g., letter, memo, etc.); (c) the author; (d) the recipient; and (e) the general subject matter.

      7.    The term "all" means "any" and "all".

      8.    If there is insufficient space to fully respond, attach additional sheets.

## DOCUMENTS REQUESTED

1.     Plaintiff's policies of insurance issued by any insurance carrier for five years prior to the date of loss for the subject property.

2.     All installation orders, repair orders, invoices, contracts, subcontracts, and written documents regarding installation, repair or modifications, to any part of the property from the date of purchase to the present including but not exclusive of plumbers who have inspected, repaired or visited the subject property.

3.     All bills, statements or estimates for repair and loss of the building or contents thereof related and caused by the incident described in the Complaint.

4.     Photographs taken following the incident described in the Complaint purporting to show damage thereto.

5.     Any and all statements made by any Defendant, their agents, servants, adjusters, independent adjusters, local adjusters, witnesses or employees, relating to or pertaining to the incidents described in the Complaint including any written or recorded statements.

6.     Copy of all documents between you and any public adjuster hired by you at anytime for the incident described in the Complaint.

7.     Copy of any contracts, invoices or agreements between Plaintiff and any contractors relating to repairs of the subject property.

8.     Any drawings, exhibits, photographs, videotapes, diagrams or documenting evidence relating to any matter of the controversy intended to be used at trial.

9.     Copies of all applications for and/or claims for benefits and/or claims for payments submitted by or on behalf of you to any insurance company or any other source

whatsoever for any benefits claimed to be due as a result of the incident described in the Complaint.

10.    All documents which refer or relate to any prior insurance claims concerning the subject property, including, without limitation claims made, correspondence with insurance carriers, and/or agents, payments, reservation of rights and any payments and any documents relating in any way to any litigation.

11.    Copies of all correspondence, memoranda or other documents between you and this Defendant.

12.    Any and all contracts, agreements, job files, specifications, notes, memoranda, correspondence, submittals, photographs (including progress photos), videos, reports by design professionals, diagrams, calculations, invoices, purchase orders, change orders, requests for information, requests for clarification, reports, logs, journals, job diaries, receipts, accounting records, writings, all plans and specifications and amendments, structural calculations, shop drawings, as built drawings, city inspector punch lists and sign out sheets, schedules, correspondence concerning the subject property.

13.    Any and all documents comprising the contract between Plaintiff and any other entity for work performed on the subject property within the 10 years prior to the subject loss including but not exclusive of plumbers who have inspected, repaired or visited the subject property.

14.    Any and all contracts, subcontracts, or other documents regarding the work performed by any design professional contractor, subcontractor, supplier, agent or employer on the subject property within the 6 years prior to the subject loss.

15.     Any and all agreements, contracts, and/or assignment of rights and benefits between you and a third party in this case (i.e., contractors, public adjustment firms, etc.);

16.     Any and all photographs pertaining to the subject loss.

17.     Any and all reports or analysis prepared by any expert or consultant for the benefit of you regarding the cost of repair for the subject property arising from the subject loss.

18.     Any and all change orders, appealed orders, work orders, and proposals for changes in the work performed on the Project, whether or not approved, made a part of any contract or subcontract or actually performed.

19.     All statements not produced in response to the preceding two paragraphs.

20.     All documents supporting the claim for money damage in the lawsuit not produced in response to the preceding paragraphs.

21.     A report of each person who the Plaintiff expect(s) to call as an expert witness at trial.

22.     All photographs, diagrams, videotapes, etc., in the Plaintiff's possession relating to the allegations contained in Plaintiff's Complaint.

23.     All photographs depicting the scene of the loss alleged in the Plaintiff Complaint.

24.     All reports and any other investigative material prepared by any other party or non-party that the Plaintiff contributed to by any means that relate to the subject matter of the Plaintiff's Complaint.

25.     Copies of all documents including letters, estimates, reports and all correspondence between you and your insurance company for any insurance claims other than the one in this action related to the property.

26.     Your business income tax returns for the years 2015 through present.

27.     Copies of all documentation and information submitted to any insurance company other than this Defendant for damages being claimed in this loss.

28.     All account records including year-end balance sheets, profit and loss statements for the years 2010 through present.

29.     Copies of all employment files/timesheets identifying the employees on duty 24 hours before and after the loss.

30.     Copies of monthly revenue statements on a per month basis for the last five (5) years.

31.     Copies of all documents including letters, estimates, reports and all correspondence between you and your insurance company for any homeowner insurance claims other than the one in this action.

32.     Copies of any and all documents regarding any and all prior roof leaks and/or repairs to any of the buildings insured under the subject policy including, but not limited to, complaints from tenants, repair records, invoices, estimates, service records, and photographs, for the time period from 2005 until present.

33.     Copies of any and all tenant leases from September 10, 2014 to present.

34.     A complete copy of your entire file(s) regarding any and all interior repairs on of the buildings insured under the subject policy, as a result of roof leaks, for the time period from 2015 until present.

35.     A complete copy of all meeting notes and minutes for Plaintiff's Association, for the time period from 2015 until present.

36.     A complete copy of all maintenance records related to the damages claimed within the Plaintiff's Complaint.

Case 1:23-cv-20318-RNS Document 1-2 Entered on FLSD Docket 01/26/2023 Page 390 of 600

2154997

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 2022-14511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability company,

Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, LANDMARK AMERICAN INSURANCE
COMPANY, LIBERTY SURPLUS LINES
INSURANCE COMPANY, AXIS SURPLUS
INSURANCE COMPANY, EVEREST INDEMNITY
INSURANCE COMPANY, SCOTTSDALE
INSURANCE COMPANY, and UNITED NATIONAL
INSURANCE COMPANY.

Defendants.

_____/

## DEFENDANT, EVEREST INDEMNITY INSURANCE COMPANY'S, NOTICE OF WITHDRAWAL OF INITIAL DISCOVERY REQUESTS

The Defendant, Everest Indemnity Insurance Company, by and through the undersigned attorneys, hereby gives Notice of Withdrawal of its initial Request for Production and First Set of Interrogatories, served on October 19, 2022, and files the following with the Clerk of the Circuit Court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished by service through the eportal to William "Bill" Lewis, Esquire, Butler Weihmuller Katz Craig LLP, 400 N. Ashley Drive, Suite 2300, Tampa, FL 33602; Allan S. Reiss, Esquire, Levine and Partners, P.A., 1110 Brickell Avenue, 7th Floor, Miami, FL 33131 on this  19  day of  October  2022.

CASE NO. 2022-14511 CA 01

CONROY SIMBERG
Attorney for Setai Hotel Acquisition, LLC
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Telephone:  (561) 697-8088
Facsimile:  (561) 697-8664
Primary Email:  eservicewpb@conroysimberg.com
Secondary Email:  alezama@conroysimberg.com


By:  /s/ Alexis D. Lezama
      Alexis D. Lezama, Esquire
      Florida Bar No. 121516

2154997

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-14511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability company,

Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY, LANDMARK AMERICAN
INSURANCE COMPANY, LIBERTY SURPLUS
LINES INSURANCE COMPANY, AXIS SURPLUS
INSURANCE COMPANY, EVEREST INDEMNITY
INSURANCE COMPANY, SCOTTSDALE
INSURANCE COMPANY, and UNITED
NATIONAL INSURANCE COMPANY.

Defendants.

_____/

## AMEDNED NOTICE OF COMPLIANCE WITH RULE 2.516 AND DESIGNATION OF EMAIL ADDRESSES

Alexis D. Lezama, as Attorney for Everest Indemnity Insurance Company, hereby

gives notice of compliance with Rule 2.516 of the Florida Rules of Judicial Administration

and designates the following email addresses:

| Primary Email Address | Secondary Email Address |
|---|---|
| eservicewpb@conroysimberg.com | alezama@conroysimberg.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished by service through the
eportal to William "Bill" Lewis, Esquire, Butler Weihmuller Katz Craig LLP, 400 N. Ashley
Drive, Suite 2300, Tampa, FL 33602, wlewis@butler.legal; asr@levinelawfirm.com; Allan
S. Reiss, Esquire, Levine and Partners, P.A., 1110 Brickell Avenue, 7th Floor, Miami, FL
33131 on this __20__ day of __October_____, 2022.

CONROY SIMBERG
Attorney for Setai Hotel Acquisition, LLC
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Telephone:  (561) 697-8088
Facsimile:  (561) 697-8664
Primary Email:  eservicewpb@conroysimberg.com
Secondary Email:  alezama@conroysimberg.com


By:   /s/ Alexis D. Lezama
          Alexis D. Lezama, Esquire
          Florida Bar No. 121516

Case 1:23-cv-20318-RNS Document 1-2 Entered on FLSD Docket 01/26/2023 Page 394 of 600

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                      Case No.: 2022-014511 CA 01

        Plaintiff,

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY

        Defendants.

_____/

### DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S, REQUEST FOR PRODUCTION TO PLAINTIFF, SETAI HOTEL ACQUISITION

       COMES NOW, the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, by and through its undersigned counsel, and hereby requests the Plaintiff, SETAI HOTEL ACQUISITION, LLC, to produce a copy of the documents listed on the attached Exhibit "A" on or before **30 days from the date of service**, at the offices of the undersigned counsel.

       The Plaintiff will be in compliance with this Request For Production if said Plaintiff provides to Defendant's attorney, by mail, a complete and legible copy of the requested items prior to the date fixed for production.

                                        BUTLER WEIHMULLER KATZ CRAIG LLP

                                 *Katelyn Lokuta*

                           _____

                           WILLIAM R. LEWIS, ESQ.

Florida Bar No.:  0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No: 106198
klokuta@butler.legal
Secondary:   tgarcia@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Defendant, Westchester Surplus Lines Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL 33133
*Counsel for Plaintiff, Setai Hotel Acquisition, LLC*

Jason M. Chodos, Esq.
Hayley H. Ryan, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, United National Insurance Company*

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, Liberty Surplus Lines Insurance Company*

Elizabeth D. Salinas, Esq.
Mozley, Finlayson & Logins LLP
4767 New Broad Street
Orlando, FL 32814
*Counsel for Defendant, Landmark American Insurance Company*

2

Alexis D. Lezama, Esq.
Conroy Simberg
1801 Centrepark Dr. E., Suite 200
West Palm Beach, FL 33401
*Counsel for Defendant, Everest Indemnity Insurance Company*

via Florida E-Portal on October 20, 2022.

_____
KATELYN N. LOKUTA, ESQ.

## **DEFINITIONS OF TERMS**

1.   "Plaintiff," "you" and/or "your" means Plaintiff, Setai Hotel Acquisition, LLC, any of his agents, and/or representatives.

2.   "Defendant" and/or "Westchester" means Defendant, Westchester Surplus Lines Insurance Company, their agents, employees and representatives.

3.   The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means.   The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

4.   The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents, whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request.   "Document" as used herein shall be construed broadly to include all documents and things within the scope of the Florida Rules of Civil Procedure and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded.   It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents.

5.   The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

6.   "Damages" means any loss or damage for which you now contend Defendants must pay you in this lawsuit.

7.    "Subject Property" means the property that is the subject of your lawsuit and identified in your Complaint.

8.    "Subject Loss" means the loss for which you believe Defendants owe you insurance proceeds.

9.    The "Subject Claim" means your request for insurance proceeds in connection with the Subject Loss.

10.   The "Subject Policy" means the insurance policy identified in your Complaint under which you submitted the Subject Claim.

11.   The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys) acting or purporting to act on behalf of the person or entity.

12.   The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, without limitation."

13.   All other words have their plain and ordinary meaning.


## **INSTRUCTIONS**

1.    You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Request.  Documents are to be produced in full and unexpurgated form.

      **Note:**  Any and all electronic files that are responsive to this Request for Production are required to be produced in their electronic, pristine, native format. Any USB, flash drive or external drive producing the requested electronic files will be returned if requested once the electronic files are in our possession.

2.    This Request shall be deemed continuing so as to require further and supplemental production in the event that the party requested to produce, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3.    If any documents covered by this Request are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a list is to be furnished at the time that documents are produced identifying each such document for which the privilege is claimed specifically by its nature (e.g., letter,

memorandum, etc.) together with the following information with respect to any such document withheld: author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this Request to which such document relates.

4.     If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5.     In the event that any document called for by this Request has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6.     All objections to any category of documents to be produced pursuant to this Request or to any definition or instruction it contains shall be in writing and delivered to Defendant's counsel within the time provided in the Florida Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by this Court.

7.     If any of the information requested herein is not in the possession of Plaintiff but is known or believed to be in the possession of any other person, identify that person.

8.     If any document requested herein is not produced for any reason, state with specificity the reason and identify that document.

9.     Unless expressly stated otherwise, none of the following Requests are limited in time.

## **EXHIBIT "A"**
## **Documents to be Produced**

1.   A complete copy of the trust agreement for any and all trusts identified in response to Interrogatory No. 2.

2.   A copy of the operating agreement for Setai Hotel Acquisition, LLC, and for any and all limited liability companies identified in response to Interrogatory No.1 or Interrogatory No. 2.

Case 1:23-cv-20318-RNS Document 1-2 Entered on FLSD Docket 01/26/2023 Page 401 of 600

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                     Case No.: 2022-014511 CA 01

       Plaintiff,

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

       Defendants.
_____/

## DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S, NOTICE OF SERVING INTERROGATORIES TO PLAINTIFF

TO:     Allan S. Reiss, Esq.
         Levine & Partners, P.A.
         3350 Mary Street
         Miami, FL 33133
         *Counsel for Plaintiff*

     COMES NOW, the Defendant, Westchester Surplus Lines Insurance Company, by and through its undersigned counsel, and in accordance with the applicable Rules of Civil Procedure, requests that the Plaintiff, Setai Hotel Acquisitions, LLC, answer the attached Interrogatories, within thirty (30) days after service hereof.

                    BUTLER WEIHMULLER KATZ CRAIG LLP

                    _____
                    WILLIAM R. LEWIS, ESQ.
                    Florida Bar No.: 0879827

wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No: 106198
klokuta@butler.legal
Secondary:   jdearborn@butler.legal
                       tgarcia@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:   (813) 281-0900
*Attorneys for Defendant, Westchester Surplus Lines Insurance Company*

## CERTIFICATE OF SERVICE

I certify that the foregoing Notice has been furnished by e-Portal and that the foregoing Notice and Interrogatories have been furnished to the above-named addressee and to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL 33133
*Counsel for Plaintiff, Setai Hotel Acquisition, LLC*

Jason M. Chodos, Esq.
Hayley H. Ryan, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, United National Insurance Company*

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, Liberty Surplus Lines Insurance Company*

Elizabeth D. Salinas, Esq.
Mozley, Finlayson & Logins LLP

4767 New Broad Street
Orlando, FL 32814
*Counsel for Defendant, Landmark American Insurance Company*

Alexis D. Lezama, Esq.
Conroy Simberg
1801 Centrepark Dr. E., Suite 200
West Palm Beach, FL 33401
*Counsel for Defendant, Everest Indemnity Insurance Company*

on October 20, 2022.

_____
KATELYN N. LOKUTA, ESQ.

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 404 of 600

2154997

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-14511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability company,

Plaintiff,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY, LIBERTY
SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY.

Defendants.

_____/

## DEFENDANT'S MOTION FOR EXTENSION OF TIME
## TO RESPOND TO PLAINTIFF'S COMPLAINT

Defendant, Everest Indemnity Insurance Company, by and through the
undersigned counsel, files this Renewed Motion for Extension of Time to Respond to
Plaintiff's, SETAI HOTEL ACQUISITION, LLC, Complaint and as grounds therefore would
state:

1.    The Defendant needs additional time in order to fully and properly respond
to Plaintiff's Complaint.

2.    Florida Rule of Civil Procedure 1.090(b) allows this Court to extend the time
within which to respond to Plaintiff's Complaint.

CASE NO. 2022-14511 CA 01

3.      This Motion is not made for purposes of delay or avoidance, but to allow Defendant to a serve complete, accurate and proper response to Plaintiff's Complaint.

4.      As such, there would be no prejudice to Plaintiff(s), in allowing Defendant additional time as requested herein.

WHEREFORE, the Defendant, Everest Indemnity Insurance Company, respectfully requests this Honorable Court grant the Defendant a twenty (20) day extension in which to respond to Plaintiff's, SETAI HOTEL ACQUISITION, LLC, Complaint and/or grant any other relief deemed just and proper.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been served on all Counsel of Record via the Florida E-Filing Portal this __28__ day of __October__, 2022.

CONROY SIMBERG
Attorney for Everest Indemnity Insurance Company
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Telephone:  (561) 697-8088
Facsimile:  (561) 697-8664
Primary Email:  eservicewpb@conroysimberg.com
Secondary Email:  alezama@conroysimberg.com


By:   _/s/ Alexis D. Lezama___
         Alexis D. Lezama, Esquire
         Florida Bar No. 121516

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 406 of 600

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

## PLAINTIFF'S DEMAND FOR JURY TRIAL

    Plaintiff, SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation,

by and through its undersigned counsel, and pursuant to the Florida Rules of Civil

Procedure,1.430, hereby requests a trial by jury on all issues triable by jury.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 28th day of October, 2022, to:  WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP, (email: wlewis@butler.legal; klokuta@buttler.legal; jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP,  (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire, CONROY SIMBERG, (email: eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company;

Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com

BY:  ___/s/Allan S. Reiss_____
         ALLAN S. REISS, ESQ.
         FLORIDA BAR NO: 858500

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

### PLAINTIFFS' NOTICE OF SERVING
### FIRST SET OF INTERROGATORIES TO DEFENDANT,
### WESTCHESTER SURPLUS LINES INSURANCE COMPANY

      Plaintiff, SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation,

by and through and its undersigned counsel, and pursuant to Rule 1.340 of the Florida Rules of

Civil Procedure, propounds upon the Defendant, WESTCHESTER SURPLUS LINES

INSURANCE COMPANY, its First Set of Interrogatories to be answered under oath and in writing

within thirty (30) days from service hereof.

### CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and
served by the Florida Courts E-Filing Portal on this 28th day of October, 2022, to:  WILLIAM R.
LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig

LLP, (email: wlewis@butler.legal; klokuta@buttler.legal; jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP, (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire, CONROY SIMBERG, (email: eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company; Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com

BY:  /s/Allan S. Reiss_____
ALLAN S. REISS, ESQ.
FLORIDA BAR NO: 858500

## <u>INSTRUCTIONS AND DEFINITIONS</u>

The following instructions and definitions shall apply herein:

A.      "Person" means an individual, partnership, firm, association, corporation or other government, legal or business entity.

B.      "Document" means any written, recorded or graphic matter however produced or reproduced, of every kind and regardless of where located, including, but not limited to, any summary, schedule, memorandum, note, statement, letter, telegram, inter-office communication, report, diary, desk or pocket calendar or notebook, day book, appointment book, pamphlet, periodical worksheet, list, graph, chart, index, tape, record, partial or complete report of telephone or oral conversation, compilation, tabulation, study, analysis, transcript, minutes, data sheet, data processing card or tape, and all other memorials or any conversations, meetings and conferences, by telephone or otherwise, any other writing or recording which is in the possession, custody and control of Plaintiff or attorneys of Plaintiff.  The term "document" or "documents" shall also include the files in which said documents are maintained.

C.      "You" means the Defendant to whom the Interrogatories were propounded, its agents or other persons acting on behalf of said Defendant.

D.      In each case where you are asked to identify or state the identity of a document, or where the answer to an interrogatory refers to a document, state with respect to each document:

       1.      The identity of the person who signed it, or whose name it was issued;

       2.      The addressee or addressees;

       3.      The nature and substance of the document with sufficient particularity to enable the same to be identified;

       4.      The date of the document; and

       5.      The identity and address of each person who has custody or the document or a copy thereof.

E.      In each case where you are required to identify an oral communication, or where the answer to the interrogatory refers to an oral communication or statement, state with respect thereto:

       1.      The date and place thereof;

       2.      The identity of each person who participated in or heard any part of the conversation;

3.    If the communication was by telephone, so indicate and state who initiated the telephone call;

4.    The substance of what was said by each person who participated in the conversation;

5.    The identity and address of the custodian of any writings or of any mechanical, magnetic, electrical or electronic recording that recorded, summarized, reported or confirmed the oral communication.

F.    In each instance where you are asked to identify or to state the identity of a person, or where the answer to an Interrogatory refers to person, state with respect to each person:

1.    His or her name;

2.    His or her last known address and telephone number;

3.    If an individual, his or her business affiliation or employment at the date of the transaction, event or matter referred to; and

4.    If a corporation or association, the business or activity in which it was engaged at the date of the transaction, event or matter referred to.

G.    If you cannot answer a particular interrogatory in full, after exercising due diligence to secure the information to do so, state the answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

I.    <u>Claims of Privilege</u>

All objections or answers to Interrogatories which fail or refuse fully to respond to any Interrogatory on the ground of any claim of privilege of any kind whatever shall:

1.    State the nature of the claim of privilege;

2.    State all facts relied upon in support of the claim of privilege or related thereto;

3.    Identify all documents related to the claim of privilege;

4.    Identify all person having knowledge of any facts related to the claim of privilege; and

5.    Identify all events, transactions, or occurrences related to the claim of privilege.

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

1.      Please state the full name, current home street address, and telephone number of the person or persons answering, or assisting in the answering, of these Interrogatories and for each such person please state their relationship to the party to who these interrogatories are directed.

2.      Please provide the name, address, telephone number, name of their employer, address of their place of employment, and job title of any person who has, claims to have or whom you believe may have knowledge of information pertaining to any fact alleged in the pleadings filed in this action, and defense you have raised or anticipate raising, or any fact underlying the subject matter of this action.

3.      Please state the specific nature and substance of the knowledge that you believe the person(s) identified in your response to Interrogatory No. 1 may have.

4. Identify the persons involved in the investigation and handling of Plaintiff's claim for insurance benefits arising from damage during Hurricane IRMA, and include a brief description of the involvement of each person identified, their employer, their work addresses, and the date(s) of such involvement.

5. Please state the name and address and in detail the substance of the opinions to be provided by each person whom you may or reasonably anticipate you will use as an expert witness at trial.

6. State the following concerning all notices of claims and timing of payment related to all claims asserted by Plaintiff against Defendant related to Hurricane Irma from September 1, 2017 to the present:

 a. The date and manner in which you received all notices of the claim
 b. The date and manner in which you acknowledged receipt of each claim
 c. The date and manner in which you commenced investigation of each claim
 d. The date and manner in which you requested from the claimant all items, information, statements, and forms that you reasonably believed, at the time, would be required from the claimant
 e. The date and manner in which you notified the claimant in writing of the

acceptance or rejection of each and every claim.

7.     Identify by date, amount and reason, the insurance proceeds payments made by you to the Plaintiff related to Hurricane Irma from September 1, 2017 to the present include for each such payment the insurance policy number and effective dates pursuant to which or in relation to which the payment(s) was/were made.

8.     Do you assert or contend there are any verbal agreements or written agreements outside the insurance policy identified in the most recent complaint and between the Plaintiff and Defendant related to the property at issue in this case, if yes, please state the date of the agreement, specifically all terms of the agreements, the names, and addresses of the persons who made the agreements, and the names and addresses of all persons who you believe have knowledge concerning those agreements.

9.     Please state all obligations under the insurance policy which is the subject of this case which Plaintiff failed to perform state the date and way Defendant requested performance of each such obligation and the exact provision under the subject policy of insurance under which the obligation arose.

10.    Please state the full name, last known home address and telephone number of Chris McQueeney, the name and address of his employer, describe the relationship between Chris McQueeney and McLarens on the one hand and each Defendant, on the other hand, and identify all contractors and agreements which relate to or govern the relationship between Chris McQueeney and each Defendant in this case concerning all hurricane IRMA claims asserted by Plaintiff.

11.    Give the substance of any and all conversations, communications or statements, made by or between the Defendants (including their respective agents, servants, and employees) with reference to the property, claims, or contracts which are the subject of this case and please state the dates of the communications, the method of communication, and the persons who participated in each such communication.

12.    When was the date you anticipated litigation concerning Plaintiff's Hurricane IRMA claim?

13.     From September 1, 2017 to the present, what documents (including those maintained electronically) relating to the investigation or handling of a claim for windstorm insurance benefits in Florida are routinely generated during the course of the investigation and handling of a claim by you (e.g. Investigation Reports; z-records; reserves sheet; electronic claims diary; a claims review report; team controversion report)?

14.     Please state the full address of each and every real property the policy which is the subject of this case insured.

15.     Do you contend that the insured premises was damaged by flood water, storm surge and/or any excluded peril?  If so, state the general factual bases for this contention and identify the exclusion in the policy.

16.    Please state whether damage to Plaintiff's property which is the subject of the complaint is a covered loss and if not the date and manner Defendant communicated to Plaintiff that any hurricane IRMA claim was not a covered loss under the policy of insurance which is the subject of this case.

17.    Do you contend that any act or omission by the Plaintiffs voided,  nullified, waived or breached the insurance policy in any way?  If so, state the general factual bases for this contention.

18.    Do you contend that the Plaintiff failed to satisfy any condition precedent or covenant of the policy in any way?  If so, state the general factual bases for this contention.

19.     Please state if you contend that any of the provisions of the insurance policy you issued which is the subject of the complaint is ambiguous in any respect and if so, please identify each ambiguous provision and why you believe it is ambiguous.

20.     Please describe by address and physical description all areas of the Plaintiff's property you inspected at any time with respect to Plaintiff's Hurricane IRMA claims and state the date of the inspection, and the names, addresses, and employers of each person in attendance during the inspection.

_____
       (signature)

STATE OF FLORIDA              )
                              ) SS:
COUNTY OF _____ )

       THE FOREGOING INSTRUMENT WAS ACKNOWLEDGED BEFORE ME THIS_____ DAY OF _____ 2022, BY _____who is personally known to me or has produced _____ as identification, who did take an oath, and who says that he/she executed the foregoing Interrogatories and that the answers are true and correct under penalties of perjury

_____
Notary Public, State of Florida
My commission expires:

11

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing answers to Interrogatories was mailed to ALLAN S. REISS, ESQ., at Levine & Partners, P. A., 3350 MARY STREET, MIAMI, FLORIDA 33133, this ___ day of _____, 2022.

_____

_____

_____

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 420 of 600

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

    Plaintiff, SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation,

by and through its undersigned counsel, and pursuant to the Florida Rules of Civil

Procedure,1.350, requests that Defendant, WESTCHESTER SURPLUS LINES INSURANCE

COMPANY,  produce for copying and/or inspection at the office of the undersigned, within

thirty (30) days of the date hereof, the items listed in the attached Exhibit "A".

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and
served by the Florida Courts E-Filing Portal on this 28th day of October, 2022, to:  WILLIAM R.
LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig
LLP,  (email:  wlewis@butler.legal;  klokuta@buttler.legal;  jdearborn@butler.legal;
tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and

1

Hayley H. Ryan, Esq., Zelle LLP, (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire, CONROY SIMBERG, (email: eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company;
Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com
BY: /s/Allan S. Reiss_____
    ALLAN S. REISS, ESQ.
    FLORIDA BAR NO: 858500

## <u>INSTRUCTIONS AND DEFINITIONS</u>

The following definitions shall apply herein:

A.      "Person" means any individual natural person, partnership, firm, association, organization, corporation, business trust, or governmental or public legal or business entity, or its agents, employees, servants or other representatives.

B.      "You" refers to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, in this action, including, but not limited to, its agents, employees or other servants (including independent contractors and subcontractors), attorneys, outside advisors or consultants, investigators, representatives of any kind, and any other person acting on behalf or for the benefit of Plaintiff, either directly or indirectly.

C.      "Document" includes the original and copies of any written, recorded, or graphic matter, however produced, reproduced, or fixed in a tangible medium of expression, of every kind and regardless of where located, including, but not limited to any summary, calculations, schedule, memorandum, note, statement, letter, telegraph inter- or intra-office communication, report, diary, desk or pocket calendar or notebook, day book, appointment book, pamphlet, periodical, work sheet, list, graph, motion picture, photograph, x-ray or other machine-produced diagnostic picture or depiction of any kind, chart, index, tape, record, drawing, partial or complete report of telephone or oral conversation, compilation, tabulation, computer-stored memory component or device, study, analysis, transcript, minutes, data sheet, data processing card or tape, phone records, and all memorials of any conversations, meetings or conferences, by telephone or otherwise, and any other writing, notation or recording in the possession, custody or control of Plaintiff or its attorneys.  The term "document" shall also include the files in which any documents are maintained, including file folders or file jackets, and adjacent or related supporting or background materials are filed or maintained.

D.      "Record", listed above, includes, but is not limited to, all books of account and other books of every kind, journals, ledgers, statements, instruments, files, messages, writings of every kind, and other internal, external or other data or information of every description made or received by you in the regular course of business or otherwise, regardless of the mode in which it is recorded; the original of any such record includes the data or other information comprising a record stored or transmitted in or by means of any electronic, computerized, mechanized, or other information storage or retrieval or transmission system or device which can upon request generate, regenerate, or transmit the precise data or other information comprising the record, and an original also includes the visible data or other information so generated, regenerated, or transmitted if it is legible or can be made legible by enlargement or other process.

E.      "Identify" or "identification" when used in reference to a "document", means to state the date, title, label, file number, or description code number, author, address (if any), and persons to whom copies of the document were addressed or sent, type of document (such as letter, memorandum, chart, or other descriptive term), and its present and last known location and custodian.  If you claim that any such document was, but is no longer in your possession or subject to your control, state what

3

disposition was made of it and when.  Documents to be identified shall include both documents in your possession, custody and control and all other documents of which you have knowledge.

F.       The term "relating to" includes referring to, embodying, in connection with, commenting on, responding to sharing, describing, concerning, analyzing, reflecting or constituting.

G.       Terms in the plural include the singular and terms in the singular include the plural.

H.       <u>Claims of Privilege</u>
All objections or responses to the production request which fail or refuse fully to respond to any production of documents on the ground of any claim of privilege of any kind whatever shall:

1.       State the nature of the claim of privilege;

2.       State all facts relied upon in support of the claim of privilege or related thereto;

3.       Identify all documents related to the claim of privilege;

4.       Identify all person having knowledge of any facts related to the claim of privilege; and

5.       Identify all events, transactions, or occurrences related to the claim of privilege.

**SCHEDULE "A"**

1.      All insurance policies which are the subject of this case, or which do or may provide coverage for the claims which are the subject of this case.

2.      All communications with Plaintiff or any representative of Plaintiff related to the insurance policies which are the subject of this case or that do or may provide coverage for the claims which are the subject of this case.

3.      All communications with the producing agent related to the insurance policies which are the subject of this case or that do or may provide coverage for the claims which are the subject of this case.

4.      All applications for all insurance policies which are the subject of this case, or which do or may provide coverage for the claims which are the subject of this case.

5.      All communications between the Defendants concerning the insurance policies which are the subject of this case, or which do or may provide coverage for the claims which are the subject of this case, and communications related to Plaintiff's Hurricane IRMA claims.

6.      All documents which identify the location or address of each real property insured or the address of risk insured by the policies of insurance which are the subject of this case.

7.      All communications with Plaintiff or any representative of Plaintiff related to all Hurricane IRMA claims.

8.      All communications with McLarens or Chris McQueeney related to all Hurricane IRMA claims made by Plaintiff.

9.      The claim files from the home, regional, local offices, and third party adjusters/adjusting firms regarding the claim that is the subject of this matter, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file.

10.     The underwriting files referring or relating in any way to the policy at issue in this action, including the file folders in which the underwriting documents are kept and drafts of all documents in the file.

11.     A certified copy of the insurance policy pertaining to the claims involved in this suit.

12.     The electronic diary, including the electronic and paper notes made by Defendant's claims personnel, contractors, and third party adjusters/adjusting firms relating to the Plaintiff's Hurricane IRMA claims.

13.     Your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of windstorm claims in Florida from September 1, 2017 to September 30, 2022.

14.     The Operation Guides which relate to the handling of Hurricane IRMA claims in Florida in effect from September 1, 2017 to September 30, 2022.

15.     The adjusting reports, estimates and appraisals prepared concerning Plaintiff's Hurricane Irma claims.

16.     If you dispute that the cause of the loss was related solely to Hurricane IRMA windstorm, produce the engineering reports in your possession regarding Hurricane IRMA damage to property within a one-mile radius of the Plaintiff's insured property.

17.     The plumbing reports prepared concerning Plaintiff's property related to Hurricane Irma.

18.     The roofing repair reports and window repair reports prepared concerning Plaintiff's property related to Hurricane Irma.

19.     The field notes, measurements and file maintained by the adjuster(s) and engineers who physically inspected Plaintiff's property related to Hurricane Irma.

20.     All documents which identify the persons and entities who inspected Plaintiff's property in Florida related to its Hurricane Irma claims.

21.     The emails, instant messages and internal correspondence pertaining to Plaintiff's Hurricane Irma claims.

22.     The videotapes, photographs and recordings of Plaintiff's property in Florida related to its Hurricane Irma claims.

23.     Defendant's internal newsletters, bulletins, publications and memoranda relating to policies and procedures for handling Florida Hurricane claims that were issued from September 1, 2017 to September 30, 2022. including, but not limited to, memoranda issued to claims adjusters.

24.     The price guidelines that pertain to the handling of claims arising out of Hurricane IRMA.  In the event you utilize published guidelines or "off the shelf" software, without modification, as your price guidelines, you may respond by simply identifying by name, version, and/or edition the published guidelines you use.

25.     All communications with Plaintiff's insurance agent pertaining to Plaintiff's Hurricane Irma claims.

26.     All communications with Plaintiff's public adjuster pertaining to Plaintiff's Hurricane Irma claims.

27.     The information regarding weather and storm surge conditions on which you relied in making decisions on the Plaintiff's Hurricane IRMA claims.

28.     "Pay sheet," "Payment Log," or list of payments made on any of Plaintiff's Hurricane Irma claims.

29.     The billing statements, including billing detail, of the independent adjusters and engineers retained to evaluate the subject property pertaining to Plaintiff's Hurricane Irma claims and insurance applications.

30.     The documents reflecting reserves applied pertaining to Plaintiff's Hurricane Irma claims.

31.     The contract between the Defendant insurer and McLarens pertaining to Plaintiff's Hurricane Irma claims or in effect from September 1, 2017, until September 30, 2022.

32.     The schedule of values on file with Defendant concerning the properties insured under the insurance policy which is the subject of this case.

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 427 of 600

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

        Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

        Defendants,

_____/

## **PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME TO SERVE REPLY**

Plaintiff, SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation, by and through its undersigned counsel, and pursuant to applicable Florida Rules of Civil Procedure serves their Motion for Enlargement of Time to serve Reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Answer and Affirmative Defenses dated October 11, 2022, and states:

1.    Plaintiff's reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Answer and Affirmative Defenses dated October 11, 2022 is due to be served on or before October 31, 2022.

2.    Based on undersigned's present workload and trial schedule, Plaintiff seeks an enlargement of time of 30 days to file and serve their Reply to Defendant, WESTCHESTER

1

SURPLUS LINES INSURANCE COMPANY'S Answer and Affirmative Defenses dated October 11, 2022.

3.      No party will be prejudiced should this motion be granted.

4.      Plaintiff will be severally prejudiced and irreparably harmed should this motion be denied.

5.      The request for enlargement is not made to delay or for any improper purpose.

WHEREFORE, Plaintiff respectfully requests an enlargement of time of thirty (30) days to serve its Reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Answer and Affirmative Defenses dated October 11, 2022 and for such further and/or different relief as this Court deems just and proper under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 28th day of October, 2022, to: WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP, (email: wlewis@butler.legal; klokuta@buttler.legal; jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP, (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire, CONROY SIMBERG, (email: eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company; Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com

BY: ___/s/Allan S. Reiss__ _____
       ALLAN S. REISS, ESQ.
       FLORIDA BAR NO: 858500

2

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

## AGREED ORDER GRANTING PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME TO SERVE REPLY

THIS CAUSE having come before the Court upon Plaintiff's Motion for Enlargement of Time to serve reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Answer and Affirmative Defenses dated October 11, 2022, upon review of same, agreement of the parties and the Court being otherwise fully advised, it is

ORDERED AND ADJUDGED that:

    1.     Plaintiff's Motion for Enlargement of Time to serve reply is GRANTED.

    2. Plaintiff's reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Answer and Affirmative Defenses dated October 11, 2022 is due thirty (30) days from the date of this Order.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>3rd day of November, 2022</u>.



<u>2022-014511-CA-01 11-03-2022 3:03 PM</u>
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red;">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Elizabeth Salinas, esalinas@mfllaw.com
Elizabeth Salinas, cmotley@mfllaw.com
Elizabeth Salinas, wtaylor@mfllaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal

**Physically Served:**

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 431 of 600

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

## <u>AGREED ORDER</u>

**THIS CAUSE**, having come before the Court on the Motion for Extension of Time to Respond to Complaint the ("Motion"), filed by Defendants, Liberty Surplus Lines Insurance Corporation, Landmark American Insurance Company, Axis Surplus Lines Insurance Company, Scottsdale Insurance Company, and United National Insurance Company (collectively hereinafter, "Defendants"), and subsequent stipulation reached between the parties regarding the Motion.

Having been informed that Plaintiff is in agreement with the relief requested by Defendants in the Motion, and otherwise being duly advised in the premises, it is:

**ORDERED and ADJUDGED** that the Motion is hereby **GRANTED**.

Defendants shall file their Responses to Plaintiff's Complaint within 30 days from the date of this Order.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>10th day of November, 2022</u>.



<u>2022-014511-CA-01 11-10-2022 12:49 PM</u>
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Arthur G Williams IV, Bo.Williams@Phelps.com
Arthur G Williams IV, claire.dixon@phelps.com
Arthur G Williams IV, Elizabeth.Makler@Phelps.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Elizabeth Salinas, esalinas@mfllaw.com
Elizabeth Salinas, cmotley@mfllaw.com
Elizabeth Salinas, wtaylor@mfllaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
Rhett Conlon Parker, rhett.parker@phelps.com
Rhett Conlon Parker, jessika.clifford@phelps.com
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal

**Physically Served:**

Case 1:23-cv-20318-RNS Document 1-2 Entered on FLSD Docket 01/26/2023 Page 434 of 600

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | | |
|---|---|---|
| SETAI HOTEL ACQUISITION, LLC,<br>a foreign limited liability company, | ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 2022-CA-014511 |
| WESTCHESTER SURPLUS LINES<br>INSURANCE COMPANY, LANDMARK<br>AMERICAN INSURANCE COMPANY,<br>LIBERTY SURPLUS LINES INSURANCE<br>COMPANY, AXIS SURPLUS INSURANCE<br>COMPANY, EVEREST INDEMNITY<br>INSURANCE COMPANY, SCOTTSDALE<br>INSURANCE COMPANY, and UNITED<br>NATIONAL INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) | |
|     Defendants. | ) | |

## NOTICE OF APPEARANCE

Undersigned counsel A. Grady "Bo" Williams IV and Rhett Conlon Parker, with the law firm of Phelps Dunbar LLP, hereby file their notice of appearance as counsel for Defendant Axis Surplus Insurance Company and request service copies of all pleadings, notices, papers, and other matters filed in this action.

Dated this 9th day of November 2022.

       *s/ A. Grady Williams IV*

A. GRADY WILLIAMS IV (Fla. Bar No. 0065563)
RHETT CONLON PARKER (Fla. Bar No. 92505)
*Attorneys for Defendant Axis Surplus Insurance Company*

**PHELPS DUNBAR LLP**
101 Dauphin Street, Suite 1000 (36602)
P.O. Box 2727
Mobile, AL 36652-2727
251-432-4481(phone)
251-433-1820 (fax)
E-mail Designations:
bo.williams@phelps.com, claire.dixon@phelps.com
rhett.parker@phelps.com, jessika.clifford@phelps.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 9, 2022, a true copy of the foregoing was filed with the Florida Court's e-filing portal and forwarded by electronic mail to the following counsel of record:

Allen S. Reiss, Esquire
Florida Bar No. 858500
LEVINE & PARTNERS, P.A.
3350 Mary Street
Miami, Florida 33133-5215
Phone: (305) 372-1350
E-mail: <u>asr@levinelawfirm.com</u>

*s/ A. Grady Williams IV*
A.  GRADY WILLIAMS IV

PD.40367544.1

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | | |
|---|---|---|
| SETAI HOTEL ACQUISITION, LLC, | ) | |
| a foreign limited liability company, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.:  2022-CA-014511 |
| | ) | |
| WESTCHESTER SURPLUS LINES | ) | |
| INSURANCE COMPANY, LANDMARK | ) | |
| AMERICAN INSURANCE COMPANY, | ) | |
| LIBERTY SURPLUS LINES INSURANCE | ) | |
| COMPANY, AXIS SURPLUS INSURANCE | ) | |
| COMPANY, EVEREST INDEMNITY | ) | |
| INSURANCE COMPANY, SCOTTSDALE | ) | |
| INSURANCE COMPANY, and UNITED | ) | |
| NATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
|     Defendants. | ) | |

## NOTICE OF APPEARANCE

Undersigned counsel A. Grady "Bo" Williams IV and Rhett Conlon Parker, with the law firm of Phelps Dunbar LLP, hereby file their notice of appearance as counsel for Defendant Scottsdale Insurance Company and request service copies of all pleadings, notices, papers, and other matters filed in this action.

Dated this 9th day of November 2022.

    *s/ A. Grady Williams IV*

A. GRADY WILLIAMS IV (Fla. Bar No. 0065563)
RHETT CONLON PARKER (Fla. Bar No. 92505)
*Attorneys for Defendant Scottsdale Insurance Company*

**PHELPS DUNBAR LLP**
101 Dauphin Street, Suite 1000 (36602)
P.O. Box 2727
Mobile, AL 36652-2727
251-432-4481(phone)
251-433-1820 (fax)
E-mail Designations:
bo.williams@phelps.com, claire.dixon@phelps.com
rhett.parker@phelps.com, jessika.clifford@phelps.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2022, a true copy of the foregoing was filed with the Florida Court's e-filing portal and forwarded by electronic mail to the following counsel of record:

Allen S. Reiss, Esquire
Florida Bar No. 858500
LEVINE & PARTNERS, P.A.
3350 Mary Street
Miami, Florida 33133-5215
Phone: (305) 372-1350
E-mail: asr@levinelawfirm.com

*s/ A. Grady Williams IV*
A.  GRADY WILLIAMS IV

PD.40373553.1

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 438 of 600

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

## **PLAINTIFF'S MOTION FOR EXTENSION OF TIME**

Plaintiff, SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation, by and through its undersigned counsel, and pursuant to applicable Florida Rules of Civil Procedure serves their Motion for Extension of Time to serve responses to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Request for Production to Plaintiff, Setai Hotel Acquisition, LLC and Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Interrogatories to Plaintiff, and states:

1.     Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Request for Production to Plaintiff, Setai Hotel Acquisition, LLC and Defendant,

WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Interrogatories to Plaintiff were served on October 19, 2022.

2.      Accordingly, responses to the aforementioned discovery are due to be served on or before November 18, 2022.

3.      Based on undersigned's present workload and trial schedule, Plaintiff seeks an enlargement of time of 30 days to file and serve their responses to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Request for Production to Plaintiff, Setai Hotel Acquisition, LLC and Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Interrogatories to Plaintiff.

4.      No party will be prejudiced should this motion be granted.

5.      Plaintiff will be severally prejudiced and irreparably harmed should this motion be denied.

6.      The request for an extension is not made to delay or for any improper purpose.

WHEREFORE, Plaintiff respectfully requests an extension of time of thirty (30) days to serve its responses to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Request for Production to Plaintiff, Setai Hotel Acquisition, LLC and Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Interrogatories to Plaintiff and for such further and/or different relief as this Court deems just and proper under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 11th day of November, 2022, to: WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP, (email: wlewis@butler.legal; klokuta@buttler.legal; jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and

2

Hayley H. Ryan, Esq., Zelle LLP,  (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire, CONROY SIMBERG, (email: eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company;
 Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

<div style="margin-left:40%">

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com

BY: __/s/Allan S. Reiss_____
        ALLAN S. REISS, ESQ.
        FLORIDA BAR NO: 858500

</div>

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

Case No.: 2022-014511 CA 01

      Plaintiff,

      vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

      Defendants.

_____/

## UNOPPOSED MOTION FOR LEAVE TO AMEND DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

      Defendant, Westchester Surplus Lines Insurance Company ("Westchester"), by and through its undersigned counsel and in accordance with the Florida Rules of Civil Procedure, hereby file this, their Unopposed Motion for Leave to Amend Defendant's Answer and Affirmative Defenses and state as follows:

1.    On September 21, 2022, Defendant, Westchester was served with a Complaint alleging breach of contract from Plaintiff, Setai Hotel Acquisition LLC.

2.    Westchester filed its Answer and Affirmative Defenses on October 11, 2022.

3.    Westchester seeks leave to amend to add an Eleventh Affirmative Defense. Westchester's proposed Amended Answer and Affirmative Defenses is attached as **Exhibit "A."**

4.   On November 17, 2022, counsel for Westchester reached out to counsel for Plaintiff for consent to amend its Answer and Affirmative Defenses.

5.   On November 21, 2022, counsel for Plaintiff provided consent to the amendment.

6.   The addition of this defense will not prejudice Plaintiff or delay this action. This motion is made in good faith and is not being made for the purpose of delay. Likewise, no party to this lawsuit will be prejudiced if this motion is granted.

7.   It is well settled law in Florida that leave to amend should be liberally granted. *Johnson f. Allen, Knudsen, DeBoest, Edwards & Rhoedes, P.A.* 566 So.2d 237 (Fla. 2d DCA 1990).

                         BUTLER WEIHMULLER KATZ CRAIG LLP

                         _Katelyn Lokuta_

                         _____
                         WILLIAM R. LEWIS, ESQ.
                         Florida Bar No.:  0879827
                         wlewis@butler.legal
                         KATELYN N. LOKUTA, ESQ.
                         Florida Bar No.:  106198
                         klokuta@butler.legal
                         Secondary:  jdearborn@butler.legal
                                         tgarcia@butler.legal
                         400 N. Ashley Drive, Suite 2300
                         Tampa, Florida  33602
                         Telephone:   (813) 281-1900
                         Facsimile:    (813) 281-0900
                         *Attorneys for Defendant, Westchester Surplus Lines Insurance Company*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was filed via the Court's e-filing portal on November 28, 2022 to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL 33133
*Counsel for Plaintiff, Setai Hotel Acquisition, LLC*

Jason M. Chodos, Esq.
Hayley H. Ryan, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, United National Insurance Company*

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, Liberty Surplus Lines Insurance Company*

Elizabeth D. Salinas, Esq.
Mozley, Finlayson & Logins LLP
4767 New Broad Street
Orlando, FL 32814
*Counsel for Defendant, Landmark American Insurance Company*

Grady "Bo" Williams IV, Esq.
Rhett Conlon Parker, Esq.
Phelps Dunbar LLP
101 Dauphin Street, Suite 1000
Mobile, AL 36602
*Counsel for Defendants, Scottsdale Insurance Company and Axis Surplus Insurance Company*

KATELYN N. LOKUTA, ESQ.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                      Case No.: 2022-014511 CA 01

    Plaintiff,

    vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

    Defendants.

_____/

## DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S, AMENDED ANSWER & AFFIRMATIVE DEFENSES

COMES NOW, the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Westchester"), by and through its undersigned counsel, and responds to the Complaint filed herein as follows:

## COMMON ALLEGATIONS

1.    Admitted that Plaintiff has alleged that their action is one for damages that exceed Thirty Thousand Dollars ($30,000.00), exclusive of attorney's fees and costs; otherwise, denied.

2.    Admitted that Plaintiff is an LLC only. Westchester is without knowledge of the remaining allegations and are therefore denied.



EXHIBIT
A

3.     Admitted that Westchester is a surplus lines insurance carrier licensed to conduct business in Florida, including Miami Date County, FL. All allegations not specifically admitted are denied.

4.     Admitted that Westchester issued policy number D37431849-003 to Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC, Setai Resort & Residences Condominium Association, Inc. with an address of 1400 Broadway, New York, NY 10018, for the policy period of April 27, 2017 to April 27, 2018 ("Subject Policy") for the property located at 2001 Collins Avenue, Miami Beach, FL 33139 ("Subject Property") subject to the terms, conditions, limitations, and exclusions contained therein in exchange for a premium to be paid by the Plaintiff. All allegations not specifically admitted are denied.

5.     Admitted for jurisdictional purposes only; otherwise denied.

6.     Admitted that Westchester issued a policy of insurance to Setai Hotel Acquisition, LLC, 1400 Broadway, New York, NY 10018. The terms and conditions of the policy are contained therein; otherwise denied.

7.     Denied.

8.     Admitted that on September 15, 2017, Plaintiff reported a loss to Westchester for damages having reportedly occurred as a result of Hurricane Irma on or about September 10, 2017. All allegations not specifically admitted are denied.

9.     Denied.

10.    Plaintiff presented an initial claim which was subject to the applicable deductibles. Any amount paid for Business Income loss was inaccurate as the incorrect deductible was applied, resulting in an over payment of that portion of the claim; All allegations not specifically admitted are denied.

11.     Admitted that on June 16, 2020, a letter of representation was provided to Westchester with a request to reopen the claim with no additional details as to any supplemental claimed damage.  On September 3, 2020, almost three years after the date of loss and almost three months after the request to reopen the claim, Plaintiff provided Westchester with a sworn proof of loss and estimates. All allegations not specifically admitted are denied.

12.     Denied.

13.     Denied.

14.     Denied.

15.      Westchester is without knowledge as to Plaintiff's arrangement with their counsel; therefore, denied.

16.     Denied.

### COUNT I – BREACH OF CONTRACT – WESTCHESTER SURPLUS LINES INSURANCE COMPANY

17.     Westchester readopts and realleges their responses to paragraphs 1 through 16 as if fully set forth herein.

18.     Denied

19.     Denied.

20.     Denied.

Westchester denies all allegations not expressly admitted. Westchester denies all allegations and prayers for relief set forth in Plaintiff's Wherefore Claus.

### COUNT II – BREACH OF CONTRACT – LANDMARK AMERICAN INSURANCE COMPANY

Paragraphs 21-24 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT III – BREACH OF CONTRACT – LIBERTY SURPLUS LINES INSURANCE COMPANY

Paragraphs 25-28 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT IV – BREACH OF CONTRACT – AXIS SURPLUS INSURANCE COMPANY

Paragraphs 29-32 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT V – BREACH OF CONTRACT – EVEREST INDEMNITY INSURANCE COMPANY

Paragraphs 33-36 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT VI – BREACH OF CONTRACT – SCOTTSDALE INSURANCE COMPANY

Paragraphs 37-40 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT VII – BREACH OF CONTRACT – UNITED NATIONAL INSURANCE COMPANY

Paragraphs 41-44 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint alleges a cause of action for an insurance claim under a commercial policy of insurance issued to Setai Hotel Acquisition, LLC, 1400 Broadway New York, NY 10018. Under Florida's choice-of-law rules, lex loci contractus applies in contract matters. Pursuant to this rule, the law of the jurisdiction where the surplus lines

insurance contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. Here, this Court must apply the law of the state where the surplus lines insurance policy was bound.

## SECOND AFFIRMATIVE DEFENSE

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY
COVERAGE FORM**

\*\*\*

**E.      Loss Conditions**

\*\*\*

**3.      Duties In The Event Of Loss Or Damage**

**a.**      You must see that the following are done in the event of loss or damage to Covered Property:

\*\*\*

**(2)**      Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)**      As soon as possible, give us a description of how, when and where the loss or damage occurred.

\*\*\*

Plaintiff did not give Westchester prompt notice of the supplemental claim and alleged damages to the property. On June 16, 2020, a letter of representation was provided to Westchester with a request to reopen the claim with no additional details as to any supplemental claimed damage.  On September 3, 2020, almost three years after the date of loss and almost three months after the request to reopen the claim, Plaintiff provided Westchester with a sworn proof of loss and estimates. Therefore, Plaintiff did not provide prompt notice of the loss or damage.

## THIRD AFFIRMATIVE DEFENSE

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY
COVERAGE FORM**

***

**E.      Loss Conditions**

***

**3.      Duties In The Event Of Loss Or Damage**

**a.**      You must see that the following are done in the event of loss or damage to Covered Property:

***

**(5)**   At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.

**(6)**   As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

***

**(8)**   Cooperate with us in the investigation or settlement of the claim.

***

Westchester requested additional information from Plaintiff on September 22, 2020, January 25, 2021, February 24, 2021, March 25, 2021, April 8, 2021, March 3, 2022, June 29, 2022, and August 12, 2022. Plaintiff failed to provide requested records related to construction of planned renovation projects prior to Hurricane Irma ("Renovation Project"), construction contracts pertaining to repairs related to Hurricane Irma damage, and failed to delineate which expenditures were made by the insured for

the Renovation Project, despite Westchester's repeated requests. Therefore, Plaintiff breached the policy terms by failing to comply with their duties in the event of a loss and prejudiced Westchester's investigation. Plaintiff's failure to comply with their duties in the event of a loss prevented Westchester from making a coverage determination at the time the above captioned action was filed despite its good faith attempt to obtain necessary information to do so.

## FOURTH AFFIRMATIVE DEFENSE

The relief sought by Plaintiff in this lawsuit and the underlying claim is barred under the following policy provision:

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

\*\*\*

**D.    LEGAL ACTION AGAINST US**
No one may bring a legal action against us under this Coverage Part unless:
1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

\*\*\*

As set forth in Westchester's Second and Third Affirmative Defense, Plaintiff failed to comply with the duties after a loss as required by the Subject Policy. Further, Plaintiff is barred from recovering in this action because Plaintiff failed to bring this action within two years after the date of loss.

## FIFTH AFFIRMATIVE DEFENSE

The Subject Policy is a "named perils" policy, providing coverage for the perils of

Windstorm and Hail. The Policy provides, in relevant part, as follows:

**A.  Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
<div align="center">***</div>

**3.  Covered Causes of Loss**
See applicable Causes of Loss form as shown in the Declarations

<div align="center">***</div>

## Commercial Property Declarations                CHUBB®

Company: **Westchester Surplus Lines Insurance Company**
SYM:   **FS**       Policy ID: **D37431849 003**

| Location | | |
|---|---|---|
| | X | Most recent schedule on file with Company totaling **$180,010,000.** |
| | ☐ | See attached Schedule CPs2 |

| Loc. No. | Bld. No. | Address |
|---|---|---|
| | | |

**Coverages and Limits Provided**

Insurance At Described Location Applies Only For Coverages For Which A Limit Of Liability Is Shown

| Loc. No. | Bld. No | Coverage | Covered Causes of Loss Form | Co-Insurance % | Limit of Insurance $ |
|---|---|---|---|---|---|
| All | All | Buildings, Personal Property and Business Income Including Extra Expense | Windstorm Or Hail | NIL | $10,000,000 Per Occurrence Primary (per schedule not blanket) |

<div align="center">***</div>

<div align="center"><b>CAUSES OF LOSS- WINDSTORM OR HAIL</b></div>

**A.   Covered Causes of Loss**

When Windstorm or Hail is shown in the Declaration, Covered Causes of Loss means the following:

Windstorm or Hail, but not including:

a.  Frost or cold weather
b.  Ice (other than hail), snow or sleet, whether driven by wind or not; or
c.  Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain,

snow, sand or dust enters.

It is Plaintiff's burden to prove windstorm damage to covered property under the policy. Further, Plaintiff cannot recover for loss or damage to the interior of any building caused by rain until it first establishes that the building sustained wind damage to its roof or walls through which rain entered.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the following terms as set forth in the policy of insurance and stated here in pertinent part:

### Named Windstorm Percentage Deductible Endorsement

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | D37431849 003 | 02/27/2017 to   04/27/2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**Commercial Property Coverage Part**

Schedule:  Per Schedule on File with Company

Deductible Percentage: **5** %

Minimum Deductible  **$100,000**  Per Occurrence

Applicable to **Named Windstorm** and **Named Windstorm Flood**:          Yes

The **Named Windstorm** deductible, shown above and otherwise set forth in the policy, applies to all covered loss or covered damage to Covered Property, occurring during the **Named Windstorm** deductible period and resulting from:
1.  wind and/or hail directly or indirectly from a **Named Windstorm**;
2.  rain damage to the interior of any building or structure, or the property inside the building or structure, whether the rain is driven by wind or not, provided the building or structure first sustains wind or hail damage to its roof or walls through which the rain enters.
3.  **Named Windstorm Flood** meaning Flood directly resulting from a **Named Windstorm**.

A **Named Windstorm** is a storm system that has been declared to be either a Tropical Depression or Tropical Storm, or a Hurricane, by the National Hurricane Center of the National Weather Service.

The **Named Windstorm** deductible period begins at the time a watch or warning is issued by the National Hurricane Center and ends 72 hours after the termination of the last watch or warning issued.

**Deductible:**
The percentage, shown in the schedule above, of the sum of all values listed in the most recent Schedule of Values on file with the Company for each separately identifiable building or structure that has sustained a loss or damage and for which a claim is being made under this policy; subject to the minimum deductible shown in the schedule.

**Calculation of the Deductible:**

A deductible is calculated separately for, and applies separately to:
1.  The Total Insurable Values (TIV) per each separate building or structure.  The TIV per building or structure shall be calculated as the sum of all values listed in the most recent Schedule of Values on file with the Company for Buildings, Personal Property, Business Income, and any other values for which coverage is provided under this policy related to each separately identifiable structure.
2.  Personal property in the open.  The TIV for personal property in the open shall be the sum of all personal property in the open per location.

If a covered structure is not included on the Schedule of Values, the values at that structure at the time and place of loss will be used.

The Plaintiff's deductible as shown in the above Named Windstorm Percentage Deductible Endorsement is 5% of the total insurable values per each building. Any covered damage under the Subject Policy is therefore subject to this deductible. Per the Schedule of Values, there are three (3) buildings at the loss location 2001 Collins Avenue. As identified on the Schedule of Values, Location # 1, Building # 2 2001-2009 Collins Ave (Hotel), has a total insurable value of $76,500,000.00. Five-percent (5 %) of the Total Insurable Values (TIV) for the hotel building equates to a deductible of $3,825,000.00. As identified on the Schedule of Values Location #1, Building # 3 2001-2009 Collins Ave (Spa Fitness Center), has a total insurance value of $2,310,000.00. Five percent (5 %) of the TIV for the Spa Fitness Center equates to a deductible of $115,000.00. As identified on the Schedule of Values Location #1, Building # 4 2001-2009 Collins Ave (Restaurant/Bar), has a total insurable value of $2,000,000.00. Five percent (5%) of the TIV for the Restaurant/Bar equates to a deductible of $100,000.00.

Defendant's post-loss investigation revealed the repairs to the property are below the applicable deductibles.

To the extent that it is determined that some or all of Plaintiff's alleged loss or damage is covered under the Subject Policy, the applicable deductibles must be accounted for.

## **SEVENTH AFFIRMATIVE DEFENSE**

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

* * *

**G.** **Option Coverages**

* * *

**3.** **Replacement Cost**

* * *

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

* * *

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2), (3), subject to f. below:

**(1)** The Limit of the Insurance applicable to the lost or damaged; property;

**(2)** The cost to replace the lost or damaged property with other property:
**(a)** Of comparable material or quality; and
**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

Westchester is not required to pay on a replacement cost basis for any purported loss or damage that was not actually repaired or replaced, and/or for repairs or replacements that were not made as soon as reasonably possible after the purposed loss or damage. To the extent that Plaintiff made repairs or replacements to damaged property prior to filing suit, these repairs did not exceed the applicable deductible amounts under

the Subject Policy. Any payment on a replacement cost basis under the Policy is limited as set forth above.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the following terms as set forth in the policy of insurance and stated here in pertinent part:

**ORDINANCE OR LAW COVERAGE ENDORSEMENT (ACE 0774)**

**D. Coverage**
***
**3. Coverage C – Increased Cost of Construction Coverage**

**a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
(1) Repair or reconstruct damaged portions of that building; and/or
(2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;
When the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

***
**E. Loss Payment**
***
**4.** Unless paragraph **E.5.** applies, loss payment under Coverage C- Increased Cost of Construction Coverage will be determined as follows:

**a.** We will not pay under Coverage C:

**i.** Until the property is actually repaired or replaced at the same or another premises; and
**ii.** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

Pursuant to the foregoing provisions, Plaintiff is not entitled to costs to conform to any law or ordinance, unless and until the property is actually repaired or replaced, and it is done so within two years of the date of loss.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the

following terms as set forth in the policy of insurance and stated here in pertinent part:

**FLOOD COVERAGE ENDORSEMENT**
**CP 10 65 06 07**

**C.     Additional Covered Cause of Loss**

The following is added to the Covered Causes of Loss:

Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:

1.  The overflow of inland or tidal waters;
2.  The unusual or rapid accumulation or runoff of surface waters from any source; or

***

**PROVISIONS FOR MAINTENANCE OF FEDERAL FLOOD INSURANCE ENDORSEMENT**
**ACE0376 (06/08)**

For commercial property risks, or those habitational risks not eligible for excess Flood insurance over the basic coverage provided by the National Flood Insurance Program, this insurance shall be excess of the maximum limit available, whether purchased or not. This limitation includes the deduction shown in the Flood Endorsement.

Flood coverage provided by the Flood Coverage Endorsement is in excess of $500,000.00; the maximum coverage limit available for commercial properties through the National Flood Insurance Program. To the extent that Plaintiff can establish that the alleged loss or damage was caused by Flood, coverage is afforded under the Subject Policy for only that portion of damages which exceeds $500,000.00 and the applicable deductible.

## TENTH AFFIRMATIVE DEFENSE

Westchester is a surplus lines insurance carrier and therefore, is not subject to the Chapter 627, Florida Statutes, including Fla. Sta. §627.428. To the extent that some other state's law applies, Chapter 627 would not be applicable.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the following terms as set forth in the policy of insurance and stated here in pertinent part:

### PRE-EXISTING PROPERTY DAMAGE EXCLUSION

This policy excludes any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing property damage at the time of loss.

To the extent that Plaintiff proves the property sustained damage by a cover peril, Plaintiff cannot recover for loss or damage that was directly or indirectly caused by, resulting from, or contributed by any pre-existing property damage at the time of the loss.

## STATEMENT

Westchester hereby reserves the right to amend, modify, or supplement its Affirmative Defenses as further facts become known to it during the pendency of this litigation.

WHEREFORE, the Defendant, Westchester Surplus Insurance Company, respectfully requests judgment in its favor, costs of this action and such other relief as this Court deems appropriate under the circumstances.

BUTLER WEIHMULLER KATZ CRAIG LLP

_Katelyn Lokuta_

WILLIAM R. LEWIS, ESQ.
Florida Bar No.:  0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No: 106198
klokuta@butler.legal
Secondary:   jdearborn@butler.legal
                      tgarcia@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602

Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Defendant, Westchester Surplus Lines Insurance Company*

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument was filed via the Court's e-filing portal on November 28, 2022 to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL 33133
*Counsel for Plaintiff, Setai Hotel Acquisition, LLC*

Jason M. Chodos, Esq.
Hayley H. Ryan, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, United National Insurance Company*

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, Liberty Surplus Lines Insurance Company*

Elizabeth D. Salinas, Esq.
Mozley, Finlayson & Logins LLP
4767 New Broad Street
Orlando, FL 32814
*Counsel for Defendant, Landmark American Insurance Company*

Grady "Bo" Williams IV, Esq.
Rhett Conlon Parker, Esq.
Phelps Dunbar LLP
101 Dauphin Street, Suite 1000
Mobile, AL 36602
*Counsel for Defendants, Scottsdale Insurance Company and Axis Surplus Insurance Company*

_____
KATELYN N. LOKUTA, ESQ

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 460 of 600

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

### AGREED ORDER GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME

    THIS CAUSE having come before the Court upon Plaintiff's Motion for Extension of Time to serve responses to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Request for Production to Plaintiff, Setai Hotel Acquisition, LLC and Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Interrogatories to Plaintiff, upon review of same, agreement of the parties and the Court being otherwise fully advised, it is

ORDERED AND ADJUDGED that:

1.   Plaintiff's Motion for Extension of Time is GRANTED.

2.   Plaintiff's response to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Request for Production to Plaintiff, Setai Hotel Acquisition, LLC and Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Interrogatories to Plaintiff is due thirty (30) days from the date of this Order.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 28th day of November, 2022.



2022-014511-CA-01 11-28-2022 7:09 PM
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Arthur G Williams IV, Bo.Williams@Phelps.com
Arthur G Williams IV, claire.dixon@phelps.com
Arthur G Williams IV, Elizabeth.Makler@Phelps.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Elizabeth Salinas, esalinas@mfllaw.com
Elizabeth Salinas, cmotley@mfllaw.com
Elizabeth Salinas, wtaylor@mfllaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
Rhett Conlon Parker, rhett.parker@phelps.com
Rhett Conlon Parker, jessika.clifford@phelps.com
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal

**Physically Served:**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                         Case No.: 2022-014511 CA 01

      Plaintiff,

      vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

      Defendants.

_____/

**DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S**
**MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S DISCOVERY**
**REQUESTS**

      Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY

("Westchester"), by and through their undersigned counsel and pursuant to Florida Rule

of Civil Procedure 1.090(b), hereby move the Court for an enlargement of time to respond

to Plaintiff's discovery requests, up to and including December 19, 2022, and state as

follows:

      1.     On October 28, 2022, Plaintiff filed their First Request for Production and

First Set of Interrogatories to Westchester.

      2.     Westchester's responses to discovery are due to be served by November

28, 2022.

3.     Westchester is in the process of assembling the necessary information and requires additional time to respond to Plaintiff's discovery requests.

4.     This Motion for Enlargement of Time is made in good faith and not for purposes of delaying the ultimate resolution of this case.

WHEREFORE, Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, respectfully request that this Honorable Court grant this Motion for Extension of Time to Respond to Plaintiff's First Request for Production and First Set of Interrogatories.

BUTLER WEIHMULLER KATZ CRAIG LLP

_____
WILLIAM R. LEWIS, ESQ.
Florida Bar No.:  0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No: 106198
klokuta@butler.legal
Secondary:   jdearborn@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Westchester Surplus Lines Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL  33133
Counsel for Plaintiff, Setai Hotel Acquisition, LLC

Alexis Lezama, Esq.
Conroy Simberg
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL  33401
Counsel for Defendant, Everest Indemnity Insurance Company

A. Grady Williams, IV, Esq.
Rhett Conlon Parker, Esq.
Phelps Dunbar LLP
PO Box 2727
Mobile, AL 36652
Counsel for AXIS Surplus Insurance Company and Scottsdale Insurance
Company

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, Liberty Surplus Lines Insurance Company

Hayley H. Ryan, Esq.
Jason M. Chodos, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, United National Insurance Company

Elizabeth D. Salinas, Esq.200
Mozeley, Finlayson & Loggins, LLP
4767 New Broad Street
Orlando, FL  32814
Counsel for Defendant, Landmark American Insurance Company

by e-Portal on November 28, 2022.

_Katelyn Lokuta_

_____

KATELYN N. LOKUTA, ESQ.

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 466 of 600

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

## AGREED ORDER GRANTING WESTCHESTER'S UNOPPOSED MOTION FOR LEAVE TO AMEND DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

THIS CAUSE having come before the Court on Defendant, Westchester Surplus Lines Insurance Company's ("Westchester") Motion for Leave to Amend Answer and Affirmative Defenses filed on November 28, 2022. The Court, having reviewed the Motion, and being advised that the parties are in agreement to the entry of this Order, it is hereby:

**ORDERED and ADJUDGED** that Westchester's Motion is hereby **GRANTED**. Westchester will submit a Notice of Filing with its Amended Answer and Affirmative Defenses upon entry of this order and counsel for Plaintiff shall respond within 30 days of same.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 6th day of December, 2022.

2022-014511-CA-01 12-06-2022 9:45 AM
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Arthur G Williams IV, Bo.Williams@Phelps.com
Arthur G Williams IV, claire.dixon@phelps.com
Arthur G Williams IV, Elizabeth.Makler@Phelps.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Elizabeth Salinas, esalinas@mfllaw.com
Elizabeth Salinas, cmotley@mfllaw.com
Elizabeth Salinas, wtaylor@mfllaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
Rhett Conlon Parker, rhett.parker@phelps.com
Rhett Conlon Parker, jessika.clifford@phelps.com
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal


**Physically Served:**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

## AGREED ORDER GRANTING DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS

THIS CAUSE having come before the Court on Defendant, Westchester Surplus Lines Insurance Company's ("Westchester") Motion for Extension of Time to Respond to Plaintiff's Discovery Requests, filed on October 28, 2022.

THE COURT has reviewed the pertinent portions of the record and is otherwise fully advised in the premises. Accordingly, it is:

**ORDERED and ADJUDGED** that Westchester's Motion is hereby **GRANTED**. Westchester will have up to and including Monday, December 19, 2022 to file their responses to Plaintiff's First Request for Production and First Set of Interrogatories.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>6th day of December, 2022</u>.



<u>2022-014511-CA-01 12-06-2022 9:49 AM</u>
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Arthur G Williams IV, Bo.Williams@Phelps.com
Arthur G Williams IV, claire.dixon@phelps.com
Arthur G Williams IV, Elizabeth.Makler@Phelps.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Elizabeth Salinas, esalinas@mfllaw.com
Elizabeth Salinas, cmotley@mfllaw.com
Elizabeth Salinas, wtaylor@mfllaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
Rhett Conlon Parker, rhett.parker@phelps.com
Rhett Conlon Parker, jessika.clifford@phelps.com
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal

**Physically Served:**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                        Case No.: 2022-014511 CA 01

      Plaintiff,

      vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

      Defendants.

_____/

## DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S, NOTICE OF FILING

      Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY,

through its undersigned counsel, hereby gives notice of filing its Amended Answer and

Affirmative defenses pursuant to this Court's December 6, 2022 order.

                                  BUTLER WEIHMULLER KATZ CRAIG LLP

                                  *Katelyn Lokuta*

                              _____
                              WILLIAM R. LEWIS, ESQ.
                              Florida Bar No.:  0879827
                              wlewis@butler.legal
                              KATELYN N. LOKUTA, ESQ.
                              Florida Bar No: 106198
                              klokuta@butler.legal
                              Secondary:   jdearborn@butler.legal

400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Westchester Surplus Lines Insurance Company*


## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL  33133
Counsel for Plaintiff, Setai Hotel Acquisition, LLC

Alexis Lezama, Esq.
Conroy Simberg
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL  33401
Counsel for Defendant, Everest Indemnity Insurance Company

A. Grady Williams, IV, Esq.
Rhett Conlon Parker, Esq.
Phelps Dunbar LLP
PO Box 2727
Mobile, AL 36652
Counsel for AXIS Surplus Insurance Company and Scottsdale Insurance Company

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, Liberty Surplus Lines Insurance Company

Hayley H. Ryan, Esq.
Jason M. Chodos, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600

Miami, FL  33131
Counsel for Defendant, United National Insurance Company

Elizabeth D. Salinas, Esq.200
Mozeley, Finlayson & Loggins, LLP
4767 New Broad Street
Orlando, FL  32814
Counsel for Defendant, Landmark American Insurance Company

by e-Portal on December 6, 2022.

_____
KATELYN N. LOKUTA, ESQ.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                      Case No.: 2022-014511 CA 01

        Plaintiff,

        vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

        Defendants.

_____/

## DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S, AMENDED ANSWER & AFFIRMATIVE DEFENSES

COMES NOW, the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Westchester"), by and through its undersigned counsel, and responds to the Complaint filed herein as follows:

## COMMON ALLEGATIONS

1.      Admitted that Plaintiff has alleged that their action is one for damages that exceed Thirty Thousand Dollars ($30,000.00), exclusive of attorney's fees and costs; otherwise, denied.

2.      Admitted that Plaintiff is an LLC only. Westchester is without knowledge of the remaining allegations and are therefore denied.

3.      Admitted that Westchester is a surplus lines insurance carrier licensed to conduct business in Florida, including Miami Date County, FL. All allegations not specifically admitted are denied.

4.      Admitted that Westchester issued policy number D37431849-003 to Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC, Setai Resort & Residences Condominium Association, Inc. with an address of 1400 Broadway, New York, NY 10018, for the policy period of April 27, 2017 to April 27, 2018 ("Subject Policy") for the property located at 2001 Collins Avenue, Miami Beach, FL 33139 ("Subject Property") subject to the terms, conditions, limitations, and exclusions contained therein in exchange for a premium to be paid by the Plaintiff. All allegations not specifically admitted are denied.

5.      Admitted for jurisdictional purposes only; otherwise denied.

6.      Admitted that Westchester issued a policy of insurance to Setai Hotel Acquisition, LLC, 1400 Broadway, New York, NY 10018. The terms and conditions of the policy are contained therein; otherwise denied.

7.      Denied.

8.      Admitted that on September 15, 2017, Plaintiff reported a loss to Westchester for damages having reportedly occurred as a result of Hurricane Irma on or about September 10, 2017. All allegations not specifically admitted are denied.

9.      Denied.

10.     Plaintiff presented an initial claim which was subject to the applicable deductibles. Any amount paid for Business Income loss was inaccurate as the incorrect deductible was applied, resulting in an over payment of that portion of the claim; All allegations not specifically admitted are denied.

11.     Admitted that on June 16, 2020, a letter of representation was provided to Westchester with a request to reopen the claim with no additional details as to any supplemental claimed damage.  On September 3, 2020, almost three years after the date of loss and almost three months after the request to reopen the claim, Plaintiff provided Westchester with a sworn proof of loss and estimates. All allegations not specifically admitted are denied.

12.     Denied.

13.     Denied.

14.     Denied.

15.      Westchester is without knowledge as to Plaintiff's arrangement with their counsel; therefore, denied.

16.     Denied.

## COUNT I – BREACH OF CONTRACT – WESTCHESTER SURPLUS LINES INSURANCE COMPANY

17.     Westchester readopts and realleges their responses to paragraphs 1 through 16 as if fully set forth herein.

18.     Denied

19.     Denied.

20.     Denied.

Westchester denies all allegations not expressly admitted. Westchester denies all allegations and prayers for relief set forth in Plaintiff's Wherefore Claus.

## COUNT II – BREACH OF CONTRACT – LANDMARK AMERICAN INSURANCE COMPANY

Paragraphs 21-24 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT III – BREACH OF CONTRACT – LIBERTY SURPLUS LINES INSURANCE COMPANY

Paragraphs 25-28 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT IV – BREACH OF CONTRACT – AXIS SURPLUS INSURANCE COMPANY

Paragraphs 29-32 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT V – BREACH OF CONTRACT – EVEREST INDEMNITY INSURANCE COMPANY

Paragraphs 33-36 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT VI – BREACH OF CONTRACT – SCOTTSDALE INSURANCE COMPANY

Paragraphs 37-40 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### COUNT VII – BREACH OF CONTRACT – UNITED NATIONAL INSURANCE COMPANY

Paragraphs 41-44 do not apply to Westchester, as such no response is required.

To the extent a response is required all allegations are denied.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint alleges a cause of action for an insurance claim under a commercial policy of insurance issued to Setai Hotel Acquisition, LLC, 1400 Broadway New York, NY 10018. Under Florida's choice-of-law rules, lex loci contractus applies in contract matters. Pursuant to this rule, the law of the jurisdiction where the surplus lines

insurance contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. Here, this Court must apply the law of the state where the surplus lines insurance policy was bound.

## SECOND AFFIRMATIVE DEFENSE

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\*\*\*

**E.      Loss Conditions**

\*\*\*

**3.      Duties In The Event Of Loss Or Damage**

**a.**      You must see that the following are done in the event of loss or damage to Covered Property:

\*\*\*

**(2)**      Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)**      As soon as possible, give us a description of how, when and where the loss or damage occurred.

\*\*\*

Plaintiff did not give Westchester prompt notice of the supplemental claim and alleged damages to the property. On June 16, 2020, a letter of representation was provided to Westchester with a request to reopen the claim with no additional details as to any supplemental claimed damage.  On September 3, 2020, almost three years after the date of loss and almost three months after the request to reopen the claim, Plaintiff provided Westchester with a sworn proof of loss and estimates. Therefore, Plaintiff did not provide prompt notice of the loss or damage.

## THIRD AFFIRMATIVE DEFENSE

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY
COVERAGE FORM**

\*\*\*

**E.     Loss Conditions**

\*\*\*

**3.     Duties In The Event Of Loss Or Damage**

**a.**     You must see that the following are done in the event of loss or damage to Covered Property:

\*\*\*

**(5)**     At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)**     As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

\*\*\*

**(8)**     Cooperate with us in the investigation or settlement of the claim.

\*\*\*

Westchester requested additional information from Plaintiff on September 22, 2020, January 25, 2021, February 24, 2021, March 25, 2021, April 8, 2021, March 3, 2022, June 29, 2022, and August 12, 2022. Plaintiff failed to provide requested records related to construction of planned renovation projects prior to Hurricane Irma ("Renovation Project"), construction contracts pertaining to repairs related to Hurricane Irma damage, and failed to delineate which expenditures were made by the insured for

the Renovation Project, despite Westchester's repeated requests. Therefore, Plaintiff breached the policy terms by failing to comply with their duties in the event of a loss and prejudiced Westchester's investigation. Plaintiff's failure to comply with their duties in the event of a loss prevented Westchester from making a coverage determination at the time the above captioned action was filed despite its good faith attempt to obtain necessary information to do so.

## FOURTH AFFIRMATIVE DEFENSE

The relief sought by Plaintiff in this lawsuit and the underlying claim is barred under the following policy provision:

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

\*\*\*

**D.   LEGAL ACTION AGAINST US**
No one may bring a legal action against us under this Coverage Part unless:
1.  There has been full compliance with all of the terms of this Coverage Part; and

2.  The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

\*\*\*

As set forth in Westchester's Second and Third Affirmative Defense, Plaintiff failed to comply with the duties after a loss as required by the Subject Policy. Further, Plaintiff is barred from recovering in this action because Plaintiff failed to bring this action within two years after the date of loss.

## FIFTH AFFIRMATIVE DEFENSE

The Subject Policy is a "named perils" policy, providing coverage for the perils of

Windstorm and Hail. The Policy provides, in relevant part, as follows:

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

\*\*\*

**3. Covered Causes of Loss**

See applicable Causes of Loss form as shown in the Declarations

\*\*\*

## Commercial Property Declarations          C H U B B®

Company:  **Westchester Surplus Lines Insurance Company**
SYM:   **FS**        Policy ID: **D37431849 003**

| Location | | |
|---|---|---|
| [X] | Most recent schedule on file with Company totaling **$180,010,000.** | |
| [ ] | See attached Schedule CPs2 | |
| | Loc. No.    Bld. No.    Address | |

| Coverages and Limits Provided | Insurance At Described Location Applies Only For Coverages For Which A Limit Of Liability Is Shown | | | | |
|---|---|---|---|---|---|
| | Loc. No. | Bld. No | Coverage | Covered Causes of Loss Form | Co-Insurance % | Limit of Insurance $ |
| | All | All | Buildings, Personal Property and Business Income Including Extra Expense | Windstorm Or Hail | NIL | $10,000,000 Per Occurrence Primary (per schedule not blanket) |

\*\*\*

## CAUSES OF LOSS- WINDSTORM OR HAIL

**A.    Covered Causes of Loss**

When Windstorm or Hail is shown in the Declaration, Covered Causes of Loss means the following:

Windstorm or Hail, but not including:

a.  Frost or cold weather
b.  Ice (other than hail), snow or sleet, whether driven by wind or not; or
c.  Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain,

snow, sand or dust enters.

It is Plaintiff's burden to prove windstorm damage to covered property under the policy. Further, Plaintiff cannot recover for loss or damage to the interior of any building caused by rain until it first establishes that the building sustained wind damage to its roof or walls through which rain entered.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the following terms as set forth in the policy of insurance and stated here in pertinent part:

### Named Windstorm Percentage Deductible Endorsement

| Named Insured | | Endorsement Number |
|---|---|---|
| Setai Hotel Acquisition, LLC; Abbey Hotel Acquisition, LLC etal | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| FS | D37431849 003 | 02/27/2017 to 04/27/2018 | |
| Issued By (Name of Insurance Company) | | |
| Westchester Surplus Lines Insurance Company | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**Commercial Property Coverage Part**

| |
|---|
| Schedule:  Per Schedule on File with Company |
| Deductible Percentage: **5** % |
| Minimum Deductible **$100,000** Per Occurrence |
| Applicable to **Named Windstorm** and **Named Windstorm Flood**:        Yes |

The **Named Windstorm** deductible, shown above and otherwise set forth in the policy, applies to all covered loss or covered damage to Covered Property, occurring during the **Named Windstorm** deductible period and resulting from:
1.  wind and/or hail directly or indirectly from a **Named Windstorm;**
2.  rain damage to the interior of any building or structure, or the property inside the building or structure, whether the rain is driven by wind or not, provided the building or structure first sustains wind or hail damage to its roof or walls through which the rain enters.
3.  **Named Windstorm Flood** meaning Flood directly resulting from a **Named Windstorm**.

A **Named Windstorm** is a storm system that has been declared to be either a Tropical Depression or Tropical Storm, or a Hurricane, by the National Hurricane Center of the National Weather Service.

The **Named Windstorm** deductible period begins at the time a watch or warning is issued by the National Hurricane Center and ends 72 hours after the termination of the last watch or warning issued.

**Deductible:**
The percentage, shown in the schedule above, of the sum of all values listed in the most recent Schedule of Values on file with the Company for each separately identifiable building or structure that has sustained a loss or damage and for which a claim is being made under this policy; subject to the minimum deductible shown in the schedule.

**Calculation of the Deductible:**

A deductible is calculated separately for, and applies separately to:
1. The Total Insurable Values (TIV) per each separate building or structure.  The TIV per building  or structure shall be calculated as the sum of all values listed in the most recent Schedule of Values on file with the Company for Buildings, Personal Property, Business Income, and any other values for which coverage is provided under this policy related to each separately identifiable structure.
2. Personal property in the open.  The TIV for personal property in the open shall be the sum of all personal property in the open per location.

If a covered structure is not included on the Schedule of Values, the values at that structure at the time and place of loss will be used.

The Plaintiff's deductible as shown in the above Named Windstorm Percentage Deductible Endorsement is 5% of the total insurable values per each building. Any covered damage under the Subject Policy is therefore subject to this deductible. Per the Schedule of Values, there are three (3) buildings at the loss location 2001 Collins Avenue. As identified on the Schedule of Values, Location # 1, Building # 2 2001-2009 Collins Ave (Hotel), has a total insurable value of $76,500,000.00. Five-percent (5 %) of the Total Insurable Values (TIV) for the hotel building equates to a deductible of $3,825,000.00. As identified on the Schedule of Values Location #1, Building # 3 2001-2009 Collins Ave (Spa Fitness Center), has a total insurance value of $2,310,000.00. Five percent (5 %) of the TIV for the Spa Fitness Center equates to a deductible of $115,000.00. As identified on the Schedule of Values Location #1, Building # 4 2001-2009 Collins Ave (Restaurant/Bar), has a total insurable value of $2,000,000.00. Five percent (5%) of the TIV for the Restaurant/Bar equates to a deductible of $100,000.00.

Defendant's post-loss investigation revealed the repairs to the property are below the applicable deductibles.

To the extent that it is determined that some or all of Plaintiff's alleged loss or damage is covered under the Subject Policy, the applicable deductibles must be accounted for.

## SEVENTH AFFIRMATIVE DEFENSE

The Subject Policy provides, in relevant part, as follows:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\* \* \*

**G.      Option Coverages**

\* \* \*

**3.      Replacement Cost**

\* \* \*

**d.**      We will not pay on a replacement cost basis for any loss or damage:

**(1)**      Until the lost or damaged property is actually repaired or replaced; and

**(2)**      Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

\* \* \*

**e.**      We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2), (3), subject to f. below:

**(1)**      The Limit of the Insurance applicable to the lost or damaged; property;

**(2)**      The cost to replace the lost or damaged property with other property:
**(a)** Of comparable material or quality; and
**(b)** Used for the same purpose; or

**(3)**      The amount actually spent that is necessary to repair or replace the lost or damaged property.

Westchester is not required to pay on a replacement cost basis for any purported loss or damage that was not actually repaired or replaced, and/or for repairs or replacements that were not made as soon as reasonably possible after the purposed loss or damage. To the extent that Plaintiff made repairs or replacements to damaged property prior to filing suit, these repairs did not exceed the applicable deductible amounts under

the Subject Policy. Any payment on a replacement cost basis under the Policy is limited as set forth above.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the following terms as set forth in the policy of insurance and stated here in pertinent part:

**ORDINANCE OR LAW COVERAGE ENDORSEMENT (ACE 0774)**

**D. Coverage**

\*\*\*

**3. Coverage C – Increased Cost of Construction Coverage**

**a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
(1) Repair or reconstruct damaged portions of that building; and/or
(2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;
When the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

\*\*\*

**E. Loss Payment**

\*\*\*

**4.** Unless paragraph **E.5.** applies, loss payment under Coverage C- Increased Cost of Construction Coverage will be determined as follows:

**a.** We will not pay under Coverage C:

**i.** Until the property is actually repaired or replaced at the same or another premises; and
**ii.** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

Pursuant to the foregoing provisions, Plaintiff is not entitled to costs to conform to any law or ordinance, unless and until the property is actually repaired or replaced, and it is done so within two years of the date of loss.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the

following terms as set forth in the policy of insurance and stated here in pertinent part:

**FLOOD COVERAGE ENDORSEMENT**
**CP 10 65 06 07**

**C.    Additional Covered Cause of Loss**

The following is added to the Covered Causes of Loss:

Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:

1.  The overflow of inland or tidal waters;
2.  The unusual or rapid accumulation or runoff of surface waters from any source; or

**\*\*\***

**PROVISIONS FOR MAINTENANCE OF FEDERAL FLOOD INSURANCE**
**ENDORSEMENT**
**ACE0376 (06/08)**

For commercial property risks, or those habitational risks not eligible for excess Flood insurance over the basic coverage provided by the National Flood Insurance Program, this insurance shall be excess of the maximum limit available, whether purchased or not. This limitation includes the deduction shown in the Flood Endorsement.

Flood coverage provided by the Flood Coverage Endorsement is in excess of $500,000.00; the maximum coverage limit available for commercial properties through the National Flood Insurance Program. To the extent that Plaintiff can establish that the alleged loss or damage was caused by Flood, coverage is afforded under the Subject Policy for only that portion of damages which exceeds $500,000.00 and the applicable deductible.

## TENTH AFFIRMATIVE DEFENSE

Westchester is a surplus lines insurance carrier and therefore, is not subject to the Chapter 627, Florida Statutes, including Fla. Sta. §627.428. To the extent that some other state's law applies, Chapter 627 would not be applicable.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's right of recovery under the Subject Policy is governed and limited by the following terms as set forth in the policy of insurance and stated here in pertinent part:

**PRE-EXISTING PROPERTY DAMAGE EXCLUSION**

This policy excludes any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing property damage at the time of loss.

To the extent that Plaintiff proves the property sustained damage by a cover peril, Plaintiff cannot recover for loss or damage that was directly or indirectly caused by, resulting from, or contributed by any pre-existing property damage at the time of the loss.

## STATEMENT

Westchester hereby reserves the right to amend, modify, or supplement its Affirmative Defenses as further facts become known to it during the pendency of this litigation.

WHEREFORE, the Defendant, Westchester Surplus Insurance Company, respectfully requests judgment in its favor, costs of this action and such other relief as this Court deems appropriate under the circumstances.

BUTLER WEIHMULLER KATZ CRAIG LLP

*Katelyn Lokuta*

WILLIAM R. LEWIS, ESQ.
Florida Bar No.:  0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No: 106198
klokuta@butler.legal
Secondary:   jdearborn@butler.legal
                        tgarcia@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602

Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Defendant, Westchester Surplus Lines Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing instrument was filed via the Court's e-filing portal on

December 6, 2022 to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL 33133
*Counsel for Plaintiff, Setai Hotel Acquisition, LLC*

Jason M. Chodos, Esq.
Hayley H. Ryan, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, United National Insurance Company*

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle LLP, SunTrust
International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, Liberty Surplus Lines Insurance Company*

Elizabeth D. Salinas, Esq.
Mozley, Finlayson & Logins LLP
4767 New Broad Street
Orlando, FL 32814
*Counsel for Defendant, Landmark American Insurance Company*

Grady "Bo" Williams IV, Esq.
Rhett Conlon Parker, Esq.
Phelps Dunbar LLP
101 Dauphin Street, Suite 1000
Mobile, AL 36602
*Counsel for Defendants, Scottsdale Insurance Company and Axis Surplus Insurance Company*

_____
KATELYN N. LOKUTA, ESQ.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

      Plaintiff,

vs.                              Case No. 2022-CA-014511

WESTCHESTER SURPLUS LINES INSURANCE
COMPANY; LANDMARK AMERICAN
INSURANCE COMPANY; LIBERTY SURPLUS
LINES INSURANCE COMPANY; AXIS SURPLUS
INSURANCE COMPANY; EVEREST INDEMNITY
INSURANCE COMPANY; SCOTTSDALE
INSURANCE COMPANY AND UNITED
NATIONAL INSURANCE COMPANY,

      Defendants.

_____

## <u>DEFENDANT LANDMARK AMERICAN INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES</u>

Defendant Landmark American Insurance Company ("Landmark"), by and through the undersigned counsel, files its Answer and Affirmative Defenses to plaintiff Setai Hotel Acquisition, LLC's complaint, respectfully showing the Court as follows:

1.

Landmark admits paragraph number 1 of plaintiff's complaint for jurisdictional purposes only. To the extent paragraph number 1 of plaintiff's complaint makes any further allegations, they are denied.

2.

Landmark is without sufficient knowledge or information to admit or deny the

allegations contained in paragraph number 2 of plaintiff's complaint, and therefore, the allegations are denied.

<div align="center">3.</div>

Landmark admits that it is an out-of-state insurance company that is authorized to conduct business in Miami-Dade County through a licensed surplus lines broker. To the extent paragraph number 3 of plaintiff's complaint makes any further allegations, they are denied.

<div align="center">4.</div>

Landmark admits that it issued an insurance policy to plaintiff, number LHD900392, with effective dates of April 27, 2017 to April 27, 2018, subject to the policy's terms, conditions, limitations and exclusions. Landmark also admits that plaintiff attached to the complaint as Exhibit "B" what purports to be a redacted copy of the Landmark policy. To the extent paragraph number 4 of plaintiff's complaint makes any further allegations, they are denied.

<div align="center">5.</div>

Landmark admits paragraph number 5 of plaintiff's complaint for jurisdictional purposes only. To the extent paragraph number 5 of plaintiff's complaint makes any further allegations, they are denied.

<div align="center">6.</div>

Landmark admits that the coverage structure is laid out pursuant to the policy's plain language and subject to the Landmark policy's terms, conditions, limitations and exclusions. To the extent paragraph number 6 of plaintiff's complaint makes any further

<div align="center">2</div>

allegations, they are denied.

7.

Landmark denies each allegation contained in paragraph number 7 of plaintiff's complaint.

8.

Landmark admits that plaintiff reported a loss to Westchester Surplus Lines Insurance Company for damages allegedly caused by Hurricane Irma or on or about September 10, 2017. Landmark denies each remaining allegation contained in paragraph number 8 of plaintiff's complaint.

9.

Landmark denies each allegation contained in paragraph number 9 of plaintiff's complaint.

10.

Landmark is without sufficient knowledge or information to admit or deny the allegations contained in paragraph number 10 of plaintiff's complaint, and therefore, the allegations are denied.

11.

Landmark denies each allegation contained in paragraph number 11 of plaintiff's complaint.

12.

Landmark denies each allegation contained in paragraph number 12 of plaintiff's complaint.

13.

Landmark denies each allegation contained in paragraph number 13 of plaintiff's complaint.

14.

Landmark denies each allegation contained in paragraph number 14 of plaintiff's complaint.

15.

Landmark is without sufficient knowledge or information to admit or deny the allegations contained in paragraph number 15 of plaintiff's complaint, and therefore, the allegations are denied.

16.

Landmark denies each allegation contained in paragraph number 16 of plaintiff's complaint.

## COUNT I- BREACH OF CONTRACT- WESTCHESTER SURPLUS LINES INSURANCE COMPANY

17-20.

Paragraph numbers 11 through 20 of plaintiff's complaint, including the *ad damnum* clause, are not directed at Landmark, and therefore, a response is not required. To the extent any allegations in paragraph numbers 18 through 20, including the *ad damnum* clause, are deemed attributable to Landmark, they are denied.

## COUNT II- BREACH OF CONTRACT- LANDMARK AMERICAN INSURANCE COMPANY

21.

Defendant adopts and realleges its responses to paragraph numbers 1 through 16 of plaintiff's complaint above as if set forth fully herein.

22.

Landmark denies each allegation contained in paragraph number 22 of plaintiff's complaint.

23.

Landmark denies each allegation contained in paragraph number 23 of plaintiff's complaint.

24.

Landmark denies each allegation contained in paragraph number 24 of plaintiff's complaint, including the *ad damnum* clause.

## COUNT III- BREACH OF CONTRACT- LIBERTY SURPLUS LINES INSURANCE COMPANY

25-28.

Paragraph numbers 25 through 28 of plaintiff's complaint, including the *ad damnum* clause, are not directed at Landmark, and therefore, a response is not required. To the extent any allegation in paragraph numbers 25 through 28, including the *ad damnum* clause, are deemed attributable to Landmark, they are denied.

## COUNT IV- BREACH OF CONTRACT- AXIS SURPLUS INSURANCE COMPANY

### 29-32.

Paragraph numbers 29 through 32 of plaintiff's complaint, including the *ad damnum* clause, are not directed at Landmark, and therefore, a response is not required. To the extent any allegation in paragraph numbers 29 through 32, including the *ad damnum* clause, are deemed attributable to Landmark, they are denied.

## COUNT V- BREACH OF CONTRACT- EVERSEST INDEMNITY INSURANCE COMPANY

### 33-36.

Paragraph numbers 33 through 36 of plaintiff's complaint, including the *ad damnum* clause, are not directed at Landmark, and therefore, a response is not required. To the extent any allegation in paragraph numbers 33 through 36, including the *ad damnum* clause, are deemed attributable to Landmark, they are denied.

## COUNT VI- BREACH OF CONTRACT- SCOTTSDALE INSURANCE COMPANY

### 37-40.

Paragraph numbers 37 through 40 of plaintiff's complaint, including the *ad damnum* clause, are not directed at Landmark, and therefore, a response is not required. To the extent any allegation in paragraph numbers 37 through 40, including the *ad damnum* clause, are deemed attributable to Landmark, they are denied.

## COUNT VII- BREACH OF CONTRACT- UNITED NATIONAL INSURANCE COMPANY

### 41-44.

Paragraph numbers 41 through 44 of plaintiff's complaint, including the *ad damnum* clause, are not directed at Landmark, and therefore, a response is not required. To the extent any allegation in paragraph numbers 41 through 44, including the *ad damnum* clause, are deemed attributable to Landmark, they are denied.

WHEREFORE defendant Landmark American Insurance Company denies that plaintiff is entitled to any relief whatsoever from Landmark and demands a trial by jury.

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's complaint fails to state a claim against Landmark upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's complaint alleges a cause of action for an insurance claim under a commercial insurance policy sent to Setai Hotel Acquisition, LLC, at 1400 Broadway New York, NY, 10018. Under Florida's choice-of-law rules, *lex loci contractus* applies in contract disputes. Under this rule, the law of the jurisdiction where the surplus lines insurance contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. This Court must apply the law of the state where the surplus lines insurance policy was bound, which is Georgia.

7

### THIRD DEFENSE

Plaintiff's complaint is barred because plaintiff filed this lawsuit outside the time permitted by the applicable statute of limitations.

### FOURTH DEFENSE

Plaintiff's complaint is barred by the terms, conditions, limitations and exclusions contained in the primary Westchester Surplus Lines Insurance Company policy, to which Landmark policy follows form except where different. This includes, but is not limited to the following:

### PRE-EXISTING PROPERTY DAMAGE EXCLUSION

**This Policy excludes any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing property damage at the time of loss.**

### FIFTH DEFENSE

Plaintiff's complaint is barred due to plaintiff's failure to comply with the terms and conditions contained in the primary Westchester Surplus Lines Insurance Company policy, to which Landmark policy follows form except where different. Landmark was prejudiced by plaintiff's failure to comply with these terms and conditions including, but not limited to the following:

### COMMON PROPERTY CONDITIONS

**This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.**

**\*\*\***

**D. LEGAL ACTION AGAINST US**
**No one may bring a legal action against us under this Coverage Part unless:**

1. **There has been full compliance with all of the terms of this Coverage Part; and**
2. **This action is brought within 2 years after the date on which the direct physical loss or damage occurred.**

## SIXTH DEFENSE

Plaintiff's complaint is barred due to plaintiff's failure to comply with the terms and conditions contained in the primary Westchester Surplus Lines Insurance Company policy, to which the Landmark policy follows form except where different. This includes, but is not limited to the following:

**ORDINANCE OR LAW COVERAGE ENDORSEMENT (ACE 0744)**

**D. Coverage**

**3. Coverage C – Increased Cost of Construction Coverage**

**a. With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:**

**(1) Repair or reconstruct damaged portions of that building; and/or**
**(2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;**

**When the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.**

## SEVENTH DEFENSE

Recovery for any covered damages caused by or resulting from Hurricane Irma and claimed by plaintiff under the policy is limited by the Westchester Surplus Lines Insurance Company primary policy, to which the Landmark policy follows form except where different, under the flowing provision:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\* \* \*

G.    **Optional Coverages**

\* \* \*

3.    **Replacement Cost**

\* \* \*

d.    **We will not pay on a replacement cost basis for any loss or damage:**

(1)    **Until the lost or damaged property is actually repaired or replaced; and**

(2)    **Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.**

\* \* \*

e.    **We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2), (3), subject to f. below:**

(1)    **The Limit of the Insurance applicable to the lost or damaged; property;**

(2)    **The cost to replace the lost or damaged property with other property;**
    (a)  **Of comparable material or quality; and**
    (b)  **Used for the same purpose; or**

(3)    **The amount actually spent that is necessary to repair or replace the lost or damaged property.**

Landmark is not required to make any payment on a replacement cost basis for any purported Hurricane Irma related damages that were not actually repaired or replaced, and/or for repairs or replacements that were not made as soon as reasonably possible after the purported loss or damage. To the extent that plaintiff made repairs or replacements to damaged property before filing suit, the cost of the repairs did not exceed the named windstorm percentage deductible in the Westchester Surplus Lines Insurance Company primary policy. Any payment on a replacement cost basis under the Landmark policy is limited as set forth above.

**EIGHTH DEFENSE**

Plaintiff's complaint is barred due to plaintiff's failure to comply with the terms and conditions contained in the primary Westchester Surplus Lines Insurance Company policy, to which the Landmark policy follows form except where different. This includes, but is not limited to the following:

**ORDINANCE OR LAW COVERAGE ENDORSEMENT (ACE 0744)**

**E. Loss Payment**

&#42;&#42;&#42;

**4. Unless paragraph E.5. applies, loss payment under Coverage C— Increased Cost of Construction Coverage will be determined as follows:**

**a. We will not pay under Coverage C:**

**i. Until the property is actually repaired or replaced at the same or another premise; and**

**ii. Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.**

**NINTH DEFENSE**

Plaintiff's complaint is barred due to plaintiff's failure to comply with the terms and conditions contained in the primary Westchester Surplus Lines Insurance Company policy, to which the Landmark policy follows form except where different. This includes, but is not limited to the following:

**Building and Personal Property Coverage Form**

&#42;&#42;&#42;

**E. Loss Conditions**

&#42;&#42;&#42;

**3. Duties In The Event Of Loss Or Damage**

**a. You must see that the following are done in the event of loss or damage to Covered Property:**

11

    **(2) Give us prompt notice of the loss or damage. Include a description of the property involved.**

    **(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.**

## <u>TENTH DEFENSE</u>

Plaintiff's complaint is barred due to plaintiff's failure to comply with the terms and conditions contained in the primary Westchester Surplus Lines Insurance Company policy, to which the Landmark policy follows form except where different. This includes, but is not limited to the following:

**Building and Personal Property Coverage Form**

\*\*\*

**E. Loss Conditions**

\*\*\*

**3. Duties In The Event Of Loss Or Damage**

    **a. You must see that the following are done in the event of loss or damage to Covered Property:**

\*\*\*

    **(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.**

    **(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.**
    **Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.**

\*\*\*

    **(8) Cooperate with us in the investigation or settlement of the claim.**

12

## **ELEVENTH DEFENSE**

Plaintiff's complaint is barred by the terms, conditions, limitations and exclusions

contained in the Landmark policy. This includes, but is not limited to the following:

### **EXCESS PHYSICAL DAMAGE COVERAGE FORM**

**2. Limit**
**Provided always that liability attached to the Company only after any self-insured retention, any primary and underlying deductibles have been applied, and the primary and underlying excess insurer(s) have paid or admitted liability for the full amount of their respective ultimate net loss liability as set forth in Item 6 of the Schedule and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Company's liability shall be those set forth in Item 7 of the Schedule under the designation "Limit Insured" and the Company shall be liable to pay the ultimate net loss up to the full amount of such "Limit Insured."**

## **TWELFTH DEFENSE**

Plaintiff's complaint is barred by the terms, conditions, limitations and exclusions

contained in the Landmark policy. This includes, but is not limited to the following:

### **EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS**
***
**A. The following Exclusion is added:**

**EXCLUSION— "Fungus", Wet Rot, Dry Rot and Bacteria**
**We will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacterial. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.**

## **THIRTEENTH DEFENSE**

Plaintiff's complaint is barred due to plaintiff's failure to comply with the terms and

conditions contained in the Landmark policy. Landmark was prejudiced by plaintiff's

failure to comply with these terms including, but not limited to the following:

13

### EXCESS PHYSICAL DAMAGE COVERAGE FORM

**8. Notification of Claims:**
**The Insured, upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give immediate written notice thereof to the person(s) or firm named for the purpose in the schedule.**

### <u>FOURTEENTH DEFENSE</u>

Plaintiff's complaint is barred due to plaintiff's failure to comply with the terms and conditions contained in the Landmark policy. This includes, but is not limited to the following:

### COMMON POLICY CONDITIONS

**C. Examination Of Your Books and Records**
**We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterwards.**
**D. Inspections And Surveys**
**1. We have the right to:**
**a. Make inspections and surveys at any time.**

### <u>FIFTEENTH DEFENSE</u>

Any covered damages caused by or resulting from Hurricane Irma and claimed by plaintiff under the policy are less than the amount of the named windstorm percentage deductible contained in the primary Westchester Surplus Lines Insurance Company policy, to which the Landmark policy follows form except where different, and the Landmark policy's coverage attachment point of $10 million. The applicable deductible is 5% of the total insurable value for each building. Any covered damage  is subject to this deductible. Based on the schedule of values, there are three buildings with applicable deductibles: the building located at 2001-2009 Collins Avenue (Hotel) has a deductible of $3,825,000.00; the building located at 2001-2009 Collins Avenue (Spa Fitness Center) has a deductible of

14

$115,000.00; the building located at 2001-2009 Collins Avenue (Restaurant/Bar) has a deductible of $100,000.00.

<u>**SIXTEENTH DEFENSE**</u>

Any interior rain damage caused by or resulting from Hurricane Irma and claimed by plaintiff are limited by plaintiff's ability to establish that the building sustained wind damage to its roof or walls through which rain entered, pursuant to the following language in the Westchester Surplus Lines Insurance Company primary policy, to which the Landmark policy follows form except where different:

**CAUSES OF LOSS- WINDSTORM OR HAIL**

**A. Covered Causes of Loss**

**When Windstorm or Hail is shown in the Declaration, Covered Causes of Loss means the following:**

**Windstorm or Hail, but not including:**

**a. Frost or cold weather**

**b. Ice (other than hail), snow or sleet, whether driven by wind or not; or**

**c. Loss or damage to the interior of any building or structure, to the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow or dust enters.**

## SEVENTEENTH DEFENSE

Plaintiff's complaint is barred by the terms, conditions, limitations and exclusions contained in the primary Westchester policy. This includes, but is not limited to the following:

**FLOOD COVERAGE ENDORSEMENT**
**CP 10 65 06 07**
**C. Additional Coverage Cause of Loss**
**The following is added to the Covered Causes of Loss:**
**Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:**
**1. The overflow of inland or tidal waters;**
**2. The unusual or rapid accumulation or runoff of surface waters from any source; or**
**\*\*\***

**PROVISIONS FOR THE MAINTNENACE OF FEDERAL FLOOD INSURANCE ENDORSEMENT**
**ACE 0376(06/08)**

**For commercial property risks, or those habitational risks not eligible for excess Flood insurance over the basic coverage provided by the National Flood Insurance Program, this insurance shall be excess of the maximum limit available, whether purchased or not. This limitation includes the deduction shown in the Flood Endorsement.**

## EIGHTEENTH DEFENSE

To the extent any damages claimed by plaintiff occurred outside of the effective dates of the Landmark policy, there is no coverage under the Landmark policy for those damages.

## NINETEENTH DEFENSE

Landmark is a surplus lines insurance carrier, and therefore, it is not subject to Chapter 627, Florida Statutes, including Fla. Stat §627.428. To the extent that some other

16

states law applies, Chapter 627 is not applicable.

## TWENTIETH DEFENSE

Any recovery by plaintiff from another insurance provider should be off-set as applicable.

## TWENTY-FIRST DEFENSE

Any recovery by plaintiff must be reduced to the extent plaintiff failed to mitigate, minimize or avoid its damages.

## DEMAND FOR A JURY TRIAL

Defendant Landmark American Insurance Company hereby demands a jury trial on all triable issues.

WHEREFORE, having answered the complaint of plaintiff Setai Hotel Acquisition, LLC exhibited against it and having set forth its defenses, defendant Landmark American Insurance Company respectfully requests that plaintiff's complaint be dismissed, that plaintiff have and recover no relief or damages from Landmark, that all costs of this action be taxed against plaintiff, and that Landmark be awarded such other and further relief as this Court deems just and appropriate.

Respectfully submitted this 9th day of December, 2022.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this document has been served on the 9th day of December, 2022, to the parties identified below (i) through the Florida Courts E-Filing Portal and/or by e-mail pursuant to Fla. R. Jud. Admin. 2.516(b)1, or (ii) by the alternative method specified above the party's name.

Allan S. Reiss, Esq.                    William R. Lewis, Esq.
Levine & Partners, P.A.                 Katelyn N. Lokuta, Esq.

asr@levinelawfirm.com

*Counsel for Plaintiff*

Butler Weihmuller Katz Craig LLP
wlewis@butler.legal
klokuta@butler.legal
jdearborn@butler.legal
tgarcia@butler.legal

*Counsel for Westchester Surplus Lines Insurance Company*

Christine M. Renella
Jacarri Walker
Zelle, LLP
crenella@zellelaw.com
jwalker@zellelaw.com

*Counsel for Liberty Surplus Lines Insurance Company*

Robert Steven Horwitz, Esq.
Alexis D. Lezama, Esq.
Conroy Simberg
alezama@conroysimberg.com
rhorwitz@conroysimberg.com

*Counsel for Everest Indemnity Insurance Company*

Alexis D. Lezama, Esq.
Robert Steven Horwitz, Esq.
Conroy Simberg
alezama@conroysimberg.com
rhorwitz@conroysimberg.com

*Counsel for Everest Indemnity Insurance Company*
Bo Williams IV, Esq.
Phelps Dunbar, LLP
Bo.williams@phelps.com

*Counsel for AXIS Surplus Insurance Company and Scottsdale Insurance Company*

Jason M. Chodos, Esq.
Hayley H. Ryan, Esq.
Zelle, LLP
jchodos@zellelaw.com
hryan@zellelaw.com
jruiz@zellelaw.com

*Counsel for United National Insurance*

*/s/ Elizabeth D. Salinas*
Elizabeth D. Salinas, Esq.
Mozley, Finlayson & Loggins LLP
FL Bar: 113394
4767 New Broad Street
Orlando, FL 32814
407.514.2765
ESalinas@MFLLaw.com

18

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 508 of 600

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-014511-CA-01

SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation,

        Plaintiff,

v.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, LIBERTY SURPLUS LINES INSURANCE COMPANY, AXIS SURPLUS INSURANCE COMPANY, EVEREST INDEMNITY INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, and UNITED NATIONAL INSURANCE COMPANY,

        Defendants.

_____/

## DEEFENDANTS' JOINT MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT

Defendants, Liberty Surplus Lines Insurance Corporation ("Liberty"), Axis Surplus Lines Insurance Company ("Axis"), Scottsdale Insurance Company ("Scottsdale"), and United National Insurance Company ("United National") (collectively, "Defendants"), through their respective undersigned counsel, respectfully submit this Joint Motion for Extension of Time to Respond to Complaint, and in support thereof states as follows:

## PROCEDURAL POSTURE

1.    Plaintiff, Setai Hotel Acquisition, LLC ("Setai"), commenced this action by filing its Complaint for Damages (the "Complaint") in this Court on August 3, 2022.

2.      Defendants were each served with a summons and a copy of the Complaint on September 21, 2022, via electronic delivery, by the Chief Financial Officer of the State of Florida.

3.      Pursuant to Fla. R. Civ. P. 1.140(a), Defendants' deadline to respond to the Complaint was October 11, 2022. However, prior to the October 11, 2022 deadline, the parties stipulated to an extension of time, up to and including November 11, 2022, for Defendants to file their respective responses to the Complaint.  The Court entered various Agreed Orders on October 9, 10, and 11, 2022 extending Defendants' deadlines, up to and including November 11, 2022, to file their respective responses to the Complaint.

4.      Prior to the November 11, 2022 deadline, the parties stipulated to a further extension of time for Defendants to file their responses to the Complaint.  On November 10, 2022, the Court entered an Agreed Order extending Defendants' deadline, up to and including December 12, 2022, to file their respective responses to the Complaint.

5.      Rule 1.090(b)(1) of the Florida Rules of Civil Procedure states that "[w]hen an act is required or allowed to be done at or within a specified time by order of court, by these rules, or by notice given thereunder, for cause shown the court at any time in its discretion (A) with or without notice, may order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ." *See generally Koppel v. Ochoa*, 243 So. 3d. 886, 892 (Fla. 2018) (discussing Rule 1.090 and a preference for enlargement before expiration of required time period when cause has been shown); *Khambaty v. Lepine*, 734 So. 2d 1183, 1184 (Fla. 2d DCA 1999) (extensions of time are appropriate upon cause shown).

## **ARGUMENT**

6.      Defendants intend to remove this action to federal court.  Notably, on October 20, 2022, defendant, Westchester Surplus Lines Insurance Company, served Setai with jurisdictional

discovery, i.e., a total of eight interrogatories and two requests for admission.  The discovery is narrowly-tailored for the limited purpose of determining the identity of all of Setai's members and their respective places of domicile to confirm whether complete diversity of citizenship exists between the parties, thus allowing the Defendants to remove this action to federal court.  Setai's deadline to respond to the jurisdictional discovery was November 21, 2022.  On November 11, 2022, Setai filed a motion for a 30-day extension of time to respond to the jurisdictional discovery. On November 28, 2022, the Court entered an Agreed Order extending Setai's deadline, up to and including December 28, 2022, to respond to the jurisdictional discovery.

7.      In light of the above, and for purposes of conserving limited judicial and party resources, Defendants believe that it would be most economical to refrain from responding to the Complaint until it is determined whether this action may be removed.  Notably, if this action is removable to federal court, it substantively alters the scope and direction that Defendants will take in responding to the Complaint as compared to how Defendants will proceed if this action remains in state court.  Therefore, the cause requirement under Rule 1.090(b) has been met.

8.      In order to allow sufficient time for Defendants receive Setai's responses to the jurisdictional discovery and assess whether this action may be removed to federal court, Defendants respectfully request an extension of time, up to and including January 11, 2023, to file their respective responses to the Complaint.

9.      No party will be prejudiced by granting this extension of time.

10.     This motion is not being made in bad faith or for any undue purpose of delay.

**WHEREFORE**, defendants, Liberty Surplus Lines Insurance Corporation, Axis Surplus Lines Insurance Company, Scottsdale Insurance Company, and United National Insurance Company respectfully request that the Court grant this Joint Motion for Extension of Time to

3

CASE NO.:  2022-014511-CA-01

Respond to Complaint and enter an order allowing Defendants an extension of time, up to and including January 11, 2023, by when to file their responses to the Complaint.

Dated: December 12, 2022

Dated: December 12, 2022

s/ *Christine M. Renella*

Christine M. Renella, Esq. (FL Bar No. 65485)
crenella@zellelaw.com
Jacarri Walker, Esq. (FL Bar No. 1010474)
jwalker@zellelaw.com
ZELLE LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
Tel.: (786) 693-2350
Fax: (612) 336-9100
*Attorneys for Defendant,*
*Liberty Surplus Lines Insurance Company*

s/ *Jason M. Chodos*

Jason M. Chodos, Esq. (FL Bar No. 025823)
jchodos@zellelaw.com
Hayley H. Ryan, Esq. (FL Bar No. 1032623)
hryan@zellelaw.com
ZELLE LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
Tel.: (786) 693-2351
Fax: (612) 336-9100
*Attorneys for Defendant,*
*United National Insurance Company*

Dated: December 12, 2022

s/ *A. Grady Williams*

A. Grady Williams IV (FL Bar No. 65563)
Bo.williams@phelps.com
Rhett Conlon Parker (FL Bar No. 92505)
Rhett.parker@phelps.com
PHELPS DUNBAR LLP
101 Dauphin Street, Suite 1000
P.O. Box 2727
Mobile, AL 36652-2727
Tel: (251) 432-4481
Fax: (251) 433-1820
*Attorneys for Defendants, Axis Surplus Insurance*
*Company and Scottsdale Insurance Company*

CASE NO.:  2022-014511-CA-01

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 12, 2022, I served the foregoing Joint Motion for Extension of Time to Respond to Complaint upon all counsel of record listed on the attached service list by e-mail via the Florida ePortal system.


By: s/ *Christine M. Renella*
      Christine M. Renella, Esq. (FL Bar No. 65485)
      crenella@zellelaw.com

CASE NO.:  2022-014511-CA-01

**<u>SERVICE LIST</u>**

Allan S. Reiss, Esq. (FL Bar No. 858500)
asr@levinelawfirm.com
LEVINE & PARTNERS, P.A.
3350 Mary Street
Miami, FL 33133
Tel: (305) 372-1350
Fax: (305) 423-3203
*Attorneys for Plaintiff,*
*Setai Hotel Acquisition, LLC*

Jason M. Chodos, Esq. (FL Bar No. 025823)
jchodos@zellelaw.com
Hayley H. Ryan, Esq. (FL Bar No. 1032623)
hryan@zellelaw.com
ZELLE LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
Tel.: (786) 693-2351
Fax: (612) 336-9100
*Attorneys for Defendant,*
*United National Insurance Company*

A. Grady Williams IV (FL Bar No. 65563)
Bo.williams@phelps.com
Rhett Conlon Parker (FL Bar No. 92505)
Rhett.parker@phelps.com
PHELPS DUNBAR LLP
101 Dauphin Street, Suite 1000
P.O. Box 2727
Mobile, AL 36652-2727
Tel: (251) 432-4481
Fax: (251) 433-1820
*Attorneys for Defendants, Axis Surplus Insurance*
*Company and Scottsdale Insurance Company*

William R. Lewis, Esq. (FL Bar No. 0879827)
wlewis@butler.legal
Katelyn N. Lokuta, Esq. (FL Bar No. 106198)
klokuta@butler.legal
jdearborn@butler.legal
tgarcia@butler.legal
BUTLER  WEIHMULLER  KATZ  GRAIG
LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602
Tel: (813) 281-1900
Fax: (813) 281-0900
*Attorneys for Defendant, Westchester Surplus*
*Lines Insurance Company*

Elizabeth D. Salinas, Esq. (FL Bar No. 113394)
esalinas@MFLLaw.com
Mozley, Finlayson & Loggins LLP
4767 New Broad Street
Orlando, FL 32814
Tel: (407) 514-2765
*Attorneys for Defendant, Landmark American*
*Insurance Company*

Alexis D. Lezama, Esq. (FL Bar. No. 121516)
eservicewpb@conroysimberg.com
alezama@conroysimberg.com
CONROY SIMBERG
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
Tel: (561) 697-8088
Fax: (561) 697-8664
*Attorneys for Defendant, Everest Indemnity*
*Insurance Company*

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                Case No.: 2022-014511 CA 01

    Plaintiff,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

    Defendants.

_____/

## DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S PRIVILEGE LOG IN RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION

COME NOW the Defendant, Westchester Surplus Lines Insurance Company ("Westchester"), by and through their undersigned counsel, and serve its Privilege Log in support of Westchester's Responses to Plaintiff's Request for Production.

| Doc ID | Recipient | Author | Date | Summary | Privilege |
|---|---|---|---|---|---|
| C2.PF.00000262 | | | Multiple Dates | Claim Diary | Claim File[1]; Work Product[2]; Proprietary |
| C2.PF.00000263 | Westchester | Chubb | 9/19/17 | Email re statement of values and new claim | Claim File; Work Product |
| C2.PF | Counsel for | | 9/4/20 | Email regarding | Claim File; |

[1] As used herein, the phrase "Claim File" refers to the protection established by, but not necessarily limited to, *Nationwide Ins. Co. of Florida v. Demmo,* 57 S. 3d 982 (Fla. 2d DCA 2011).
[2] As used herein, the phrase "Work Product Doctrine" refers to the protection established by, but not necessarily limited to, *State Farm Florida Ins. Co. v. Gallmon*, 835 So. 2d 389 (Fla. 2d DCA 2003); *State Farm Fire & Casualty Co. v. Valido* 662 So. 2d 1012 (Fla. 3d DCA 1995); *U.S. Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So. 2d 783 (Fla. 2d DCA 1982); *Federated Mutual Insurance Company,* 2011 WL 5104476 (M.D. Fla. 2011).

| | | | | | |
|---|---|---|---|---|---|
| .0000 0264 | Westchester | | | obtaining legal opinion on matter | Work Product; Attorney-Client |
| C2.PF .0000 0266 | Chubb | Underwriter for Westchester | 9/20/17 | Email regarding underwriting valuation | Underwriting File |
| C2.PF .0000 0266. 0 | | | Undated | Underwriting valuation | Underwriting File |
| C2.PF .0000 0269 | Chubb | McLarens | 6/22/18 | Email regarding draft correspondence to insured | Claim File |
| C2.PF .0000 0270 | McLarens | Chubb | 5/22/18 | Email re McLarens report | Claim File |
| C2.PF .0000 0271 | McLarens | Chubb | 6/22/28 | Email regarding draft correspondence to insured | Claim File |
| C2.PF .0000 0272 | Chubb | Chubb | 7/28/20 | Email re supplemental claim status | Claim File; Work Product |
| C2.PF .0000 0273 | Chubb | Chubb | 10/9/17 | Email re McLarens report | Claim File |
| C2.PF .0000 0274 | Chubb | McLarens | 9/20/17 | Email re assignment of claim | Claim File |
| C2.PF .0000 0274. 0 | Chubb | McLarens | 9/19/17 | McLarens assignment of claim | Claim File |
| C2.PF .0000 0276 | Westchester | Chubb | 10/10/20 | Email re supplemental claim status | Claim File |
| C2.PF .0000 0277 | ACE Group | Chubb | 10/10/17 | Email re McLarens Report 1 | Claim File |
| C2.PF .0000 0277. 0 | | | 10/10/17 | McLarens Report 1 | Claim File |
| C2.PF .0000 | | | 10/10/17 | Un-redacted McLarens Report | Claim File |

| | | | | | |
|---|---|---|---|---|---|
| 0277.1 | | | | enclosures | |
| C2.PF.00000278 | Chubb | Chubb | 10/9/17 | Email re claim update | Claim File |
| C2.PF.00000279 | Chubb | Chubb | 10/9/17 | Email re claim update | Claim File |
| C2.PF.00000284 | Chubb | McLarens | 10/9/17 | Email re claim update | Claim File |
| C2.PF.00000286 | Chubb | McLarens | 9/21/17 | Email re claim update and inspection | Claim File |
| C2.PF.00000288 | Chubb | McLarens | 10/10/17 | Email re McLarens Report | Claim File |
| C2.PF.00000288.0 | | | 10/10/17 | McLarens Preliminary Report 1 | Claim File |
| C2.PF.00000289 | Chubb | McLarens | 9/25/17 | Email re claim update | Claim File |
| C2.PF.00000291 | McLarens | Chubb | 9/21/17 | Email re claim update and inspection | Claim File |
| C2.PF.00000293 | Chubb | McLarens | 9/21/17 | Email re claim update and inspection | Claim File |
| C2.PF.00000295 | McLarens | Chubb | 9/25/17 | Email re McLarens report and draft ROM | Claim File |
| C2.PF.00000296 | | | 10/10/17 | McLarens Preliminary Report 1 | Claim File |
| C2.PF.00000299 | Chubb | Chubb | 10/9/17 | Email re total insurable values and schedule of values | Claim File |
| C2.PF.00000300 | McLarens | Chubb | 9/21/17 | Email re claim investigation | Claim File |
| C2.PF.00000301 | Chubb | McLarens | 2/2/18 | Email re McLarens report | Claim File |

| | | | | | |
|---|---|---|---|---|---|
| C2.PF.0000301.0 | | | 2/2/18 | McLarens Report 4 | Claim File |
| C2.PF.0000301.1 | | | 2/2/18 | Statement of loss, schedule of values | Claim File |
| C2.PF.0000302 | Chubb | McLarens | 11/28/17 | Email re McLarens report | Claim File |
| C2.PF.0000302.0 | | | 11/28/17 | McLarens Report 2 | Claim File |
| C2.PF.0000302.1 | | | 11/28/17 | Statement of loss and schedule of values | Claim File |
| C2.PF.0000303 | Wharton Insurance, Chubb | McLarens | 5/22/18 | Email re claim update | Claim File |
| C2.PF.0000305 | Chubb | McLarens | 5/22/18 | Email re claim update | Claim File |
| C2.PF.0000306 | Chubb | McLarens | 8/10/18 | Email re McLarens report | Claim File |
| C2.PF.0000306.0 | | | 8/10/18 | Statement of loss and schedule of values | Claim File |
| C2.PF.0000306.1 | | | 8/10/18 | McLarens Report 8 | Claim File |
| C2.PF.0000308 | Chubb | McLarens | 11/7/17 | Email re DBI damage report | Claim File |
| C2.PF.0000309 | Chubb | McLarens | 5/22/18 | Email re McLarens report | Claim File |
| C2.PF.0000309.0 | | | 5/22/18 | Statement of loss and schedule of values | Claim File |

| | | | | | |
|---|---|---|---|---|---|
| C2.PF.0000 0309.1 | | | 5/22/18 | McLarens Report 7 | Claim File |
| C2.PF.0000 0310 | Chubb | McLarens | 1/4/18 | Email re McLarens report 3 | Claim File |
| C2.PF.0000 0310.0 | | | 1/4/18 | Statement of loss and schedule of values | Claim File |
| C2.PF.0000 0310.1 | | | 1/4/18 | McLarens Report 3 | Claim File |
| C2.PF.0000 0311 | Chubb | McLarens | 10/30/18 | Email re McLarens report | Claim File |
| C2.PF.0000 0311.0 | | | 10/30/18 | McLarens Report 10 | Claim File |
| C2.PF.0000 0311.1 | | | 10/30/18 | Draft Business Interruption Summary and statement of loss | Claim File |
| C2.PF.0000 0312 | Chubb | McLarens | 10/22/18 | Email re McLarens report | Claim File |
| C2.PF.0000 0312.0 | | | 10/22/18 | McLarens report 9 | Claim File |
| C2.PF.0000 0315 | Chubb | Chubb | 8/18/2020 | Email re supplemental claim investigation | Claim File; Work Product |
| C2.PF.0000 0324 | Chubb | McLarens | 4/6/18 | Email re McLarens report | Claim File |
| C2.PF.0000 0324.0 | | | 4/6/18 | McLarens Report 6 | Claim File |
| C2.PF.0000 | | | 4/6/18 | McLarens Report 6 | Claim File |

| | | | | | |
|---|---|---|---|---|---|
| 0324.1 | | | | | |
| C2.PF.00000325 | Chubb | McLarens | 2/28/18 | Email re McLarens report | Claim File |
| C2.PF.00000325.0 | | | 2/28/18 | McLarens Report 5 | Claim File |
| C2.PF.00000325.1 | | | 2/28/18 | McLarens Report 5 | Claim File |
| C2.PF.00000327 | McLarens | Chubb | 11/7/17 | Email re claim update | Claim File |
| C2.PF.00000328 | Chubb | McLarens | 10/10/17 | Email re claim update and coverage | Claim File |
| C2.PF.00000329 | McLarens | Chubb | 11/1/18 | Email re draft proof of loss | Claim File |
| C2.PF.00000351 | Chubb | Chubb | 6/17/20 | Email re claim update | Claim File; Work Product |
| C2.PF.00000353 | Chubb | Chubb | 7/28/20 | Email re claim update | Claim File; Work Product |
| C2.PF.00000353.0 | Chubb | Chubb | 7/28/20 | Email re claim update | Claim File; Work Product |
| C2.PF.00000354 | G4S Field Services | Chubb | 9/19/17 | Email re claim documentation | Claim File |
| C2.PF.00000375 | Chubb | McLarens | 9/11/18 | Email re McLarens invoice | Claim File; Proprietary |
| C2.PF.00000375.0 | | | 9/9/2018 | Payment Summary Form for McLarens services | Claim File |
| C2.PF.0000 | Chubb | McLarens | 6/22/2018 | Email re invoice for services | Claim File; Proprietary |

| | | | | | |
|---|---|---|---|---|---|
| 0376 | | | | | |
| C2.PF.00000376.0 | | | 3/31/2018 | DBI Invoice for services | Claim File; Proprietary |
| C2.PF.00000377 | | | 11/30/17 | DBI invoice for services | Claim File; Proprietary |
| C2.PF.00000401 | | | 2/2/18 | McLarens Report 4 | Claim File |
| C2.PF.00000402 | | | 2/2/18 | McLarens Report 4 | Claim File |
| C2.PF.00000403 | | | 11/28/17 | McLarens Report 2 | Claim File |
| C2.PF.00000404 | Wharton Insurance | McLarens | 5/22/18 | Letter re claim update | Claim File |
| C2.PF.00000406 | | | 8/10/18 | McLarens Report 8 | Claim File |
| C2.PF.00000408 | | | 5/22/18 | McLarens Report 7 | Claim File |
| C2.PF.00000409 | | | 1/4/18 | McLarens Report 3 | Claim File |
| C2.PF.00000412 | | | 10/30/18 | McLarens Report 10 | Claim File |
| C2.PF.00000414 | | | 10/22/18 | McLarens Report 9 | Claim File |
| C2.PF.00000430 | | | 4/6/18 | McLarens Report 6 | Claim File |
| C2.PF.00000432 | | | 2/28/18 | McLarens Report 5 | Claim File |
| C2.PF.00000456 | | | 9/9/18 | Chubb Payment Summary Form for McLarens | Claim File |
| C3.PF.0000 | | | 1/18/18 | Underwriting Loss Run Reports | Underwriting |

| | | | | | File |
|---|---|---|---|---|---|
| C3.PF.00000010 | | | | | File |
| C3.PF.00000011 | | | 07/2017 | Underwriting Report | Underwriting File |
| C3.PF.00000012 | Westchester | Westchester | 3/13/2018 | Email re underwriting report | Underwriting File |
| C3.PF.00000015 | Underwriting for Westchester | Westchester | 1/24/2018 | Email re underwriting report and renewal | Underwriting File |
| C3.PF.00000016 | Westchester | Chubb | 5/16/2018 | Email re underwriting binder report | Underwriting File |
| C3.PF.00000016.1 | | | 07/2017 | Underwriting Location Report | Underwriting File |
| C3.PF.00000016.2 | | | 5/16/2018 | Underwriting binding report | Underwriting File |
| C3.PF.00000016.3 | | | 5/16/2018 | Underwriting Account Report | Underwriting File |
| C3.PF.00000017 | | | 4/11/2018 | Draft quote for renewal | Underwriting File |
| C3.PF.00000018 | | | 4/26/2018 | Draft quote for renewal | Underwriting File |
| C3.PF.00000019 | | | 4/26/2018 | Draft quote for renewal | Underwriting File |
| C3.PF.00000020 | Underwriting for Westchester | Westchester | 3/19/2018 | Email re draft quote for renewal | Underwriting File |
| C3.PF.00000020.0 | | | 3/19/2018 | Draft quote for renewal | Underwriting File |
| C3.PF.00000021 | Underwriting for Westchester | Westchester | 4/26/2018 | Email re draft binder | Underwriting File |

| C3.PF.0000 0021.0 | | | 4/26/2018 | Draft quote for renewal | Underwriting File |
|---|---|---|---|---|---|
| C3.PF.0000 0021.1 | | | 4/26/2018 | Draft quote for renewal | Underwriting File |
| C3.PF.0000 0022 | Underwriting for Westchester | Westchester | 4/11/2018 | Email re draft binder | Underwriting File |
| C3.PF.0000 0022.0 | | | 4/11/2018 | Draft quote for renewal | Underwriting File |
| C3.PF.0000 0024 | | | 5/16/2018 | Underwriting Account Report | Underwriting File |
| C3.PF.0000 0026 | | | 5/16/18 | Underwriting Binding Report | Underwriting File |
| C3.PF.0000 0027 | Westchester | Westchester | 1/11/2019 | Email re draft changes to policy | Claim File |
| C3.PF.0000 0027.0 | | | Undated | Notes on flood deductible | Claim File |
| C3.PF.0000 0028 | Westchester | Westchester | 5/30/2018 | Email re draft changes in policy | Underwriting File |
| C3.PF.0000 0029 | | | 3/19/2018 | Draft quote for renewal | Claim File |
| C3.PF.0000 0032 | | | 1/24/2018 | Draft quote for renewal | Underwriting File |
| C3.PF.0000 0035 | | | 3/31/2018 | Underwriting Loss Run Report | Underwriting File |
| C3.PF.0000 0040 | Westchester | Westchester | 1/11/2019 | Email re draft changes to policy | Claim File |
| C3.PF.0000 | Underwriting for | Westchester | 3/1/2018 | Email re draft changes to policy | Underwriting |

| | | | | | |
|---|---|---|---|---|---|
| 0043 | Westchester | | | | File |
| C3.PF.0000 0043.3 | | | 2/12/2018 | Underwriting Loss Run Report | Underwriting File |
| C3.PF.0000 0043.4 | | | Undated | Draft statement of values for property | Underwriting File |
| C3.PF.0000 0047 | Westchester | Westchester | 5/11/2020 | Email re draft changes to policy | Underwriting File |
| C3.PF.0000 0047.0 | | | 5/5/2020 | Draft quote for renewal | Underwriting File |
| C3.PF.0000 0048 | Dallas Property Policies | Westchester | 5/12/2020 | Email re draft changes to policy | Underwriting File |
| C3.PF.0000 0048.0 | | | 11/2016 | Underwriting Legacy ACE Report | Underwriting File |
| C3.PF.0000 0048.2 | | | 5/12/2020 | Draft quote for renewal | Underwriting File |
| C3.PF.0000 0049 | All Risks | Westchester | 4/6/2020 | Email re draft quote for renewal | Underwriting File |
| C3.PF.0000 0049.0 | | | 4/6/2020 | Draft quote for renewal | Underwriting File |
| C3.PF.0000 0050 | | | 4/27/2020 | Underwriting documentation | Underwriting File |
| C3.PF.0000 0051 | | | Undated | Underwriting documentation | Underwriting File |
| C3.PF.0000 0052 | | | Undated | Underwriting Property Pricing Model | Underwriting File |
| C3.PF.0000 | Westchester | Westchester | 4/27/2020 | Email re draft policy binder | Underwriting |

| | | | | | |
|---|---|---|---|---|---|
| 0053 | | | | | File |
| C3.PF.0000 0053.0 | | | 4/27/2020 | Draft quote for renewal | Underwriting File |
| C3.PF.0000 0054 | | | Undated | Underwriting location exposure report | Underwriting File |
| C3.PF.0000 0055 | Westchester | Chubb | 5/14/2020 | Email re draft binder | Underwriting File |
| C3.PF.0000 0055.0 | | | 01/2019 | Underwriting location exposure report | Underwriting File |
| C3.PF.0000 0055.1 | | | 5/9/2020 | Underwriting binding report | Underwriting File |
| C3.PF.0000 0055.3 | | | 5/9/2020 | Underwriting account report | Underwriting File |
| C3.PF.0000 0055.4 | | | 01/2019 | Underwriting data quality report | Underwriting File |
| C3.PF.0000 0056 | | | 4/1/2020 | Underwriting account report | Underwriting File |
| C3.PF.0000 0057 | Chubb | Westchester | 5/12/2020 | Email re underwriting CAT summary | Underwriting File |
| C3.PF.0000 0057.0 | | | 4/27/2020 | Underwriting catastrophe unit summary report | Underwriting File |
| C3.PF.0000 0058 | Westchester | Westchester | 4/6/2020 | Email re changes to policy | Underwriting File |
| C3.PF.0000 0058.0 | | | Undated | Draft quote for renewal | Underwriting File |
| C3.PF | All Risks | Westchester | 1/28/202 | Email re Setai Hotel | Underwriting |

| | | | 0 | Acquisition renewal information request | File |
|---|---|---|---|---|---|
| C3.PF .0000 0059 | | | | | |
| C3.PF .0000 0060 | | | 1/16/202 0 | Underwriting policy summary | Underwriting File |
| C3.PF .0000 0061 | | | 1/27/202 0 | Underwriting loss run report | Underwriting File |
| C3.PF .0000 0062 | All Risks | Westchester | 4/27/202 0 | Email re draft binder for renewal | Underwriting File |
| C3.PF .0000 0062. 0 | | | 4/27/202 0 | Draft renewal quote | Underwriting File |
| C3.PF .0000 0063 | | | 5/12/202 0 | Draft renewal quote | Underwriting File |
| C3.PF .0000 0064 | All Risks | Westchester | 6/2/2020 | Email re draft binder | Underwriting File |
| C3.PF .0000 0064. 0 | | | 5/12/20 | Draft renewal quote | Underwriting File |
| C3.PF .0000 0065 | | | 6/2/2020 | Underwriting Contract Certainty Checklist | Underwriting File |
| C3.PF .0000 0066 | Westchester | Westchester | 5/12/202 0 | Email re draft binder for policy | Underwriting File |
| C3.PF .0000 0066. 0 | | | Undated | Underwriting Legacy ACE System processing tool | Underwriting File |
| C3.PF .0000 0066. 2 | | | 5/12/202 0 | Draft renewal quote | Underwriting File |
| C3.PF .0000 0066. | Dallas Property Policies | Westchester | 5/12/202 0 | Email re draft policy renewal binder | Underwriting File |

| | | | | | |
|---|---|---|---|---|---|
| 3 | | | | | |
| C3.PF.00000067 | Westchester | Westchester | 6/2/2020 | Email re draft policy renewal binder | Underwriting File |
| C3.PF.00000067.0 | | | Undated | Underwriting Legacy ACE System processing tool | Underwriting File |
| C3.PF.00000067.3 | | | 5/12/2020 | Draft renewal quote | Underwriting File |
| C3.PF.00000067.4 | Dallas Property Policies | Westchester | 5/12/2020 | Email re draft policy renewal binder | Underwriting File |
| C3.PF.00000068 | Westchester | Westchester | 5/12/2020 | Email re draft policy renewal binder | Underwriting File |
| C3.PF.00000069 | Westchester | Westchester | 5/4/2020 | Email re draft policy renewal binder | Underwriting File |
| C3.PF.00000071 | All Risks | Westchester | 1/26/2021 | Email re underwriting loss run report | Underwriting File |
| C3.PF.00000071.0 | | | 1/26/2021 | Underwriting Loss Run Report | Underwriting File |
| C3.PF.00000071.1 | Westchester | All Risks | 1/26/2021 | Email re Underwriting Loss Run Report | Underwriting File |
| C3.PF.00000072 | All Risks | Westchester | 2/5/2021 | Email re Underwriting Loss Run Report | Underwriting File |
| C3.PF.00000072.0 | | | 2/5/2021 | Underwriting Loss Run Report | Underwriting File |
| C3.PF.00000072.1 | Westchester | All Risks | 2/5/2021 | Email re Underwriting Loss Run Report | Underwriting File |
| C3.PF | Westchester | All Risks | 4/27/202 | Email re Underwriting | Underwriting |

| | | | | | |
|---|---|---|---|---|---|
| .0000 0073 | | | 0 | report | File |
| C3.PF .0000 0074 | All Risks | Underwriting for Westchester | 12/11/20 20 | Email re underwriting loss run report | Underwriting File |
| C3.PF .0000 0074. 0 | | | 12/11/20 20 | Underwriting loss run report | Underwriting File |
| C3.PF .0000 0074. 1 | Westchester | Underwriting for Westchester | 12/11/20 20 | Email re underwriting loss run report | Underwriting File |
| C3.PF .0000 0075 | | | Undated | Underwriting binder instructions | Underwriting File |
| C3.PF .0000 0076 | | | 5/7/2019 | Underwriting Legacy ACE System processing tool | Underwriting File |
| C3.PF .0000 0077 | NSD East | Westchester | 5/7/2019 | Email re policy renewal binder | Underwriting File |
| C3.PF .0000 0079 | | | 4/26/201 9 | Draft renewal quote | Underwriting File |
| C3.PF .0000 0080 | Westchester | Westchester | 4/26/201 9 | Email re draft renewal quote | Underwriting File |
| C3.PF .0000 0081 | Westchester | Westchester | 4/26/201 9 | Email re draft renewal binder changes | Underwriting File |
| C3.PF .0000 0081. 1 | | | 4/26/201 8 | Draft renewal quote | Underwriting File |
| C3.PF .0000 0082 | All Risks | Westchester | 4/26/201 9 | Email re renewal quote | Underwriting File |
| C3.PF .0000 0082. 0 | | | 4/26/19 | Underwriting draft renewal binder | Underwriting File |
| C3.PF .0000 0083 | | | Undated | Underwriting property documentation | Underwriting File |
| C3.PF | | | Undated | Referral Pricing | Underwriting |

| | | | | | |
|---|---|---|---|---|---|
| .0000 0084 | | | | Chart for Policy Renewal 19-20 | File |
| C3.PF .0000 0085 | | | Undated | Underwriting general documentation | Underwriting File |
| C3.PF .0000 0086 | | | 2/27/19 | North American Property pricing model for renewal quote | Underwriting File |
| C3.PF .0000 0087 | Underwriting | Westchester | 4/29/201 9 | Email re underwriting statement of value | Underwriting File |
| C3.PF .0000 0087. 0 | | | Undated | Underwriting statement of value | Underwriting File |
| C3.PF .0000 0087. 1 | | | 4/29/19 | Underwriting draft renewal binder | Underwriting File |
| C3.PF .0000 0088 | Underwriting | Westchester | 4/29/201 9 | Email re loss run report for underwriting | Underwriting File |
| C3.PF .0000 0088. 0 | | | 4/29/19 | Underwriting draft renewal binder | Underwriting File |
| C3.PF .0000 0089 | Underwriting | Westchester | 11/25/20 19 | Email re endorsement changes to binder | Underwriting File |
| C3.PF .0000 0089. 1 | | | 3/8/19 | Underwriting statement of values | Underwriting File |
| C3.PF .0000 0090 | Westchester | Chubb | 11/25/20 19 | Email re underwriting endorsement | Underwriting File |
| C3.PF .0000 0090. 2 | | | 3/8/19 | Underwriting statement of values | Underwriting File |
| C3.PF .0000 0091 | Underwriting | Westchester | 5/15/201 9 | Email re CAT summary policy binder | Underwriting File |
| C3.PF .0000 | | | Undated | Underwriting Catastrophe Unit | Underwriting |

| | | | | Summary | File |
|---|---|---|---|---|---|
| C3.PF.00000092 | Westchester | Chubb | 4/24/2019 | Email re underwriting documents | Underwriting File |
| C3.PF.00000092.0 | | | 7/2018 | Underwriting Data Quality | Underwriting File |
| C3.PF.00000092.1 | | | 7/2018 | Underwriting Location Exposure Report | Underwriting File |
| C3.PF.00000092.3 | | | 7/2018 | Underwriting Major Account Report | Underwriting File |
| C3.PF.00000093 | Westchester | Chubb | 5/14/2019 | Email re binder reports | Underwriting File |
| C3.PF.00000093.0 | | | 7/2018 | Underwriting Major Account Report | Underwriting File |
| C3.PF.00000093.1 | | | 7/2018 | Underwriting Binding Report | Underwriting File |
| C3.PF.00000093.3 | | | 7/2018 | Underwriting Exposure Report | Underwriting File |
| C3.PF.00000094 | Westchester | Westchester | 4/29/2019 | Email re underwriting policy changes | Underwriting File |
| C3.PF.00000094.0 | Westchester | All Risks | 4/23/2019 | Email re underwriting statement of values | Underwriting File |
| C3.PF.00000094.0.0 | | | Undated | Underwriting statement of values | Underwriting File |
| C3.PF.00000095 | Westchester | All Risks | 5/7/2019 | Email re policy binder changes | Underwriting File |

| | | | | | |
|---|---|---|---|---|---|
| C3.PF.00000096 | | | 4/18/19 | Underwriting loss run report | Underwriting File |
| C3.PF.00000097 | Westchester | All Risks | 4/29/2019 | Email re underwriting statement of values | Underwriting File |
| C3.PF.00000097.0 | | | Undated | Underwriting statement of values | Underwriting File |
| C3.PF.00000098 | All Risks | Westchester | 11/25/2019 | Email re endorsement changes | Underwriting File |
| C3.PF.00000099 | | | 4/29/19 | Underwriting binder draft | Underwriting File |
| C3.PF.00000100 | All Risks | Westchester | 4/29/2019 | Email re draft policy binder | Underwriting File |
| C3.PF.00000100.0 | | | 4/29/19 | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000104 | | | Undated | Underwriting location exposure report | Underwriting File |
| C3.PF.00000105 | | | Undated | Underwriting Loss Summary | Underwriting File |
| C3.PF.00000107 | | | 4/18/19 | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000108 | | | 4/6/19 | Underwriting Major Account Report | Underwriting File |
| C3.PF.00000109 | | | 3/1/19 | Underwriting Property Insurance Renewal statement of insurable values | Underwriting File |
| C3.PF.00000110 | Chubb | Westchester | 5/13/2019 | Email re draft policy binder changes | Underwriting File |
| C3.PF.0000 | Chubb | Westchester | 5/13/2019 | Email re policy review for renewal | Underwriting |

| | | | | | |
|---|---|---|---|---|---|
| C3.PF.00000111 | | | | | File |
| C3.PF.00000112 | | | 5/13/19 | Underwriting Quality Control Checklist-Property | Underwriting File |
| C3.PF.00000114 | Westchester | All Risks | 4/26/2019 | Email re policy binder draft | Underwriting File |
| C3.PF.00000115 | Westchester | Westchester | 4/29/2019 | Email re policy binder draft | Underwriting File |
| C3.PF.00000116 | All Risks | Chubb | 4/29/2019 | Email re draft policy binder changes | Underwriting File |
| C3.PF.00000117 | Westchester | Westchester | 5/15/2019 | Email re underwriting changes | Underwriting File |
| C3.PF.00000118 | Westchester | Chubb | 4/29/2019 | Email re policy binder changes | Underwriting File |
| C3.PF.00000120 | All risk | All Risk | 8/9/2019 | Email re underwriting of policy | Underwriting File |
| C3.PF.00000121 | All Risks | Wharton Insurance | 5/23/2019 | Email re underwriting premium allocation | Underwriting File |
| C3.PF.00000122 | All Risks | Westchester Underwriting | 4/29/2019 | Email re policy binder changes | Underwriting File |
| C3.PF.00000123 | All Risks | Westchester Underwriting | 4/29/2019 | Email re underwriting statement of values | Underwriting File |
| C3.PF.00000124 | All Risks | Westchester Underwriting | 4/29/2019 | Email re policy underwriting changes | Underwriting File |
| C3.PF.00000125 | Westchester Underwriting | Westchester Underwriting | 11/25/2019 | Email re underwriting statement of values | Underwriting File |
| C3.PF.00000125.0 | Westchester | All Risks | 5/15/2019 | Email re underwriting statement of values changes | Underwriting File |
| C3.PF.00000125.0.0 | | | 3/8/19 | Underwriting statement of values changes | Underwriting File |

| C3.PF.0000125.1 | All Risks | Wharton Insurance | 5/23/2019 | Email re underwriting loss report | Underwriting File |
|---|---|---|---|---|---|
| C3.PF.0000126.0 | | | 3/8/19 | Underwriting statement of values changes | Underwriting File |
| C3.PF.0000127 | | | Multiple dates | Claim diary notes | Claim File; Work Product |
| C3.PF.0000127.0 | Dallas Property Policies | Westchester Underwriting | 7/13/21 | Email re underwriting binder | Underwriting File |
| C3.PF.0000128 | CAT Binders | Westchester Underwriting | 5/18/2021 | Email re underwriting CAT summary | Underwriting File |
| C3.PF.0000128.0 | | | Undated | Underwriting Catastrophe Unit Summary | Underwriting File |
| C3.PF.0000129 | Chubb | Westchester Underwriting | 3/8/2021 | Email re underwriting statement of values | Underwriting File |
| C3.PF.0000129.0 | | | Undated | Underwriting statement of values | Underwriting File |
| C3.PF.0000130 | RTS Specialty | Westchester underwriting | 4/27/2021 | Email re policy binder draft | Underwriting File |
| C3.PF.0000130.0 | | | 4/27/21 | Underwriting policy binder draft | Underwriting File |
| C3.PF.0000133 | | | Multiple dates | Claim diary notes | Claim File; Work Product |
| C3.PF.0000133.0 | Dallas Property Policies | Westchester Underwriting | 7/13/21 | Email re underwriting binder draft | Underwriting File |
| C3.PF.0000 | | | 4/27/21 | Underwriting policy binder draft | Underwriting |

| | | | | | |
|---|---|---|---|---|---|
| 0133.2 | | | | | File |
| C3.PF.00000134 | Westchester Underwriting | Westchester | 4/27/2021 | Email re underwriting draft policy binder | Underwriting File |
| C3.PF.00000134.0 | | | 4/7/21 | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000135 | Westchester Underwriting | Westchester Underwriting | 5/18/2021 | Email re draft underwriting policy binder | Underwriting File |
| C3.PF.00000135.0 | | | 4/27/21 | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000136 | All Risks | Chubb | 5/19/21 | Item Bill Statement | Underwriting File |
| C3.PF.00000137 | Westchester Underwriting | RT Specialty | 5/13/2021 | Email re TRIA rejection | Underwriting File |
| C3.PF.00000138 | | | 5/5/20 | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000139 | | | 4/27/20 | Legacy ACE System Processing Standard Tool | Underwriting File |
| C3.PF.00000142 | | | 4/6/20 | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000143 | | | 4/27/20 | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000144 | | | 5/9/20 | Underwriting Major Account Report | Underwriting File |
| C3.PF.00000145 | | | 1/2019 | Underwriting Location Exposure Report | Underwriting File |
| C3.PF.00000146 | | | 5/9/20 | Underwriting Binding Report | Underwriting File |
| C3.PF.00000147 | | | 1/2019 | Underwriting Data Quality Report | Underwriting File |

| | | | | | |
|---|---|---|---|---|---|
| C3.PF.00000148 | | | Undated | Underwriting Catastrophe Unit Summary | Underwriting File |
| C3.PF.00000149 | | | Undated | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000152 | | | 5/12/20 | Underwriting policy binder draft | Underwriting File |
| C3.PF.00000157 | | | Undated | Underwriting statement of values | Underwriting File |
| C3.PF.00000160 | | | 3/18/19 | Underwriting statement of values | Underwriting File |
| C3.PF.00000163 | | | Undated | Underwriting Catastrophe Unit Summary | Underwriting File |
| C3.PF.00000164 | | | 4/24/19 | Underwriting Major Account Report | Underwriting File |
| C3.PF.00000165 | | | 7/2018 | Underwriting Location Exposure Report | Underwriting File |
| C3.PF.00000166 | | | 7/2018 | Underwriting Data Quality Report | Underwriting File |
| C3.PF.00000167 | | | 5/11/19 | Underwriting Binding Report | Underwriting File |
| C3.PF.00000168 | | | 7/2018 | Underwriting Major Account Report | Underwriting File |
| C3.PF.00000169 | | | 7/2018 | Underwriting Location Exposure Report | Underwriting File |
| C3.PF.00000170 | Westchester | All Risks | 4/23/2019 | Email re underwriting statement of values | Underwriting File |
| C3.PF.00000170.0 | | | Undated | Underwriting statement of values | Underwriting File |
| C3.PF | | | Undated | Underwriting | Underwriting |

| | | | | | |
|---|---|---|---|---|---|
| .0000 0176 | | | | Catastrophe Unit Summary | File |
| C3.PF .0000 0177 | | | Undated | Underwriting schedule of value | Underwriting File |
| C3.PF .0000 0178 | | | 4/27/21 | Draft Underwriting Binder | Underwriting File |
| C3.PF .0000 0179 | | | 4/7/21 | Draft Underwriting Binder | Underwriting File |
| C3.PF .0000 0180 | | | 4/27/21 | Draft Underwriting Binder | Underwriting File |
| C3.PF .0000 0193 | | | Undated | Draft Underwriting Binder with notations of changes | Underwriting File |
| C3.PF .0000 0195 | All Risks | Westchester | 4/6/17 | Email re policy binder | Underwriting File |
| C3.PF .0000 0197 | | | 4/6/17 | Draft Underwriting Binder | Underwriting File |
| C3.PF .0000 0198 | | | Undated | Underwriting North American Property Pricing Model | Underwriting File |
| C3.PF .0000 0200 | | | Undated | Underwriting Catastrophe Unit Summary | Underwriting File |
| C3.PF .0000 0201 | | | 4/25/17 | Draft Underwriting Binder | Underwriting File |
| C3.PF .0000 0202 | Chubb | Westchester | 5/2/17 | Email re Draft Underwriting Binder | Underwriting File |
| C3.PF .0000 0203 | Underwriting | Westchester | 5/15/17 | Email re Underwriting CAT Summary | Underwriting File |
| C3.PF .0000 0204 | | | 5/2/17 | Underwriting Binding Report | Underwriting File |
| C3.PF | | | 1/2016 | Underwriting | Underwriting |

| | | | | | |
|---|---|---|---|---|---|
| .0000 0207 | | | | Location Exposure Report | File |
| C3.PF .0000 0208 | Chubb | Westchester | 4/25/17 | Email re Draft Underwriting Binder | Underwriting File |
| C3.PF .0000 0209 | RT Specialty | All Risks | 3/6/17 | Email re policy changes | Underwriting File |
| C3.PF .0000 0209. 0 | | | Undated | Underwriting statement of values | Underwriting File |
| C3.PF .0000 0209. 1 | | | Undated | Commercial Insurance Application | Underwriting File |
| C3.PF .0000 0216 | All Risks | Chubb | 4/25/17 | Email re Draft Underwriting Binder | Underwriting File |
| C3.PF .0000 0221 | All Risks | Chubb | 5/16/17 | Item Bill Statement | Underwriting File |
| C5.PF .0000 0458 | | | 9/8/22 | Claim Diary notes | Claim File; Work Product |
| C5.PF .0000 0467 | Chubb | Counsel | 3/31/202 1 | Email re counsel opinion on coverage position | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0468 | Chubb | Westchester | 11/5/202 1 | Email re claim deductibles | Claim File; Work Product |
| C5.PF .0000 0468. 0 | | | Undated | Re claim deductible calculation information | Claim File |
| C5.PF .0000 0468. 1 | | | Undated | Claim diary/notes | Claim File |
| C5.PF .0000 0468. 2 | | | Undated | Draft endorsement changes | Underwriting File |

| | | | | | |
|---|---|---|---|---|---|
| C5.PF.00000468.3 | | | Undated | Draft endorsement changes | Underwriting File |
| C5.PF.00000468.4 | | | Undated | Re claim deductible calculation information | Claim File |
| C5.PF.00000471 | Chubb | Chubb | 6/25/2021 | Email re deductible and schedule of value | Claim File; Work Product |
| C5.PF.00000471.0 | | | Undated | Underwriting schedule of value | Underwriting File |
| C5.PF.00000471.1 | | | Undated | Deductible information | Claim File |
| C5.PF.00000471.2 | | | Undated | Estimate of loss | Claim File |
| C5.PF.00000474 | Chubb | McLarens | 6/25/2021 | Email re statement of values | Claim File; Work Product |
| C5.PF.00000474.0 | | | 1/23/18 | Underwriting Statement of Values | Underwriting File |
| C5.PF.00000474.1 | | | 8/10/17 | Underwriting Statement of Values | Underwriting File |
| C5.PF.00000476.0 | | | 8/10/17 | Underwriting Statement of Values | Underwriting File |
| C5.PF.00000478 | Chubb | Counsel | 8/26/21 | Counsel legal opinion on claim coverage | Claim File; Work Product; Attorney-Client |
| C5.PF | McLarens, | Chubb | 2/25/202 | Email re draft | Claim File; |

| .0000 0479 | Counsel | | 1 | correspondence to insured and legal coverage opinion | Work Product; Attorney-Client |
|---|---|---|---|---|---|
| C5.PF .0000 0480 | Chubb | Chubb | 8/30/2021 | Email re legal coverage opinion | Claim File; Work Product |
| C5.PF .0000 0480. 0 | Chubb | Counsel | 8/26/21 | Counsel legal opinion on claim coverage | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0482 | Counsel | Chubb | 10/16/2020 | Email re legal coverage opinion | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0483 | Chubb | Counsel | 9/16/2022 | Email re legal coverage opinion | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0483. 0 | Chubb | Counsel | 9/16/22 | Counsel legal opinion on claim coverage | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0484 | Chubb | Chubb | 7/16/2021 | Email re legal coverage opinion | Claim File; Work Product |
| C5.PF .0000 0486 | McLarens, Chubb | Counsel | 3/31/2022 | Email re market share coverage | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0487 | McLarens, Counsel | Chubb | 12/31/2020 | Email re McLarens reports | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0489 | Counsel, Chubb | McLarens | 8/1/2022 | Email re BI claim update and reports | Claim File; Work Product; Attorney-Client |

| | | | | | |
|---|---|---|---|---|---|
| C5.PF.00000489.1 | | | 7/29/22 | Draft correspondence to insured | Claim File; Work Product |
| C5.PF.00000491 | Chubb | McLarens | 3/31/22 | Email re market share | Claim File; Work Product |
| C5.PF.00000495 | Chubb, Counsel | McLarens | 9/26/2022 | Email re JS Held report | Claim File; Work Product; Attorney-Client |
| C5.PF.00000496 | Counsel, Chubb | McLarens | 6/25/2022 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.00000498 | McLarens, Counsel | Chubb | 7/12/2022 | Email re JS Held report | Claim File; Work Product; Attorney-Client |
| C5.PF.00000499 | Counsel, Chubb | McLarens | 9/26/2022 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000501 | McLarens, JS Held, Counsel | Chubb | 7/12/2022 | Email re BI portion of claim and forensic accountant summary | Claim File; Work Product |
| C5.PF.00000502 | Counsel, Chubb | McLarens | 8/4/2022 | Email re JS Held report | Claim File; Work Product; Attorney-Client |
| C5.PF.00000504 | Counsel, Chubb | McLarens | 6/29/2022 | Email re draft correspondence to insured's adjuster | Claim File; Work Product; Attorney-Client |
| C5.PF.00000505 | | | 7/29/22 | Draft correspondence to insured | Claim File; Work Product |

| | | | | | |
|---|---|---|---|---|---|
| C5.PF.00000506 | Counsel | Chubb | 3/31/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000507 | McLarens, Chubb | Counsel | 3/31/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000508 | Counsel | Chubb | 6/25/22 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.00000511 | Counsel, Chubb | McLarens | 6/13/2022 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.00000512 | Counsel | Chubb | 6/29/2022 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000512.0 | | | Undated | Draft correspondence to insured's adjuster | Claim File |
| C5.PF.00000513 | Counsel, McLarens | Chubb | 9/13/2022 | Email re draft correspondence to insured adjuster | Claim File; Work Product; Attorney-Client |
| C5.PF.00000513.0 | | | 9/13/22 | Draft correspondence to insured's adjuster | Claim File; Work Product |
| C5.PF.00000514 | McLarens, Chubb | Counsel | 6/13/2022 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.00000518 | Chubb, McLarens | Counsel | 3/31/2022 | Email re market share | Claim File; Work Product; |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Attorney-Client |
| C5.PF.00000519 | Chubb, Counsel | McLarens | 9/13/2022 | Email re draft correspondence to insured's adjuster | Claim File; Work Product; Attorney-Client |
| C5.PF.00000520 | Chubb, Counsel | McLarens | 7/12/2022 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.00000521 | McLarens, Counsel | Chubb | 3/31/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000522 | | | Undated | Draft correspondence to insured's adjuster | Claim File |
| C5.PF.00000530 | Chubb | Everest Insurance | 3/18/2022 | Email re market share | Claim File; Work Product |
| C5.PF.00000532 | Chubb, McLarens | Counsel | 3/18/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000533 | Chubb | Everest Insurance | 3/11/2022 | Email re claim status | Claim File; Work Product |
| C5.PF.00000534 | Counsel, McLarens | Chubb | 3/18/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000535 | Counsel, McLarens | Chubb | 3/21/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000536 | ACE Apollo | Chubb | 3/18/2022 | Email re claim file | Claim File; Work Product |

| C5.PF.00000537 | McLarens, Counsel | Chubb | 3/4/2022 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
|---|---|---|---|---|---|
| C5.PF.00000538 | Chubb, McLarens | Wharton Insurance | 10/28/2021 | Email re claim update | Claim File; Work Product |
| C5.PF.00000539.0 | Landmark American Insurance Company, AXIS Surplus Insurance Company, Ironshore Specialty Insurance Company, Everest National Insurance Company | Butler | 9/13/2022 | Letter re cost sharing market obligations | Claim File; Work Product |
| C5.PF.00000540 | RSUI | Chubb | 3/17/2022 | Email re market share | Claim File; Work Product |
| C5.PF.00000540.0 | RSUI | RT Specialty | 9/14/21 | Email re excess coverage layers | Claim File; Work Product |
| C5.PF.00000542 | Chubb | Chubb | 3/30/2022 | Email re market share | Claim File; Work Product |
| C5.PF.00000543 | Counsel, McLarens | Chubb | 7/11/22 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.00000545 | RSUI, Counsel, McLarens | Chubb | 3/4/2022 | Email re claim and settlement potential update | Claim File; Work Product; Attorney-Client |

| C5.PF.00000545.0 | RSUI | McLarens | 1/30/22 | Email re claim status update | Claim File; Work Product |
|---|---|---|---|---|---|
| C5.PF.00000546 | McLarens, Chubb | RSUI | 8/16/2021 | Email re market share | Claim File; Work Product |
| C5.PF.00000547 | Chubb | Butler | 2/1/22 | Email correspondence re claim update | Claim File; Work Product |
| C5.PF.00000548 | Chubb | Counsel | 3/21/2022 | Email re market share schedule | Claim File; Work Product; Attorney-Client |
| C5.PF.00000550 | Counsel | Chubb | 3/24/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000551 | McLarens | Chubb | 3/30/2022 | Email re market share | Claim File; Work Product |
| C5.PF.00000553 | Counsel, Chubb | McLarens | 8/11/2022 | Claim File; Work Product; Attorney-Client | Claim File; Work Product; Attorney-Client |
| C5.PF.00000554 | Chubb | McLarens | 11/4/2021 | Email re claim update | Claim File; Work Product |
| C5.PF.00000555 | Counsel, Chubb | Chubb | 8/5/2021 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.00000556 | Counsel, JS Held, Chubb | McLarens | 7/13/2022 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.0000 | Chubb | Counsel | 3/21/2022 | Email re market share | Claim File; Work |

| | | | | | |
|---|---|---|---|---|---|
| 0557 | | | | | Product; Attorney-Client |
| C5.PF.00000560 | Chubb | Counsel | 8/9/2021 | Email re legal opinion on settlement | Claim File; Work Product; Attorney-Client |
| C5.PF.00000561 | Chubb | Counsel | 8/5/2021 | Email re claim update and settlement | Claim File; Work Product; Attorney-Client |
| C5.PF.00000562 | Chubb | Counsel | 7/20/2021 | Email re claim update and settlement | Claim File; Work Product; Attorney-Client |
| C5.PF.00000563 | Chubb, McLarens, Wayne Taylor, Christine Renella | Counsel | 4/5/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000564 | Chubb | Counsel | 3/24/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000565 | Chubb | Counsel | 3/24/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000566 | Chubb | Counsel | 8/20/2021 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000568 | Chubb | McLarens | 1/5/2021 | Email re budget for Envista Forensics | Claim File; Work Product; Proprietary |
| C5.PF.00000569 | Chubb | Wharton Insurance | 11/3/2021 | Email re claim update | Claim File; Work |

| | | | | | Product |
|---|---|---|---|---|---|
| C5.PF.00000571 | McLarens | Chubb | 3/31/2021 | Email re claim update | Claim File; Work Product |
| C5.PF.00000581 | Counsel, McLarens, JS Held | Chubb | 6/2/2021 | Email re legal coverage opinion | Claim File; Work Product; Attorney-Client |
| C5.PF.00000582 | McLarens, Envista, Chubb | JS Held | 1/13/2021 | Email re cost sharing | Claim File; Work Product |
| C5.PF.00000583 | | | Undated | Draft Joint Cost Sharing Agreement | Claim File; Work Product |
| C5.PF.00000584 | Wharton Insurance | Chubb | 11/9/2021 | Email re claim update | Claim File; Work Product |
| C5.PF.00000586 | Counsel | Chubb | 9/12/2022 | Email re draft joint cost sharing agreement | Claim File; Work Product; Attorney-Client |
| C5.PF.00000586.0 | | | Undated | Draft Joint Cost Sharing Agreement | Claim File; Work Product |
| C5.PF.00000590 | JS Held, Chubb, McLarens | Counsel | 7/19/2022 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF.00000593 | Chubb | Counsel | 12/15/2021 | Email re claim update and inspection | Claim File; Work Product; Attorney-Client |
| C5.PF.00000597 | Chubb | McLarens | 1/12/2021 | Email re market share | Claim File; Work Product |
| C5.PF.00000 | Envista Forensics, | Chubb | 3/9/2021 | Email re budget | Claim File; Work |

| | | | | | |
|---|---|---|---|---|---|
| 0598 | McLarens | | | | Product; Proprietary |
| C5.PF.00000599 | Chubb | AXIS Insurance | 1/9/2022 | Email re market share | Claim File; Work Product |
| C5.PF.00000600 | Counsel | Chubb | 3/24/2021 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000600.0 | | | 3/22/21 | Draft correspondence to insured's adjuster | Claim File; Work Product |
| C5.PF.00000602 | ACE Apollo | Chubb | 9/9/20 | Email re claim file | Claim File; Work Product |
| C5.PF.00000606 | Chubb, Counsel | Chubb | 7/26/2021 | Email re legal coverage opinion | Claim File; Work Product; Attorney-Client |
| C5.PF.00000612 | Counsel | Chubb | 4/16/2021 | Email re settlement potential | Claim File; Work Product; Attorney-Client |
| C5.PF.00000614 | Counsel | Chubb | 6/29/2022 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000614.0 | | | Undated | Draft correspondence to insured's adjuster | Claim File |
| C5.PF.00000615 | | | Undated | Draft correspondence to insured's adjuster | Claim File |
| C5.PF.00000619 | Chubb | Counsel | 1/24/2022 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF | Counsel, | Chubb | 2/25/202 | Email re draft | Claim File; |

| | | | | | |
|---|---|---|---|---|---|
| .0000 0621 | McLarens | | 1 | correspondence to insured's adjuster | Work Product; Attorney-Client |
| C5.PF .0000 0623 | McLarens | Chubb | 1/21/2021 | Email re retention of forensic accountant | Claim File; Work Product |
| C5.PF .0000 0625 | Chubb, Counsel, JS Held, Envista | McLarens | 12/16/2020 | Email re claim update and inspection | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0627 | Counsel | Chubb | 5/10/2021 | Email re claim inspection and counsel inspection | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0628 | Counsel | Chubb | 9/22/2022 | Email re draft joint cost sharing agreement | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0628. 0 | | | Undated | Draft Joint Cost Sharing Agreement | Claim File; Work Product |
| C5.PF .0000 0629 | Counsel | Chubb | 1/5/2022 | Email re claim update | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0634 | Counsel | Chubb | 3/31/2022 | Email re cost share and excess carriers | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0639 | McLarens, Chubb | Counsel | 3/31/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF .0000 0643 | Envista Forensics, Chubb, JS Held | McLarens | 1/13/2021 | Email re adjustment of claim and overlap of coverage | Claim File; Work Product |

| C5.PF.00000647 | Chubb | Counsel | 6/12/2021 | Email re potential settlement | Claim File; Work Product; Attorney-Client |
| C5.PF.00000648 | McLarens | Chubb | 1/5/2021 | Email re excess carriers and budget | Claim File; Work Product; Proprietary |
| C5.PF.00000651 | McLarens | Chubb | 1/12/2021 | Email re deductible calculation | Claim File; Work Product |
| C5.PF.00000654 | Counsel | Chubb | 1/11/2021 | Email re application of flood deductible | Claim File; Work Product; Attorney-Client |
| C5.PF.00000654.0 | | | 1/5/21 | McLarens estimate of loss | Claim File; Work Product |
| C5.PF.00000654.1 | | | Undated | Underwriting Statement of values | Underwriting File |
| C5.PF.00000656 | McLarens | Chubb | 8/26/2021 | Email re McLarens report | Claim File; Work Product |
| C5.PF.00000657 | Chubb | Everest Insurance | 11/8/21 | Email re market share and claim update | Claim File; Work Product |
| C5.PF.00000658 | Counsel, McLarens | Chubb | 4/29/2022 | Email re cost sharing | Claim File; Work Product; Attorney-Client |
| C5.PF.00000663 | Chubb | Chubb | 1/9/2021 | Email re application of deductible in claim coverage | Claim File; Work Product |
| C5.PF.00000663.0 | | | 1/5/21 | McLarens estimate of loss | Claim File; Work Product |

| C5.PF.00000666 | McLarens | Chubb | 1/5/2021 | Email re McLarens report | Claim File; Work Product |
|---|---|---|---|---|---|
| C5.PF.00000666.0 | | | 1/5/21 | McLarens Report 11 | Claim File; Work Product |
| C5.PF.00000667 | Property Reports | McLarens | 3/10/2021 | Email re McLarens report | Claim File; Work Product |
| C5.PF.00000667.0 | | | 3/8/21 | McLarens Report 12 | Claim File; Work Product |
| C5.PF.00000668 | | | 3/3/18 | McLarens Report 6 | Claim File |
| C5.PF.00000673 | Property Reports | Chubb | 1/6/2021 | Email re McLarens reports | Claim File; Work Product |
| C5.PF.00000673.0 | | | 3/8/18 | McLarens Report 6 statement of loss | Claim File |
| C5.PF.00000673.1 | | | 5/22/18 | McLarens Report 7 | Claim File |
| C5.PF.00000673.2 | | | 3/8/18 | McLarens Report 6 | Claim File |
| C5.PF.00000678 | | | 3/8/21 | McLarens Report 12 | Claim File; Work Product |
| C5.PF.00000681 | Chubb | McLarens | 4/19/2021 | Email re McLarens report | Claim File; Work Product |
| C5.PF.00000681.0 | | | 4/19/21 | McLarens report 13 | Claim File; Work Product |

| C5.PF.0000 0683 | Property Reports | Chubb | 1/12/2021 | Email re McLarens report | Claim File; Work Product |
|---|---|---|---|---|---|
| C5.PF.0000 0686 | Chubb | Counsel | 1/21/2022 | Email re market share call | Claim File; Work Product; Attorney-Client |
| C5.PF.0000 0687 | Chubb, JS Held | McLarens | 3/2/2022 | Email re draft correspondence to insured | Claim File; Work Product |
| C5.PF.0000 0688 | Wharton Insurance | Chubb | 11/5/2021 | Email re reserve information request | Claim File; Work Product |
| C5.PF.0000 0689 | Chubb | Counsel | 11/9/2021 | Email re counsel settlement discussions | Claim File; Work Product; Attorney-Client |
| C5.PF.0000 0690 | Counsel, Chubb, Envista, McLarens | JS Held | 2/7/2022 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.0000 0691 | Chubb | Counsel | 8/15/2022 | Email re correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.0000 0691.0 | | | 8/4/22 | JS Held Cost Summary draft | Claim File; Work Product |
| C5.PF.0000 0692 | Chubb | AVP-Claims | 11/8/2021 | Email re market share | Claim File; Work Product |
| C5.PF.0000 0696 | Counsel, JS Held, Chubb, Envista | McLarens | 11/4/2021 | Email re claim documents and causation determination | Claim File; Work Product; Attorney-Client |
| C5.PF.0000 | Counsel, JS Held, Chubb, | McLarens | 12/4/2020 | Email re claim inspection and | Claim File; Work |

| | | | | | |
|---|---|---|---|---|---|
| 0697 | Envista Forensics | | | investigation | Product; Attorney-Client |
| C5.PF.00000698 | McLarens, Chubb | Counsel | 12/21/2021 | Email re excess layers and carriers | Claim File; Work Product; Attorney-Client |
| C5.PF.00000699 | Counsel | Chubb | 11/13/2020 | Email re engineering inspection | Claim File; Work Product; Attorney-Client |
| C5.PF.00000700 | Chubb, JS Held, McLarens, Counsel | Envista Forensics | 11/10/2021 | Email re claim reports | Claim File; Work Product; Attorney-Client |
| C5.PF.00000701 | McLarens, Counsel | Chubb | 11/9/2020 | Email re engineering inspection | Claim File; Work Product; Attorney-Client |
| C5.PF.00000702 | Chubb | Counsel | 11/10/2021 | Email re draft settlement release | Claim File; Work Product; Attorney-Client |
| C5.PF.00000702.0 | | | | Draft Confidential General Release of All Claims | Claim File |
| C5.PF.00000703 | Counsel | Chubb | 11/5/2021 | Email re market notice | Claim File; Work Product; Attorney-Client |
| C5.PF.00000704 | Chubb, Counsel | Chubb | 9/21/2021 | Email re settlement potential | Claim File; Work Product; Attorney-Client |
| C5.PF.00000704.0 | | | Undated | Underwriting statement of values | Underwriting File |

| C5.PF.00000705 | Counsel, JS Held, Chubb | McLarens | 11/4/2021 | Email re forensic account cost summary | Claim File; Work Product; Attorney-Client |
|---|---|---|---|---|---|
| C5.PF.00000706 | Chubb, Counsel | McLarens | 10/30/2020 | Email re engineering inspection | Claim File; Work Product; Attorney-Client |
| C5.PF.00000707 | Chubb | Counsel | 11/8/2021 | Email re excess carrier share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000708 | Counsel, McLarens, Chubb | JS Held | 7/12/2022 | Email re engineering report | Claim File; Work Product; Attorney-Client |
| C5.PF.00000709 | Counsel, Chubb, JS Held, Envista | McLarens | 11/4/2021 | Email re claim investigation | Claim File; Work Product; Attorney-Client |
| C5.PF.00000710 | ACE Apollo | Chubb | 9/16/2020 | Email re claim file | Claim File; Work Product |
| C5.PF.00000711 | McLarens, Counsel | Chubb | 11/2/2020 | Email re consulting expert retainer | Claim File; Work Product; Attorney-Client |
| C5.PF.00000712 | Counsel, Chubb | Chubb | 9/16/2020 | Email re claim file | Claim File; Work Product; Attorney-Client |
| C5.PF.00000713 | Chubb | Counsel | 11/24/2021 | Email re claim investigation | Claim File; Work Product; Attorney-Client |
| C5.PF.0000 | Counsel | Chubb | 10/30/2020 | Email re consulting expert retainer | Claim File; Work |

| | | | | | |
|---|---|---|---|---|---|
| 0714 | | | | | Product; Attorney-Client |
| C5.PF.00000715 | Chubb | Counsel | 10/22/2020 | Email re attorney analysis of insured document | Claim File; Work Product; Attorney-Client |
| C5.PF.00000716 | Counsel | Chubb | 4/30/2021 | Email re furthering claim investigation | Claim File; Work Product; Attorney-Client |
| C5.PF.00000717 | Counsel | Chubb | 9/22/2020 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000717.0 | | | 9/18/20 | Draft correspondence to insured's adjuster | Claim File; Work Product |
| C5.PF.00000718 | McLarens, Chubb, Counsel | JS Held | 7/13/2022 | Email re engineering report | Claim File; Work Product; Attorney-Client |
| C5.PF.00000722 | McLarens, Counsel | Chubb | 12/31/2020 | Email re McLarens claim reports | Claim File; Work Product; Attorney-Client |
| C5.PF.00000724 | Chubb | Counsel | 4/26/2021 | Email re draft agreement with public adjuster and examination under oath of insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000725 | JS Held, Chubb, Counsel | McLarens | 11/18/2020 | Email re engineering inspection | Claim File; Work Product; Attorney-Client |
| C5.PF.00000726 | Wharton Insurance | Chubb | 11/5/2021 | Email re claim investigation | Claim File; Work Product |

| C5.PF.00000727 | Counsel, McLarens | Chubb | 10/28/2020 | Email re counsel advice for further claim investigation | Claim File; Work Product; Attorney-Client |
| C5.PF.00000728 | Counsel | Chubb | 11/9/2020 | Email re consulting expert retainer | Claim File; Work Product; Attorney-Client |
| C5.PF.00000729 | Chubb | McLarens | 11/8/2021 | Email re claim investigation and excess carrier share | Claim File; Work Product |
| C5.PF.00000730 | Chubb, Counsel | McLarens | 12/21/2021 | Email re excess carrier share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000734 | Chubb | McLarens | 9/30/2020 | Email re retainer of counsel | Claim File; Work Product; Attorney-Client |
| C5.PF.00000736 | Chubb, JS Held, McLarens | Counsel | 2/6/2022 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000736.0 | | | 2/2/22 | Draft correspondence to insured | Claim File; Work Product |
| C5.PF.00000736.1 | | | 7/9/21 | JS Held Cost Summary draft | Claim File; Work Product |
| C5.PF.00000738 | Counsel | Chubb | 10/26/2020 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000739 | Counsel | Chubb | 7/9/2021 | Email re counsel's claim coverage opinion | Claim File; Work Product; Attorney- |

| | | | | | Client |
|---|---|---|---|---|---|
| C5.PF.00000741 | McLarens, Chubb, Counsel | JS Held | 11/10/2021 | Email re engineer investigation | Claim File; Work Product; Attorney-Client |
| C5.PF.00000742 | JS Held, Counsel, McLarens, Chubb | Envista Forensics | 2/7/2022 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000743 | Chubb, Counsel | McLarens | 10/28/2020 | Email re consulting expert retainer | Claim File; Work Product; Attorney-Client |
| C5.PF.00000747 | JS Held, McLarens, Chubb | Counsel | 11/4/2021 | Email re claim evaluation | Claim File; Work Product; Attorney-Client |
| C5.PF.00000748 | Chubb; Counsel | RSUI | 3/4/2022 | Email re market share | Claim File; Work Product; Attorney-Client |
| C5.PF.00000749 | Chubb | McLarens | 4/20/2021 | Email re market share update | Claim File; Work Product |
| C5.PF.00000751 | Counsel; Chubb, JS Held | McLarens | 11/4/2021 | Email re draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF.00000752 | Chubb, JS Held, Counsel | McLarens | 7/12/2022 | Email re expert consultant retainer | Claim File; Work Product; Attorney-Client |
| C5.PF.00000758 | Chubb, JS Held, Counsel | McLarens | 9/2/2022 | Email re claim investigation and draft correspondence to insured | Claim File; Work Product; Attorney-Client |
| C5.PF | | | 8/12/22 | Draft | Claim File; |

| | | | | correspondence to insured | Work Product |
|---|---|---|---|---|---|
| C5.PF .0000 0758. 0 | | | | correspondence to insured | Work Product |
| C5.PF .0000 0802 | | | 2/4/21 | McLarens invoice for services | Claim File; Work Product; Proprietary |
| C5.PF .0000 0803 | Chubb | Chubb | 2/24/202 1 | Email re McLarens invoice for services | Claim File; Work Product; Proprietary |
| C5.PF .0000 0803. 0 | | | 1/14/21 | JS Held invoice for services | Claim File; Work Product; Proprietary |
| C5.PF .0000 0804 | Chubb | Chubb | 3/11/202 1 | Email re McLarens expenses | Claim File; Work Product |
| C5.PF .0000 0804. 0 | | | 2/4/21 | McLarens invoice for services | Claim File; Work Product; Proprietary |
| C5.PF .0000 0805 | | | 1/14/21 | JS Held Invoice for services | Claim File; Work Product; Proprietary |
| C5.PF .0000 0809 | Chubb | Chubb | 11/1/202 1 | Email re payments for consultants | Claim File; Work Product |
| C5.PF .0000 0809. 0 | | | Undated | Table of Service Payments for consultants | Claim File; Proprietary |
| C5.PF .0000 0810 | Chubb | Chubb | 11/2/202 1 | Email re consultant invoices | Claim File; Work Product; Proprietary |
| C5.PF .0000 0810. 0 | | | Undated | Table of Service Payments for consultants | Claim File; Proprietary |
| C5.PF .0000 0811 | Chubb | Chubb | 1/5/21 | Email re JS Held Fee Budget | Claim File; Work Product; Proprietary |

| | | | | | |
|---|---|---|---|---|---|
| C5.PF.00000811.0 | | | 12/30/20 | J.S. Held Fee Budget | Claim File; Work Product; Proprietary |
| C5.PF.00000812 | | | 12/30/20 | JS Held Fee Budget | Claim File; Work Product; Proprietary |
| C5.PF.00000823 | | | 8/10/17 | Underwriting statement of values | Underwriting File |
| C5.PF.00000824 | | | 1/23/18 | Underwriting statement of values | Underwriting File |
| C5.PF.00000825 | | | 8/10/17 | Underwriting statement of values | Underwriting File |
| C5.PF.00000831 | RSUI; All Risks | RT Specialty | 9/14/21 | Email re share partner | Claim File; Work Product |
| C5.PF.00000833 | RSUI | McLarens | 1/30/22 | Email re counsel's claim advice | Claim File; Work Product; Attorney-Client |
| C5.PF.00000855 | | | 1/5/21 | McLarens Report 11 | Claim File; Work Product |
| C5.PF.00000866 | | | 4/19/21 | McLarens Report 13 | Claim File; Work Product |
| C5.PF.00000867 | | | 8/4/22 | JS Held Cost Summary draft analysis | Claim File; Work Product |
| C5.PF.00000895 | | | 2/2/22 | Draft correspondence to insured | Claim File; Work Product |
| C5.PF.00000898 | | | 7/9/21 | JS Held Cost Summary draft analysis | Claim File; Work Product |

BUTLER WEIHMULLER KATZ CRAIG LLP

_[signature: Katelyn Lokuta]_

_____

WILLIAM R. LEWIS, ESQ.
Florida Bar No.:  0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No: 106198
klokuta@butler.legal
Secondary:   jdearborn@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Westchester Surplus Lines Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL  33133
Counsel for Plaintiff, Setai Hotel Acquisition, LLC

Alexis Lezama, Esq.
Conroy Simberg
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL  33401
Counsel for Defendant, Everest Indemnity Insurance Company

A. Grady Williams, IV, Esq.
Rhett Conlon Parker, Esq.
Phelps Dunbar LLP
PO Box 2727
Mobile, AL 36652
Counsel for AXIS Surplus Insurance Company and Scottsdale Insurance Company

Christine M. Renella, Esq.

Jacarri Walker, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, Liberty Surplus Lines Insurance Company

Hayley H. Ryan, Esq.
Jason M. Chodos, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, United National Insurance Company

Elizabeth D. Salinas, Esq.200
Mozeley, Finlayson & Loggins, LLP
4767 New Broad Street
Orlando, FL  32814
Counsel for Defendant, Landmark American Insurance Company

by e-Portal on December 19, 2022.

_____
KATELYN N. LOKUTA, ESQ.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                      Case No.: 2022-014511 CA 01

      Plaintiff,

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY

      Defendants.

_____/

## DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S, RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION

COMES NOW, the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Westchester"), by and through its undersigned counsel, and responds to Plaintiff, SETAI HOTEL ACQUISITION LLC's Request for Production, certificate of service date October 28, 2022, as follows:

1.     All insurance policies which are the subject of this case, or which do or may provide coverage for the claims which are the subject of this case.

     **RESPONSE: A certified copy of the policy issued by Westchester to Plaintiff is attached.**

2.     All communications with Plaintiff or any representative of Plaintiff related to the insurance policies which are the subject of this case or that do or may provide coverage for the claims which are the subject of this case.

     **RESPONSE: Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

3.    All communications with the producing agent related to the insurance policies which are the subject of this case or that do or may provide coverage for the claims which are the subject of this case.

**RESPONSE: Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

4.    All applications for all insurance policies which are the subject of this case, or which do or may provide coverage for the claims which are the subject of this case.

**RESPONSE: Westchester objects to this request to the extent it seeks documents contained in Westchester's underwriting files as they are not relevant to the determination of coverage.** *State Farm Florida Ins Co. v. Gallmon,* **835 So. 2d 389 (Fla 2d DCA 2003);** *State Farm Mut. Auto Ins. Co. v. O'Hearn***, 975 So. 2d 633 (Fla. 2d DCA 2008). Any document responsive to this request that has been withheld is identified on the privilege log.**

5.    All communications between the Defendants concerning the insurance policies which are the subject of this case, or which do or may provide coverage for the claims which are the subject of this case, and communications related to Plaintiff's Hurricane IRMA claims.

**RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action.** *See Nationwide Ins. Co. of Florida v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011);** *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* **2011 WL 5104476 (M.D. Fla. 2011). Any document responsive to this request that has been withheld is identified on the privilege log.**

6.    All documents which identify the location or address of each real property insured or the address of risk insured by the policies of insurance which are the subject of this case.

**RESPONSE: A certified copy of the policy issued by Westchester to Plaintiff is attached.**

7.    All communications with Plaintiff or any representative of Plaintiff related to all Hurricane IRMA claims.

**RESPONSE: Attached.**

8.    All communications with McLarens or Chris McQueeney related to all Hurricane IRMA claims made by Plaintiff.

   **RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action.** *See Nationwide Ins. Co. of Florida v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011);** *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* **2011 WL 5104476 (M.D. Fla. 2011). Any document responsive to this request that has been withheld is identified on the privilege log.**

9.    The claim files from the home, regional, local offices, and third party adjusters/adjusting firms regarding the claim that is the subject of this matter, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file.

   **RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action.** *See Nationwide Ins. Co. of Florida v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011);** *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* **2011 WL 5104476 (M.D. Fla. 2011). Subject to and without waiving the foregoing, Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

10.    The underwriting files referring or relating in any way to the policy at issue in this action, including the file folders in which the underwriting documents are kept and drafts of all documents in the file.

   **RESPONSE: Westchester objects to this request as bad faith discovery as Westchester's underwriting files are not relevant to the determination of coverage.** *State Farm Florida Ins Co. v. Gallmon,* **835 So. 2d 389 (Fla 2d DCA 2003);** *State Farm Mut. Auto Ins. Co. v. O'Hearn***, 975 So. 2d 633 (Fla. 2d DCA 2008). Any document responsive to this request that has been withheld is identified on the privilege log.**

11.    A certified copy of the insurance policy pertaining to the claims involved in this suit.

   **RESPONSE: A certified copy of the policy issued by Westchester to Plaintiff is attached.**

12. The electronic diary, including the electronic and paper notes made by Defendant's claims personnel, contractors, and third party adjusters/adjusting firms relating to the Plaintiff's Hurricane IRMA claims.

**RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action.** *See Nationwide Ins. Co. of Florida v. Demmo,* **57 So.3d 982 (Fla. 2d DCA 2011);** *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* **2011 WL 5104476 (M.D. Fla. 2011). Any document responsive to this request that has been withheld is identified on the privilege log.**

13. Your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of windstorm claims in Florida from September 1, 2017 to September 30, 2022.

**RESPONSE: Westchester objects to this request as it seeks documents not relevant to the claim determination and is bad faith discovery. Such a request is improper during an underlying contract action. See e.g.,** *Milinazzo v. State Farm Ins. Co.,* **247 F.R.D. 691, 701 (S.D. Fla. 2007).**

14. The Operation Guides which relate to the handling of Hurricane IRMA claims in Florida in effect from September 1, 2017 to September 30, 2022.

**RESPONSE: Westchester objects to this request as it seeks documents not relevant to the claim determination and is bad faith discovery. Such a request is improper during an underlying contract action. See e.g.,** *Milinazzo v. State Farm Ins. Co.,* **247 F.R.D. 691, 701 (S.D. Fla. 2007).**

15. The adjusting reports, estimates and appraisals prepared concerning Plaintiff's Hurricane Irma claims.

**RESPONSE: Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

16. If you dispute that the cause of the loss was related solely to Hurricane IRMA windstorm, produce the engineering reports in your possession regarding Hurricane IRMA damage to property within a one-mile radius of the Plaintiff's insured property.

**RESPONSE: Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

17. The plumbing reports prepared concerning Plaintiff's property related to Hurricane Irma.

   **RESPONSE: None in Westchester's possession.**

18. The roofing repair reports and window repair reports prepared concerning Plaintiff's property related to Hurricane Irma.

   **RESPONSE: Attached.**

19. The field notes, measurements and file maintained by the adjuster(s) and engineers who physically inspected Plaintiff's property related to Hurricane Irma.

   **RESPONSE: Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

20. All documents which identify the persons and entities who inspected Plaintiff's property in Florida related to its Hurricane Irma claims.

   **RESPONSE: Attached.**

21. The emails, instant messages and internal correspondence pertaining to Plaintiff's Hurricane Irma claims.

   **RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action. *See Nationwide Ins. Co. of Florida v. Demmo,* 57 So.3d 982 (Fla. 2d DCA 2011); *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* 2011 WL 5104476 (M.D. Fla. 2011). Subject to and without waiving the foregoing, Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

22. The videotapes, photographs and recordings of Plaintiff's property in Florida related to its Hurricane Irma claims.

   **RESPONSE: Attached.**

23. Defendant's internal newsletters, bulletins, publications and memoranda relating to policies and procedures for handling Florida Hurricane claims that were issued from September 1, 2017 to September 30, 2022. including, but not limited to, memoranda issued to claims adjusters.

**RESPONSE: Westchester objects to this request as it seeks documents not relevant to the claim determination and is bad faith discovery. Such a request is improper during an underlying contract action. See e.g., *Milinazzo v. State Farm Ins. Co*., 247 F.R.D. 691, 701 (S.D. Fla. 2007).**

24.    The price guidelines that pertain to the handling of claims arising out of Hurricane IRMA. In the event you utilize published guidelines or "off the shelf" software, without modification, as your price guidelines, you may respond by simply identifying by name, version, and/or edition the published guidelines you use.

**RESPONSE: Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

25.    All communications with Plaintiff's insurance agent pertaining to Plaintiff's Hurricane Irma claims.

**RESPONSE: Attached.**

26.    All communications with Plaintiff's public adjuster pertaining to Plaintiff's Hurricane Irma claims.

**RESPONSE: Attached.**

27.    The information regarding weather and storm surge conditions on which you relied in making decisions on the Plaintiff's Hurricane IRMA claims.

**RESPONSE: Westchester attaches all non-privileged documents responsive to this request. Any document responsive to this request that has been withheld is identified on the privilege log.**

28.    "Pay sheet," "Payment Log," or list of payments made on any of Plaintiff's Hurricane Irma claims.

**RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action. *See Nationwide Ins. Co. of Florida v. Demmo,* 57 So.3d 982 (Fla. 2d DCA 2011); *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* 2011 WL 5104476 (M.D. Fla. 2011). Westchester further objects to this request as it seeks documents not relevant to the claim determination and is bad faith discovery. Such a request is improper during an underlying contract action. See e.g., *Milinazzo v. State Farm Ins. Co*., 247 F.R.D. 691, 701 (S.D. Fla. 2007). Subject to and without waiving the foregoing, Westchester attaches all non-privileged documents responsive to this request. Any**

**document responsive to this request that has been withheld is identified on the privilege log.**

29.  The billing statements, including billing detail, of the independent adjusters and engineers retained to evaluate the subject property pertaining to Plaintiff's Hurricane Irma claims and insurance applications.

     **RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action. *See Nationwide Ins. Co. of Florida v. Demmo,* 57 So.3d 982 (Fla. 2d DCA 2011); *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* 2011 WL 5104476 (M.D. Fla. 2011). Any document responsive to this request that has been withheld is identified on the privilege log.**

30.  The documents reflecting reserves applied pertaining to Plaintiff's Hurricane Irma claims.

     **RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action. *See Nationwide Ins. Co. of Florida v. Demmo,* 57 So.3d 982 (Fla. 2d DCA 2011); *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* 2011 WL 5104476 (M.D. Fla. 2011). Any document responsive to this request that has been withheld is identified on the privilege log.**

31.  The contract between the Defendant insurer and McLarens pertaining to Plaintiff's Hurricane Irma claims or in effect from September 1, 2017, until September 30, 2022.

     **RESPONSE: Westchester objects to the extent that the request seeks documents protected from disclosure by the work product doctrine or because they are documents contained in the claim file, which are not discoverable in a first party breach of contract action. *See Nationwide Ins. Co. of Florida v. Demmo*, 57 So.3d 982 (Fla. 2d DCA 2011*); Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company*, 2011 WL 5104476 (M.D. Fla. 2011). Westchester further objects to this request as it seeks documents not relevant to the claim determination and is bad faith discovery. Such a request is improper during an underlying contract action. See e.g., *Milinazzo v. State Farm Ins. Co*., 247 F.R.D. 691, 701 (S.D. Fla. 2007).**

32.  The schedule of values on file with Defendant concerning the properties insured under the insurance policy which is the subject of this case.

**RESPONSE**: Attached.

BUTLER WEIHMULLER KATZ CRAIG LLP

*Katelyn Lokuta*

WILLIAM R. LEWIS, ESQ.
Florida Bar No.:  0879827
wlewis@butler.legal
KATELYN N. LOKUTA, ESQ.
Florida Bar No: 106198
klokuta@butler.legal
Secondary:   jdearborn@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Westchester Surplus Lines Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL  33133
Counsel for Plaintiff, Setain Hotel Acquisition, LLC

Alexis Lezama, Esq.
Conroy Simberg
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL  33401
Counsel for Defendant, Everest Indemnity Insurance Company

Jay Russell Sever, Esq.
A.  Grady Williams, IV, Esq
Rhett Conlon Parker, Esq.
Phelps Dunbar LLP
2 North Royal Street

Mobile, AL  36652
Counsel for Defendants, Axis Surplus Insurance Company and Scottsdale
Insurance Company

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, Liberty Surplus Lines Insurance Company

Hayley H. Ryan, Esq.
Jason M. Chodos, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, United National Insurance Company

Elizabeth D. Salinas, Esq.200
Mozeley, Finlayson & Loggins, LLP
4767 New Broad Street
Orlando, FL  32814
Counsel for Defendant, Landmark American Insurance Company

by e-Portal on December 19, 2022.

_____
KATELYN N. LOKUTA, ESQ.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY FLORIDA
GENERAL JURISDICTION DIVISION

SETAI HOTEL ACQUISITION, LLC,
A foreign limited liability company,

                                         Case No.: 2022-014511 CA 01

      Plaintiff,

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY

      Defendants.

_____/

### DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S NOTICE OF SERVING ANSWERS TO PLAINTIFF'S INTERROGATORIES

COMES NOW, the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, by and through its undersigned counsel, and files this Notice of Serving its Answers to Plaintiff, SETAI HOTEL ACQUISITION, LLC's Interrogatories propounded on October 28, 2022.

                      BUTLER WEIHMULLER KATZ CRAIG LLP

                      *Katelyn Lokuta*

                      _____
                      WILLIAM R. LEWIS, ESQ.
                      Florida Bar No.:  0879827
                      wlewis@butler.legal
                      KATELYN N. LOKUTA, ESQ.
                      Florida Bar No: 106198
                      klokuta@butler.legal
                      Secondary:   tgarcia@butler.legal

400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Westchester Surplus Lines Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Allan S. Reiss, Esq.
Levine & Partners, P.A.
3350 Mary Street
Miami, FL  33133
Counsel for Plaintiff, Setai Hotel Acquisition, LLC

Alexis Lezama, Esq.
Conroy Simberg
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL  33401
Counsel for Defendant, Everest Indemnity Insurance Company

Jay Russell Sever, Esq.
A. Grady Williams, IV, Esq.
Phelps Dunbar LLP
2 North Royal Street
Mobile, AL  36652
Counsel for Defendants, Scottsdale Insurance Company and AXIS Surplus Insurance Company

Christine M. Renella, Esq.
Jacarri Walker, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, Liberty Surplus Lines Insurance Company

Hayley H. Ryan, Esq.
Jason M. Chodos, Esq.
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL  33131
Counsel for Defendant, United National Insurance Company

Elizabeth D. Salinas, Esq.200
Mozeley, Finlayson & Loggins, LLP
4767 New Broad Street
Orlando, FL  32814
Counsel for Defendant, Landmark American Insurance Company

by e-Portal on December 19, 2022.


_____
KATELYN N. LOKUTA, ESQ.

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,

_____/

## PLAINTIFF'S ANSWERS TO DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S, INTERROGATORIES TO PLAINTIFF

      Plaintiff, SETAI HOTEL ACQUISITION, LLC, by and through its undersigned counsel, and pursuant to Rule 1.340, Florida Rules of Civil Procedure, serves its answers to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, First Set of Interrogatories and states:

1.     Please identify the current members of Setai Hotel Acquisition, LLC. Please also identify the address that is each members' domicile.

      **ANSWER:**

      The sole member of Setai Hotel Acquisition LLC is Nakash Properties, LLC. which is domiciled in Florida. The members of Nakash Properties, LLC are The Joseph Nakash 2005 Trust, The Ralph Nakash 2205 Trust, The Avi Nakash 2005 Trust. All three (3) trusts aforesaid are domiciled in Miami-Dade County, Florida. Salem Mounayyer is the sole Trustee of all three

trusts and his place of business is Victor Hotel 1144 Ocean Drive, South Beach, Miami, Florida 33139.  Salem Mounayyer also resides in Miami-Dade County, Florida.

2.    If any of the members identified in your answer to Interrogatory 1, is also a limited liability company or unincorporated entity, please identify each member of that limited liability company or unincorporated entity.

**ANSWER:**

See answer to question number 1.

3.    If any members identified in your answer to Interrogatory 2 are a trust, please identify the type of trust.

**ANSWER:**

Objection: vague, ambiguous, unintelligible, calls for a legal conclusion or expert opinion, immaterial, irrelevant, invades private financial matters of parties and nonparties not relevant to these proceedings.

4.    If any members identified in your answer to Interrogatory 2 are a trust, please identify each member of the trust(s), as well as their domicile.

**ANSWER:**

Objection: vague, ambiguous, unintelligible, calls for a legal conclusion or expert opinion, immaterial, irrelevant, invades private financial matters of parties and nonparties not relevant to these proceedings.

5.    If any members identified in your answer to Interrogatory 2 are a trust, please identify all the trustees of the trust(s), as well as their domicile.

**ANSWER:**

See answer to question number 1.

6.    If any members identified in your answer to Interrogatory 2 are a trust, please identify all beneficiaries of the trust(s), as well as their domicile.

**ANSWER:**

Objection: vague, ambiguous, calls for a legal conclusion or expert opinion, immaterial, irrelevant, invades private financial matters of parties and nonparties not relevant to these

2

proceedings.

7.    If any members identified in your answer to Interrogatory 2 are a trust, please identify all the shareholders of the trust(s), as well as their domicile.

**ANSWER:**

Objection: vague, ambiguous, unintelligible, calls for a legal conclusion or expert opinion, immaterial, irrelevant, invades private financial matters of parties and nonparties not relevant to these proceedings.

8.    Please provide a specific dollar amount reflecting the damages you are seeking in relation to the above captioned action.

**ANSWER:** The final computation is not complete at this time and is the subject of expert opinion, without limiting the forgoing the total amount is now estimated to be approximately $38,126,289.36.

VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing answers to interrogatories and that the facts stated in it are true, to the best of my knowledge and belief.

By:_____
Salem Mounayyer, as manager
Setai Hotel Acquisition LLC.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 28th day of December, 2022, to: WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP, (email: wlewis@butler.legal; klokuta@buttler.legal; jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP, (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire, CONROY SIMBERG, (email: eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company;
 Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133
3

Phone:(305) 372-1350
Fax: (305) 423-3203
Email: asr@levinelawfirm.com

BY:    s/Allan S. Reiss
        ALLAN S. REISS, ESQUIRE
        FLORIDA BAR NO: 858500

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

      Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

      Defendants,
_____/

### **PLAINTIFF'S RESPONSE TO DEFENDANT, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S FIRST REQUEST FOR PRODUCTION**

Plaintiff, SETAI HOTEL ACQUISITION, LLC, by and through its undersigned counsel, and pursuant to the Florida Rules of Civil Procedure, 1.350, serves its response to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, First Request for Production and states:

### **REQUESTS AND OBJECTIONS**

1.    A complete copy of the trust agreement for any and all trusts identified in response to Interrogatory No. 2.

Objection: overly broad, in scope and as to time, immaterial, irrelevant, invades confidential financial matters of parties and nonparties not relevant to these proceedings.

1

2.      A copy of the operating agreement for Setai Hotel Acquisition, LLC, and for any and all limited liability companies identified in response to Interrogatory No.1 or Interrogatory No. 2.

Objection: overly broad, in scope and as to time, immaterial, irrelevant, invades confidential financial matters of parties and nonparties not relevant to these proceedings.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 28th day of December, 2022, to:  WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP, (email: wlewis@butler.legal; klokuta@buttler.legal; jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP,  (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire,    CONROY    SIMBERG,    (email:    eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company; Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133
Phone:(305) 372-1350
Fax: (305) 423-3203
Email: asr@levinelawfirm.com

BY:     s/Allan S. Reiss_____
        ALLAN S. REISS, ESQUIRE
        FLORIDA BAR NO:  858500

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

        Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

        Defendants,

_____/

## PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME TO SERVE REPLY

Plaintiff, SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation, by and through its undersigned counsel, and pursuant to applicable Florida Rules of Civil Procedure serves their Motion for Enlargement of Time to serve Reply to Defendant, LANDMARK AMERICAN INSURANCE COMPANY'S Answer and Affirmative Defenses dated December 9, 2022, and states:

1.     Plaintiff's reply to Defendant, LANDMARK AMERICAN INSURANCE COMPANY'S Answer and Affirmative Defenses dated December 9, 2022 is due to be served on or before December 29, 2022.

2.     Based on undersigned's recent battle with Covid-19 which commenced on December 7, 2022 and the holidays, Plaintiff seeks an enlargement of time of 30 days to file and

1

serve their Reply to Defendant, LANDMARK AMERICAN INSURANCE COMPANY'S

Answer and Affirmative Defenses dated December 9, 2022.

3.      No party will be prejudiced should this motion be granted.

4.      Plaintiff will be severally prejudiced and irreparably harmed should this

motion be denied.

5.      The request for enlargement is not made to delay or for any improper purpose.

WHEREFORE, Plaintiff respectfully requests an enlargement of time of thirty (30) days

to serve its Reply to Defendant, LANDMARK AMERICAN INSURANCE COMPANY'S

Answer and Affirmative Defenses dated December 9, 2022 and for such further and/or different

relief as this Court deems just and proper under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 29th day of December, 2022, to:  WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP,   (email:   wlewis@butler.legal;   klokuta@buttler.legal;   jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP,   (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire,   CONROY   SIMBERG,   (email:   eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company; Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com

BY: ___/s/Allan S. Reiss_____
ALLAN S. REISS, ESQ.
FLORIDA BAR NO: 858500

2

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

       Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

       Defendants,
_____/

**<u>PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO SERVE REPLY</u>**

      Plaintiff, SETAI HOTEL ACQUISITION, LLC, a foreign limited liability corporation, by and through its undersigned counsel, and pursuant to applicable Florida Rules of Civil Procedure serves their Motion for Extension of Time to serve Reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Amended Answer and Affirmative Defenses dated December 6, 2022, and states:

      1.    Plaintiff's reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S Amended Answer and Affirmative Defenses dated December 6, 2022 is due to be served on or January 5, 2023.

      2.    Based on undersigned's recent battle with Covid-19 which commenced December 7, 2022 and the holidays, Plaintiff seeks an extension of time of 15 days to file and serve their

1

Reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S

Amended Answer and Affirmative Defenses dated December 6, 2022.

3.       No party will be prejudiced should this motion be granted.

4.       Plaintiff will be severally prejudiced and irreparably harmed should this

motion be denied.

5.       The request for extension is not made to delay or for any improper purpose.

WHEREFORE, Plaintiff respectfully requests an extension of time of fifteen (15) days to

serve its Reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S

Amended Answer and Affirmative Defenses dated December 6, 2022 and for such further and/or

different relief as this Court deems just and proper under the circumstances.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 5th day of January, 2023, to:  WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP, (email: wlewis@butler.legal; klokuta@buttler.legal; jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP, (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire, CONROY SIMBERG, (email: eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company; Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com

BY:  ___/s/Allan S. Reiss__ _____
      ALLAN S. REISS, ESQ.
      FLORIDA BAR NO: 858500

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | |
|---|---|
| SETAI HOTEL ACQUISITION, LLC, )<br>a foreign limited liability company, )<br> )<br>    **Plaintiff,** )<br> )<br>v. )<br> )<br>WESTCHESTER SURPLUS LINES )<br>INSURANCE COMPANY, LANDMARK )<br>AMERICAN INSURANCE COMPANY, )<br>LIBERTY SURPLUS LINES INSURANCE )<br>COMPANY, AXIS SURPLUS INSURANCE )<br>COMPANY, EVEREST INDEMNITY )<br>INSURANCE COMPANY, SCOTTSDALE )<br>INSURANCE COMPANY, and UNITED )<br>NATIONAL INSURANCE COMPANY, )<br> )<br>    **Defendants.** ) | **CASE NO.:  2022-CA-014511** |

## JOINDER IN MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT

Defendants Axis Surplus Insurance Company ("Axis") and Scottsdale Insurance Company ("Scottsdale") (collectively, "Defendants"), through undersigned counsel, adopt and join in the Joint Motion for Extension of Time to Respond to Complaint filed by Liberty Surplus Insurance Corporation and United National Insurance Company on January 11, 2023 (filing #164515177) as follows:

### PROCEDURAL POSTURE

1.    Plaintiff, Setai Hotel Acquisition, LLC ("Setai"), commenced this action on August 3, 2022 by filing its Complaint for Damages in this Court.

2.    Defendants were each served with a summons and a copy of the Complaint on or about September 21, 2022, by the Chief Financial Officer of the State of Florida.

3.    Pursuant to Fla. R. Civ. P. 1.140(a), Defendants' deadline to respond to the Complaint was October 11, 2022.   However, prior to the October 11, 2022 deadline, the parties

stipulated to an extension of time, up to and including November 11, 2022, for Defendants to file their respective responses to the Complaint.  Thereafter, the Court entered various Agreed Orders on October 9 and 10, 2022 extending the time for Defendants to file their respective responses to the Complaint, up to and including November 11, 2022.

4.     Subsequently, on November 10, 2022, the Court entered an additional Agreed Order further extending the time for Defendants to file responses to the Complaint up to and including December 12, 2022.

5.     On December 12, 2022, Defendants moved for a subsequent extension of time to respond to the Complaint, up to and including January 11, 2023.  Setai neither voiced any objection to the requested relief nor filed an opposition to the motion.

## **ARGUMENT**

6.     Rule 1.090(b) of the Florida Rules of Civil Procedure states that "[w]hen an act is required or allowed to be done at or within a specified time by order of court, by these rules, or by notice given thereunder, for cause shown the court at any time in its discretion (1) with or without notice, may order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ."

7.     On October 20, 2022, Setai was served with narrowly tailored jurisdictional discovery for purposes of determining whether this action is removable to federal court.  Setai's deadline to respond to the jurisdictional discovery was November 21, 2022.  However, on November 28, 2022, the Court entered an Agreed Order extending Setai's deadline, up to and including December 28, 2022, to respond to the jurisdictional discovery.

8.      On December 28, 2022, Defendants were served with Setai's responses to the jurisdictional discovery, which confirmed that this action is removable to federal court on the basis of diversity jurisdiction.

9.      Upon information and belief, counsel for Westchester Surplus Lines Insurance Company is currently in the process of preparing the removal documents and all of the other defendants in this action have consented to the removal.

10.     Following removal of the action to federal court, Defendants will be filing their respective responses under applicable federal rules of civil procedure and case law.

11.     In light of the above, Defendants respectfully request a 30-day extension of time, up to and including February 11, 2023, by when to file their respective responses to the Complaint.

12.     Granting this motion will conserve limited judicial resources and the resources of the parties and eliminate the bona fide possibility of the Defendants having to file the same response to the Complaint, twice, under separate rules of civil procedure.

13.     No party will be prejudiced by granting this extension of time.

14.     This motion is not being made in bad faith or for any undue purpose of delay.

WHEREFORE, Defendants, Axis Surplus Insurance Company and Scottsdale Insurance Company, respectfully request that the Court grant this Joint Motion for Extension of Time to Respond to Complaint and enter an order allowing Defendants an extension of time, up to and including February 11, 2023, by when to file their respective responses to the Complaint.

Dated this 11th day of January 2023.

 *s/ A. Grady Williams IV*
A. GRADY WILLIAMS IV (Fla. Bar No. 0065563)
RHETT CONLON PARKER (Fla. Bar No. 92505)
*Attorneys for Defendant Axis Surplus Insurance Company*
*and Scottsdale Insurance Company*

3

**PHELPS DUNBAR LLP**
101 Dauphin Street, Suite 1000 (36602)
P.O. Box 2727
Mobile, AL 36652-2727
251-432-4481(phone)
251-433-1820 (fax)
E-mail Designations:
bo.williams@phelps.com, claire.dixon@phelps.com
rhett.parker@phelps.com, jessika.clifford@phelps.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2023, I served the foregoing Joinder in Motion for Extension of Time to Respond to Plaintiff's Complaint, on behalf of Axis Surplus Insurance Company and Scottsdale Insurance Company, upon all counsel of record by e-mail via the Florida ePortal system.

 *s/ A. Grady Williams IV*
A.  GRADY WILLIAMS IV

4

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-014511-CA-01

SETAI HOTEL ACQUISITION, LLC.,
a foreign limited liability company.

    Plaintiff,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES
INSURANCE COMPANY, AXIS
SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY,

    Defendants.

_____/

## JOINT MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT

Defendants, Liberty Surplus Insurance Corporation ("Liberty") and United National Insurance Company ("United National") (collectively, "Defendants"), through their respective, undersigned counsel, respectfully submit this Joint Motion for Extension of Time to Respond to Complaint, and in support thereof state as follows:

## PROCEDURAL POSTURE

1.  Plaintiff, Setai Hotel Acquisition, LLC ("Setai"), commenced this action on August 3, 2022 by filing its Complaint for Damages in this Court.

2.  Defendants were each served with a summons and a copy of the Complaint on September 21, 2022, by the Chief Financial Officer of the State of Florida.

3.    Pursuant to Fla. R. Civ. P. 1.140(a), Defendants' deadline to respond to the Complaint was October 11, 2022.   However, prior to the October 11, 2022 deadline, the parties stipulated to an extension of time, up to and including November 11, 2022, for Defendants to file their respective responses to the Complaint.  Thereafter, the Court entered various Agreed Orders on October 9 and 10, 2022 extending the time for Defendants to file their respective responses to the Complaint, up to and including November 11, 2022.

4.    Subsequently, on November 10, 2022, the Court entered an additional Agreed Order further extending the time for Defendants to file responses to the Complaint up to and including December 12, 2022.

5.    On December 12, 2022, Defendants moved for a subsequent extension of time to respond to the Complaint, up to and including January 11, 2023.  Setai neither voiced any objection to the requested relief nor filed an opposition to the motion.

## **ARGUMENT**

6.    Rule 1.090(b) of the Florida Rules of Civil Procedure states that "[w]hen an act is required or allowed to be done at or within a specified time by order of court, by these rules, or by notice given thereunder, for cause shown the court at any time in its discretion (1) with or without notice, may order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ."

7.    On October 20, 2022, Setai was served with narrowly tailored jurisdictional discovery for purposes of determining whether this action is removable to federal court.  Setai's deadline to respond to the jurisdictional discovery was November 21, 2022.  However, on November 28, 2022, the Court entered an Agreed Order extending Setai's deadline, up to and including December 28, 2022, to respond to the jurisdictional discovery.

8.     On December 28, 2022, Defendants were served with Setai's responses to the jurisdictional discovery, which confirmed that this action is removable to federal court on the basis of diversity jurisdiction.

9.     Upon information and belief, counsel for Westchester Surplus Lines Insurance Company is currently in the process of preparing the removal documents and all of the other defendants in this action have consented to the removal.

10.    Following removal of the action to federal court, Defendants will be filing their respective responses under applicable federal rules of civil procedure and case law.

11.    In light of the above, Defendants respectfully request a 30-day extension of time, up to and including February 11, 2023, by when to file their respective responses to the Complaint.

12.    Granting this motion will conserve limited judicial resources and the resources of the parties and eliminate the bona fide possibility of the Defendants having to file the same response to the Complaint, twice, under separate rules of civil procedure.

13.    No party will be prejudiced by granting this extension of time.

14.    This motion is not being made in bad faith or for any undue purpose of delay.

**WHEREFORE**, defendants, Liberty Surplus Insurance Corporation and United National Insurance Company, respectfully request that the Court grant this Joint Motion for Extension of Time to Respond to Complaint and enter an order allowing Defendants an extension of time, up to and including February 11, 2023, by when to file their respective responses to the Complaint.

CASE NO.: 2022-014511-CA-01

Dated: January 11, 2023

s/*Christine M. Renella*
Christine M. Renella, Esq. (FL Bar No. 65485)
crenella@zellelaw.com
Jacarri Walker, Esq. (FL Bar No. 1010474)
jwalker@zellelaw.com
ZELLE LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
Tel.: (786) 693-2350
Fax: (612) 336-9100
*Attorneys for Defendant,*
*Liberty Surplus Insurance Corporation*

Dated: January 11, 2023

s/*Jason M. Chodos*
Jason M. Chodos, Esq. (FL Bar No. 025823)
jchodos@zellelaw.com
Hayley H. Ryan, Esq. (FL Bar No. 1032623)
hryan@zellelaw.com
ZELLE LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
Tel.: (786) 693-2351
Fax: (612) 336-9100
*Attorneys for Defendant,*
*United National Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 11, 2023, I served the foregoing Joint Motion for Extension of Time to Respond to Plaintiff's Complaint, on behalf of Liberty Surplus Lines Insurance Corporation and United National Insurance Company, upon all counsel of record by e-mail via the Florida ePortal system.

s/*Christine M. Renella*
Christine M. Renella, Esq.
(FL Bar No. 65485)

Case 1:23-cv-20318-RNS Document 1-2 Entered on FLSD Docket 01/26/2023 Page 590 of 600

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-014511-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**SETAI HOTEL ACQUSITION, LLC**

Plaintiff(s)

vs.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY et al**

Defendant(s)

_____/

<u>**AGREED ORDER GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO
SERVE REPLY**</u>

THIS CAUSE having come before the Court upon Plaintiff's Motion for Extension of Time to
serve reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S
Amended Answer and Affirmative Defenses dated December 6, 2022, upon review of same,
agreement of the parties and the Court being otherwise fully advised, it is

ORDERED AND ADJUDGED that:

  1.    Plaintiff's Motion for Extension of Time to serve reply is GRANTED.

  2.    Plaintiff's reply to Defendant, WESTCHESTER SURPLUS LINES INSURANCE
COMPANY'S Amended Answer and Affirmative Defenses dated December 6, 2022 is due on or
before Friday, January 27, 2023.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>12th day of January, 2023</u>.



<u>2022-014511-CA-01 01-12-2023 1:14 PM</u>
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Alexis D Lezama, alezama@conroysimberg.com
Alexis D Lezama, eservicewpb@conroysimberg.com
Alexis D Lezama, dwhitehall@conroysimberg.com
Allan S Reiss, asr@levinelawfirm.com
Allan S Reiss, eservice@levinelawfirm.com
Arthur G Williams IV, Bo.Williams@Phelps.com
Arthur G Williams IV, claire.dixon@phelps.com
Arthur G Williams IV, Elizabeth.Makler@Phelps.com
Christine M R, crenella@zellelaw.com
Christine M R, JChavarria@zellelaw.com
Elizabeth Salinas, esalinas@mfllaw.com
Elizabeth Salinas, cmotley@mfllaw.com
Elizabeth Salinas, wtaylor@mfllaw.com
Hayley Ryan, hryan@zellelaw.com
Hayley Ryan, jruiz@zellelaw.com
Jacarri Walker, jwalker@zellelaw.com
Jason Chodos, jchodos@zellelaw.com
Jason Chodos, jruiz@zellelaw.com
Katelyn Lokuta, klokuta@butler.legal
Katelyn Lokuta, jdearborn@butler.legal
Katelyn Lokuta, tgarcia@butler.legal
Ken Boyles, Kenneth.boyles@phelps.com
Rhett Conlon Parker, rhett.parker@phelps.com
Rhett Conlon Parker, jessika.clifford@phelps.com
William R. Lewis, wlewis@butler.legal
William R. Lewis, jdearborn@butler.legal
William R. Lewis, tgarcia@butler.legal

**Physically Served:**

Case 1:23-cv-20318-RNS   Document 1-2   Entered on FLSD Docket 01/26/2023   Page 593 of 600

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

     Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

     Defendants,
_____/

## **NOTICE OF HEARING**
(motion calendar)

PLEASE TAKE NOTICE THAT THE undersigned counsel will call up for hearing on Monday, March 20, 2023, at 10:00 a.m., before the Honorable Judge Carlos Guzman at the Miami-Dade County Courthouse located at 73 West Flagler, Miami, FL 33130 via Zoom, the following:

## **WESTCHESTER'S MOTION TO STRIKE BAD FAITH ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

If you are a person with a disability who needs an accommodation to participate in a court proceeding, please contact Aliean Simpkins, the Eleventh Judicial Circuit Court ADA Coordinator Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone 305-349-7175; TDD 305-349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance or immediately

1

upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 18th day of January, 2023, to: WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP, (email: wlewis@butler.legal; klokuta@buttler.legal; jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP, (Email: jchodos@zellelaw.com; jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire, CONROY SIMBERG, (email: eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company;
 Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF
3350 MARY STREET
MIAMI, FLORIDA 33133
Phone:(305) 372-1350
Fax: (305) 423-3203
Email: asr@levinelawfirm.com

BY:    s/Allan S. Reiss
        ALLAN S. REISS, ESQUIRE
        FLORIDA BAR NO:  858500

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY FL

CIVIL DIVISION

CASE NO – 2022-014511 CA 01

SETAI HOTEL ACQUISITION, LLC,
a foreign limited liability corporation,

       Plaintiff,

vs.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE COMPANY,
AXIS SURPLUS INSURANCE COMPANY,
EVEREST INDEMNITY INSURANCE COMPANY,
SCOTTSDALE INSURANCE COMPANY, and
UNITED NATIONAL INSURANCE COMPANY.

       Defendants,

_____/

## PLAINTIFF'S REPLY TO DEFENDANT'S, WESTCHESTER SURPLUS LINES INSURNACE COMPANY'S, AMENDED ANSWER & AFFIRMATIVE DEFENSES

       Plaintiff, SETAI HOTEL ACQUISITION, LLC, by and through its undersigned counsel, and pursuant to applicable Florida Rules of Civil Procedure serves their Reply to Defendant's, WESTCHESTER SURPLUS LINES INSURANCE COMPANY's, Amended Answer and Affirmative Defenses dated December 6, 2022, and states:

       1.     Plaintiff denies and avoids each affirmative defense and demands strict proof thereof.

       2.     Defendant's first affirmative defense is barred where this is an action relating to performance, partial payment has been made, coverage is admitted, and there is no ambiguity in the policy asserted by Defendant, the insured property is located in Florida, and the risk is in Florida. Plaintiff resides and is a citizen of Florida, Defendant repeatedly inspected the risk in Florida, and Defendant at all material time was aware the risk, the policy contains numerous non-

standard Florida provisions, and Plaintiff is located, is a citizen of and resides in Florida. Accordingly, Florida law applies and under Florida law the statute of limitations may not be altered by contract.  F.S. §95.03.

3.      Defendant's first affirmative defense is barred by F.S. §95.03 and the Full Faith and Credit Clause and the Due Process Clause under the U.S. Constitution where, as here, among other things, the insured property is located in Florida, and the risk is in Florida, Plaintiff resides in Florida, Defendant repeatedly inspected the risk in Florida, and Defendant at all material time was aware the risk and Plaintiff is located and resides in Florida.

4.      Defendant's first affirmative defense is barred by F.S. §95.03, where, among other things, enforcement of F.S. §95.03 is necessary to protect Plaintiff and the citizens of Florida, Plaintiff is a citizen of Florida,  and Florida public policy requires the protection of Florida's paramount interest in protecting its citizens from inequitable insurance contracts and unscrupulous insurers and surplus line insurers and at all material times Defendant was on notice that the insured property is located in Florida, the risk is centered in Florida, Plaintiff resides in Florida, Defendant repeatedly inspected the risk in Florida, and Defendant at all material time was aware the risk and Plaintiff is located and resides in Florida.

5.      Defendant's second affirmative defense is barred where, among other things, this is a supplemental claim and thus Defendant was on notice of the loss caused by hurricane Irma, made partial payment, and prompt notice was made with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the claim and supplemental claim and Defendant suffered no prejudice by reason of any alleged delay.

6.      Defendant's third affirmative defense is barred where, among other things, upon submitting its supplemental claim Defendant made repeated requests for information which were both redundant and burdensome with which Plaintiff made herculean efforts to cooperate and did comply despite the redundant, repeated, and unnecessarily burdensome nature of Defendant's

requests.  The requests were so burdensome, redundant, and confusing that their purpose appears to be to dissuade pursuit of a valid claim as opposed to investigate a legitimate supplemental claim for damages caused by hurricane Irma after a modest partial payment.  Accordingly, Defendant by its conduct waived a known right or is estopped to assert notice was not "prompt under the circumstances" by taking inconstant positions upon which Plaintiff relied.  Moreover, to the extent there is any shortfall, which Plaintiff denies, it is due to Defendant's bad faith conduct, the nature of the requests described above, and there is no substantial prejudice to Defendant.

7.      Defendant's fourth affirmative defense is barred by F.S. §95.03.  Additionally, Defendant by its conduct waived a known right or is estopped to assert by asserting an unenforceable policy provision under the he Full Faith and Credit Clause and the Due Process Clause under the United State Constitution and Florida public policy as more fully alleged above and by taking inconstant positions upon which Plaintiff relied, where among other things, upon submitting its supplemental claim Defendant made repeated requests for information which were both redundant and burdensome with which Plaintiff made herculean efforts to cooperate and did comply despite the redundant, repeated, and unnecessarily burdensome nature of Defendant's requests.  The requests were so burdensome, redundant, and confusing that their purpose appears to be to dissuade pursuit of a valid claim as opposed to investigate a legitimate supplemental claim for damages.

8.      Defendant's fifth affirmative defense is barred and avoided where it appears to be a mere denial and where Defendant paid a modest sum towards Plaintiff's damages caused by hurricane Irma and where the policy taken as a whole, construed in a light most favorable to the insured, the Plaintiff,  and not isolated provisions speaks for itself and based thereon the reasonable interpretation and reasonable expectations of the insured based thereon taken in the light most favorable to the insured, the Plaintiff, is that there is coverage for this loss and Plaintiff's damages asserted herein.

9.      Defendant's sixth affirmative defense is barred and avoided where it appears to be a mere denial and where the policy taken as a whole, construed in a light most favorable to the insured, the Plaintiff, and not isolated provisions speaks for itself.  Moreover, without limiting the foregoing, the policy provides that "[i]f the adjusted amount of the loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of the loss and pay the resulting amount or Limit of Insurance whichever is less."  CP 00 10 10 12.  Accordingly, where the Deductible subtracted from the loss is greater than the $10,000,000.00 in coverage, the deductible is no defense to the payment of the full $10,000,000.00 in coverage.

10.      Defendant's seventh affirmative defense is barred and avoided where it appears to be a mere denial and where the policy taken as a whole, construed in a light most favorable to the insured, the Plaintiff,  and not isolated provisions speaks for itself.  Moreover, without limiting the foregoing, Defendant waived and is estopped by its conduct, is delays, its repeated, confusing, redundant requests which were complied with and continued unsubstantiated denials of receiving information provided to assert this defense.  Additionally, repairs were made within a reasonable time under the totality of the circumstances and Defendant suffered no prejudice by any alleged delay.

11.      Defendant's eighth affirmative defense is barred and avoided where it appears to be a mere denial and where the policy taken as a whole, construed in a light most favorable to the insured, the Plaintiff, and not isolated provisions speaks for itself.  Moreover, without limiting the foregoing, Defendant waived and is estopped by its conduct, is delays, its repeated, confusing, redundant requests which were complied with and continued unsubstantiated denials of receiving information provided to assert this defense.  Additionally, repairs were made within a reasonable time under the totality of the circumstances and Defendant suffered no prejudice by any alleged delay.

12.     Defendant's nineth affirmative defense is barred and avoided where it appears to be a mere denial and where the policy taken as a whole, construed in a light most favorable to the insured, the Plaintiff, construed in a light most favorable to the insured, the Plaintiff, and not isolated provisions speaks for itself.

13.     Defendant's tenth affirmative defense is barred and avoided where it appears to be a mere denial or misstatement of Florida law where Plaintiff is entitled to its reasonable attorney's fees under F.S. §626.9373 and Chapter 626 to the same extent it would be under Chater 627 if Defendant was a licensed and admitted Florida insurer, not a surplus lines insurer.

14.     Defendant's eleventh affirmative defense is barred and avoided where it appears to be a mere denial and where the policy taken as a whole, construed in a light most favorable to the insured, the Plaintiff, construed in a light most favorable to the insured, the Plaintiff, and not isolated provisions speaks for itself.  Moreover, without limiting the foregoing, the defense is barred where hurricane Irma was the legal cause of Plaintiff's damages.

WHEREFORE, Plaintiff demands judgment in accordance with its most recent complaint, trial by jury, and for such further and/or different relief as this Court deems just and proper under the circumstances.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was uploaded and served by the Florida Courts E-Filing Portal on this 18th day of January, 2023, to:  WILLIAM R. LEWIS, ESQ., and KATELYN N. LOKUTA, ESQ., law firm of Butler Weihmuller Katz Craig LLP, (email:    wlewis@butler.legal;    klokuta@buttler.legal;    jdearborn@butler.legal; tgarcia@butler.legal) Attorneys for Westchester Surplus Lines Ins Co.; Jason M. Chodos, Esq. and Hayley H. Ryan, Esq., Zelle LLP,    (Email: jchodos@zellelaw.com;   jruiz@zellelaw.com; hryan@zellelaw.com) attorneys for United National Insurance Company; Alexis D. Lezama, Esquire,    CONROY    SIMBERG,    (email:    eservicewpb@conroysimberg.com; alezama@conroysimberg.com) attorneys for Everest Indemnity Insurance Company;
 Elizabeth D. Salinas and Mozley, Finlayson & Logins LLP, (email: esalinas@mfllaw.com; wtaylor@mfllaw.com; cmotley@mfllaw.com) attorneys for Landmark American Insurance Company.

LEVINE & PARTNERS, P.A.
ATTORNEYS FOR PLAINTIFF

3350 MARY STREET
MIAMI, FLORIDA 33133-5215
Phone:(305) 372-1350 Fax:(305) 423-3203
Email: asr@levinelawfirm.com

BY: ___/s/Allan S. Reiss_____
       ALLAN S. REISS, ESQ.
       FLORIDA BAR NO: 858500