IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SETAI HOTEL ACQUISITION, LLC
A foreign limited liability company,

    Plaintiff,

vs.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, LANDMARK
AMERICAN INSURANCE COMPANY,
LIBERTY SURPLUS LINES INSURANCE
COMPANY, AXIS SURPLUS INSURANCE
COMPANY, EVEREST INSURANCE
COMPANY, SCOTTSDALE INSURANCE
COMPANY, and UNITED NATIONAL
INSURANCE COMPANY

    Defendants.

Case No. 1:23-cv-20318-RNS

_____/

**DEFENDANTS SCOTTSDALE INSURANCE COMPANY'S
AND UNITED NATIONAL INSURANCE COMPANY'S
<u>MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW</u>**

    Defendants, Scottsdale Insurance Company ("Scottsdale") and United National Insurance Company ("United National"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), move this Honorable Court to dismiss Count VI and Count VII of Plaintiff Setai Hotel Acquisition, LLC's ("Setai" or "Plaintiff") Complaint for Damages ("Complaint"). [D.E. 1-2, pp. 4-11]. In support of this Motion, Scottsdale and United National jointly state as follows:

**I.    INTRODUCTION**

    This matter arises from Plaintiff's first-party insurance claim for alleged damage to Plaintiff's property resulting from Hurricane Irma. At the time of the loss, the subject property was insured under a "layered structure" in which the excess policies issued by Scottsdale and United National are triggered only if Plaintiff's insurance claim exhausts the limits of the underlying

primary and excess policies. However, Plaintiff has neither presented nor alleged a claim triggering Scottsdale's or United National's policy. Therefore, Plaintiff's breach of contract claims against Scottsdale and United National fail as a matter of law and must be dismissed because the Complaint does not state a viable cause of action upon which relief can be granted with respect to Scottsdale and United National.

## II.  STATEMENT OF FACTS

1. On August 3, 2022, Plaintiff filed suit against Westchester Surplus Lines Insurance Company ("Westchester"), Landmark American Insurance Company ("Landmark"), Liberty Surplus Lines Insurance Company ("Liberty"), AXIS Surplus Insurance Company ("AXIS"), Everest Indemnity Insurance Company ("Everest"), Scottsdale, and United National (collectively, "Defendants") in the Eleventh Judicial Circuit of Florida, in and for Miami-Date County, Florida. *See* Complaint [D.E. 1-2, p. 4]. Defendants timely removed this action to this Court pursuant to 28 U.S.C. § 1332. *See* Notice of Removal [D.E. 1].

2. Plaintiff alleges it "is the owner of the real property, improvements, buildings, and certain personal property located at 2001 Collins Avenue, Miami Beach, Florida 33139 (the 'Property')." [D.E. 1-2, p. 4 ¶ 2].

3. Plaintiff alleges that "each respective Defendant" issued certain insurance policies insuring the Property, each with effective dates of April 27, 2017 to April 27, 2018:

   a. Policy number D37431849-003 issued by Westchester ("Westchester Policy" or "Primary Policy");

   b. Policy number LHD900392 issued by Landmark ("Landmark Policy");

   c. Policy number 1000202527-02 issued by Liberty ("Liberty Policy");

   d. Policy number EAF786617-17 issued by AXIS ("AXIS Policy");

    e.    Policy number CA3X000840-171 issued by Everest ("Everest Policy");[1]

    f.    Policy number AJS0000541 issued by Scottsdale ("Scottsdale Policy"); and

    g.    Policy number LP000907 issued by UNIC ("United National Policy") (collectively, "Policies").

[D.E. 1-2, p. 5 ¶ 4].

4.    Plaintiff alleges that the Policies "are written and issued in a layered structure such that the Westchester Policy is the first layer of coverage with each succeeding policy as listed above engages when its predecessor's layer of coverage is exhausted in accordance with [the] terms and conditions of each respective policy of insurance." [D.E. 1-2, p. 6 ¶ 6].

5.    Subject to their respective terms, conditions, limitations, and exclusions, the Primary Policy and Underlying Excess Policies provide coverage as follows. The Westchester Policy provides primary coverage up to a policy limit of $10,000,000. Together, the Landmark Policy and Liberty Policy provide first layer excess ($15,000,000 excess of the Primary Policy's $10,000,000 limit). The AXIS Policy provides second layer excess coverage ($10,000,000 excess of $25,000,000), and the Everest Policy provides third layer excess coverage ($15,000,000 excess of $35,000,000). *See* United National Policy, attached hereto as Exhibit "A," p. 20.[2] [*See also* D.E. 1 ¶ 6; D.E. 1-2, pp. 221].

---

[1] The Landmark Policy, Liberty Policy, AXIS Policy, and Everest Policy are collectively referred to as the "Underlying Excess Policies."

[2] The Complaint specifically references the Policies and alleges the Policies were attached as exhibits. [D.E. 1-2, p. 4 ¶ 4]. Therefore, this Court may consider the United National Policy and Scottsdale Policy, which are attached as exhibits to this Motion. *See, e.g., Applestein v. Hartford Fire Ins. Co.,* No. 09-22494-CIV, 2010 WL 11506018, at *2 (S.D. Fla. Feb. 25, 2010) (considering insurance policy attached as exhibit to insurer's motion to dismiss as part of the pleadings for purposes of Rule 12(b)(6)).

6. The Scottsdale Policy's Commercial Property Coverage Part Excess Supplemental Declarations provide that the Limit of Insurance is "$25,000,000 EXCESS OF $50,000,000." *See* Scottsdale Policy, attached hereto as Exhibit "B," p. 22.[3] Thus, the Scottsdale Policy provides fourth layer excess coverage.

7. The Scottsdale Policy's Insuring Agreement provides, in part, as follows:

> **A. Insuring Agreement**
>
> We will indemnify you for the "ultimate net loss" in excess of the "primary insurance" and "underlying excess insurance" for direct physical loss of or damage to Covered Property at the Insured Premises, subject to the following:
>
> **1.** The "occurrence" takes place during the Policy Period as stated in **ITEM 2.** of the Common Policy Declarations;
>
> **2.** The loss or damage is covered by and defined in the "primary insurance"; and
>
> **3.** The loss or damage is caused by or resulting from the Covered Causes Of Loss as described in **ITEM 2.** of the Excess Supplemental Declarations.
>
> Subject to our Limits of Insurance, terms, conditions, exclusions, and endorsements; if any, and, except as otherwise stated in this policy, we agree to follow-form of the terms, conditions, exclusions, definitions and endorsements as issued by the "primary insurance."

[Ex. B, p. 24].

8. The Limit of Insurance provisions of the Scottsdale Policy provide, in part, as follows:

> **B. Limit Of Insurance**
>
> The Limit Of Insurance shown in **ITEM 6.** of the Excess Supplemental Declarations will apply as follows:
>
> . . .

---

[3] *Supra* note 2.

4

    **2.**    The Limit Of Insurance only applies after the "primary insurance" and "underlying excess insurance" limit(s) have been paid or they have all admitted liability for the full amount of their limit(s).

    . . .

    **4.**    Our liability shall be limited to the least of the following:

        **a.**    The actual "ultimate net loss" in excess of the "primary insurance" and "underlying excess insurance."

        **b.**    The total stated value for the Covered Property, as shown on the latest statement of values on file with us.

        **c.**    The Limit Of Insurance shown on the Excess Supplemental Declarations or endorsed on to this policy.

[Ex. B, p. 24].

9.    The Scottsdale Policy defines "ultimate net loss" as "the loss or damage sustained by you as a result of Covered Causes of Loss provided by this policy after making reduction for recoveries or salvages collectible and other valid and collectible insurance, other than recoveries under the 'primary insurance' and 'underlying excess insurance.'" [Ex. B, p. 26].

10.    Thus, the Scottsdale Policy would only apply after the Primary Policy and the Underlying Excess Policies limits have been paid or they have admitted liability. [*See* Ex. B].

11.    The United National Policy provides as follows:

**SECTION I – COVERAGE**

Subject to the Limits of Insurance stated in **Section IV,** we will pay for the part of your "insured loss" in excess of the Limit of Insurance of the "primary insurance."

. . .

This policy does not provide excess coverage over any primary coverage that is subject to a sub-limit in the "primary insurance". If the "primary insurance" is subject to an aggregate limit, this insurance will only apply after the aggregate is exhausted and then only excess of what would have been the limit for loss or damage in any on "occurrence", had there been no aggregate.

[Ex. A, p. 5].

12. The United National Policy's SECTION IV – LIMITS OF INSURANCE provisions provide that the "most we will pay in any one 'occurrence' is $25,000,000, excess of the Limit of Insurance provided by the 'primary insurance.'" [Ex. A, p. 7].

13. The United National Policy defines "primary insurance" as "[t]he coverage(s) afforded under the insurance policy designated in **Section III – Schedule of Primary Insurance**, above." *See id.*, p. 10.

14. The United National Policy identifies the Primary Policy, Underlying Excess Policies, and the Scottsdale Policy as the "primary insurance." [*Id.*, p. 20]. Thus, the United National Policy provides fifth layer excess coverage, i.e., in excess of $75,000,000 of underlying limits of insurance.

15. In its Complaint, Plaintiff alleges that "on or about September 10, 2017, Plaintiff's Property was seriously damaged by Hurricane Irma" and that it "presented an initial claim which was partially paid." [D-E 1-2, p. 6 ¶¶ 8, 10].

16. Plaintiff further alleges that "[t]he passage of time revealed additional serious damage," and it submitted "a supplemental claim" for damages. [D-E 1-2, p. 7 ¶¶ 11-12].

17. Nowhere in the Complaint does Plaintiff allege the total amount of the "initial claim" or "supplemental claim."

18. Plaintiff also does not allege that the Primary Policy or Underlying Excess Policies limits have been paid.

19. Similarly, Plaintiff does not allege that liability has been admitted for the full amount of Primary Policy or Underlying Excess Policies limits.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive a Rule 12(b)(6) motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the 'grounds' for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Gio Pizzeria & Bar Hosp., LLC v. Certain Underwriters at Lloyd's, London*, 542 F. Supp. 3d 1335, 1338 (S.D. Fla. 2021), *aff'd*, No. 21-12229, 2022 WL 1558771 (11th Cir. May 17, 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[4] Furthermore, "when exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 4986 F.3d 1189, 1206 (11th Cir. 2007)). "This rule applies even to exhibits that are attached to a motion to dismiss but are incorporated by reference." *Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, 932 F. Supp. 2d 1336, 1345 (S.D. Fla. 2013) (citation omitted).[5]

---

[4] "'[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'" *Danow v. Great Am. Ins. Co.,* No. 21-80250-CIV, 2021 WL 6693759, at *2 (S.D. Fla. Apr. 8, 2021) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

[5] "If the exhibits incorporated by reference contradict the general and conclusory allegations of the pleading, the exhibits govern." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,* 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015*), aff'd sub nom. Stettin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 861 F.3d 1335 (11th Cir. 2017) (citing *Crenshaw v. Lister,* 556 F.2d 1283, 1284 (11th Cir.2009)).

"Moreover, this Court need not accept Plaintiffs' bald assertions as to the meaning of the insurance contracts attached to the Complaint and otherwise made part of the record." *Reesey v. Fed. Emergency Mgmt. Agency*, No. 13-60488-CIV, 2013 WL 12086662, at *2 (S.D. Fla. July 9, 2013) (citation omitted). Under Florida law, the interpretation of an insurance policy is a question of law for the court. *Off. Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304, 1314 (S.D. Fla. 2010), *aff'd sub nom. Off. Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 453 F. App'x 871 (11th Cir. 2011) (citations omitted). "In construing an insurance policy, courts should read the policy as a whole, endeavoring to give every provision its full and operative effect." *Gen. Star Indem. Co. v. W. Florida Vill. Inn, Inc.*, 874 So. 2d 26, 30 (Fla. 2d DCA 2004). Finally, "when considering insurance coverage disputes, Courts routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered." *Goldberg v. Nat'l Union Fire Ins. Co.*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015).[6]

## ARGUMENT

**A. Plaintiff does not allege covered damages triggering liability under the Scottsdale Policy or United National Policy.**

Under Florida law, an excess policy "attaches only after a predetermined amount of primary coverage has been exhausted." *Privilege Underwriters Reciprocal Exch. v. Hanover Ins. Group*, 304 F. Supp. 3d 1300, 1308 (S.D. Fla. 2018) (citation omitted). Therefore, an "excess insurance policy does not come into effect unless and until the amount of damages exhausts the

---

[6] "'Because the interpretation of contracts generally is a question of law to be determined by the [district court], it may dismiss the complaint where contracts are unambiguous and do not support the plaintiff's claim.'" *Reesey,* No. 13-60488-CIV, 2013 WL 12086662, at *2 (alteration in original) (quoting *Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 509-10 (S.D.N.Y. 2012)).

8

limits of the primary policy." *Conley v. Fla. Fam. Ins. Co.*, 2010 WL 3385353, at *3 (N.D. Fla. Aug. 26, 2010) (citations omitted).

As indicated above, the Policies consist of six (6) layers of insurance, each layer having a minimum per loss limit before the next layer of coverage is triggered. Specifically, the layers of insurance are as follows:

| Policy | Liability Limit | Covers Liability in Excess of |
|---|---|---|
| Primary: Westchester | $10,000,0000 | N/A |
| 1st Excess: Landmark (50%) & Liberty (50%) | $15,000,000 | $10,000,000 |
| 2nd Excess: AXIS | $10,000,000 | $25,000,000 |
| 3rd Excess: Everest | $15,000,000 | $35,000,000 |
| 4th Excess: Scottsdale | $25,000,000 | $50,000,000 |
| 5th Excess: United National | $25,000,000 | $75,000,000 |

Thus, the Scottsdale Policy is not triggered unless: (1) Plaintiff presents a claim in excess of $50 million plus applicable deductibles[7] and (2) the Primary Policy and Underlying Excess Policies limits have been paid or they have admitted liability for the full amount of their limits.

---

[7] Pursuant to the Primary Policy's Named Windstorm Endorsement, the applicable deductible is 5% "of the sum of all values listed in the most recent Schedule of Values on file with the Company for each separately identifiable building or structure that has sustained a loss or damage and for which a claim is being made under this [Primary] [P]olicy; subject to the minimum [$100,000] deductible shown in the schedule." [Doc. 1-2, p. 114]. Therefore, not only must Plaintiff's covered damages exceed the Primary Policy and Underlying Excess Policies' limits to trigger coverage under the Scottsdale Policy and in excess of the Primary Policy, Underlying Excess Policies, and Scottsdale Policy's limits to trigger coverage under the United National Policy, Plaintiff's covered damages must also be in excess of the applicable Named Windstorm Deductible and other applicable deductibles.

Moreover, the United National Policy would not be triggered unless Plaintiff presented a claim in excess of $75,000,000 plus applicable deductibles, which exhausts the Primary Policy, Underlying Excess Policies, and Scottsdale Policy limits.

However, Plaintiff's Complaint is devoid of any allegations triggering liability under the Scottsdale Policy or United National Policy. Plaintiff has not alleged that the Primary Policy and Underlying Excess Policies limits have been paid; nor that liability has been admitted for the full amount of the Primary Policy and Underlying Excess Policies' limits. Instead, through Counts I-V, Plaintiff has asserted breach of contract claims under the Primary Policy and Underlying Excess Policies. Therefore, it naturally follows that Primary Policy and Underlying Excess Policies limits have, in fact, not been paid or that liability under the Primary Policy and Underlying Excess Policies has been admitted. In turn, Plaintiff has failed to allege sufficient facts to trigger the Scottsdale Policy or the United National Policy. *See Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 509 F. App'x 919, 923 (11th Cir. 2013) (holding breach of contract claim against excess insurer was premature and noting the excess insurer "could not be required to pay the claim unless and until [the primary insurer] paid its $5,000,000 policy limits").

Instead, Plaintiff only generally alleges that its losses are in excess of $30,000, which as indicated above, is less than the $50,000,000 attachment point of the Scottsdale Policy and $75,000,000 attachment point of the United National Policy. Therefore, Plaintiff sets forth no allegations that its alleged losses even reach the required amount to trigger coverage under the Scottsdale Policy or the United National Policy. *See Burleigh House Condo. v. Rockhill Ins. Co.*, No. 21-22911-CIV, 2022 WL 1605447, at *1 (S.D. Fla. May 20, 2022) (granting insurers' motions to dismiss where complaint failed to allege damages reached excess insurers coverage layer or exhaustion of other insurers' liabilities); *Reesey,* No. 13-60488-CIV, 2013 WL 12086662, at *3

(S.D. Fla. July 9, 2013) (granting insurer's motion to dismiss breach of contract claim where plaintiff failed to plead triggering policy's excess coverage). *See also Villa Capriani Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, No. 20 CVS 2703, 2021 WL 4806512, at *6 (N.C. Super. Oct. 14, 2021) (holding Plaintiff's breach of contract claim against excess insurer was premature where Plaintiff did not allege that primary insurer has paid full amount of limits or an admission of liability by primary insurer of full amount of policy limits); *JPMorgan Chase & Co. v. Indian Harbor Ins. Co.*, 31 Misc. 3d 1240(A), 930 N.Y.S.2d 175 (Sup. Ct. 2011), *aff'd sub nom. JP Morgan Chase & Co. v. Indian Harbor Ins. Co.,* 98 A.D.3d 18, 947 N.Y.S.2d 17 (2012) (granting insurer's motion to dismiss where policy "require[d] the Underlying Excess insurers to have 'admitted liability' and 'paid the full amount of their respective liability' before [insurer's] liability attache[d]."). Accordingly, because Plaintiff has not alleged covered damages triggering liability under the Scottsdale Policy or United National Policy, Plaintiff's Complaint fails to state a plausible claim against Scottsdale or United National, and Counts VI and VII of the Complaint must be dismissed.

### B. Plaintiff fails to plead sufficient facts to state a claim against Scottsdale and United National upon which relief may be granted.

Even if this Court determines that Plaintiff states a plausible claim against Scottsdale or United National as excess insurers, Counts VI and VII of Plaintiff's Complaint must still be dismissed as Plaintiff failed to allege sufficient facts to state a breach of contract claim against Scottsdale or United National.

As explained above, Plaintiff fails to plead that its losses exceeded the Primary Policy or Underlying Excess Policies' limits such that coverage under the Scottsdale Policy or United National Policy could even be triggered for a breach to occur. Instead, Plaintiff's Complaint "lodges only conclusory allegations amounting to a formulaic recitation of the elements of breach

of contract." *See Dixon v. Lexington Ins. Co.,* No. 0:20-CV-60017-UU, 2020 WL 5038767, at *2 (S.D. Fla. Jan. 27, 2020) (granting insurer's motion to dismiss breach of contract claim where "Plaintiffs' vague allegations f[e]ll short of the factual content needed to establish a plausible claim for relief."); *Rubio v. Scottsdale Ins. Co.*, No. 1:19-CV-22713-UU, 2019 WL 7636669, at *2 (S.D. Fla. July 30, 2019) (granting insurer's motion to dismiss where Plaintiffs failed to allege, among other things, particular damage to the property, how damage "constituted a 'covered loss' under the Policy, and how Defendant failed to 'adequately' or 'properly' indemnify Plaintiffs").

Aside from failing to plead sufficient facts to trigger the Scottsdale Policy and United National Policy, Plaintiff also fails to allege specifics of the alleged breach or any basis to support its contention that benefits were wrongfully withheld. In fact, Plaintiff's Complaint does not even allege that the claimed damage to the Property constitutes a covered loss under any of the Policies at issue in this litigation. As such, Plaintiff has not pleaded sufficient facts to establish a breach of contract claim against Scottsdale or United National and Counts VI and VII of Plaintiff's Complaint should be dismissed.

WHEREFORE, Defendants Scottsdale Insurance Company and United National Insurance Company respectfully request that this Honorable Court enter an Order dismissing Count VI and Count VII of Plaintiff's Complaint with prejudice and such other relief this Court deems just and proper.

Respectfully submitted this 2nd day of February, 2023.

*s/*A. Grady Williams IV
A. Grady Williams IV (Fla. Bar No. 0065563)
bo.williams@phelps.com
Phelps Dunbar LLP
101 Dauphin Street, Suite 1000 (36602)
P.O. Box 2727
Mobile, AL 36652-2727
Tel: 251-432-4481

Fax: 251-433-1820
*Attorney for Defendant Scottsdale Insurance Company*

*s/*Jason M. Chodos
Jason M. Chodos, Esq. (FL Bar No. 025823)
jchodos@zellelaw.com
Hayley H. Ryan, Esq. (FL Bar No. 1032623)
hryan@zellelaw.com
110 E. Broward Blvd., Suite 2000
Fort Lauderdale, FL 33301
Tel.: (786) 693-2351
Fax: (612) 336-9100
*Attorneys for Defendant,*
*United National Insurance Company*

13

PD.41079124.1

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Allan S. Reiss, Esq.
asr@levinlaw.com
Levine & Partners, P.A.
3350 Mary Street
Miami, FL 33133
*Counsel for Plaintiff,*
*Setai Hotel Acquisition, LLC*

Alexis D. Lezama, Esq.
Robert S. Horwitz, Esq.
rhorwitz@conroysimberg.com
Conroy Simberg
1801 Centrepark Drive East, Suite 200
West Palm Beach, FL 33401
*Counsel for Defendant,*
*Everest Indemnity Insurance Company*

Christine M. Renella, Esq.
crenella@zellelaw.com
Jacarri M. Walker, Esq.
jwalker@zelle.com
SunTrust International Center
One Southeast Third Avenue,
Suite 1600
Miami, FL 33131
Tel.: (786) 693-2350
Fax: (612) 336-9100
*Counsel for Defendant, Liberty Surplus Lines Insurance Corporation*

William R. Lewis, Esq.
wlewis@butler.legal
Katelyn N. Lokuta, Esq.
klokuta@butler.legal
Butler Weihmuller Katz Craig, LLP
400 North Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Counsel for Westchester Surplus Lines Insurance Company*

Jason M. Chodos, Esq.
jchodos@zellelaw.com
Hayley H. Ryan, Esq.
hrayn@zellellaw.com
Zelle, LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1600
Miami, FL 33131
*Counsel for Defendant, United National Insurance Company*

Wayne F. Taylor, Esq.
wtaylor@mfllaw.com
Elizabeth D. Salinas, Esq.
esalinas@mfllaw.com
Mozeley, Finlayson & Loggins, LLP
4767 New Broad Street
Orlando, FL 32814
*Counsel for Defendant, Landmark American Insurance Company*

                                *s/*A. Grady Williams, IV
                                A. GRADY WILLIAMS IV (Fla. Bar No. 0065563)
                                *Attorney for Defendant AXIS Surplus Insurance Company*

**PHELPS DUNBAR LLP**
101 Dauphin Street, Suite 1000 (36602)
P.O. Box 2727
Mobile, AL 36652-2727
251-432-4481(phone)
251-433-1820 (fax)
bo.williams@phelps.com